# Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

**COPY**
SUMMONS

INDEX # **2013**/3344

WELLS FARGO BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CARRINGTON MORTGAGE LOAN
TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-
THROUGH CERTIFICATES,

**Original Filed With
Clerk on** 6|3|13

Plaintiff Designates Dutchess
County as the Place of Trial

Plaintiff,

The Basis of Venue is that the
Subject of the Action is situated in
Dutchess County.

— against —

NICOLE JOHNSON, PETER JOHNSON, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.
SOLELY AS NOMINEE FOR FREMONT
INVESTMENT AND LOAN,

Plaintiff resides at
3415 Vision Drive
Columbus, OH 43219
County of Franklin

and JOHN DOE AND JANE DOE #1 through #7, the last
seven (7) names being fictitious and unknown to the
plaintiff, the persons or parties intended being the tenants,
occupants, persons or parties, if any, having or claiming an
interest in or lien upon the mortgaged premises described in
the Complaint,

Defendants.

2013 JUN -3 AM 11:02
DUTCHESS COUNTY
CLERK'S OFFICE
RECEIVED

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a

copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of

appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this Summons,

exclusive of the day of service (or within 30 days after the service is complete if this Summons is

not personally delivered to you within the State of New York); The United States of America

may appear or answer within 60 days of service hereof; and in case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the Complaint.

## NOTICE

### YOU ARE IN DANGER OF LOSING YOUR HOME

**If you do not respond to this Summons and Complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.**

**Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.**

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.**

Dated: Huntington, NY
      May 24, 2013

Respectfully submitted,

**STIENE & ASSOCIATES, P.C.**

By: Christopher Virga
Attorneys for Plaintiff
187 East Main Street
Huntington, NY 11743
(631) 935-1616, Fax (631) 935-1223

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

COPY

WELLS FARGO BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR CARRINGTON MORTGAGE LOAN
TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-
THROUGH CERTIFICATES,

**COMPLAINT**

INDEX **2013**/3344

Plaintiff,

— against —

NICOLE JOHNSON,  PETER JOHNSON, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.
SOLELY AS NOMINEE FOR FREMONT INVESTMENT
AND LOAN,

and JOHN DOE AND JANE DOE #1 through #7, the last
seven (7) names being fictitious and unknown to the
plaintiff, the persons or parties intended being the tenants,
occupants, persons or parties, if any, having or claiming an
interest in or lien upon the mortgaged premises described in
the Complaint,

Defendants.

2013 JUN -3   AM 11:02

DUTCHESS COUNTY
CLERK'S OFFICE
RECEIVED

Plaintiff, Wells Fargo Bank National Association, As Trustee For Carrington Mortgage

Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates, by its attorneys,

**STIENE & ASSOCIATES, P.C.,** complaining of the defendants, alleges upon information and

belief as follows:

    1.  That the plaintiff herein is, and at all times hereinafter mentioned was, a National

Bank organized and existing under and by virtue of the laws of the United States of America,

having its principal place of business at 3415 Vision Drive, Columbus, OH.

2.  Upon information and belief, at all times hereinafter mentioned, the defendants set forth in "Schedule 1-Defendants" reside or have a place of business at the address set forth therein (any that are corporations being organized and existing under the laws of the State set forth therein) and are made defendants in this action in the capacities therein and for the reasons set forth in said Schedule.

3.  That the United States of America, The People of the State of New York, The State Tax Commission of the State of New York, the Industrial Commission of the State of New York, New York City Parking Violations Bureau, New York City Environmental Control Board and City of New York Transit Adjudication Bureau and all other agencies or instrumentalities of the Federal, State or local government (however designated), if any, are made parties solely by reason of the facts set forth in "Schedule 2-Defendants".

4.  On December 18, 2006, the defendant, Nicole Johnson (hereinafter "Mortgagor"), executed and delivered to Fremont Investment & Loan a Note ("the Note") dated December 18, 2006, whereby the Mortgagor promised to pay Fremont Investment & Loan the principal sum of $262,880.00. A copy of the Note, with proper endorsements, is annexed hereto as **Exhibit "A"**.

5.  On December 18, 2006, the Mortgagor executed and delivered to Mortgage Electronic Registration Systems, Inc., solely as nominee for Fremont Investment & Loan a Mortgage ("the Mortgage") in the principal sum of $262,880.00 with interest, mortgaging the premises known as 149 Wilkes Street, Beacon, NY 12508 ("the Premises") as collateral security for the Note. The mortgaged premises are more fully described in **Exhibit "B"** annexed hereto.

6.  The Mortgage was duly recorded in the Dutchess County Clerk's Office on March 3, 2008, under Document No. 01 2008 2204, and the Recording Tax was duly paid. The Note and Mortgage were tendered and transferred to the Plaintiff. An Assignment of Mortgage was

recorded in the Dutchess County Clerk's Office on March 8, 2010, under Document No. 01 2010
502A.   Copies of the aforementioned loan documents are annexed hereto as **Exhibit "C"**.

7.   Pursuant to the Note, the Mortgagor promised to make consecutive monthly
payments in initial amounts of $1,783.61 each month, at the initial adjustable interest rate of
7.990%, commencing on February 1, 2007, and on the first day of each succeeding month to and
including January 1, 2037, until the entire principal amount and accrued interest shall be due and
payable.

8.   On or about August 26, 2008, the Mortgagor executed a Loan Modifcation
Agreement ("Modification"), whereby the principal balance was increased to $279,763.22.
Pursuant thereto, the Mortgagor promised to make initial monthly payments of $1,278.02, at the
initial adjustable itnerst rate of 4.99%, beginning on September 1, 2008, through and including
January 1, 2037, at which time the entire principal balance would be due and owing.   A copy of
the Modification Agreement is annexed hereto as **Exhibit "D."**

9.   Pursuant to the Mortgage, as modified, the Mortgagor promised to pay, in addition to
principal and interest, all amounts necessary to pay for taxes, assessments, leasehold payments or
ground rents (if any), hazard insurance and mortgage insurance.

10. The Mortgagor defaulted on her obligations under the terms of the Note and
Mortgage, as modified, by failing and omitting to pay to the Plaintiff payments due on
September 1, 2009 and said default has continued for a period in excess of fifteen (15) days.

11. At the time of the default, the interest rate was 4.99%.   Said rate has been calculated
from August 1, 2009, the first date of the month before the default date of September 1, 2009.

12.   Plaintiff notified the Mortgagor of the default under the terms of the Note and
Mortgage but the Mortgagor failed to remedy the default.   As a result of the Mortgagor' failure

to remedy the default, the plaintiff elected to declare the entire principal balance due and owing and notified the Mortgagor of this election.

13.   Pursuant to the terms of the Note and Mortgage, as modified, the plaintiff has elected and does hereby elect to declare the entire principal balance to be due and owing.

14.   By reason of the foregoing, there is now due and owing from the Mortgagor to plaintiff the principal sum of $278,355.24 plus interest and late charges.

15.   The Note provides that in the event any installment shall become overdue for a period in excess of fifteen (15) days a late charge of 5.0% on the overdue sum may be charged for the purpose of defraying the expense in handling such delinquent payment.

16.   The Mortgage further provides that in the event of default by the Mortgagor, plaintiff may recover all costs, including reasonable attorneys' fees, disbursements, and allowances provided by law in bringing any action to protect its interest in the premises.

17.   Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment after the date of commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action and any and all future defaulted payments under the aforesaid Note and Mortgage occurring prior to the discontinuance of this action are fully paid.

18.   That in order to protect its security, the plaintiff may be compelled during the pendency of this action to pay taxes, assessments, water, sewer charges, insurance premiums, and other charges for the protection of the premises, and the plaintiff requests that any sums so paid by it shall be added to the sum otherwise due herein and be deemed secured by the said Mortgage and adjudged a valid lien on the premises described herein.

19.   That the plaintiff is now and was at the commencement of the within action the sole, true and lawful owner of the said Note and Mortgage securing the same or has been delegated the authority to institute a mortgage foreclosure action against the homeowner by the owner and holder of the subject Mortgage and Note, and the within subject Mortgage complies with the underwriting standards in §6-m of the Banking Law, as well as the pre-foreclosure notice requirements, unless exempt from doing so; and that there are no pending proceedings at law or otherwise to collect or enforce said Note and Mortgage.

20.   Plaintiff has complied with all the provisions of Banking Law §§ 6-1 and 6-m; Real Property Actions and Proceedings Law § 1304.  A copy of the pre-foreclosure notices is annexed hereto as **Exhibit "E"**.

21.   Plaintiff has complied with RPAPL § 1306.

22.   That each of the defendants, including but not limited to the aforementioned defendants, have or claim to have some interest in, or lien upon, the said mortgaged premises or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of the plaintiff's Mortgage.

23.   Any lien held or claimed to be held by any of the defendants named herein is subject and subordinate to the lien of the plaintiff's Mortgage.

24.   That Schedules "1" and "2" are expressly incorporated and made a part of the Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein whenever reference has been made to each or any of them.

25.   That if the premises consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the parcels be sold as one parcel.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

A.  that the defendants and all persons claiming under them, or any of them, subsequent to the filing of the Notice of Pendency of this action and the recording of the mortgage in the Office of the Clerk of Dutchess County, the county in which said mortgaged premises are located, and every person whose conveyance or encumbrance is subsequent or subsequently recorded or subordinate, be forever barred or foreclosed of any and all right, title, claim, lien and equity of redemption of the said mortgaged premises and each and every part thereof;

B.  that the premises be sold according to law;

C.  that the amount due to plaintiff on its Note and Mortgage may be adjudged;

D.  that the monies received from the sale may be brought into Court;

E.  that plaintiff be paid the amount adjudged to be due it with interest thereon to the time of such payment, together with the costs and disbursements of this action, together with plaintiff's attorneys' fees, late charges, escrow advances and the expenses of said sale to the extent that the amount of such monies applicable thereto will pay the same;

F.  that this Court, if requested, forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties;

G.  unless the defendant has been discharged by the United States Bankruptcy Court for the underlying indebtedness owed to Plaintiff, that the defendant, Nicole Johnson, be adjudged to pay any deficiency which may remain after applying all of such monies as aforesaid in accordance with the law made and provided that plaintiff have execution therefore;

H.  plaintiff specifically reserves its rights to share in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the Mortgage being foreclosed herein.

    I.   that plaintiff have such other and further relief as may be just and equitable together

with the costs, allowances and disbursements of this action.

Dated:   Huntington, NY
          May 24, 2013                            Yours etc.,

                                          **STIENE & ASSOCIATES, P.C.,**

                                          By: Christopher Varga
                                        Attorneys for Plaintiff
                                          187 East Main Street
                                          Huntington, NY 11743
                                          (631) 935-1616, Fax (631) 935-1223

## Schedule 1-Defendants

Nicole Johnson
149 Wilkes Street
Beacon, NY 12508

Record owner and original mortgagor of premises being foreclosed herein by virtue of a deed dated 12/18/2006 and recorded on 3/3/2008 in the Dutchess County Clerk's Office, under Document No 02 2008 1356.

Peter Johnson
446 Main Street
Poughkeepsie, NY 12601

Holder of a lien against Nicole Johnson docketed on 10/22/2010 in the Dutchess County Clerk's Office in the amount of $12,550.00.

Mortgage Electronic Registration Systems, Inc. solely as nominee for Fremont Investment and Loan
4318 Miller Road
Flint , MI 12601

Holder of a mortgage inferior to that being foreclosed herein which mortgage was dated 12/18/2006, and recorded 3/3/2008 in the Dutchess County Clerk's Office under Document No 01 2008 2205 given to secure the amount of $65,720.00.

JOHN DOE AND JANE
DOE #1 through #7
149 Wilkes Street
Beacon, NY 12508

Said name being fictitious, it being the intention of plaintiff to designate any and all occupants of premises being foreclosed herein, and generally all persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint.

## Schedule 2-Defendants

**NONE.**



# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

December 18, 2006       BREA       CA   92821
[Date]       [City]       [State]

149 WILKES ST, Beacon, NY  12508

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 262,880.00       (this amount is called " Principal"), plus interest, to the order of the Lender. The Lender is Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.990 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on February 01, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,783.61 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index  - Single Family -Freddie Mac UNIFORM INSTRUMENT

-815N (0404)
®
VMP Mortgage Solutions (800)521-7291
Page 1 of 4       Initials:

Form 5520 3/04

Original Note & Riders

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  January, 2009                    , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposit in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 000/1000
                              percentage point(s) (              6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      10.990   % or less than
7.990      %.   Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than    1.500      from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than  13.990    % or less than    7.990    %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 5320 3/04
Initials:

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 5520 1/04
Initials:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

```
** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
```

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)         _____ (Seal)
NICOLE JOHNSON            -Borrower                                       -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                       -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                       -Borrower

_____ (Seal)         _____ (Seal)
                         -Borrower                                       -Borrower

*[Sign Original Only]*

Pay to the order of
without recourse.

Fremont Investment & Loan
Doug Pollock
Assistant Vice President

# PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 18th day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to:
Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:
149 WILKES ST, Beacon, NY  12508

(Property Address)

## BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so.  A prepayment of all of the unpaid principal is known as a "full prepayment."  A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment.  If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 1 Year ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note.  If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I may make full prepayment at any time.

| | |
|---|---|
| NICOLE JOHNSON          12/18/06 | |
| Date | Date |
| | |
| Date | Date |
| | |
| Date | Date |
| | |
| Date | Date |

MSPPY1 10/11/2005

# Balloon Payment Rider to Note
## (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE
ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL
UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON
PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN
AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT
OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING
TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY,
YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN
THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU
MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY
ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this 18th day of
December, 2006 , and is incorporated into and shall be deemed to amend and supplement the
Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of Fremont
Investment & Loan (the "Lender") and dated the same date as this Note Rider.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note,
Borrower and Lender further covenant and agree as follows:

1. **Payments**
   Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as
   follows:

   "3.   PAYMENTS
   (A)  **Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the first day of each month beginning on
   02/01/2007 . I will make these payments every month until I have paid all of the
   Principal and interest and any other charges described below that I may owe under this Note.
   Each monthly payment will be applied as of its scheduled due date and will be applied to
   interest before Principal. On January 01, 2037 (which is called the "Maturity
   Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued
   and unpaid interest and all charges due under this Note, in a single payment (the "Balloon
   Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity
   Date will be much larger than a regular monthly payment and that the Note Holder has no
   obligation to refinance the Balloon Payment.

   I will make my monthly payments at 2727 East Imperial Highway, Brea, CA
   92821 or at a different place if required by the Note Holder.

   (B)  **Amount of Monthly Payments**
   Each of my initial monthly payments will be in the amount of U.S. $ 1,783.61 . This
   amount may change.

   (C)  **Monthly Payment Changes**
   Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and
   in the interest rate that I must pay. The Note Holder will determine my new interest rate and
   the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A)  **Change Dates**
   The interest rate I will pay may change on the first day of January, 2009 , and may
   change on that day every sixth month thereafter. Each date on which my interest rate could
   change is called a "Change Date."

   (B)  **The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The
   "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of
   interbank offered rates for six-month U.S. dollar-denominated deposits in the London
   market, as published in The Wall Street Journal. The most recent Index figure available 45
   days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index and adjust the
   Margin described below. The Note Holder will give me notice of these changes.

BALARMN1  9/1/2005                       Page 1 of 3

(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 000/1000 percentage point(s) ( 6.000 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay my unpaid principal that I am expected to owe at the Change Date in full on 1/1/2057 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.990 % or less than 7.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 13.990 % and will never be less than 7.990 %.

(E) **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) **Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

2. **Uniform Secured Note**

Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

"11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

BALARMN2  9/1/2005

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. "

**3.    Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)
NICOLE JOHNSON                                  - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

[Sign Original Only]

BALARMN3  9/1/2005

B

## SCHEDULE A

### LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Beacon, Dutchess County, State of New York, known and designated as Lot 23, Block 5, on a certain map entitled "Map of lands of Lafayette Homesite Corporation in the City of Beacon, New York, dated October 8, 1953, made by Robert A. Monell, Surveyor, and filed at the County Clerk's Office of Dutchess County on October 14, 1953, as Map No. 2523.



## DUTCHESS COUNTY CLERK RECORDING PAGE

RECORD & RETURN TO:

```
FREMONT INVESTMENT & LOAN
PO BOX 34078
FULLERTON          CA 92834-4078
```

RECORDED: 03/03/2008

AT:            13:25:04

DOCUMENT #: 01 2008 2204

RECEIVED FROM:   FRONTIER

MORTGAGOR: JOHNSON NICOLE
MORTGAGEE: FREMONT INVESTMENT & LOAN

RECORDED IN:    MORTGAGE
INSTRUMENT TYPE:

TAX
DISTRICT: CITY OF BEACON

### EXAMINED AND CHARGED AS FOLLOWS:

RECORDING CHARGE:           96.00          NUMBER OF PAGES:  23

MORTGAGE AMOUNT:        262,880.00

MORTGAGE TYPE:      1-2 FAMILY RESIDENCE

| | | |
|---|---|---|
| COUNTY TAX: | 1,314.50 | *** DO NOT DETACH THIS |
| MTA TAX: | 758.70 | *** PAGE |
| SPECIAL ADDL TAX: | | *** THIS IS NOT A BILL |
| 1-6 FAMILY TAX: | 657.25 | |
| MORTGAGE TAX LOCAL: | 657.25 | |
| TOTAL TAX: | 3,387.70 | |

SERIAL NUMBER:      CY013201

AFFIDAVIT:          N

COUNTY CLERK BY: MDS /_____
RECEIPT NO:   R12784
BATCH RECORD: A00158

BRADFORD KENDALL
County Clerk

```
0120082204
```

NAT Doc# 0120082204 Page 1

3/15/2012 1:

Return To:
Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA 92834-34078

Prepared By:
Barbara Lycon

_____ [Space Above This Line For Recording Data] _____

## MORTGAGE MIN

### WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated December 18, 2006 together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower." NICOLE JOHNSON, a married woman

whose address is 149 WILKES ST Beacon, NY 12508

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

(D) "Lender." Fremont Investment & Loan

will be called "Lender." Lender is a corporation or association which exists under the laws of CALIFORNIA                        . Lender's address is 2727 East Imperial Highway, Brea, CA 92821

Section: 6055    Block: 77    Lot: 01/3072    Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

-6A(NY) (0505)
Page 1 of 17          Initial:
VMP Mortgage Solutions, Inc. (800)521-7291

**Schedule A Description**

Title Number LT14825

Page    1

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Beacon, Dutchess County, State of New York, known and designated as Lot 23, Block 5, on a certain map entitled "Map of lands of Lafayette Homesite Corporation in the City of Beacon, New York, dated October 8, 1953, made by Robert A. Monell, Surveyor, and filed at the County Clerk's Office of Dutchess County on October 14, 1953, as Map #2523.

Said premises being known as 149 Wilkes Street, Beacon, New York.

3/15/2012 1:

(E) "Note." The note signed by Borrower and dated December 18, 2006 , will be called the "Note." The Note shows that I owe Lender Two Hundred Sixty-Two Thousand Eight Hundred Eighty and 0/100ths

Dollars (U.S. $262,880.00                           )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by January 01, 2037

(F) "Property." The property that is described below in the section titled "Description of the Property." will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] V.A. Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

VMP®-6A(NY) (0006)                    Page 2 of 17               Initials: [signature]        Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 149 WILKES ST

Beacon                                             [City, Town or Village], New York 12508 [Zip Code].   [Street]
This Property is in Dutchess                                       County. It has the following legal
description: SEE ATTACHED EXHIBIT "A"

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

VMP-6A(NY) (0405)                          Page 2 of 17                          Form 3033  1/01

NAT Doc# 0120082204  Page 5

3/15/2012 1:

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

VMP®-6A(NY) (0506)                Page 4 of 17          Initials:          Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me; First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following Items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien."

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

-6A(NY) (0899)                    Page 6 of 17         Initials ___         Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these Items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

-6A(NY) (00402)                Page 6 of 17            Initials:            Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of these policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

-6A(NY) (0000)                    Page 7 of 17            Initials            Form 3033 1/01

3/16/2012 1:

that any repairs or restorations are being made. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligation.**

(a) **Maintenance and Protection of the Property.**
I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purpose. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**
Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

-6A(NY) (0005)                     Page 6 of 17                    Initials:            Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information). Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

-6A(NY) (0504)                    Page 9 of 17            Initials ___            Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.   Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

-6A(NY) [0805]                     Page 10 of 17        Initials _____        Form 3833 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12.  Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13.  Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

-6A(NY) (0404)                    Page 11 of 17            Initials _____        Form 3033 1/01

3/15/2012 11

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14.  **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15.  **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument (a) words of the masculine gender mean and include corresponding words of the feminine and neuter gender; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18.  **Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6A(NY) (0305)                    Page 12 of 17                    Initials:                    Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states that I must do this. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

-6A(NY) (0506)　　　　　　Page 13 of 17　　Initials:_____　　Form 3033 1/01

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

**-6A(NY)** (0505)                    Page 14 of 17        Initials:___        Form 3033 1/01

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for service rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

VMP®-6A(NY) (0809)                    Page 16 of 17          Initials _____          Form 3033  1/01

NAT Doc# 0120082204  Page 17                                                3/15/2012  T:

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                  NICOLE JOHNSON          -Borrower

_____          _____ (Seal)
                                                          -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
              -Borrower                                   -Borrower

-6A(NY) (0808)              Page 16 of 17              Form 3033 1/01

NAT Doc# 0120082204 Page 18                           3/15/2012 1:



Dutchess County Clerk Recording Page

Record & Return To :

BLUE TITLE SERVS LLC
30 W BROAD ST   STE 102
Rochester, NY 14614

Date Recorded :   03/08/2010
Time Recorded :        3:56:00

Document # : 01 2010 502A

Received From :      BLUE TITLE LLC

Mortgagor  : FREMONT INVESTMENT & LOAN
Mortgagee  : WELLS FARGO BANK NA

Recorded In :      Assignment of Mortgage
Original Mortgagor : JOHNSON NICOLE

Examined and Charged As Follows :

Recording Charge :              $50.50

Number of Pages : 2

08-2204

*** Do Not Detach This Page
*** This Is Not A Bill

County Clerk By :   .cha /_____
Receipt # :          R12087
Batch Record :       C60

Bradford Kendall
County Clerk

012010502A



Loan #
Min#

*ASSIGNMENT OF MORTGAGE*

**BLUE TITLE SERVICES, LLC**
30 W. BROAD ST., SUITE 102
OLD CITY HALL / IRVING PLACE
ROCHESTER, NY 14614

County of DUTCHESS, State of New York

Assignor: Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan, 2300 SW 34th Avenue Suite 101, Ocala, FL 34474

Assignee: Wells Fargo Bank N.A. as Trustee for the Certificateholders of Carrington Mortgage Loan Trust, Series 2007-FRE1 Asset-Backed Pass-Through Certificates, 3476 Stateview Boulevard , Ft. Mill, SC 29715

Original Lender: Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan

Mortgage made by NICOLE JOHNSON dated the 18th day of December, 2006 in the amount of Two hundred and sixty two thousand eight hundred and eighty dollars ($262,880.00) and interest recorded on the 3rd day of March, 2008 in the Office of the Clerk of the County of DUTCHESS at Certificate/Docket Number 01 2008-2204.

This said mortgage has not been otherwise assigned.

Property Address: 149 WILKES STREET, BEACON, NY 12508
SBL #6055-77-013072

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns, unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this 22 day of February , 2010 .

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan

BY:
Name: Starlene L. Starling
Title: Vice President

State of Ohio
County of Franklin
On the 22 day of February in the year 2010 before me, the undersigned, a notary public in and for said state, personally appeared Starlene L. Starling , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Ohio (insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)

Notary Public

Wenona S. Church
Notary Public, State of Ohio
My Commission Expires
09-26-12

NAT Doc# 012010502A Page 2                                          3/15/2012 t:

Loan No. ~~————~~
Borrower:  NICOLE JOHNSON

Data ID: 183

## LOAN MODIFICATION AGREEMENT

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

This Loan Modification Agreement ("Modification"), is entered into and effective August 26, 2008, between NICOLE JOHNSON ("Borrower", whether one or more), and EMC Mortgage Corporation ("EMC"), as servicer for Wells Fargo Bank N.A. as Trustee under the applicable agreement ("Lender") current holder of the Note and Mortgage/Deed of Trust/Security Instrument or Retail Installment Contract (collectively referred to as the "Loan Agreement") dated December 18, 2006, in the amount of $ 262,880.00, covering property located at 149 WILKES ST, BEACON, NEW YORK  12508 ("Property").

In consideration of the mutual promises and agreements exchanged, Borrower and Lender agree to amend and supplement the Loan Agreement as follows:

1. UNPAID PRINCIPAL BALANCE. As of August 26, 2008, the unpaid principal balance under the Loan Agreement is $ 262,501.63. Borrower agrees that additional amounts are owed for interest and expenses such as taxes, insurance premiums and other fees and costs totaling $ 17,261.59. This amount is added to the unpaid principal balance. The new unpaid principal balance is $ 279,763.22 ("Unpaid Principal Balance").

2. PROMISE TO PAY. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Borrower shall send the monthly payments described herein to EMC Mortgage Corporation, Post Office Box 660753, Dallas, TX 75266-0753, or at such other place as Lender or EMC may designate in writing.

3. TERM. The Note maturity date is January 1, 2037 ("Maturity Date"). If the Maturity Date is extended or reduced the Loan Agreement is likewise extended or reduced. If on January 1, 2037, Borrower still owes amounts under the Loan Agreement or this Modification, Borrower will pay these amounts in full on the Maturity Date.

4. INTEREST RATE AND PAYMENT AMOUNT. Interest will be charged on the Unpaid Principal Balance at the adjustable rate of 4.990% from August 1, 2008. Borrower promises to pay monthly payments of principal and interest in the amount of $ 1,278.02 (this figure does not include escrow), beginning September 1, 2008, and on the same day of each month thereafter.

The interest rate the Borrower will pay may change on July 1, 2013, (the Interest Change Date), and on that date every 6 months thereafter until the entire amount due and payable under the terms of the Loan Agreement and this Modification are paid in full.

The amount of Borrower's monthly payment will change on August 1, 2013 (the Payment Change Date), and on that date every 6 months thereafter. All other terms and provisions in the Loan Agreement providing for or relating to any change or adjustment in the rate of interest payable under the Loan Agreement remain in full force and effect unless stated otherwise below.

4.1 EXTENDED FIXED RATE PERIOD. Borrower acknowledges that the above Interest Change Date may represent an extended fixed rate period. Once the extended period expires, the interest rate and payment will return to the terms set forth in paragraph 4 above. The Lender will notify the Borrower of the payment amount prior to the date that the monthly payment will change.

5. ESCROW, TAXES, AND INSURANCE. Borrower will comply with all other covenants, agreements, terms, conditions, and requirements of the Loan Agreement, including, without limitation, the Borrower's covenants and agreements to make all payments of property taxes, insurance premiums, assessments, escrow items, impounds and all other payments that Borrower is obligated to pay under the terms of the Loan Agreement. In the event Borrower is not obligated under the terms of the Loan Agreement to make payments of property taxes, insurance premiums and/or escrow items, if applicable and in consideration for this Modification, Lender may require the Borrower to make additional monthly payments that include property taxes, insurance premiums and/or escrow items.

6. INTEREST ACCRUAL. If applicable, all terms and provisions of any reference to interest accrual methods commonly referred to as "daily simple interest" or "28 day interest" whether specified in the Loan Agreement or elsewhere, are cancelled. Borrower agrees that the interest accrual method is changed to the actuarial method of interest accrual.

7. ALL OTHER TERMS REMAIN UNCHANGED. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Agreement. Except as expressly provided in this Modification, the Loan Agreement will remain unchanged and Borrower and Lender will be bound by, and comply with, all of the terms and provisions of the Loan Agreement, as amended by this Modification.

(Page 1 of 2 Pages)

Loan No: ▓▓▓▓▓                                                    Data ID:  182

8.   MANUFACTURED HOMES.   For manufactured housing properties, Borrower agrees that the manufactured home has been affixed to the Property and will remain affixed throughout the term of the Loan Agreement and this Modification.  If your Loan Agreement does not include real property, the above statement does not apply.

9.   LOAN CHARGES.  Borrower understands that Lender may have charged fees to the Borrower for services performed in connection with Borrower's default, if applicable, protecting Lender's interest in the Property and/or rights under the Loan Agreement, including, but not limited to, attorneys' fees, property inspections and valuation fees.  Borrower understands and agrees that all or a portion of these fees may not be included in this Modification and remain due and owing by the Borrower.

**This Modification is in effect upon execution by Borrower.   If, however, corrections and/or amendments are needed for this Modification to correctly reflect the intent of all parties, Borrower agrees to sign documents evidencing the corrections and/or amendments and agrees to return the necessary document(s) to Lender or EMC in a timely manner.**

Date:  _SEPT 3, 2008_____

_____
NICOLE JOHNSON   —Borrower


EMC Mortgage Corporation, Servicing agent for Wells Fargo Bank N.A. as Trustee under the applicable agreement

By: _____
Its:  _VP_

Borrower:  NICOLE JOHNSON

## COMPLIANCE AGREEMENT

In consideration of Wells Fargo Bank N.A. as Trustee under the applicable agreement ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at
149 WILKES ST
BEACON, NEW YORK  12508                                                    (the "Closing"),
the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder.  Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: Sept 3, 2008

NICOLE JOHNSON —Borrower

Loan No.
Borrower:  NICOLE JOHNSON

Data ID: 183

# EMC℠
Mortgage Corporation

August 26, 2008

NICOLE JOHNSON
149 WILKES ST
BEACON, NY  12508

RE:   EMC Loan:
      Property Address:    149 WILKES ST
                           BEACON, NEW YORK  12508

Dear Borrower(s):

EMC Mortgage Corporation ("EMC") is pleased to enclose your modification agreement ("Agreement") modifying the terms of your note and mortgage.  Here are the details of your Agreement:

* The total amount due, in certified funds, to modify your loan is $.00 (see detail below).  Please note this Agreement will not be honored without receipt of these funds:

  Amount due in certified funds:

  | | |
  |---|---|
  | Recoverable Balance [3] | $1,233.90 |
  | Escrow Advance [1] | $406.70 |
  | Total Borrower Contribution | 1,640.60 |
  | Less Funds Held in Suspense | $1,640.60 |
  | Total Due from Borrower | $.00 |

* The Unpaid Principal Balance of your loan will be adjusted as follows:

  | | |
  |---|---|
  | Current Unpaid Principal Balance is | $262,501.63 |
  | Accrued Interest | $13,982.56 |
  | Escrow Advances [1] | $908.88 |
  | Required Escrow [2] | $2,370.15 |
  | Adjusted Unpaid Principal Balance | $279,763.22 |

* Your new due date, upon signing and returning this Agreement will be September 1, 2008.

* The new monthly principal and interest amount will be $1,278.02 plus escrow funds of $395.03 for a new total monthly payment amount of $1,673.05.  This amount is subject to change, however, if there is an increase or decrease in your taxes or insurance premiums or other escrow items.

* When EMC receives your signed Agreement and required certified funds on or before September 2, 2008, your next monthly payment in the amount of $1,673.05 will be due on September 1, 2008.

**Please review the Agreement, and if you agree with its terms, sign and date where indicated and return the ENTIRE modification agreement (all pages) in the enclosed express carrier envelope on or before September 2, 2008.  Retain the additional copy provided for your records.  EMC may withdraw this modification offer if the signed Agreement and required certified funds are not received by this date.**

Should you have any questions regarding this letter, the information present in it, or the Loan Modification Agreement, please feel free to contact EMC at 866-564-3529.

Sincerely,

Loan Workout Department

This is an attempt to collect a debt.  Any information obtained may be used for that purpose.

1.   Funds that EMC has advanced on your behalf to pay taxes and/or insurance premiums or other escrow items
2.   Funds needed to either establish or replenish your escrow account for future disbursements.
3.   These are servicing expenses and/or other fees (such as late fees or NSF fees) that have been assessed to your account.

800 State Highway, 121 Bypass
Lewisville, TX 75067-4180
MAILING ADDRESS: P.O. Box 660753, Dallas, TX 75266-0753

E

**Chase (FL5-7734)**
PO Box 44090
Jacksonville, FL 32231-4090



7190 1075 4460 1543 5536



November 29, 2012

00001715 HDL0 NC 33412 -BW011
NICOLE JOHNSON
149 WILKES ST
BEACON, NY 12508

**You Could Lose Your Home**
Account: ████████ (the "Loan")
Property Address:   149 WILKES ST
                            BEACON, NY 12508 (the "Property")

Dear NICOLE JOHNSON:

## YOU COULD LOSE YOUR HOME.   PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of November 29, 2012, your home loan is 1185 days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making the payment of $80,086.28 by December 29, 2012.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. Attached to this notice is a list of government-approved housing counseling agencies in your area which provide free or very low cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. If you wish, you may also contact us directly at 800-848-9380 and ask to discuss possible options.

While we cannot ensure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution. The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 877-226-5697 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Chase
800-848-9380
800-582-0542 TDD / Text Telephone
www.chase.com

Enclosure

- Housing Counseling Agencies-New York


CERTIFIED MAIL:  Return Receipt Requested and First Class Mail

**IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS**

If you are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law. SCRA and state Military benefits and protections also may be available if you are the dependent of an eligible Servicemember.

Eligible service may include:

- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or Military action, or
- Service with the National Guard of a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call Chase Military Services at 877-469-0110.

**AN IMPORTANT REMINDER FOR ALL OUR CUSTOMERS**

As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." Loan modification scams should be reported to PreventLoanScams.org, or by calling 888-995-HOPE; 888-995-4673. We offer loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at 866-550-5705 to discuss your options. The longer you delay, the fewer options you may have.

**We are a debt collector.**

**If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.**

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**

BW011



October 30, 2009



Nicole Johnson
149 Wilkes St
Beacon, NY 12508

## EMC
**Mortgage
Corporation**
Po Box 660753 Dallas, TX 75266-0753

Re: Loan No:
Property Address:    149 Wilkes St
Beacon, NY 12508

**Your house is your home. We want to keep it that way.**
**We need to talk - call 1-888-609-2379 today.**

You're going through tough times - we can help. In fact, we believe **your home may be eligible for a loan modification program** - we may be able to change the term of your loan, the interest rate, and maybe even the principal due date, to reduce the monthly payment to an amount you can afford.

**Call us today at 1-888-609-2379 so we can help you turn things around. We'll discuss your current situation (outlined in the enclosed letter) and the options available to you. But we cannot stress enough that the longer you delay calling us - the fewer chances you may have to keep your home.**

It will only take a few minutes on the phone - one of our Loan Specialists will work with you to determine the option that best fits your needs. There are several options available - **call us now** and let's see which one will work best for you.

We are committed to working with you to find a way to help you keep your home, **but you must call us immediately at 1-888-609-2379 - the longer you delay the fewer options you may have.**

Homeowner's Assistance Department
EMC Mortgage Corporation
**1-888-609-2379**
(800) 582-0542 TDD / Text Telephone

P.S.   The enclosed legal letter outlines, in detail, your current situation and the consequences that will occur unless we receive the required financial information from you and can approve you for a modification. Once you call us with the information needed, then we can work together to determine the option that will work best for you.  We cannot guarantee that you will be approved, but your only chance of saving your home is by contacting us immediately.  Please don't delay-call us now at **1-888-609-2379.**



**EMC**
**Mortgage**
**Corporation**

October 30, 2009

Nicole Johnson
149 Wilkes St
Beacon, NY 12508

Re:  Loan No:
     Property Address:   149 Wilkes St
                         Beacon, NY 12508

Dear Nicole Johnson:

You are hereby provided formal notice by the Servicer (EMC Mortgage Corporation), as authorized by the Creditor of the above-referenced home loan (hereinafter referred to as "the Debt") that you are in default under the terms and conditions of the Note and Security Instrument (i.e. Deed of Trust, Mortgage, etc.) for failure to pay the required installments when due, **and important data regarding that information is found in this document.**

This letter serves as further notice that EMC Mortgage Corporation intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirty-fifth (35th) day from the date of this letter which is 12/04/2009 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. If you received a bankruptcy discharge that included this debt, this notice is not intended and does not constitute an attempt to collect a debt against you personally. Notice provisions may be contained within your mortgage/deed of trust which notice may be required prior to foreclosure.

You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale.

As of **10/29/2009 the amount of the debt that we are seeking to collect is $3,099.20**, which includes the sum of payments that have come due on and after the date of default 09/01/2009, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection. In addition, any advances made by the Servicer to protect their lien position must be added to the total amount necessary to cure the default. Because of interest, late charges, and other charges or credits that may vary from day to day, or be assessed during the legal processing of this letter, the amount due on the day that you pay may be greater. Please contact EMC Mortgage Corporation at (888) 609-2379 on the day that you intend to pay for the full amount owed on your account. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

**IMPORTANT INFORMATION CONCERNING YOUR RIGHTS IS CONTAINED ON
PAGE TWO**

Page Two                                                                              0003729241

Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, your **11/01/2009** installment is still due on **11/01/2009** (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). In addition, any advances made by the Servicer to protect their lien position must be added to the total amount necessary to cure the default. Please disregard this notice if a payment sufficient to cure the default has already been sent.

**EMC Mortgage Corporation  is attempting to collect a debt, and any information obtained will be used for that purpose.**

A "CURE" or "Reinstatement Right" similar to that described in the prior paragraph may be available in many states. If, at any time, you make a written request not to be contacted by phone at your place of employment, we will not do so. If you voluntarily surrender possession of the collateral specified herein, you could still owe additional monies after the money received from the sale of the collateral is deducted from the total amount you owe. The originator of the Debt is UNITED COMPANIES.

EMC Mortgage Corporation would like you to be aware that if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD approved nonprofit organizations servicing your residential area.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by EMC Mortgage Corporation. EMC Mortgage Corporation requests that all payments be made in **certified funds, cashier's check or money order(s)** payable to and mailed to EMC Mortgage Corporation **at Po Box 660753 Dallas, TX 75266-0753.** You may contact **Issac Nunez** at **1-866-841-6355** should you have servicing questions regarding your account.

**An important reminder for all our customers: As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." EMC offers loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at 1-888-609-2433 to discuss your options. The longer you delay the fewer options you may have.**

The matters discussed herein are of extreme importance. We trust you will give them appropriate attention.
Very truly yours,
EMC Mortgage Corporation

An important message from the Federal Trade Commission



# A note to Homeowners

Facing foreclosure? Scammers are targeting people having trouble paying their mortgages. Some claim to be able to "rescue" homeowners from foreclosures, while others promise loan modifications -- for a fee. The **Federal Trade Commission**, the nation's consumer protection agency, wants you to know how to avoid scams that could make your housing situation go from bad to worse.

## Don't Get Hit by a Pitch.
*"We can stop your foreclosure!"*
*"97% success rate!"*
*"Guaranteed to save your home!"*
These kinds of claims are the tell-tale signs of a foreclosure rip-off. Steer clear of anyone who offers an easy out.

## Don't Pay for a Promise.
Don't pay any business, organization, or person who promises to prevent foreclosure or get you a new mortgage. These so-called "foreclosure rescue companies" claim they can help save your home, but they're out to make a quick buck. Some may request hefty fees in advance – and then stop returning your calls. Others may string you along before disclosing their charges. Cut off all dealings if someone insists on a fee.

## Send Payments Directly.
Some scammers offer to handle financial arrangements for you, but then just pocket your payment. Send your mortgage payments ONLY to your mortgage servicer.

## Don't Pay for a Second Opinion.
Have you applied for a loan modification and been turned down? Never pay for a "second opinion."

## Imitations = Frustrations.
Some con artists use names, phone numbers, and websites to make it look like they're part of the government. If you want to contact a government agency, type the web address directly into your browser and look up any address you aren't sure about. Use phone numbers listed on agency websites or in other reliable sources, like the Blue Pages in your phone directory. Don't click on links or open any attachments in unexpected emails.

## Talk to a HUD-Certified Counseling Agency - For Free.
If you're having trouble paying your mortgage or you've already gotten a delinquency notice, free help is a phone call away. Call **1-888-995-HOPE** for free personalized advice from housing counseling agencies certified by the U.S. Department of Housing and Urban Development (HUD). This national hotline – open 24/7 – is operated by the Homeownership Preservation Foundation, a nonprofit member of the HOPE NOW Alliance of mortgage industry members and HUD-certified counseling agencies. For free guidance online, visit **www.hopenow.com.** For free information on the President's plan to help homeowners, visit **www.makinghomeaffordable.gov.**



Federal Trade Commission
ftc.gov/MoneyMatters

Call

# 1-888-995-HOPE

for free personalized guidance from housing counseling agencies certified

by the U.S. Department of Housing and Urban Development. The

Homeowner's HOPE™ Hotline - open 24/7 - is operated by the

Homeownership Preservation Foundation, a nonprofit member of the

HOPE NOW Alliance of mortgage industry members and

HUD-certified counseling agencies. Or visit

# www.hopenow.com

For free information on the President's plan to help homeowners, visit

# www.makinghomeaffordable.gov





Index No:                                    Year 2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

---

WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CARRINGTON
MORTGAGE LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-THROUGH
CERTIFICATES,

                                                          Plaintiff,

— against —

NICOLE JOHNSON, ET AL.,

                                                          Defendants.

---

**SUMMONS AND COMPLAINT**

---

STIENE & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
*Office and Post Office Address, Telephone*
187 EAST MAIN STREET
HUNTINGTON, NY 11743
(631) 935-1616, FAX (631) 935-1223

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of*
*New York State, certifies that, upon information and belief and reasonable inquiry, the contentions*
*contained in the annexed document are not frivolous.*
*Dated:* May 24, 2013          *Signature* ...........................................................
                               *Print Signer's Name:* Christopher Virga

---

To:
Attorney(s) for
Service of a copy of the within document is hereby admitted.
Dated:
Attorney(s)                                                          for