# EXHIBIT 1

## (Part 1 of 2)

U.S. Department of Justice

United States Marshals Service

Southern District of New York



500 Pearl Street, Suite 400, New York, NY 10007

STATEMENT OF SERVICE BY MAIL AND ACKNOWLEDGMENT

OF RECEIPT BY MAIL OF SUMMONS AND COMPLAINT

A.    STATEMENT OF SERVICE BY MAIL

United States District Court

for the

Southern District of New York

Civil File Number 16 Civ. 9945

April 4, 2017

Nicole Johnson-Gellineau vs.

Stiene & Associates, P.C., et al.

TO:     Stiene & Associates, P.C.
        167 Main Street
        Northport, NY 11768

The enclosed summons and complaint are served pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure and section 312-a of the New York Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date, and complete the acknowledgment part of this form and mail or deliver this original completed form to the U.S. Marshals Service within 30 days from the date you receive this form. A self-addressed envelope has been included for your convenience. You should keep a copy for your records or for your attorney.

If you do not complete and return the form to the U.S. Marshals Service within 30 days, you (or the party on whose behalf you are being served) may be required to pay expenses incurred in serving the summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

The return of this statement and acknowledgment does not relieve you of the necessity to answer the complaint or petition.

Under a standing order of the Court, filed December 30, 2013, if a defendant or defendant's agent returns the acknowledgment form within 30 days of receipt, the defendant will have 60 days from the date the defendant or defendant's agent mails or delivers to the U.S. Marshals Service the completed Acknowledgment of Receipt of Service by Mail to file and serve an answer or other responsive pleading. If you wish to consult with an attorney, you should do so as soon as possible before the 60 days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgment

OVER>

CIVIL ACTION FILE NUMBER:   16 Civ. 9945

Nicole Johnson-Gellineau   vs.   Stiene & Associates, P.C., et al.


B.   ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR PETITION

I received a summons and complaint.  PLEASE CHECK ONE OF THE FOLLOWING;

IF 2 IS CHECKED, COMPLETE AS INDICATED:

     1.   _____ I am not in military service.

     2.   _____ I am in military service, and my rank, serial number and branch of service
are as follows:

Rank:_____
Serial Number:_____
Branch of Service:_____

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

     Date:_____
          (Date this acknowledgment is executed)

I affirm the above as true under penalty of perjury


_____
Signature


_____
Print Name


_____
Relationship to Entity/Authority to Receive Service
of Process (i.e., self, officer, attorney, etc.)


USMS OFFICIAL: DUSM ALLISON HONEYMAR



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE JOHNSON-GELLINEAU,

               Plaintiff,

           -against-

STIENE & ASSOCIATES, P.C., ET AL.,

               Defendants.

16-CV-9945 (UA)

ORDER GRANTING IFP APPLICATION

COLLEEN McMAHON, Chief United States District Judge:

     Leave to proceed in this Court without prepayment of fees is authorized. *See* 28 U.S.C.

§ 1915.

SO ORDERED.

Dated:   March 22, 2017
          New York, New York

                                                COLLEEN McMAHON
                           Chief United States District Judge

A TRUE COPY
RUBY J. KRAJICK, CLERK

BY_____
               Deputy Clerk

O 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

Nicole Johnson-Gellineau
*Plaintiff*

Civil Action No.: **16-CV-9945**
**JUDGE KARAS (KMK)**

v

Stiene & Associates, P.C., Christopher Virga, Esq.,
Ronni Ginsberg, Esq., JPMorgan Chase Bank National Association,
Wells Fargo Bank
*Defendant*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

See attachment for service addresses.

A lawsuit has been filed against you.

      Within 21 days after service of this summons on you (not counting the day you received it) or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or *(3)* you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff(s) attorney, whose name and address are:

    *PRO SE*    **NICOLE JOHNSON-GELLINEAU**
                  **149 WILKES STREET**
               **BEACON, NY 12508**

      If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J KRAJICK
*CLERK OF COURT*

Date: <u>March 31st, 2017</u>

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## DEFENDANTS AND SERVICE ADDRESSES

Stiene & Associates, P.C.
167 Main Street
Northport, NY 11768

Christopher Virga, Esq.
Berkman, Henock, Peterson, Peddy, and Fenchel
100 Garden City Plaza
Garden City, NY 11530-3203

Ronni Ginsberg, Esq.
Michael B. Schulman Associates, P.C.
225 Broadhollow Road
Suite 205E
Melville, NY 11747-4898

Wells Fargo Bank, NA
101 N. Phillips Avenue
Sioux Falls, SD 57104

JPMorgan Chase Bank, NA
270 Park Avenue
38th Floor
New York, NY 10017

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE JOHNSON-GELLINEAU ) | **16CV9945** |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| vs. ) | |
| ) | |
| STIENE & ASSOCIATES, P.C.; ) | **VERIFIED COMPLAINT** |
| ) | |
| CHRISTOPHER VIRGA, ESQ.; ) | **ENFORCEMENT ACTION** |
| ) | **CLAIM FOR DAMAGES** |
| RONNI GINSBERG, ESQ.; ) | |
| ) | **JURY DEMANDED** |
| JPMORGAN CHASE BANK, ) | |
| NATIONAL ASSOCIATION; ) | |
| ) | |
| WELLS FARGO BANK NATIONAL ) | |
| ASSOCIATION, AS TRUSTEE FOR ) | |
| CARRINGTON MORTGAGE LOAN ) | |
| TRUST, SERIES 2007-FRE1, ) | |
| ASSET-BACKED PASS-THROUGH ) | |
| CERTIFICATES; ) | |
| ) | |
| Defendants, ) | |
| ) | |

## JURISDICTION AND VENUE

1.     This is an action brought by an unrepresented, individual consumer pursuant to

15 U.S.C. § 1692k(d) *to enforce liability* of the Defendants for their violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. as amended; Congress granted

Plaintiff this private right of action in a primary enforcement role—as private attorney general—

to strictly enforce the provisions of the FDCPA according to its terms, and to enforce payment of

her actual damages assessed under 15 U.S.C. § 1692k(a)(1). See S. Rep. No. 95-382 p.5;

Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008) ("The FDCPA enlists the

1

efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

2.      Consumer-Plaintiff has standing under Article III of the Constitution of the United States, and does hereby invoke jurisdiction of the federal judicial district thereunder.

3.      This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331, and is brought by a consumer pursuant to 15 U.S.C. § 1692k which grants the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

4.      Venue lies properly in this federal judicial district pursuant to 28 U.S.C. §§ 112(b), 1391(b)(2), as Defendants conduct business within this district and the violative events took place in this federal judicial district.

## THE PARTIES

5.      Plaintiff, NICOLE JOHNSON-GELLINEAU, is a natural person having her place of abode located at 149 Wilkes Street, Beacon, New York 12508, and is at all times relevant to this action a "consumer" as that term is defined within 15 U.S.C. §§ 1692a(3) and the "creditor" defined in 15 U.S.C. § 1692a(4).

6.      Defendant STIENE & ASSOCIATES, P.C. ("Stiene firm"), according to the New York State Department of State Division of Corporations website, is a domestic professional corporation whose chief executive officer and principal executive office is located at 187 E Main Street, Huntington, NY 11743, and the current agent for service of process is the Department of State which will mail process if accepted on behalf of the entity to: STIENE & ASSOCIATES, P.C., 167 MAIN STREET, NORTHPORT, NEW YORK 11768.

7.    **Defendant CHRISTOPHER VIRGA, ESQ.** ("Mr. Virga"), according to Exhibit A signed by him, and his profile on zoominfo.com last updated on 11/12/2015, is at all times relevant an associate attorney at Stiene & Associates, P.C. and is the supervising associate attorney of the Firm's Judgments Department, handling all aspects of entering a final judgment of foreclosure and sale, including motion practice and Referee's hearings. According to the New York State Unified Court System website, Mr. Virga's present employment/work address is: Berkman, Henock, Peterson, Peddy, and Fenchel, 100 Garden City Plaza, Garden City, NY 11530-3203.

8.    **Defendant RONNI GINSBERG, ESQ.** aka Ronni J. Ginsberg, ("Ms. Ginsberg"), according to newsday.com as updated on September 27, 2016, "has been hired as a senior associate at Michael B. Schulman & Associates in Melville. She was an associate at Stiene & Associates in Huntington." Therefore, based on the Affirmation of Regularity of Ronni Ginsberg, Esq. in support of her motion for judgment of foreclosure and sale, **Exhibit B,** ¶ 1, Defendant Ms. Ginsberg at all times relevant is an Associate of the Defendant firm of STIENE & ASSOCIATES, P.C., attorneys for Wells Fargo, trustee. According to the New York State Unified Court System website, Ms. Ginsberg's present employment/work address is Michael B. Schulman & Associates, P.C., 225 Broadhollow Road, Suite 205E, Melville, NY 11747-4898.

9.    **Defendant WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-THROUGH CERTIFICATES** ("Wells Fargo") is a national banking association, and its articles of association designate Sioux Fall, South Dakota as the location of its main office, having its principal place of business at 101 N. Phillips Avenue, Sioux Falls, SD 57104 according to the FDIC website.

10.   Defendant **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION** ("Chase") is a national bank with its principal place of business located at 270 Park Avenue, 38th Floor, New York, NY 10017. According to the Affidavit of Gary Brunton, Vice President, JPMorgan Chase Bank, N.A., at ¶ 1, Chase is the loan servicer for Wells Fargo communicating said Affidavit in connection with collection of the debt which is part of the subject matter of this action.

11.   In summary, Defendants Stiene firm, Mr. Virga, and Ms. Ginsberg are the "Stiene Defendants" and Defendant Chase is a non-bank servicer, each one attempting to collect the debt for Defendant Wells Fargo, trustee.

12.   Defendants Chase and Wells Fargo are unrelated to the Stiene Defendants and each other by common ownership, and unaffiliated with the Stiene Defendants and each other by corporate control.

## FACTUAL CLAIMS

13.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

14.   On December 18, 2006, the Plaintiff had entered into a proposed consumer transaction (the "transaction") seeking to borrow $262,880.00 on her place of abode and intended and used primarily for personal, family, and household purposes; the debt ("debt"), defined within 15 U.S.C. § 1692a(5), arises from this transaction; Plaintiff's own credit was extended in the transaction to create the debt and Plaintiff *merely assumed the position of "borrower."* None of the Defendants offered or extended credit to Plaintiff creating a debt.

15.   Congress requires a creditor at the threshold of consumer debt collection activity. The Fair Debt Collection Practices Act ("FDCPA"), provides in relevant part:

§ 1692g. Validation of debts [Section 809 of Pub. Law]

4

> (a) Notice of debt; contents—Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> **(2) the name of the creditor *to whom the debt is owed*;**

15 U.S.C. § 1692g(a)(2) (emphasis added).

16.    The clear and unambiguous language of § 1692g(a)(2) requires "the name of the creditor to whom the debt is owed" be provided by each debt collector to the consumer subsequent to the initial communication unless contained in the initial communication. Congress defines "creditor" in the FDCPA itself:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4) (emphasis added).

17.    The Act excludes Wells Fargo and each of the Defendants from the definition of "creditor" because they are persons that received an assignment or transfer of the debt in default solely for the purpose of facilitating collection of such debt for another, or stand in the shoes of such person; with respect to the debt, they are debt collectors without a creditor.

18.    15 U.S.C. § 1692e broadly provides in relevant part:

> § 807. False or misleading representations
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

19.    Plaintiff brings this action against Defendants as to their direct and vicarious liability for their communications within the past year with Plaintiff and third parties in connection with an attempt to collect a consumer debt. The least sophisticated consumer would have known, after reading the entirety of those communications from each Defendant and

considering them together, that each Defendant sought to collect a debt on behalf of Wells Fargo, trustee, and believe that Wells Fargo was, therefore, the current creditor to whom she owed her debt. The problem for the Defendants is that Wells Fargo is not the creditor and there is no person named in the communications that qualifies under 15 U.S.C. §§ 1692g(a)(2) and 1692a(4) to be named as "the creditor to whom the debt is owed" in order to validate the debt. To this day, none of the Defendants' communications to Plaintiff and third parties have ever contained that most basic, material element required of a debt collector to show that the debt is valid.

  20.  Courts have held that a violation of § 1692g(a) is automatically a violation of § 1692e because it is a use of materially false, deceptive, or misleading representation or means in connection with the collection of any debt. In communications with Plaintiff and others, each Defendant held out none other than Wells Fargo as the person to whom the debt is owed. However, Congress specifically requires Wells Fargo be "the creditor" in order for Defendants to even send Plaintiff an initial communication in compliance with 15 U.S.C. § 1692g(a). The Consumer Financial Protection Bureau ("CFPB") has formally said that a consumer has the right to receive that notice, and its Director, Richard Cordray, has said,

> Collectors must do much more than they have done in the past to ensure they are following the law to its fullest measure. Consumers have the right to expect that they will be told the truth and treated fairly. Indeed, every consumer deserves that. So we will continue to take action to protect consumers from illegal and obnoxious debt collection practices.

(Prepared Remarks of CFPB Director Richard Cordray, September 9, 2015.)

    **Stiene Defendants' communications to Plaintiff and New York court**

  21.  On or about December 30, 2015, Plaintiff received via regular U.S. Mail a packet titled Notice of Hearing & Referee's Oath and Report ("Notice of Hearing") with a cover sheet,

6

dated December 24, 2015, from Stiene Defendants in connection with "foreclosure"[1] of Plaintiff's place of abode located at 149 Wilkes Street, Beacon, New York 12508. A copy of the Notice of Hearing, which includes an entire schedule of costs and fees, is attached as **Exhibit A**. The Notice of Hearing, signed by Mr. Virga, on behalf of Stiene & Associates, P.C., indicates that Stiene Defendants are attorneys for Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates ("Wells Fargo") as the plaintiff in a foreclosure action. Wells Fargo seeks to recover sums of money that are allegedly due and owing, the alleged debt arising from the transaction. See Exhibit A, Brunton Affidavit, ¶ 7.

22.      Mailing the Notice of Hearing was a step in the process of obtaining a money judgment and liquidation of Plaintiff's place of abode, and part of a strategy to make collection of a debt by way of foreclosure and sale more likely.

23.      At the time Plaintiff received the Notice of Hearing, Plaintiff was an unrepresented consumer in the foreclosure action and remains so.

---

[1] Plaintiff uses the term "foreclosure" but does not stipulate that the New York foreclosure action is foreclosure in fact because the Supreme Court of the State of New York, Dutchess County, is not "a judicial district or similar legal entity in which such real property is located" under § 1692i that requires a plaintiff be the creditor of the consumer defendant. Also Plaintiff's place of abode is not commercial real property located in Dutchess County but is property primarily acquired by her and used for her personal, family, or household purposes. New York law does not distinguish foreclosure against a consumer's personal property or require a current creditor of the consumer be involved. Plaintiff only conducts her communications, transactions, and has consumer goods for personal, family and household purposes. Plaintiff does not consent to her status being anything but that protected as a natural person/consumer pursuant to 15 U.S.C. 1692 et seq. as amended and Title 15 U.S.C. Defendants and the New York court incorrectly identify Plaintiff as being a person in commerce as a borrower, debtor, resident, a citizen of a county of , a STATE of , with intrastate real property and/or real estate within those entities. In doing so they have sought to strip Plaintiff of her interstate identity without her consent and authority and against her will and all her federally protected consumer rights and protections. Plaintiff has required that all debt collectors engaged in collecting this alleged debt obtain verification from the original creditor and provide Plaintiff the name of the current creditor to whom the debt is owed. To date this has not been done pursuant to law. Due to these debt collectors' violative conduct all proceedings and communications pursuant to law should have CEASED. Yet, these collectors continue to collect on an alleged, unverified debt. The sharing of Plaintiff's private information with all debt collectors and third-parties is without her consent and is unauthorized!

24.    The foreclosure had formerly been prosecuted by the law office of Stagg, Terenzi, Confusione & Wabnik, LLP ("Stagg"). On August 24, 2015, Plaintiff served a "Consumer Notice of Dispute of Debt 15 U.S.C. § 1692g" and subsequently Stagg filed a Consent to Change Attorneys to Defendant Stiene law firm.

25.    The Stiene Defendants are "subsequent" debt collectors to Stagg with respect to the debt.

26.    On January 12, 2016, within thirty days of receiving the Notice of Hearing, Plaintiff mailed Defendants Stiene firm, Mr. Virga, and Chase, via Certified Mail, Return Receipt Requested, a Consumer Notice of Dispute, attached as **Exhibit B,** disputing the entire debt, and requiring Defendants to cease and desist from collection efforts and communications under § 1692c(c) unless certain information is provided to Plaintiff, including among other things "the name of the creditor to whom the debt is owed." See Exhibit B.

27.    Thereafter, Chase responded to Plaintiff's January 12, 2016 Notice of Dispute with two non-responsive letters that use terms "investor," "owner," but not "creditor," attached as **Exhibit G.** The Stiene Defendants did not respond. Defendants did not validate or provide the information to which the Consumer-Plaintiff was entitled, including the name of the creditor to whom the debt is owed. Defendants failed to either cease debt collection activities or validate the debt with the most basic, material information initially required under § 1692g(a)(2). Instead, the Stiene Defendants subsequently applied for and obtained a Judgment of Foreclosure and Sale which Plaintiff has resisted;

28.    On March 17, 2016, Defendant Ms. Ginsberg mailed a communication, attached as **Exhibit C,** entitled a Notice of Motion, together with an Affirmation of Regularity in Support of Motion, to Plaintiff and the New York court requesting Judgment of Foreclosure and Sale.

29.    The Judgment, dated April 18, 2016, for the sum of $430,431.62 plus costs and fees, states that the judgment was granted to Wells Fargo upon the mentioned affirmation of Ms. Ginsberg, signed by her and dated March 17, 2016. See **Exhibit D**, Judgment of Foreclosure and Sale. Plaintiff has timely appealed to the Appellate Division. The Judgment is a manifestation of consumer debt covered by the FDCPA. See § 1692a(5), which provides (emphasis added):

> § 803. Definitions
> As used in this title—
> (5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, **whether or not such obligation has been reduced to judgment.**

30.    Defendant's Notice of Hearing and motions to the New York court and Referee are communications in connection with the collection of a debt, as defined within 15 U.S.C. § 1692a(2). Their actions in seeking to recover sums of money by judgment of foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA.

31.    Without a creditor, the Stiene Defendants cannot avoid the FDCPA's broad consumer protections for Plaintiff and strict liability for all the debt collector Defendants by communicating, as they did, in the form of misleading formal pleadings as a deceptive means to circumvent the requirements of § 1692g(a)(2). The communications from the Stiene Defendants are not exempted under 1692c and 1692e from coverage by the FDCPA.

### Chase's violative communications with Plaintiff and others

32.    Chase, as servicer for Wells Fargo, has been mailing monthly statements to Plaintiff within the past year showing a default date of 9/1/2009 attempted to collect the debt and threatening foreclosure. See e.g., monthly statements **Exhibits E and F.**

33.     Chase directed collection efforts of the Stiene Defendants and communicated the affidavit to the New York court through the Stiene Defendants on December 24, 2015. Chase did not have Plaintiff's prior consent given directly to Chase or any other Defendant, or the express permission of a court of competent jurisdiction to communicate about the Plaintiff's debt, nor was it reasonably necessary to effectuate a postjudgment remedy *without a creditor.*   The recipient New York court was not "a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b).

**Defendants are standing in the shoes of Wells Fargo, a debt collector.**

34.     At all times mentioned herein, each of the Defendants is a "debt collector" as that term is defined within 15 U.S.C. § 1692a(6) and *not* a "creditor" as defined within 15 U.S.C. § 1692a(4). No verification or evidence exists to validate that Defendants are acting for a creditor as defined in the Act. The FDCPA's definition of debt collector does not include any requirement that a debt collector be engaged in an activity by which it makes a demand for payment or even as part of an action designed to induce the debtor to pay. To be actionable under the FDCPA, a debt collector needs only to have used a prohibited practice "in connection with the collection of any debt" or in an "attempt to collect any debt."

35.     **Default.**   Plaintiff has made payments toward the transaction no later than October 2009 and, according to her knowledge and belief no payments have been made toward the transaction on her behalf and for her benefit as a consumer since the end of 2009. Significantly, Defendants represent that Plaintiff "failed to make the payment that was due for 9/1/2009 under the Loan Documents and has failed to make subsequent payments to bring the loan current, and the entire loan balance is now due and owing to [Wells Fargo, as trustee]." See Exhibit A, Affidavit of Gary Brunton dated 12-8-2015 at ¶ 6. And a notice of default, dated

10

10/30/2009, was alleged to have been sent on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan, to Plaintiff at her home. Id, at ¶ 8.

36.     Wells Fargo, as trustee, subsequent to said notice of default, received transfer of the debt on February 22, 2010 as evidenced by Assignment of Mortgage, and that Chase then became servicer for Wells Fargo, as trustee. See Exhibit A at "Schedule B" and Affidavit of Gary Brunton at ¶ 1.

37.     Each of the Defendants is a person who uses the mails in a business the principal purpose of which is to obtain payment or liquidation of debts, either by personal solicitation or legal proceedings, and principally or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

38.     Each of the Defendants' business is principally attempting to obtain payment on an alleged debt using instruments and instrumentalities of interstate commerce which used and resulted from Plaintiff's credit application using her federal Social Security Account Number. Thus each of the Defendants additionally uses instruments and instrumentalities of interstate commerce evidencing obligations of the United States of America in its business the principal purpose of which is to obtain payment or liquidation of debts, either by personal solicitation or legal proceedings, and principally or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

39.     Defendant Stiene firm, according to the New York State Unified Court System website, litigated the following number of civil actions in connection with the collection of any debt: 159 in 2007; 243 in 2008; 532 in 2009; 187 in 2010; 246 in 2011; 471 in 2012; 1,206 in 2013; 547 in 2014; 628 in 2015; and 77 in 2016.

40.     Defendant Stiene firm issued numerous communications in the above actions, and had personnel specifically assigned to work on debt collection activity.

41.     Each of the Defendants is collecting the debt for another person, namely the certificate holders in the case of Wells Fargo, as trustee, and Wells Fargo for the other Defendants, each of which aforementioned Defendants acquired assignment or transfer of the debt in default and treated the debt as if it were in default at the time of assignment or transfer.

42.     Wells Fargo is a "debt collector" as that term is defined within 15 U.S.C. § 1692a(6) and not a "creditor" as defined within 15 U.S.C. § 1692a(4). Wells Fargo is a person who principally or regularly engages in the purchase and collection of defaulted debts. By its name, Wells Fargo National Trust Company, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates is a special purpose vehicle which accepted alleged assignment of the *debt* in default for the sole purpose of facilitating collection for certificate holders, not as a bona fide trustee holding money or property for certificate holders. Wells Fargo "receive[ed] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." See exception to definition of "creditor," 15 U.S.C. §1692a(4). See Kinel v. Sherman Acquisition II LP, No. 05 Civ. 3456, 2006 WL 5157678, at *6-7 (S.D.N.Y. Feb. 28, 2006) (noting that "[c]ourts have expressly held that purchasers of defaulted debt are covered by the FDCPA, without regard to their level of collection activity.")

43.     Wells Fargo cannot be excluded from the definition of debt collector including those engaged in debt collection that "is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F)(i). Wells Fargo's acceptance of a defaulted

*debt*—for the sole purpose of collection for another—is central to its business, not merely incidental to a bona fide fiduciary duty managing *money or property* for another.

44.     Plaintiff did not enter into and does not have an escrow arrangement with Wells Fargo. Wells Fargo does not have a special relationship resulting from purported debt obtained in default; there is no resulting bona fide fiduciary duty involved; there is no resulting lien, perfected or unperfected.

45.     Wells Fargo retained the Stiene Defendants to represent it in the foreclosure. With respect to the debt, each of the Stiene Defendants stands in the shoes of a debt collector; they are attorneys acting on behalf of Wells Fargo, a client debt collector; there is no person or entity involved that is or qualifies as "the creditor to whom the debt is owed" under the FDCPA, and *Defendants cannot be categorized as neither.* See Lisa Bridge; William W. Bridge, III v. Ocwen Federal Bank; FSB; Ocwen Financial Corporation; Ocwen Loan, No. 09-4220 (6th Cir. 04/30/2012) (emphasis added):

> We note, as other circuits have, that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." FTC v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007) (citing Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003)); cf. Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003) (holding the definition of debt collector "does not include the consumer's creditors"). If an entity which acquires a debt and seeks to collect it cannot be both a creditor and a debt collector, can it be neither? We answer no. To allow such an entity to define itself out of either category would mean that the intended protection of the FDCPA is unavailable. Both the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly.
>
> The distinction between a creditor and a debt collector lies precisely in the language of § 1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.*fn4 The same is true of a loan servicer, which **can either stand in the shoes of a creditor or become a debt collector**, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106-8 (6th Cir. 1996); see also Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). This interpretation of the Act is supported by Congress's intent in passing it.

46.     **Attorney Abuse.**

The Fair Debt Collection Practices Act prohibits the use of abusive, deceptive, and unfair debt collection practices by persons engaged in the business of collecting debts owned by consumers to third parties. As enacted on September 20, 1977 (Public Law 95-109), the Act exempted 'any attorney collecting a debt as an attorney on behalf of and in the name of a client' from its provisions. Since passage of the Act, attorneys have increasingly entered the debt collection business and used the exemption to evade compliance with the Act. . . . The range of harm that befalls consumers as a result of the attorney exemption was outlined by a series of rhetorical questions posed by Mr. Walter R. Kurth, President of Associated Credit Bureaus while testifying before the Subcommittee: . . .

Is it good public policy not to require attorney collectors to provide an initial validation of debt notice?

Is it good public policy not to require lawyers attempting to collect debts to revalidate the debt and mail certification to the consumer while a non-lawyer collector must do so?

P.L. 99-361, House Report No. 99-405, Nov. 26, 1985. The 1986 amendment removed the exemption from the FDCPA and brought attorney collectors under the provisions of the Act, but the Stiene Defendants still evade compliance with the Act.

47.     In Janetos v. Fulton Friedman & Gullace, LLP, 15-1859 (7th Cir. 2016), Plaintiffs brought suit alleging that defendant had violated §§ 1692e, 1692e(10), and 1692g(a)(2) of the Act by failing to disclose the current creditor's name:

Portions of § 1692e are drafted in broad terms, prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process-that is, whether they represent the kind of conduct the Act was intended to eliminate.

For § 1692g(a)(2), however, that decision has been made for us. In enacting § 1692g(a)(2), Congress determined that a debt collector must include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show

14

such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough.

48.     Wells Fargo used Chase and the Stiene Defendants in order to shield itself from liability under the FDCPA. Wells Fargo exercised control or had the right to exercise control over the collection activities of Chase, and Wells Fargo and Chase each exercised control or had the right to exercise control over the collection activities of the Stiene Defendants.

49.     Wells Fargo, in placing Plaintiff's debt with Chase and the Stiene Defendants, and caused the Stiene Defendants to send communications to both the Plaintiff and the New York court, and caused Chase to send its monthly statements to Plaintiff, falsely communicating (or alternatively, failing to communicate) *the name of the creditor to whom the debt is owed* relating to Plaintiff's debt, all in violation of the FDCPA, specifically §§ 1692c and 1692e.

50.     An entity that is itself a "debt collector"—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf. In light of the principal-agent relationship between debt collector Wells Fargo and the other Defendants, and between Chase and the Stiene Defendants, Wells Fargo and Chase may be held vicariously liable for FDCPA violations arising out of the Stiene Defendants' communications to Plaintiff and the New York court on Wells Fargo's behalf, and amongst each other, whether or not Wells Fargo or Chase exercised direct control over them.

51.     Each of the Defendants was without the prior consent of the consumer given directly to them, and without the express permission of a court of competent jurisdiction, and *without a creditor* it was not reasonably necessary to effectuate a postjudgment judicial *remedy*, to communicate, in connection with the collection of any debt, with any person other than a

15

consumer, her attorney, a consumer reporting agency if otherwise permitted by law, the creditor,

the attorney of the creditor, or the attorney of the debt collector.

52.    The weight of authority is that mortgage foreclosure is debt collection under the

FDCPA. This is entitled to Chevron[2] deference:

> [T]he weight of authority [is] that foreclosure itself constitutes debt collection. See, e.g., Kaymark, 783 F.3d at 179, Glazer, 704 F.3d at 461. Whether the mortgage note holder can pursue further relief against the consumer for deficiencies after foreclosure does not alter the fact that the foreclosure process itself involves the collection of a debt under the FDCPA. See Piper, 396 F.3d at 236 ("if a collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA.") (quoting Piper v. Portnoff Law Associates, 274 F. Supp. 2d 681, 687 (E.D. Pa. 2003)).
> See also Romea v. Heiberger & Associates, 163 F.3d 111, 116 (2d Cir. 1998) (discussing that notice required under New York's in rem eviction procedure involved debt collection under the FDCPA. As Romea makes clear, "the fact that [a] letter also served as a prerequisite to commencement of the [eviction] process is wholly irrelevant to the requirements and applicability of the FDCPA." Id.; see also Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 234 (3d Cir. 2005) (rejecting argument that debt collector's conduct "cannot be found to be covered by the FDCPA because all it ever tried to do was enforce a lien in the manner dictated by [state law]").
> The Fifth Circuit has held that "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." Kaltenbach v. Richards, 464 F.3d 524, 528 (5th Cir. 2006).

Brief of Amicus Curiae Consumer Financial Protection Bureau, Ho v. Recontrust, No. 10-56884,

Ninth Circuit Court of Appeals.

53.    It is also the CFPB's position that, "As to a specific debt, one cannot be both a

'creditor' and a 'debt collector,' as defined in the FDCPA." Id. citing Bridge v. Ocwen, 6th Cir.

54.    The New York foreclosure proceedings have no preclusive effect on Plaintiff's

federal claim herein—which has never been adjudicated in any court—and which is an

independent cause of action subsequent to those proceedings. The FDCPA preempts state law to

---

[2] Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

the extent state law affords a consumer less protection than the FDCPA does. 15 U.S.C. § 1692n;

Const., Art XI, Clause 2. New York law does not distinguish a creditor from a debt collector

pursuing foreclosure against a consumer, and does not require a creditor, and therefore offers less

protection than would be consistent with federal law. New York has not received an exemption

under 15 U.S.C. § 1692o. State of Maine is presently the only state exempted from § 1692n.

## COUNT 1 – DEFENDANTS' VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

55.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth
at length herein.

56.     **Stiene Defendants violated 15 U.S.C. § 1692c(b)** by sending communications in
connection with the collection of the debt to the New York court (that is not a consumer, his
attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of
the creditor, or the attorney of the debt collector) without prior consent given directly to the
Stiene Defendants or express permission of a court of competent jurisdiction, nor as reasonably
necessary to effectuate a postjudgment judicial remedy without a creditor.

57.     **Chase violated 15 U.S.C. § 1692c(b)** by communicating through the Stiene
Defendants in connection with the collection of the debt (Affidavit of Gary Brunton, Exhibit A,
pp. 11-17) to the New York court on December 24, 2015 (that is not a consumer, his attorney, a
consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the
creditor, or the attorney of the debt collector) without prior consent given directly to the Chase or
Stiene Defendants or express permission of a court of competent jurisdiction, nor as reasonably
necessary to effectuate a postjudgment judicial remedy without a creditor.

58.     **All Defendants violated 15 U.S.C. § 1692e.** This is Defendants' overarching
violation. This suit is about debt collection without a creditor. Congress unequivocally requires

Wells Fargo be "the creditor to whom the debt is owed" in communications as well as in this Court in order for Defendants to even send Ms. Johnson-Gellineau an initial communication in compliance with 15 U.S.C. § 1692g(a)(2). In pursuing collection of the debt—the Defendants in communications with the New York court while attempting to evade the Plaintiff's right to the name of the creditor to whom the debt is owed, each Defendant violated 15 U.S.C. § 1692e—particularly but not exclusively § 1692e(10)—which imposes strict liability on debt collectors who "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." All their communications, whether monthly statements from Chase, whether an initial or subsequent ones, when viewed through the eyes of a least sophisticated consumer, are misleading representations and deceptive means. A claim arising under 15 U.S.C. § 1692g(a)(2) by alleging that Defendants failed to identify Plaintiffs' current creditors, Plaintiffs' allegations are also sufficient to state a claim against Defendants arising under 15 U.S.C. § 1692e. See Datiz, 2016 WL 4148330, at *12; Lee, 926 F.Supp.2d at 486-88; see also Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d 643, 666-67 (S.D.N.Y. 2006) ("The standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g."). Although Defendant argues that "the alleged act must, at a minimum, involve a misrepresentation that is material, " see Def.'s Mem. at 18-19, in Lee, the court held that, "even assuming, arguendo, that a deceptive statement must be material to violate Section 1692e, . . . failing to identify the creditor . . . was not immaterial as a matter of law." 926 F.Supp.2d at 488; see also Fritz v. Resurgent Capital Servs., LP, 955 F.Supp.2d 163, 170 (E.D.N.Y. 2013) ("[A] false representation of the owner of a debt could easily mislead the least sophisticated consumer as to the nature and legal status of the debt."). Based on requirement in § 1692g(a)(2) as to the communications of Wells Fargo and Chase, Plaintiff had the right to expect that Wells Fargo was

the creditor to whom the debt was owed and for whom all of the Defendants were collecting. The Stiene Defendants' communications when viewed together with Chase's communications, are false, misleading, and deceptive means in violation of § 1692e.

## CLAIM FOR DAMAGES

59.     Plaintiff claims actual damages. Since (1) receiving the Notice of Hearing by the Stiene Defendants, (2) disputing the debt requesting validation and verification of the debt with all the Defendants but not receiving such from any of the Defendants, and (3) the Stiene Defendants' subsequent communications in connection with Wells Fargo's continued efforts to collect the debt, Plaintiff has experienced embarrassment, loss of reputation, anxiety and loss of sleep worrying about what will happen to her, her marriage, her personal information, and her place of abode under judgment of being publicly sold because of Defendants' failing to give notice required by § 1692g(a) and then failing to cease collection efforts upon her timely dispute, all in the absence of "the name of the creditor to whom the debt is owed."

60.     Therefore, none of the Defendants' violative acts or omissions resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, or was in good faith in conformity with any advisory opinion of the Consumer Financial Protection Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason, 15 U.S.C. §§ 1692k(c), (e).

61.     Therefore, Plaintiff claims actual damages in the amount of $1,045,310.75 from the Defendant under § 1692k(a)(1) sustained by Plaintiff as a result of Defendant's failure to comply with a provision of the FDCPA.

62.     There is no creditor of Plaintiff to whom the debt is owed. If any one of the Defendants would have told Plaintiff that fact at the threshold of their collection activity instead

of sending misleading and deceptive communications, she could have defended against the foreclosure entirely differently and much sooner. The effect of Defendants' illegal actions and omissions mentioned above and communicating with Plaintiff and third parties in connection with foreclosure, is a direct and proximate cause of, as well as a substantial factor in, Plaintiff's embarrassment, anxiety, loss of sleep, and representation of her unpaid debt and foreclosure of her interest in her place of abode in the public record regardless of whether that representation is accurate in fact, for which each of the Stiene Defendants and Chase is directly liable, and Defendants Wells Fargo and Chase are each vicariously liable, to Plaintiff for $1,045,310.75 in assessed actual damages under § 1692k(a)(1), plus costs and fees under § 1692k(a)(3) in the event that Plaintiff retains Counsel admitted by the Court.

**Plaintiff's invoices for damages assessed under § 1692k(a)(1)**

63.     On April 30, 2016, Plaintiff assessed her damages under § 1692k(a)(1) and mailed via Certified Mail, Return Receipt Requested, the Stiene Defendants and Chase invoices for $1,045,310.75 for the reasons stated therein, attached as **Exhibit H**.

64.     On May 26, 2016, Plaintiff mailed via Certified Mail, Return Receipt Requested, the Stiene Defendants and Chase a Notice of Fault, attached as **Exhibit I**.

65.     On August 24, 2016, Plaintiff mailed via Certified Mail, Return Receipt Requested, the Stiene Defendants and Chase a Notice of Default, attached as **Exhibit J**.

66.     The invoices are past due and remain unpaid.

## DEMAND FOR JUDGMENT

WHEREFORE, pursuant to 15 U.S.C. § 1692k(a)(1), Plaintiff demands judgment be entered in Plaintiff's favor against each of the Defendants for $1,045,310.75.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508
Cell: 646-456-1151
nikkigelly@gmail.com

**VERIFICATION**

I, Nicole Johnson-Gellineau, having been first duly sworn, depose and state that I have

read the foregoing Verified Complaint, and that the information stated therein as factual is true to

my own personal knowledge, and those factual matters which are stated to be upon information

and belief are believed to be true.

_____
Nicole Johnson-Gellineau

Sworn to and subscribed before me this 23rd day of December, 2016

_____
Notary Public

TONIANN KILLMER
Notary Public, State of New York
No. 01KI6221635
Qualified in Dutchess County
Commission Expires May 10, 20__

22

# Exhibit A

Index No: 3344/13                                    Year 2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

---

WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CARRINGTON
MORTGAGE LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-THROUGH
CERTIFICATES,

                                                    Plaintiff,

—— against ——

NICOLE JOHNSON, ET AL.,

                                                    Defendants.

---

### NOTICE OF HEARING & REFEREE'S OATH & REPORT

---

STIENE & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
*Office and Post Office Address, Telephone*
187 EAST MAIN STREET
HUNTINGTON, NY 11743
(631) 935-1616, FAX (631) 935-1223

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of*
*New York State, certifies that, upon information and belief and reasonable inquiry, the contentions*
*contained in the annexed document are not frivolous.*
*Dated: December 24, 2015*          Signature.......................................
                                    *Print Signer's Name: Christopher Virga, Esq.*

---

To:

Attorney(s) for

---

Service of a copy of the within document is hereby admitted.

Dated:
Attorney(s)                                                    for

---

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

---

WELLS FARGO BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CARRINGTON MORTGAGE
LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED
PASS-THROUGH CERTIFICATES,

|                        |                        |
|------------------------|------------------------|
| Plaintiff,             | NOTICE OF REFEREE'S HEARING |
| — against —            | INDEX # 3344/13        |

NICOLE JOHNSON, PETER JOHNSON,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. SOLELY AS NOMINEE FOR
FREMONT INVESTMENT AND LOAN,

and JOHN DOE AND JANE DOE #1 through #7,
the last seven (7) names being fictitious and
unknown to the plaintiff, the persons or parties
intended being the tenants, occupants, persons
or parties, if any, having or claiming an interest
in or lien upon the mortgaged premises described
in the Verified Complaint,

Defendants.

---

PLEASE TAKE NOTICE that the matters herein referred to Todd W. Carpenter, Esq.,

by Order entered August 11, 2015, will be brought on for a hearing at the office of said Referee

located at 4 Library Street, Poughkeepsie, NY, on January 20, 2015. If you plan to attend this

hearing, written confirmation of same must be forwarded to the Referee at least two (2) business

days prior to the return date. If the Referee does not receive written confirmation prior to the

hearing date advising him that you will be attending the hearing, then the Referee will sign the

proposed Referee's Oath and Computation on the return date of the hearing.



Dated:   Huntington, NY
        December 24, 2015

Respectfully submitted,

STIENE & ASSOCIATES, P.C.,

By: Christopher Virga
Attorneys for Plaintiff
187 East Main Street
Huntington, NY  11743
(631) 935-1616

To:

Nicole Johnson
Defendant Pro Se
149 Wilkes Street
Beacon, NY 12508

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

WELLS FARGO BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CARRINGTON MORTGAGE
LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED
PASS-THROUGH CERTIFICATES,

                                    Plaintiff,          REFEREE'S OATH

                                                        INDEX # 3344/13

— against —

NICOLE JOHNSON, PETER JOHNSON,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. SOLELY AS NOMINEE FOR
FREMONT INVESTMENT AND LOAN,

and JOHN DOE AND JANE DOE #1 through #7,
the last seven (7) names being fictitious and
unknown to the plaintiff, the persons or parties
intended being the tenants, occupants, persons
or parties, if any, having or claiming an interest
in or lien upon the mortgaged premises described
in the Verified Complaint,

                                    Defendants.

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF DUTCHESS      )

        I, Todd W. Carpenter, Esq., the Referee, appointed by an Order of this Court, made and

entered in the above entitled action, and bearing date the 10 day of August, 2015, to ascertain and

compute the amount due to the plaintiff for principal, interest and other charges due upon the Note

and Mortgage upon which this action was brought, and to examine and report whether the

mortgaged premises can be sold in parcels, do solemnly swear that I will faithfully and fairly

determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as the said Order requires.

_____
Todd W. Carpenter, Esq.

Sworn to before me this
_____ day of _____, 2015

_____
Notary Public

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

---

WELLS FARGO BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CARRINGTON MORTGAGE
LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED
PASS-THROUGH CERTIFICATES,

                                       Plaintiff,

            —against—

NICOLE JOHNSON, PETER JOHNSON,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. SOLELY AS NOMINEE FOR
FREMONT INVESTMENT AND LOAN,

and JOHN DOE AND JANE DOE #1 through #7,
the last seven (7) names being fictitious and
unknown to the plaintiff, the persons or parties
intended being the tenants, occupants, persons
or parties, if any, having or claiming an interest
in or lien upon the mortgaged premises described
in the Verified Complaint,

                                Defendants.

**REFEREE'S REPORT OF
AMOUNT DUE**

INDEX # 3344/13

---

TO THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF DUTCHESS:

      In pursuance of an Order of this Court, dated August 10, 2015, whereby it was referred to the undersigned as Referee to ascertain and compute the amount due to the Plaintiff by virtue of the Note and Mortgage upon which this action was brought, and also to examine and report whether the mortgaged premises can be sold in parcels, I hereby report as follows:

    1.  I, Todd W. Carpenter, Esq., the Referee in the said Order named, do report, that before proceeding to hear the testimony I was first duly sworn to determine the questions referred to me, and to make a just and true report thereon, according to the best of my understanding; that I have computed

and ascertained the amount due to the Plaintiff upon the said Note and Mortgage and that I find, and accordingly report, that there is due to the Plaintiff on the said Note and Mortgage, as of December 5, 2015 (unless specified otherwise in Schedule A) the sum of $430,431.62.

2.   The aggregate amount due and payable to the Plaintiff as of December 5, 2015 (unless specified otherwise in Schedule A) and which remains unpaid on the Note and Mortgage is $430,431.62.  From December 6, 2015 to date of the closing of the title of the referee's sale of the mortgaged premises, the Plaintiff is entitled to recover accrued interest plus interest per diem as well as costs, including monies paid for taxes, late charges and other expenses related to the upkeep of the mortgaged premises.

3.   The annexed affidavit of Plaintiff shows the sums due to the Plaintiff for principal, interest, and other expenses due under the terms of the Note and Mortgage.

4.   Schedule A, hereunto annexed, contains a statement of computation, and shows the amounts due for principal, interest and other amounts now due the Plaintiff.

5.   Schedule B, hereunto annexed, contains a statement of exhibits including the Note and Mortgage which I find to be duly executed and correctly alleged as in the Complaint.

6.   I have made inquiry as to the advisability of selling the mortgaged premises in parcels, and find accordingly that the mortgaged premises should be sold in one parcel.


DATED: _____, 2015


_____
Todd W. Carpenter, Esq.
Referee

## SCHEDULE A

### STATEMENT OF COMPUTATION

| | |
|---|---|
| Principal Balance | $278,355.24 |
| Interest Due through 11/30/2015 | $108,150.05 |
| Pre-Acceleration Late Charges | $624.68 |

Escrow

| | | |
|---|---|---|
| Escrow Deficiency-Real Estate Taxes for the year 2015 | $6,280.11 | |
| Escrow Deficiency-Real Estate Taxes for the year 2014 | $6,111.84 | |
| Escrow Deficiency-Real Estate Taxes for the year 2013 | $5,309.30 | |
| Escrow Deficiency-Real Estate Taxes for prior years | $16,508.75 | |
| Hazard Insurance | $11,577.00 | |
| Mortgage Insurance Premium/ Private Mortgage Insurance | $0.00 | |
| Escrow Credits | $(3,121.25) | |
| Total Escrow | | $42,665.75 |
| Broker's Price Opinion/Appraisals | | $0.00 |
| Property Preservation | | $0.00 |
| Previous Bankruptcy Fees/Costs | | $0.00 |
| Property Inspections | | $635.90 |
| Suspense | | $0.00 |

Miscellaneous Charges/Credits as Follows          $0.00
                                                  $0.00
                                                  $0.00
                                                  $0.00
                                                  $0.00

**Total Due and owing as of December 5, 2015**            $430,431.62

_____

                                    Todd W.  Carpenter, Esq.

## SCHEDULE B

Note.................................................... Executed by Nicole Johnson, dated December 18, 2006, to secure payment in the sum of $262,880.00 with an initial adjustable interest rate of 7.990%.

Received and Marked Plaintiff's Exhibit A.

Mortgage............................................ Executed by Nicole Johnson, dated December 18, 2006, recorded on March 3, 2008 under Document No.: 01 2008 2204 in the Dutchess County Clerk's Office.

Received and Marked Plaintiff's Exhibit B.

Loan Modification .............................. Executed by Nicole Johnson, dated September 3, 2008, adjusting principal balance $279,763.22, with an initial adjustable interest rate of 4.990%.

Received and Marked Plaintiff's Exhibit C.

Assignments......................................... The Note and Mortgage were tendered and transferred to the Plaintiff. There is an Assignment of Mortgage, recorded on March 8, 2010 under Document No.: 01 2010 502A in the Dutchess County Clerk's Office.

Received and Marked Plaintiff's Exhibit D.

IN THE SUPREME COURT OF DUTCHESS COUNTY, NEW YORK

---

|  |  |
|---|---|
| Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates,<br>Plaintiff,<br>vs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| NICOLE JOHNSON, PETER JOHNSON ; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR FREMONT INVESTMENT AND LOAN,<br>Defendant(s) |  |

INDEX NO. 3344/13

Property Address:
149 WILKES ST, BEACON, NY  12508
Block  Lot

STATE OF OHIO            )
                                       ) SS
FRANKLIN COUNTY     )

## AFFIDAVIT

Borrower: JOHNSON, NICOLE
Property Address:  149 WILKES ST, BEACON, NY 12508
County: DUTCHESS
Loan Number: XXXXXX6407

v.1.0

1 of 2

1.      I am a Vice President of JPMorgan Chase Bank, National Association ("Chase"), and I am authorized to make this affidavit on behalf of Chase.  Chase is the loan servicer for the Plaintiff in this action.

2.      I make this affidavit based on my review of Chase's business records, as more fully described below in paragraph 4. I am over the age of 18 and competent to testify as to the matters contained in this affidavit.

3.      A note dated 12/18/2006, in the original principal amount of $ 262,880.00 (the "Note") was signed by or on behalf of JOHNSON, NICOLE ("Borrower"), and was secured by a mortgage on a property located at 149 WILKES ST, BEACON, NY  12508 (the "Mortgage").  The Note and Mortgage, and if shown and selected below, any Loan Modification Agreements are collectively referred to as the "Loan Documents."

        X   The loan was modified by a Loan Modification Agreement (loss mitigation) with a first modified payment due on 09/01/2008.

4.      As a mortgage servicer, Chase collects payments from Borrower and maintains up-to-date electronic records concerning the loans it services in its electronic record-keeping system. I have access to the business records of Chase, including the business records for and relating to the Borrower's loan. I make this affidavit based upon my review of those records relating to the loan and from my own personal knowledge of how they are kept and maintained. The loan records are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. Chase's records that relate to the loan that I reviewed and relied upon for the statements made in this Affidavit include images of the Note, Chase's electronic servicing system, and images of correspondence to the borrower.

5.      Plaintiff, directly or through its agent, is in possession of the original Note and was in possession at the time of filing the Complaint, a true and correct copy of the Note is attached to the Affidavit.

6.      Borrower failed to make the payment that was due for 9/1/2009 under the Loan Documents and has failed to make subsequent payments to bring the loan current, and the entire loan balance is now due and owing to Plaintiff.

7.      As of 12/5/2015  (unless specified otherwise below), Plaintiff seeks to recover the following itemized sums of money that are due and owing under the Loan Documents, exclusive of attorney's fees and costs in this action:

Borrower: JOHNSON, NICOLE
Property Address: 149 WILKES ST, BEACON, NY  12508
County: DUTCHESS
Loan Number: XXXXXX6407

| | | |
|---|---|---|
| Principal Balance | $ | 278,355.24 |
| Interest Due through 11/30/2015 | $ | 108,150.05 |
| Pre-Acceleration Late Charges | $ | 624.68 |
| Escrow<br>Escrow Deficiency-Real Estate<br>Taxes for the year2015 | $ | 6,280.11 |
| Escrow Deficiency-Real Estate<br>Taxes for the year 2014 | $ | 6,111.84 |
| Escrow Deficiency-Real Estate<br>Taxes for the year 2013 | $ | 5,309.30 |
| Previous Escrow Deficiency<br>Real Estate Taxes (cumulative) | $ | 16,508.75 |
| Hazard Insurance | $ | 11,577.00 |
| Mortgage Insurance Premium /<br>Private Mortgage Insurance | $ | 0.00 |
| Escrow Credits | $ | (3,121.25) |
| Total Escrow | $ | 42,665.75 |
| Broker's Price Opinion/Appraisals | $ | 0.00 |
| Property Preservation | $ | 0.00 |
| Previous Bankruptcy Fees/Costs | $ | 0.00 |
| Property Inspection Fees | $ | 635.90 |
| Suspense | $ | 0.00 |
| Miscellaneous Charges/Credits as Follows: | | |
| | $ | 0.00 |
| | $ | 0.00 |
| | $ | 0.00 |
| | $ | 0.00 |
| | $ | 0.00 |

Borrower: JOHNSON, NICOLE
Property Address: 149 WILKES ST, BEACON, NY  12508
County: DUTCHESS
Loan Number: XXXXXX6407

|  |  |  |
|---|---|---|
| TOTAL | $ | 430,431.62 |

Interest will continue to accrue in accordance with the terms of the Loan Documents.

The loan has a variable rate of interest.

Additional escrow advances and/or fees for inspections, property preservations or otherwise to protect the property may be incurred after the date of this affidavit.

8.   My review of records maintained by Chase reveals that a notice of default, dated 10/30/2009, was sent to the Borrower at the last known address provided by Borrower, which is: 149 Wilkes Street, Beacon, NY 12508.

9.  My review of records maintained by Chase reveals the following regarding the sending of the ninety (90) day pre-foreclosure notice ("PFN"):
A PFN dated 11/29/2012 attached as Exhibit A, was sent to JOHNSON, NICOLE  at the address of the property secured by the Mortgage, and to the last known address, which is 149 Wilkes Street, Beacon, NY 12508, by certified and first class mail.

For each of the PFN attached, the text of the 90 Day Notice is typed in fourteen (14) point font.

BY: _Gary Brunton_
Name: _Gary Brunton_
Date: _12-8-2015_
Title: Vice President, JPMorgan Chase Bank, N.A.

Subscribed and sworn to before me in said County
this _8_ day of _December_, 2015
By _Gary Brunton_
_Caitin Munyan_
Notary Public            Caitin Marquardt
State of OHIO
County of FRANKLIN
My Commission expires: _08/10, 2019_
Personally Known _X_ OR Produced Identification _____
Type of identification produced: _____

CAITIN MARQUARDT
Notary Public, State of Ohio
My Commission Expires 08-10-2019

NOTARIAL SEAL
STATE OF OHIO

Borrower: JOHNSON, NICOLE
Property Address: 149 WILKES ST, BEACON, NY  12508
County: DUTCHESS
Loan Number: XXXXXX6407

v 16

4 of 5

TO BE COMPLETED, IN ADDITION TO JURAT (ABOVE), IF EXECUTING OUTSIDE OF
NEW YORK STATE

STATE OF _____Ohio_____ )
) ss
COUNTY OF _____Franklin_____ )

On the __8__ day of __Dec__ in the year 20 __15__ before me, the undersigned, a
Notary Public in and for said State, personally appeared _____Gary Brunton_____
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to
me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s) or the person upon behalf of which the
individual(s) acted, executed the instrument, and that such individual made such appearance
before the undersigned in _____Gahanna_____ [Insert the city or other
political subdivision and the state or county or other place the acknowledgment was taken].

Personally Known __X__ OR
Produced Identification ____
Type of Identification Produced: _____
Notary Public _Caitin Marquardt_
                Caitin Marquardt

CAITIN MARQUARDT
Notary Public, State of Ohio
My Commission Expires 08-10-2019

CERTIFICATE OF CONFORMITY

I,   ANGELA KIRK  , certify as follows:

1.    I am an attorney duly licensed to practice law in the State of Ohio.

2.    The annexed Affidavit, which was signed by Gary Brunton and dated DECEMBER 8, 2015, was signed in a manner which was and is in accordance with, and conforms to, the laws for taking oaths and acknowledgments in the State of Ohio.

Dated: **12/08/2015**

_____
ANGELA KIRK

Borrower Last Name: JOHNSON
Last 4 Digits of Loan Number: 6407



# ADJUSTABLE RATE NOTE
(6-Month LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

December 18, 2006                     BREA                          CA   92821
[Date]                                [City]                        [State]

149 WILKES ST, Beacon, NY  12508

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 262,880.00          (this amount is called " Principal"), plus interest, to the order of the Lender. The Lender is  Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of            7.990 %.  The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS  ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF ***
    **(A) Time and Place of Payments**
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the first day of each month beginning on  February 01, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  January 01, 2037                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at  2727 East Imperial Highway, Brea, CA  92821

or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. $ 1,783.61              . This amount may change.

    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index  - Single Family -Freddie Mac UNIFORM INSTRUMENT

815 N (0404)                    Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                      Initials:

Original Note & Riders

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of January, 2009 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 000/1000 percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.990 % or less than 7.990 %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than 1.500 from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than 13.990 % or less than 7.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF ***

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.  BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        %
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all
the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.

(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,
the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

8.  GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class
mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that
different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is
also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to
pay all of the amounts owed under this Note.

10. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this
Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full
of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 3820 1/04

815H (0404)                                              Page 3 of 4                                                  Initials:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

\*\* SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF \*\*
\*\* SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF \*\*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
NICOLE JOHNSON                   -Borrower                                        -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower

*[Sign Original Only]*

Pay to the order of

without recourse.

Fremont Investment & Loan
Doug Pollock
Assistant Vice President

# PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 18th day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to:

Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:

149 WILKES ST, Beacon, NY  12508

(Property Address)

## BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 1 Year ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time.

_NICOLE JOHNSON_                12-18-06 _____
NICOLE JOHNSON          Date                                Date

_____  _____        _____
                         Date                                Date

_____  _____        _____
                         Date                                Date

                                          _____
                                                             Date

MSPPY1 10/11/2005

# Balloon Payment Rider to Note
## (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this 18th day of December, 2006 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of Fremont Investment & Loan (the "Lender") and dated the same date as this Note Rider.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1. **Payments**

Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as follows:

"3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on 02/01/2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to Interest before Principal. On January 01, 2037 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,783.61 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of January, 2009 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX  and  000/1000  percentage point(s) ( 6.000 %) (the "Margin") to the Current
Index.  The Note Holder will then round the result of this addition to the nearest one-eighth
of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this
rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be
sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full
on  1/1/2067  at my new interest rate in substantially equal payments.  The result of this
calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than
10.990 % or less than 7.990 %.  Thereafter, my interest rate will never be increased or
decreased on any single Change Date by more than  One  and  500/1000  percentage
point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six
months.  In any event, my interest rate will never be greater than 13.990 % and will never
be less than 7.990 %.

(E)  Effective Date of Changes
My new interest rate will become effective on each Change Date.  I will pay the amount of
my new monthly payment beginning on the first monthly payment date after the Change
Date until the amount of my monthly payment changes again.

(F)  Notice of Changes
The Note Holder will deliver or mail to me such notice of any changes in my interest rate
and monthly payment as may be required by law.  The notice will include information
required by law to be given to me and also the title and telephone number of a person who
will answer any question I may have regarding the notice."

2.    Uniform Secured Note
Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

"11.  UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the
protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from
possible losses which might result if I do not keep the promises which I make in this Note.  That
Security Instrument describes how and under what conditions I may be required to make
immediate payment in full of all amounts I owe under this Note.  Some of those conditions are
described as follows:

(A)  UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED
IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY
INSTRUMENT IS DESCRIBED AS FOLLOWS:
Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property,
including, but not limited to, those beneficial interests transferred in a bond for deed,
contract for deed, installment sales contract or escrow agreement, the intent of which is the
transfer of title by Borrower at a future date to a purchaser.
If all or any part of the Property or any Interest in the Property is sold or transferred (or if
Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument.  However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The
notice shall provide a period of not less than 30 days from the date the notice is given in
accordance with Section 15 within which Borrower must pay all sums secured by this
Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this
period, Lender may invoke any remedies permitted by this Security Instrument without
further notice or demand on Borrower.

(B)  AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED
IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY
INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO
BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY
INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:
Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property,
including, but not limited to, those beneficial interests transferred in a bond for deed,

BALARM2NJ  9/1/2005

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**3.    Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)
NICOLE JOHNSON                   - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

[Sign Original Only]

BALARIAN3  9/3/2005



### DUTCHESS COUNTY CLERK RECORDING PAGE

RECORD & RETURN TO:

FREMONT INVESTMENT & LOAN
PO BOX 34078
FULLERTON          CA 92834-4078

RECORDED: 03/03/2008
AT:              13:25:04
DOCUMENT #: 01 2008 2204

RECEIVED FROM:   FRONTIER

MORTGAGOR: JOHNSON NICOLE
MORTGAGEE: FREMONT INVESTMENT & LOAN

RECORDED IN:   MORTGAGE
INSTRUMENT TYPE:                          TAX
                                          DISTRICT: CITY OF BEACON

EXAMINED AND CHARGED AS FOLLOWS:

| | | |
|---|---|---|
| RECORDING CHARGE: | 96.00 | NUMBER OF PAGES:  23 |
| MORTGAGE AMOUNT: | 262,000.00 | |
| MORTGAGE TYPE: | 1-2 FAMILY RESIDENCE | |
| COUNTY TAX: | 3,914.50 | *** DO NOT DETACH THIS |
| MTA TAX: | 758.70 | *** PAGE |
| SPECIAL ADDL TAX: | | *** THIS IS NOT A BILL |
| 1-6 FAMILY TAX: | 657.25 | |
| MORTGAGE TAX LOCAL: | 657.25 | |
| TOTAL TAX: | 3,987.70 | |
| SERIAL NUMBER: | CY013201 | |
| AFFIDAVIT: | N | |

COUNTY CLERK BY: MDB / _____
RECEIPT NO: R12784
BATCH RECORD: A00158



BRADFORD KENDALL
County Clerk

Return To:
Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA 02834-34078

Prepared By:
Barbara Lieon

[Space Above This Line For Recording Data]

## MORTGAGE

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated December 18, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." NICOLE JOHNSON, a married woman

whose address is 149 WILKES ST Beacon, NY 12508

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." Fremont Investment & Loan

will be called "Lender." Lender is a corporation or association which exists under the laws of
CALIFORNIA
                                 . Lender's address is 2727 East Imperial
Highway, Brea, CA 92821

Section    6055    Block:    77    Lot: 01307   Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3033 1/01

[illegible barcode]

Schedule A Description

Title Number LT14025                                              Page  1

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the City of Beacon,
Dutchess County, State of New York, known and designated as Lot 23, Block 5,
on a certain map entitled "Map of lands of Lafayette Homesite Corporation in the
City of Beacon, New York, dated October 8, 1953, made by Robert A. Monell,
Surveyor, and filed at the County Clerk's Office of Dutchess County on October
14, 1953, as Map #2523.

Said premises being known as 149 Wilkes Street, Beacon, New York.

NAT  Doc# 0135083304  Page 9                                    3/16/2012  1:

(E) "Note." The note signed by Borrower and dated  December  16,  2005      , will be called the "Note." The Note shows that I owe Lender Two  Hundred  Sixty-Two  Thousand  Eight-Hundred  Eighty and 0/100ths

Dollars (U.S. $262,880.00                )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by January  01,  2037      .
(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☒ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card with a magnetic strip is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by condemn domain is known as "Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment." The regularly scheduled amount due for: (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NYAT-6 (NY) (0303)                    Page 2 of 17                    Form 3033  1/01

NYAT-Doc#-61Z0002904 Page 4                                        3/16/2012 4

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 149 WILKES ST
                                        [Street]
Beacon                      [City, Town or Village], New York  12508 [Zip Code].
This Property is in  Dutchess                    County. It has the following legal
description: SEE ATTACHED EXHIBIT "A"

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

NY-SINGLE FAMILY    1A(NY) (1004)                 Page 2 of 13                 Form 3733  3/01

(ii) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsection (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments at the time it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payment to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

NY -6A(NY) (1401)                    Page 6 of 17                    Form 3033 1/01

NYT Doc# 6726852706  Page 6

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments, or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents, and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien";

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

NAY Docs# 0120082364 Page 7

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA, or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount, and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when they payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligations to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

FANNIE MAE/FREDDIE MAC ... Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amount (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

NY8-SINGLE FAMILY (11/07)     Page 7 of 17     Form 3833 1/01

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing, or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.
I will not destroy, damage or harm the Property and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.
Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect Its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for the Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11.** Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

-5A(NY) (0005) Page 13 of 17 Initials: Form 3033 1/01

HAY Doc# 01200E2201 Page 13 3/12/2013

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument by writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

NY SINGLE FAMILY [Initials]                                     Page 10 of 17                              [Initials]                              Form 3033 1/01

NAT [Initials] 0173003304 Page 10                                                                                                                   3/15/2012 4:

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have the right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Laws." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release, of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreement about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                  NICOLE JOHNSON              -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                       -Borrower

Form 3033 1/01

Loan No. 
Borrower: No. \_\_ JOHNSON

Date _____

## LOAN MODIFICATION AGREEMENT

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

This Loan Modification Agreement ("Modification"), is entered into and effective August 26, 2008, between NICOLE JOHNSON ("Borrower", whether one or more), and EMC Mortgage Corporation ("EMC") as Lender for Wells Fargo Bank N.A. as Trustee under the applicable agreement ("Lender") current holder of the Note and Mortgage/Deed of Trust/Security Instrument of Retail Installment Contract (collectively referred to as the "Loan Agreement") dated December 18, 2006, in the amount of $ 242,583.00, covering property located at 10 WILKES ST, BEACON, NEW YORK 12524 ("Property").

In consideration of the mutual promises and agreements exchanged, Borrower and Lender agree to amend and supplement the Loan Agreement as follows:

1.  UNPAID PRINCIPAL BALANCE.  As of August 16, 2008, the unpaid principal balance under the Loan Agreement is $ 262,581.01.  Borrower agrees that additional amounts are owed for interest and expenses such as taxes, insurance premiums and other fees and costs totaling $ 17,164.19.  This amount is added to the unpaid principal balance.  The new unpaid principal balance is $ 279,763.22 ("Unpaid Principal Balance").

2.  PROMISE TO PAY.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.  Borrower shall send the monthly payments indicated herein to EMC Mortgage Corporation, Post Office Box 660753, Dallas, TX  75266-0753, or at such other place as Lender or EMC may designate in writing.

3.  TERM.  The Note maturity date is January 1, 2037 ("Maturity Date").  If the Maturity Date is extended or reduced the Loan Agreement is likewise extended or reduced.  If on January 1, 2037, Borrower still owes amounts under the Loan Agreement or this Modification, Borrower will pay these amounts in full on the Maturity Date.

4.  INTEREST RATE AND PAYMENT AMOUNT.  Interest will be charged on the Unpaid Principal Balance at the adjusted rate of 6.000% from August 1, 2008.  Borrower promises to pay monthly payments of principal and interest in the amount of $ 1,378.03 (this figure does not include escrow), beginning September 1, 2008, and on the same day of each month thereafter.

The interest rate the Borrower will pay may change on July 1, 2017, (the Interest Change Date), and on that date every 6 months thereafter until the entire amount due and payable under this terms of the Loan Agreement and this Modification, are paid in full.

The amount of Borrower's monthly payment will change on August 1, 2015 (the Payment Change Date), and on that date every 6 months thereafter.  All other terms and provisions in the Loan Agreement providing for or relating to any change or adjustment in the rate of interest payable under the Loan Agreement remain in full force and effect except unless stated otherwise below.

5.  EXTENDED FIXED RATE PERIOD.  Borrower acknowledges that the above Interest Change Date may represent an extended fixed rate period.  Once the extended period begins, the interest rate and payment will return to the terms set forth in paragraph 4 above.  The Lender will notify the Borrower of the payment amount prior to the date that the monthly payment will change.

6.  ESCROW, TAXES, AND INSURANCE.  Borrower will comply with all other covenants, agreements, terms, conditions, and requirements of the Loan Agreement, including, without limitation, the Borrower's covenants and agreements to make all payments of property taxes, insurance premiums, assessments, escrow items, impounds and all other payments that Borrower is obligated to pay under the terms of the Loan Agreement.  In the event Borrower is not obligated under the terms of the Loan Agreement to make payments of property taxes, insurance premiums and/or escrow items, Borrower agrees and in consideration for this Modification, Lender may require the Borrower to make additional monthly payments for escrow property taxes, insurance premiums and/or escrow items.

7.  INTEREST ACCRUAL.  If applicable, all taxes and provisions of any reference to interest accrual methods commonly referred to as "daily simple interest" or "29 day interest" whether specified in the Loan Agreement or elsewhere, are cancelled.  Borrower agrees that the interest accrual method is changed to the actuarial method of interest accrual.

8.  ALL OTHER TERMS REMAIN UNCHANGED.  Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Agreement.  Except as expressly provided in this Modification, the Loan Agreement will remain unchanged and Borrower and Lender will be bound by, and comply with, all of the terms and provisions of the Loan Agreement, as amended by this Modification.

(Page 1 of 8 Pages)



Loan No: ~~XXXXX~~

Date ID: ~~XXXXX~~

8.   MANUFACTURED HOMES.  For manufactured housing properties, Borrower agrees that the manufactured home has been affixed to the Property and will remain affixed throughout the term of the Loan Agreement and this Modification. If your Loan Agreement does not include real property, the above statement does not apply.

9.   LOAN CHARGES.  Borrower understands that Lender may have charged fees to the Borrower for services performed in connection with Borrower's default, if applicable, protecting Lender's interest in the Property and/or rights under the Loan Agreement, including, but not limited to, attorneys' fees, property inspections and valuation fees.  Borrower understands and agrees that all or a portion of these fees may not be included in this Modification and remain due and owing by the Borrower.

This Modification is in effect upon execution by Borrower.  If, however, corrections and/or amendments are needed for this Modification to correctly reflect the intent of all parties, Borrower agrees to sign documents evidencing the corrections and/or amendments and agrees to return the necessary document(s) to Lender or EMC in a timely manner.

Date: Sept. 3, 2008

_____
NICOLE JOHNSON                —Borrower

EMC Mortgage Corporation, Servicing agent for Wells Fargo Bank N.A. as Trustee under the applicable agreement

By: _____

Its:  V.P.

Loan No:
Borrower: NICOLE J. ...SON

Date ID:

## COMPLIANCE AGREEMENT

In consideration of Wells Fargo Bank N.A. as Trustee under the applicable agreement ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at
149 WILKES ST
BEACON, NEW YORK. 12508
the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns, ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: Sept 3, 2008

NICOLE JOHNSON --Borrower

Loan No.: ████████
Borrower: NICOLE JOHNSON

Date of: ████

**EMC**™
Mortgage Corporation

August 26, 2008

NICOLE JOHNSON
149 WILKES ST
BEACON, NY 12508

RE: EMC Loan: 
Property Address: 149 WILKES ST
BEACON, NEW YORK 12508

Dear Borrower(s):

EMC Mortgage Corporation ("EMC") is pleased to enclose your modification agreement ("Agreement") modifying the terms of your note and mortgage. Here are the details of your Agreement:

• The total amount due, in certified funds, to modify your loan is $0.00 (see detail below). Please note this Agreement will not be honored without receipt of these funds:

| Amount due in certified funds: | |
|---|---|
| Recoverable Balance * | $1,233.90 |
| Escrow Advance † | $406.70 |
| Total Borrower Contribution | $1,640.60 |
| Less Funds Held in Suspense | $1,640.60 |
| Total Due from Borrower | $0.00 |

• The Unpaid Principal Balance of your loan will be adjusted as follows:

| Current Unpaid Principal Balance b | $202,501.63 |
|---|---|
| Accrued Interest | $13,902.36 |
| Escrow Advances ‡ | $905.88 |
| Required Escrow | $2,378.15 |
| Adjusted Unpaid Principal Balance | $219,763.23 |

• Your new due date, upon signing and returning the Agreement will be September 1, 2008.

• This new monthly principal and interest amount will be $1,328.02 plus escrow funds of $395.03 for a new total monthly payment amount of $1,679.05. This amount is subject to change, however, if there is an increase or decrease in your taxes or insurance premiums or other escrow items.

• When EMC receives your signed Agreement and required certified funds on or before September 2, 2008, your next monthly payment in the amount of $1,679.05 will be due on September 1, 2008.

Please review the Agreement, and if you agree with its terms, sign and date where indicated and return the ENTIRE modification agreement (all pages) in the enclosed express courier envelope on or before September 2, 2008. Retain the additional copy provided for your records. EMC may withdraw this modification offer if the signed Agreement and required certified funds are not received by this date.

Should you have any questions regarding this letter, the information process in it, or the Loan Modification Agreement, please feel free to contact EMC at 866-564-5529.

Sincerely,

Loan Workout Department

This is an attempt to collect a debt. Any information obtained may be used for that purpose.

1. Funds that EMC has advanced on your behalf to pay taxes and/or insurance premiums or other escrow items
2. Funds needed to bring statutory or replenish your escrow account for future disbursements
3. Taxes on servicing expenses and/or fees (such as late fees or NSF fees) that have been advanced to your account.

800 State Highway, 121 Bypass
Lewisville, TX 75067-4180
MAILING ADDRESS: P.O. Box 660163, Dallas, TX 75266-0163

$\mathcal{D}$



Dutchess County Clerk Recording Page

Record & Return To :

BLUE TITLE SERVS LLC
30 W BROAD ST  STE 102
Rochester, NY 14614

Date Recorded : 03/08/2010
Time Recorded :  3:55:00

Document # 01 2010 502A

Received From :    BLUE TITLE LLC

Mortgagor  : FREMONT INVESTMENT & LOAN
Mortgagee  : WELLS FARGO BANK NA

Recorded In :    Assignment of Mortgage
Original Mortgagor : JOHNSON NICOLE

Examined and Charged As Follows :

Recording Charge :            $50.50

Number of Pages : 2

08-2204

*** Do Not Detach This Page
*** This Is Not A Bill

County Clerk By :    cbo J _____
Receipt # :    R12007
Batch Record :    C60



Bradford Kendall
County Clerk

012010502A

Loan 
MIN#

*ASSIGNMENT OF MORTGAGE*

BLUE TITLE SERVICES, LLC 
30 W. BROAD ST., SUITE 102
OLD CITY HALL / IRVING PLACE
ROCHESTER, NY 14614

County of DUTCHESS, State of New York

Assignor: Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan, 3380 SW 34th Avenue Suite 101, Ocala, FL 34474

Assignee: Wells Fargo Bank N.A., as Trustee for the Certificateholders of Carrington Mortgage Loan Trust, Series 2007-FRE1 Asset-Backed Pass-Through Certificates, 3476 Stateview Boulevard, Ft. Mill, SC 29715

Original Lender: Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan

Mortgage made by NICOLE JOHNSON dated the 18th day of December, 2006 in the amount of Two hundred and sixty two thousand eight hundred and eighty dollars ($262,880.00) and interest recorded on the 3rd day of March 2008 in the Office of the Clerk of the County of DUTCHESS at Certificate/Docket Number 01 2008-2304.

This said mortgage has not been otherwise assigned.

Property Address: 142 WILKES STREET, BEACON, NY 12508
SBL.#6055-77-013072

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named Assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns, unto the above named Assignee the said Mortgage, and the full benefit of all the power and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 22 day of February, 2010.

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc., as nominee for Fremont Investment & Loan

BY:
Name:   Elizabeth L. Spong
Title:   Vice President

State of ......Ohio......
County of ...Franklin............ #1
On the 22 day of February in the year 2010 before me, the undersigned, a notary public in and for said state, personally appeared Elizabeth L. Spong .............. personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the ......Ohio............... (insert city or political subdivision and state or another place acknowledgment taken.) (Acknowledgment & taken outside of New York State)

Notary Public

Wanena S. Church
Notary Public, State of Ohio
My Commission Expires
08-22-12

Exhibit B

From Consumer-Defendant In Error:
Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS
------------------------------------X
WELLS FARGO BANK NATIONAL                    Index NO.: 3344/2013
ASSOCIATION, AS TRUSTEE FOR
CARRINGTON MORTGAGE LOAN TRUST,
SERIES 2007-FRE1, ASSET-BACKED              **CONSUMER NOTICE OF**
PASS-THROUGH CERTIFICATES,                  **DISPUTE OF DEBT,**
                        Plaintiff           **15 U.S.C. § 1692g**


            -vs-


NICOLE JOHNSON, et al,
                    Defendants
------------------------------------X

To: CHASE (Alleged Servicer)
    P.O. Box 183166
    Columbus, Ohio 43218-3166;

    STIENE & ASSOCIATES, P.C.
    187 East Main Street
    Huntington, NY 11743;

    CHRISTOPHER VIRGA, ESQ.
    STIENE & ASSOCIATES, P.C.
    187 East Main Street
    Huntington, NY 11743;

    TODD W. CARPENTER, ESQ.
    4 Liberty Street
    Poughkeepsie, NY 12601

    Herein "you" or "Debt Collectors," 15 U.S.C. §
1692a(6).


    Notice to agent is notice to principal, and notice to
principal is notice to agent.

2016 JAN 12 PM 4: 12   DUTCHESS COUNTY CLERK'S OFFICE RECEIVED

1

I received your mailed communication, <u>Notice of Hearing & Referee's Oath & Report</u> dated December 24, 2015, within the past 30 days in relation to the collection of an alleged debt. (Foreclosure is debt collection.) Your communication fails to disclose that you are a debt collector per 15 U.S.C. § 1692e(11) and contains threats to foreclose on my property to harass, oppress, and abuse me in connection with the collection of a debt, 15 U.S.C. §§ 1692d, 1692e(4), (5). You do not have my prior consent or express permission of a court of competent jurisdiction to communicate with me or the Court. (See 15 U.S.C. §§ 1692c(a)-(b).)

I am a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). You and the purported Plaintiff, WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-THROUGH CERTIFICATES "REMIC") are "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and you are attempting to collect a household "debt" as that term is defined by 15 U.S.C. § 1692a(5).

Please take notice that I, an unrepresented Consumer, pursuant to 15 U.S.C. § 1692g, federal Fair Debt Collection Practices Act (FDCPA), hereby dispute the alleged debt you are attempting to collect. I dispute as to the identity of the true owner (if any) of this alleged debt and your alleged authority and capacity to collect and or sue on behalf of the same; I dispute the purported "account" and amount due and owing, I dispute all data and all signatures appearing on your documents.

I also dispute the debt as one that is not owed. In fact, on March 3, 2008 I mailed to alleged creditor Fremont Investment & Loan a "TILA Notice of Rescission," signed by me, providing written notice of my intention to immediately rescind the transaction pursuant to 15 U.S.C. §§ 1635(a) and (f), a copy of which I am hereby requesting from you. Whatever debt Debt Collectors think they have was canceled by operation of law under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. Therefore, I have reason to believe that Debt Collectors are taking State action that is inconsistent with federal law they cannot legally take.

None of the communications from you or your purported Plaintiff contain, and I never received, the notice required by 15 U.S.C. § 1692g(a) to begin the 30-day period in which to demand verification of the debt. The initial public notice purported to be an Assignment of Mortgage in default did not contain the notice. Your lis pendens does not contain the notice. I had a right to receive, but never

received, that notice. See 15 U.S.C. § 1692e(11). I never gave my prior consent, given directly to you, to communicate in such an inconvenient place as the county clerk's office and you did not have express permission of a court of competent jurisdiction to record those notices. You caused me the actual damages equal to but not limited to the impairment of my marketable title to my home and other actual damages and you may be held directly and vicariously liable.

I require "verification" and debt validation as defined by 15 U.S.C. §§ 1692g(a) and (b) prior to any further action by you. Send written notice containing the following information:

What is the amount of the debt?

What is the name of the creditor to whom the debt is owed?

When did I give my prior consent directly to you to communicate with me and the Court?

Did you obtain express permission from a court of competent jurisdiction to communicate with me and the Court?

Did you obtain any of my information from a debt collector?

Did you obtain the debt from a debt collector?

Was the debt in default at the time it was obtained by you and the purported Plaintiff?

Provide the "original account-level documentation" of the debt, reviewed by you, as required by the Consumer Financial Protection Bureau (CFPB). According to the CFPB, if the original creditor is unable to verify the debt, then the debt collector cannot pursue the claim. Therefore if you are unable to obtain and provide such verification under penalty of perjury (the required "verification"), you must:

* * * CEASE AND DESIST COLLECTION EFFORTS. * * *

AT ALL TIMES AND ALL PLACES, AND BY ANY MEANS, IT IS INCONVENIENT FOR ME TO RECEIVE YOUR COMMUNICATION UNLESS

3

YOU PROVIDE VERIFICATION IN THAT COMMUNICATION. OTHERWISE,
MY LABOR FEES BEGIN AT $10,000.00 PER MONTH WITHOUT
VERIFICATION, AND AN ADDITIONAL $5000.00 FOR EACH FURTHER
COMMUNICATION WITHOUT VERIFICATION.

IMPORTANT DISCLOSURE: This notice to you is pursuant
to "private right of action" granted by Congress to enforce
compliance with the Fair Debt Collection Practices Act, 15
U.S.C. § 1692k; your failure to satisfy this request
pursuant to your duty and obligation under the Act, 15
U.S.C. § 1692g(a) and (b), will be construed as your
absolute waiver of any and all claims against me and my
property, and your tacit agreement that you waive all
affirmative defenses, and your agreement to compensate me
for my time at my reasonable daily rate, labor, costs, and
legal fees in prosecuting this private right of action.

Nicole Johnson-Gellineau,
Consumer-Defendant In Error
149 Wilkes Street
Beacon, New York 12508

4

From Consumer-Defendant In Error:
Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508


**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF DUTCHESS**
------------------------------------X
WELLS FARGO BANK NATIONAL                Index NO.: 3344/2013
ASSOCIATION, AS TRUSTEE FOR
CARRINGTON MORTGAGE LOAN TRUST,
SERIES 2007-FRE1, ASSET-BACKED           **AFFIDAVIT OF**
PASS-THROUGH CERTIFICATES,               **NICOLE JOHNSON-GELLINEAU**
                      Plaintiff


            ~vs~


NICOLE JOHNSON, et al,
                      Defendants
------------------------------------X

        STATE OF NEW YORK    )
                             ) ss
        COUNTY OF DUTCHESS   )

        Nicole Johnson-Gellineau, being first duly sworn,

deposes and says:

        I make this affidavit upon my own first-hand personal

knowledge.

        I am named as the Defendant NICOLE JOHNSON in the

above-captioned matter.

        I had a consumer transaction (the "transaction") with

Fremont Investment & Loan on December 18, 2006 seeking to

borrow $262,880.00 for household purposes.

1

On March 3, 2008 I mailed to alleged creditor Fremont Investment & Loan a "TILA Notice of Rescission," my signed written notice of my intention to immediately rescind the transaction pursuant to 15 U.S.C. §§ 1635(a) and (f) for Freemont's failure to satisfy TILA's disclosure requirements.

Neither Fremont nor any other entity responded to the TILA Notice of Rescission or filed suit against me, or returned the note canceled, or filed a satisfaction of mortgage, or made a return of my money following rescission.

The above-captioned action is an attempt to collect the debt arising under the transaction.

As of this time I have not found a copy of my TILA Notice of Rescission and I have requested copies of the same from the debt collectors as can be seen from my previous Notice of Dispute filed in this Court.

Further affiant sayeth not.

Nicole Johnson-Gellineau

Sworn to and subscribed before me this 12 day of January, 2016.

Notary Public

VERNON S FOOTE
Lic. #01FO6138126
Notary Public-State of New York
Qualified in Orange County
COMM. EXP. 12 13 11

**AFFIDAVIT OF SERVICE**

Nicole Johnson-Gellineau, being first duly sworn,

deposes and says: I make this affidavit upon my own first-

hand personal knowledge.

A copy of the foregoing <u>Consumer Notice of Dispute of Debt,</u>

<u>15 U.S.C. § 1692g</u> and Affidavit of Nicole Johnson-Gellineau

has been sent by Certified U.S. Mail, Return Receipt

Requested, this ___ day of January 2016, to the following:

CHASE                              Cert. Mail# 7014 2120 0001 9932 5204
P.O. Box 183166
Columbus, Ohio 43218-3166;

STIENE & ASSOCIATES, P.C.          Cert. Mail# 7014 2120 0001 9932 5198
187 East Main Street
Huntington, NY 11743;

CHRISTOPHER VIRGA, ESQ.            Cert. Mail# 7014 2120 0001 9932 5211
STIENE & ASSOCIATES, P.C.
187 East Main Street
Huntington, NY 11743;

TODD W. CARPENTER, ESQ.            Cert. Mail# 7014 2120 0001 9932 5228
4 Liberty Street
Poughkeepsie, NY 12601

I declare under the penalty of perjury under the laws
of the United States of America that the foregoing
Affidavit of Service is true and correct.

Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508

Sworn to and subscribed before me this _12_ day of January,
2016.

Notary Public

VERNON S FOOTE
Lic. #01FO6138126
Notary Public-State of New York
Qualified in Orange County
COMM. EXP. [____]

5



```
                   BEACON MPO
               BEACON, New York.
                   1250899B
               3590960201-0098
   01/12/2016  (800)275-8777 03:15:32 PM

   ============ Sales Receipt ============
   Product        Sale Unit        Final
   Description    Qty  Price       Price

   COLUMBUS OH 43218-3166              $0.49
   Zone-4
   First-Class Mail Letter
   0.70 oz.
   Expected Delivery: Fri 01/15/16
   @@ Certified Mail                  $3.45
   USPS Certified Mail #:
   70142120000199325204
   Return Receipt                     $2.80
   Label #:
   9590952106150192201313
                                   ========
   Issue Postage:                     $6.74

   POUGHKEEPSIE NY 12601-3234         $0.49
   Zone-1
   First-Class Mail Letter
   1.00 oz.
   Expected Delivery: Thu 01/14/16
   @@ Certified Mail                  $3.45
   USPS Certified Mail #:
   70142120000199325220
   Return Receipt                     $2.80
   Label #:
   9590952106150192201320
                                   ========
   Issue Postage:                     $6.74

   HUNTINGTON NY 11743-2921           $0.71
   Zone-2
   First-Class Mail Letter
   1.70 oz.
   Expected Delivery: Thu 01/14/16
   @@ Certified Mail                  $3.45
   USPS Certified Mail #:
   70142120000199325198
   Return Receipt                     $2.80
   Label #:
   9590952106150192201337
                                   ========
   Issue Postage:                     $6.96

   HUNTINGTON NY 11743-2921           $0.71
   Zone-2
   First-Class Mail Letter
   1.20 oz.
   Expected Delivery: Thu 01/14/16
   @@ Certified Mail                  $3.45
   USPS Certified Mail #:
   70142120000199325211
   Return Receipt                     $2.80
   Label #:
   9590952106150192201344
                                   ========
   Issue Postage:                     $6.96
```

```
Dom. Money Order              $56.00
23327014195
Domestic Money Order Fee       $1.25
          Subtotal:           $57.25

Total:                        $84.65

Paid by:
Debit Card                    $84.65
  Account #:      XXXXXXXXXXXX3941
  Approval #:     028041
  Transaction #:  430
  23903610590
  Receipt#:       002631

08 Text your tracking number to
28777 (2USPS) to get the latest
status. Standard Message and Data
rates may apply. You may also visit
USPS.com USPS Tracking or call
1-800-222-1811.

Order stamps at usps.com/shop or
call 1-800-Stamp24. Go to
usps.com/clickship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
*************************************
*************************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
*************************************
*************************************


Bill#:1000203846257
Clerk:08

All sales final on stamps and postage
 Refunds for guaranteed services only
     Thank you for your business


HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
     POSTAL EXPERIENCE

           Go to:
  https://postalexperience.com/Pos
 or scan this code with your mobile
            device:
```



```
     or call 1-800-410-7420.

     YOUR OPINION COUNTS


          Customer Copy
```

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
St. Matthews

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

TODD W. CARPENTER, ESQ.

4 Liberty Street

Poughkeepsie, NY 12601

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☑ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7014 2120 0001 9932 5228

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

CHASE
P.O. BOX 183166
Columbus, OH 43218-
3166

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☑ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7014 2120 0001 9932 5204

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

UNITED STATES POSTAL SERVICE
ALBANY
NY 120
14 JAN 95

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

° Sender: Please print your name, address, and ZIP+4 in this box °

NICOLE JOHNSON
149 WILKES STREET
BEACON, NY 12508

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

° Sender: Please print your name, address, and ZIP+4 in this box °

NICOLE JOHNSON
149 WILKES STREET
BEACON, NY 12508

1/28/2016                                   USPS.com® - USPS Tracking®

English        Customer Service     USPS Mobile                                    Register / Sign In

⊠USPS.COM®

# USPS Tracking®

 Customer Service ›
Have questions? We're here to help.

 Got Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 70142120000199325198

On Time
Expected Delivery Day: Thursday, January 14, 2016

## Product & Tracking Information

Postal Product:            Features:
First-Class Mail®          Certified Mail™      Return Receipt

See tracking for related item:
9590952106150192201337

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| January 14, 2016 , 1:18 pm | Delivered | HUNTINGTON, NY 11743 |

Your item was delivered at 1:18 pm on January 14, 2016 in HUNTINGTON, NY 11743.

| January 14, 2016 , 8:46 am | Out for Delivery | HUNTINGTON, NY 11743 |
| January 14, 2016 , 8:36 am | Sorting Complete | HUNTINGTON, NY 11743 |
| January 14, 2016 , 3:35 am | Arrived at Unit | HUNTINGTON, NY 11743 |
| January 13, 2016 , 7:47 pm | Departed USPS Facility | MID ISLAND, NY |
| January 13, 2016 , 8:53 am | Arrived at USPS Facility | MID ISLAND, NY |
| January 12, 2016 , 11:42 pm | Arrived at USPS Origin Facility | ALBANY, NY 12288 |
| January 12, 2016 , 5:16 pm | Departed Post Office | BEACON, NY 12508 |
| January 12, 2016 , 3:12 pm | Acceptance | BEACON, NY 12508 |

## Available Actions

Text Updates

Email Updates

Confirmation

70142120000199325198

Your request for all activity to-date will be processed within four hours. Any future activity will be processed whenever there is new delivery related event activity.

Your confirmation will be sent to the following:

NikkiGelly@gmail.com

Track Another Package                                    Manage Incoming Packages

1/28/2016                                    USPS.com® – USPS Tracking®

Tracking (or receipt) number                              Track all your packages from a
                                                          dashboard. No tracking numbers
| 70142120000100325100 |                    Track It      necessary.



Sign up for My USPS ›

**HELPFUL LINKS**      **ON ABOUT.USPS.COM**      **OTHER USPS SITES**         **LEGAL INFORMATION**
Contact Us             About USPS Home            Business Customer Gateway     Privacy Policy
Site Index             Newsroom                   Postal Inspectors             Terms of Use
FAQs                   USPS Service Updates       Inspector General             FOIA
                       Forms & Publications       Postal Explorer               No FEAR Act EEO Data
                       Government Services        National Postal Museum
                       Careers                    Resources for Developers

Copyright © 2016 USPS. All Rights Reserved.

Search or Enter a Tracking Nui

English     Customer Service     USPS Mobile                                          Register / Sign In

**✉USPS.COM**

# USPS Tracking®



Customer Service ›
Have questions? We're here to help.



Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 70142120000199325211

On Time
**Expected Delivery Day: Thursday, January 14, 2016**

## Product & Tracking Information

**Available Actions**

Postal Product:                    Features:
First-Class Mail®                  Certified Mail™         Return Receipt

Text Updates

See tracking for related item:
9590952106150192201344

Email Updates

**Confirmation**

70142120000199325211

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **January 14, 2016 , 1:18 pm** | **Delivered** | **HUNTINGTON, NY 11743** |

Your request for all activity to-date will be processed within four hours. Any future activity will be processed whenever there is new delivery related event activity.

Your item was delivered at 1:18 pm on January 14, 2016 in HUNTINGTON, NY 11743.

Your confirmation will be sent to the following:

NikkiGelly@gmail.com

| | | |
|---|---|---|
| January 14, 2016 , 8:46 am | Out for Delivery | HUNTINGTON, NY 11743 |
| January 14, 2016 , 8:36 am | Sorting Complete | HUNTINGTON, NY 11743 |
| January 14, 2016 , 3:35 am | Arrived at Unit | HUNTINGTON, NY 11743 |
| January 13, 2016 , 7:47 pm | Departed USPS Facility | MID ISLAND, NY |
| January 13, 2016 , 9:53 am | Arrived at USPS Facility | MID ISLAND, NY |
| January 12, 2016 , 11:42 pm | Arrived at USPS Origin Facility | ALBANY, NY 12288 |
| January 12, 2016 , 5:16 pm | Departed Post Office | BEACON, NY 12508 |
| January 12, 2016 , 3:13 pm | Acceptance | BEACON, NY 12508 |

Track Another Package                                          Manage Incoming Packages

1/20/2016                                    USPS.com® - USPS Tracking®

Tracking (or receipt) number                                    Track all your packages from a
                                                                dashboard. No tracking numbers
                                                                necessary.

[ 70142120000100305211 ]                          Track It
                                                                Sign up for My USPS ›



HELPFUL LINKS          ON ABOUT.USPS.COM        OTHER USPS SITES           LEGAL INFORMATION
Contact Us             About USPS Home          Business Customer Gateway  Privacy Policy
Site Index             Newsroom                 Postal Inspectors          Terms of Use
FAQs                   USPS Service Updates      Inspector General         FOIA
                       Forms & Publications     Postal Explorer            No FEAR Act EEO Data
                       Government Services       National Postal Museum
                       Careers                   Resources for Developers

Copyright © 2016 USPS. All Rights Reserved.

Search or Enter a Tracking Nu

Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

WELLS FARGO BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CARRINGTON MORTGAGE
LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED
PASS-THROUGH CERTIFICATES,

                                        Plaintiff,

— against —

NICOLE JOHNSON, PETER JOHNSON,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. SOLELY AS NOMINEE FOR
FREMONT INVESTMENT AND LOAN,

and JOHN DOE AND JANE DOE #1 through #7,
the last seven (7) names being fictitious and
unknown to the plaintiff, the persons or parties
intended being the tenants, occupants, persons
or parties, if any, having or claiming an interest
in or lien upon the mortgaged premises described
in the Verified Complaint,

                                        Defendants.

**NOTICE OF MOTION**

INDEX # 3344/13

| | |
|---|---|
| MOTION: | Stiene & Associates, P.C.<br>Attorneys for Plaintiff |
| DATE, TIME & PLACE<br>OF HEARING | April 14, 2010 _____ at 9:30 (am) pm<br>10 Market Street<br>Poughkeepsie, NY 12601 |
| SUPPORTING PAPERS: | Affirmation of Ronni Ginsberg, Esq. and all pleadings and<br>exhibits herein. |
| RELIEF REQUESTED: | Confirming the report of Todd W. Carpenter, Esq., granting<br>the plaintiff judgment of foreclosure and sale; and for such<br>other and further relief as this court may deem just and |