**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NICOLE JOHNSON-GELLINEAU | ) | |
| | ) | Civil Action No. 7:16-cv-09945-KMK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **MOTION OF DEFENDANTS** |
| STIENE & ASSOCIATES, P.C.; | ) | **JPMORGAN CHASE, AND** |
| CHRISTOPHER VIRGA, ESQ.; | ) | **WELLS FARGO, AS TRUSTEE FOR** |
| RONNI GINSBERG, ESQ.; | ) | **CARRINGTON MORTGAGE LOAN** |
| JPMORGAN CHASE BANK, | ) | **TRUST, SERIES 2007-FRE1, ASSET-** |
| NATIONAL ASSOCIATION; | ) | **BACKED PASS-THROUGH** |
| WELLS FARGO BANK NATIONAL | ) | **CERTIFICATES TO DISMISS** |
| ASSOCIATION, AS TRUSTEE FOR | ) | **PLAINTIFF'S COMPLAINT** |
| CARRINGTON MORTGAGE LOAN | ) | |
| TRUST, SERIES 2007-FRE1, | ) | |
| ASSET-BACKED PASS-THROUGH | ) | |
| CERTIFICATES; | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 10|12|17

Unrepresented Consumer-Plaintiff, Nicole Johnson-Gellineau, (herein "Consumer" or "Plaintiff"), respectfully submits this her opposition to Doc. Nos. 34-36, the motion of the two "Bank Defendants" pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss verified claims she brought against them as debt collectors under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's specific grounds are set forth in the following Memorandum.

Respectfully submitted,

Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508
Cell: 646-456-1151
nikkigelly@gmail.com



RECEIVED
OCT 12 2017
U.S.D.C.
WP

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................ 1

COUNTER STATEMENT OF FACTS AND PROCEDURAL HISTORY................................ 4

LEGAL ARGUMENT ........................................................................................................ 6

   I.   STANDARD OF REVIEW ....................................................................................... 6

  II.  PLAINTIFF HAS FACTUALLY ALLEGED FDCPA CLAIMS AGAINST
       WFBNA AND CHASE. ............................................................................................ 6

      A.  Plaintiff has plausibly alleged that WFBNA and Chase are debt collectors, and
           not creditors, under the FDCPA.........................................................................6

          1.   WFBNA is alleged to be a debt collector as defined by the FDCPA. ................... 6

          2.   Chase is alleged to be a debt collector within the meaning of the FDCPA. .......... 7

      B.  Defendants are liable for prohibited third party contacts and communications
           whether or not foreclosure is considered collection of a debt in this Circuit. ..............9

          1.   Pleadings filed in the foreclosure action are unlawful behavior which
              occured in connection with collection of a debt. ...................................... 9

              a.   Pleadings filed in the foreclosure action conveyed "information
                  regarding the debt" regardless of how the recipient state court
                  interpreted it. ................................................................................ 10

              b.   Consumer is entitled to the full protection of the FDCPA even if she
                  may also be protected by court procedures. .................................................. 14

              c.   Pleadings filed in the foreclosure action that can, by law, be avoided
                  by paying money or result in a deficiency judgment against Consumer
                  are communications in connection with collection of the debt under the
                  FDCPA.......................................................................................... 15

          2.   The exhibited monthly statements mailed by Chase to Consumer within
              the past year are regular debt collection activity. ................................................. 20

          3.   Plaintiff has stated § 1692e claims against the Bank Defendants........................ 22

a.  WFBNA and those it enlists are debt collectors liable for damages as a deterrent for behaving like creditors as if they had Consumer's prior consent. ................................................................................................ 22

b.  The Rooker-Feldman doctrine, whether properly stated or not, cannot be applied in this case. ................................................................................... 22

c.  Issue Preclusion (collateral estoppel): to the extent New York law supersedes FDCPA § 1692a(5) to determine the preclusive effect of the judgment, Defendants' motion failed to demonstrate that the Complaint raised an issue subject to this defense under Fed. R. Civ. P. 12(b)(6). ............................................................................................................. 24

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

Brownell v. Krom, 446 F.3d 305 (2d Cir. 2006) .......................................................... 6

Carlin v. Davidson Fink, No. 15-cv-3105 (2d Cir. 2017)....................................... 14, 21

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)............. 4

Cohen v. Ditech Financial LLC and Rosicki, Rosicki & Associates, P.C., No. 17-950, 2d Cir.
      (pending)........................................................................................... 16

Cohen v. Ditech Financial LLC, 15-cv-6828 (E.D.N.Y. 03/24/2017)......................................... 14

Deutsche Bank Nat'l Trust Co. v. Whalen, 107 A.D.3d 931, 969 N.Y.S.2d 82 (2d Dept. 2013). 24

Duncan v. Walker, 533 U.S. 167 (2001)..................................................................... 6, 13

Exxon Mobil Corporation v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ............................. 22

Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F.App'x 89 (2d Cir. 2012) ......................... 14

Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86 (2d Cir. 2016)........................................ 14

Glazer v. Chase Home Finance, LLC, 704 F.3d 453 (6th Cir. 2013) .......................................... 18

Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006) ......................................................... 19

Green v. Hocking, 9 F.3d 18 (6th Cir. 1993) (per curiam) ..................................................... 11, 12

Hart v. FCI Lender Services, Inc., 797 F.3d 219 (2d Cir. 2015) .............................. 6, 8, 20, 21, 22

Heintz v. Jenkins, 514 U.S. 291 (1995) ................................................................. 3, 13

Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672 (9th Cir. 07/20/2016)................ 3

Hill v. DLJ Mortgage Capital, Inc., 2017 WL 1732114 (2d Cir. May 3, 2017)........................... 21

Ho v. Recontrust, No. 10-56884, 9th Cir., 05/22/2017 (Amended Opinion) ............................... 17

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) ...................................... 22

Hooks v. Forman Holt Eliades & Ravin LLC, 11 Civ. 2767, 2015 WL 5333513 (S.D.N.Y., Sept.
      14, 2015) ................................................................................................ 20

Huock v. US Bank NA, 15-cv-10042 (S.D.N.Y. Sept. 30, 2016) (unreported) ............................. 7

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66 (2d Cir. 1998)4

*Izmirligil v. Bank of New York Mellon*, No. 11-cv-5591, 2013 WL 1345370 (E.D.N.Y. Apr. 2, 2013) ................................................................................................................ 7

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008) ......................................... 13

*Kaltenbach v. Richards, supra*, 464 F.3d 524 (5th Cir. 2006) ...................................................... 18

*Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229 (S.D.N.Y. 2009).......................................... 24

*Munroe v. Specialized Loan Servicing LLC*, 14-cv-1883, 2016 WL 1248818 (E.D.N.Y. March 28, 2016) ................................................................................................................ 7

*Pascal v. JPMorgan Chase Bank, Nat. Assn.*, 09-CV-10082 ER, 2013 WL 878588 (S.D.N.Y. March 11, 2013)................................................................................................ 8

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012) ..................... 18

*Rinaldi v. Green Tree Servicing LLC*, 14-cv-8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015) ................................................................................................................ 20

*Romea v. Heiberger & Assoc.*, 163 F.3d 111 (2d Cir. 1998) ................................ 1, 15, 18, 19, 20

*Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998)............................... 8

*Sanders v. Palmer*, 507 N.Y.S.2d 844, 499 N.E.2d 1242 (1986)................................................. 19

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992) ...................................................... 18

*Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010) ................................................ 14

*Skinner v. Switzer*, 131 S.Ct. 1289 (2011) ................................................................................... 23

*Steuben Trust Co. v. Buono*, 254 A.D.2d 803, 804, 677 N.Y.S.2d 852 (4th Dep't 1998) ........... 19

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006).............................................. 6

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) ................................................................................... 6

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) ...................................................... 16

*Wells Fargo Bank National Association v. Nicole Johnson, et al.*, App. Division, 2d. Dept., No.: 2016-05466 ................................................................................................................ 1

**Statutes**

12 U.S.C. § 5512(b)(4)(B) ............................................................................................................ 3

15 U.S.C. § 1601 et seq. (Consumer Credit Protection Act) ......................................................... 6

15 U.S.C. § 1692(b) ...................................................................................................................... 15

15 U.S.C. § 1692a(2) .......................................................................................... 9, 11

15 U.S.C. § 1692a(4) ...................................................................................... 1, 2, 24

15 U.S.C. § 1692a(5) ................................................................................ 1, 10, 24, 25

15 U.S.C. § 1692a(6) ......................................................................................... 7, 17

15 U.S.C. § 1692a(7) ............................................................................................ 11

15 U.S.C. § 1692b ................................................................................................ 11

15 U.S.C. § 1692c ................................................................................................ 22

15 U.S.C. § 1692c(b) ........................................................................... 10, 11, 12, 15

15 U.S.C. § 1692c(c) ............................................................................................ 12

15 U.S.C. § 1692e .......................................................................................... 14, 22

15 U.S.C. § 1692e(11) ........................................................................................ 8, 19

15 U.S.C. § 1692g(a)(2) ...................................................................................... 22

15 U.S.C. § 1692g(b) ........................................................................................... 12

15 U.S.C. § 1692i ................................................................................................ 17

15 U.S.C. § 1692i(a)(1) .................................................................................... 17, 18

15 U.S.C. § 1692k .......................................................................................... 13, 22

15 U.S.C. § 1692k(e) ............................................................................................. 3

15 U.S.C. § 1692l ................................................................................................... 3

15 U.S.C. § 1692l(b)(6) .......................................................................................... 3

15 U.S.C. § 1692l(d) .............................................................................................. 3

15 U.S.C. § 1692n .......................................................................................... 13, 15

15 U.S.C. § 1692o ................................................................................................ 15

28 U.S.C. § 1257 ................................................................................................ 22

RPAPL § 1341 .................................................................................................... 20

RPAPL § 1371(1) ............................................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................ 23

Fed. R. Civ. P. 12(b)(6) ............................................................................ 24

Fed. R. Evid. § 106 ..................................................................................... 5

**Other Materials**

132 Cong. Rec. H10,031 (1986) ............................................................. 11

Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, filed 08/20/2014 ............................................................................................... 3

Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiff-Appellant and Reversal in Cohen v. Ditech Financial LLC and Rosicki, Rosicki & Associates, P.C., No. 17-950, 2d Cir., filed on June 1, 2017 ............................................... 16

Brief of the Consumer Financial Protection Bureau As Amicus Curiae In Support Of Plaintiff-Appellant's Petition for Rehearing En Banc or Rehearing By The Panel, Marx v. General Revenue Corporation, No. 10-1363, 10th Cir., dated January 26, 2012 .................................... 10

## PRELIMINARY STATEMENT

For the purpose of this federal action, Plaintiff embraces the April 2016 judgment of the Supreme Court of the State of New York ("judgment" of the "state court"), and readily concedes that the state court adjudged: that she was in default as alleged, that WFBNA had standing to foreclose, that Plaintiff owed $430,431.62 to WFBNA, and that WFBNA be permitted to proceed with a foreclosure sale of the Beacon, New York property to satisfy the judgment. The judgment, procured by debt collectors and not a creditor, is not central to Plaintiff's independent claim; it is simply a manifestation of the debt asserted to be owed, "whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5). Although the judgment "remains undisturbed to date" as Defendants point out, Plaintiff's appeal of that judgment is pending. See Wells Fargo Bank National Association v. Nicole Johnson, et al., App. Division, 2d. Dept., No.: 2016-05466.

Plaintiff objects to Defendants' self-serving conflation, throughout their memorandum, of the FDCPA term "creditor" as defined in 15 U.S.C. § 1692a(4) with that word in its other usages outside the Act. The state court did ***not*** adjudge that WFBNA was Plaintiff's "creditor" as defined in the FDCPA,[1] even though it may have necessarily decided that WFBNA had "standing" to foreclose. WFBNA's standing to foreclose in the New York court is not challenged by the Verified Complaint.

Defendants' subjective purpose in taking the foreclosure action to judgment under state law is "wholly irrelevant to the requirements and applicability of the FDCPA" to their communications, Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998). Defendants describe their activity as being in the context of a foreclosure in equity, but the "set of facts"

---

[1] The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

1

cognizable under the FDCPA is litigation in the context of debt collection whether or not foreclosure is, by itself, collection of a "debt" under Second Circuit law.

Whether "WFBNA is the entity to whom Plaintiff owes her debt," is not dispositive of whether WFBNA is "her 'creditor' under the statute" in light of the term's exclusion, "but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). WFBNA is factually and plausibly alleged to fit precisely within that exclusion.

Bank Defendants repeatedly refer to Chase as a "mortgage servicer" and then produce case cites which apply to "mortgage servicers" as if the cases utilizing that phrase are controlling in this case. They are not.  Nowhere in the Complaint is Chase a "mortgage servicer." See Complaint, ¶¶ 11, 32, 36. Circuit law that a mortgage servicer is still not *considered* a debt collector if it began servicing the mortgage at issue prior to the mortgagor's default is inapposite; the Complaint at ¶ 36 alleges Chase became servicer for WFBNA after default. The Complaint raises the inference that *Chase began servicing the debt for WFBNA after default*.

Defendants assert that the documents attached to the Complaint fail to plausibly establish that Chase began servicing her "loan" subsequent to her default. Servicing for whom? Actually, Plaintiff's exhibits establish that the supposed creditor WFBNA received the Note subsequent to the notice of default Defendants allege was mailed by MERS on behalf of Fremont. Complaint, ¶¶ 35, 36; Mortgage, ¶ 20; February 22, 2010 Assignment of Mortgage. After February 22, 2010, Chase was standing in the shoes of WFBNA, a debt collector itself, and Chase's regular monthly statements to Consumer requiring payment of an Amount Due, announcing that they were "an attempt to collect a debt" and threatening foreclosure (the *threat* is not foreclosure), together with Chase's Affidavit of Gary Brunton to the state court seeking "sums of money that are due

2

and owing," when viewed collectively through the eyes of a least sophisticated consumer[2], were each a ***step* in the process**, and ***part* of a strategy**, to make collection of the same obligation arising from the same transaction more likely to succeed, either *directly* from Consumer herself, or *indirectly* through foreclosure under New York law which ***provides for both a sale and deficiency judgment in one action unless the defendant pays up***. This activity is the U.S. Supreme Court's very definition of debt collection. In <u>Heintz v. Jenkins</u>, 514 U.S. 291 (1995), the Court concluded that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts" and, thus, is subject to the FDCPA, 514 U.S. at 294 (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings")).

Plaintiff has included cites to amicus briefs filed by the CFPB for due consideration by this Court for this reason: The Consumer Financial Protection Bureau has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA, see <u>Hernandez v. Williams, Zinman & Parham, P.C.</u>, No. 14-15672, n.3 (9th Cir. 07/20/2016); Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, <u>Hernandez</u>, Dkt. No. 14, Page 28 of 42, filed 08/20/2014 ("Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its

---

[2] The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," so that "the FDCPA protects all consumers, the gullible as well as the shrewd." <u>Clomon v. Jackson</u>, 988 F.3d 1314, 1318 (2d Cir. 1993).

3

interpretation of the Act is therefore entitled to deference." See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) (holding that "if the statute is silent or ambiguous with respect to the specific issue" a court should defer to a reasonable administrative interpretation of the statute). Construing the Complaint liberally, Consumer-Plaintiff has, beyond the speculative level, claimed a right to actual damages for violation of the FDCPA by the Bank Defendants for their *direct and vicarious* liability thereunder. The Motion of the Bank Defendants should be denied in its entirety.

## COUNTER STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendants, at Doc. 36, fn.1, wish the Court to take judicial notice of documents filed in the state court, citing to Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998). Where Defendant's attorney, Mr. Scibetta, inserts an ellipsis in the rule, Plaintiff will fill in with emphasis: "A court may take judicial notice of a document filed in another court *not for the truth of the matters asserted in the other litigation, but rather* to establish the fact of such litigation and related filings." Attorney Brian Scibetta does not declare in his Declaration (Doc. 35) that he has personal knowledge of the records or record keeping policies and procedures of any Defendant or any of their predecessors or anything else. The Scibetta Declaration is non-evidentiary.

The Court should smell a rat: Doc. 36, page 4, Paragraph No. 2, ambiguously and inconclusively states that "[t]he Subject Loan transferred to WFBNA." (It is uncertain what "Subject Loan" means.) Conspicuously absent is any description of how, when, and by whom this event occurred. The purported indorsement (Doc. 2 at 45 of 60) on the purported Note is not dated, but Plaintiff alleges transfer of the "debt" after default (Complaint, ¶ 36) and it can be inferred that the state court adjudged that transfer was, at the latest, prior to commencing the foreclosure action for standing purposes. Against Plaintiff's theory of the case, Defendants

4

suggest, "Plaintiff ***thereafter*** entered into a loan modification agreement." Not so fast. What is clear is that WFBNA received an interest in the Mortgage on February 22, 2010 and noted that interest in the public record. There was nothing in the public record indicating that WFBNA had ever become "holder" of the Note prior to default. From Consumer's perspective, her Note had been sold to WFBNA ***together with the Mortgage*** based on the language of Paragraph 20 in the Mortgage, Doc. 2-1, Page 5 of 60. The language in Paragraph 20 itself is a matter of which the Court should in fairness judicially notice contemporaneously with Defendants' "Mod Agreement," Evid. R. 106. The entire purported "2008 Mod Agreement," which Defendants urge "expressly states that WFBNA is the holder of the Note and Mortgage for the Subject Loan," is ***contradicted*** by (1) the recorded assignment of (2) the recorded Mortgage in the public record. Liberally construed, Plaintiff's Complaint raises the inference that the Mortgage and the Note were transferred together on February 22, 2010, after notice of default.

Also importantly, Doc. 36, page 5, Paragraph No. 5, Plaintiff's "First Affirmative Defense" in the state case (that WFBNA was not the entity entitled to foreclose) is a matter, among others, for the state Appellate Division to decide based on Chase's affidavits of Yolanda Gardner which appear to contradict that WFBNA holds the Note. No matter how much Defendants argue, they have not met their initial burden to demonstrate that standing to foreclose is an identical or substantially similar issue to Plaintiff's federal claim.

Factual paragraphs 6-14 are not disputed except the following: Regarding Paragraph 9, whether Exhibit G "advised that the Subject Loan had transferred to Chase for servicing on May 1, 2007" is irrelevant because of the inference that if WFBNA didn't receive the debt until February 22, 2010, then even Chase has no claim to being WFBNA's servicer until then. Footnote 4 states that "Chase is successor servicer to loans formerly serviced by EMC as of April

5

1, 2011." That too is irrelevant for the same reason. Regarding Paragraph 11, Bank Defendants'
subjective characterization that Chase's monthly statements were "in connection with its
servicing of the Subject Loan" does not make Plaintiff's claim any less plausible. See Hart, infra.

## LEGAL ARGUMENT

### I.  STANDARD OF REVIEW

Plaintiff agrees with the standard of review for a motion pursuant to FRCP 12(b)(6)
except to add the following: "It is 'a cardinal principle of statutory construction' that 'a statute
ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or
word shall be superfluous, void, or insignificant.'" TRW, Inc. v. Andrews, 534 U.S. 19, 31
(2001) quoting Duncan v. Walker, 533 U.S. 167, 174 (2001). Because it is part of the Consumer
Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in
favor of the consumer to effectuate its consumer protection purposes. Additionally, the Court is
required to construe liberally pro se pleadings and interpret them "to raise the strongest argument
that they suggest," Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); Triestman v. Fed.
Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

### II.  PLAINTIFF HAS FACTUALLY ALLEGED FDCPA CLAIMS AGAINST WFBNA AND CHASE.

#### A.  Plaintiff has plausibly alleged that WFBNA and Chase are debt collectors, and not creditors, under the FDCPA.

First of all, WFBNA and Chase are not banks as they characterize themselves. In the
Complaint, WFBNA is a Trustee for certificate holders and Chase is a non-bank servicer for
WFBNA, see e.g., Compl. ¶¶ 11, 41. They are not banks or lenders that offered or extended
credit creating the debt, see Compl. ¶ 14.

##### 1.  WFBNA is alleged to be a debt collector as defined by the FDCPA.

Defendants' whole argument conflates the term "creditor" as defined in the Act with

6

other usage. Throughout the Verified Complaint, "WFBNA" is Wells Fargo Bank National Association, **as Trustee for** Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates. Defendants ignore the trustee relationship and futilely argue instead that WFBNA is attempting to collect its own debt. They cite, for example, to Munroe[3], a recent case in this District. For one thing, Mr. Munroe did not claim or argue that WFBNA is collecting as Trustee *for* another.[4] Plaintiff's facts are substantially different from the other cases cited. In Huock[5], for example, Wells Fargo was the originator of the loan. Again, Defendants' definition of "creditor" deceptively omits the exclusion applicable to WFBNA by inserting an ellipsis instead of the following words of the statute: "but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." See Complaint at ¶¶ 42-43. Central to WFBNA's business is also collecting for another, *indirectly through Chase's monthly statements and Brunton Affidavit* for instance. The Complaint alleges, and Plaintiff can allege, that each of the two Bank Defendants fit within both predicates of the term "debt collector" under § 1692a(6). Defendants' argument that WFBNA is a creditor, and not a debt collector, as defined by the FDCPA has no merit.

### 2. Chase is alleged to be a debt collector within the meaning of the FDCPA.

Defendants argue in vain, Doc. 36 at 12, that Chase is a "mortgage servicer." It is pled beyond speculation that the FDCPA treats Chase as debt collector, Complaint, ¶¶ 32, 49, 58. Chase mailed monthly statements, Exhibits E and F. Exhibit G from Chase contains the notice

---

[3] Munroe v. Specialized Loan Servicing LLC, 14-cv-1883, 2016 WL 1248818 (E.D.N.Y. March 28, 2016)
[4] See Izmirligil v. Bank of New York Mellon, No. 11-cv-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) ("Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's 'principal purpose' is the collection of debts or that BNYM 'regularly collects' debts owed another. Rather, plaintiff alleges that BNYM is a 'debt collector' simply 'because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default.'")
[5] Huock v. US Bank NA, 15-cv-10042 (S.D.N.Y. Sept. 30, 2016) (unreported).

required under § 1692e(11), "This communication is an attempt to collect a debt and any information obtained will be used for that purpose." The applicable Circuit law is <u>Hart v. FCI Lender Servs., Inc.</u>, 797 F.3d 219, 227 (2d Cir. 2015) ("the Letter clearly announces itself an attempt to collect a debt, and its other text only emphasizes the plausibility and gravity of that announcement. We see no reason why we should not take it at its word . . ."). The Complaint alleges (1) the Brunton Affidavit and (2) monthly statements by which Chase and WFBNA seek to enforce Consumer's obligation to pay the money asserted to be owed and that it engages in such activities generally with the degree of regularity described in section 1692a(6). Although Plaintiff stands on her Verified Complaint and believes her allegations are sufficient, Plaintiff has gotten additional mailed notices from Chase which particularly state that the notices are "from a debt collector" if necessary for more particularized factual allegations and exhibits.

> Wells Fargo, as trustee, subsequent to said notice of default, received transfer of the debt on February 22, 2010 as evidenced by Assignment of Mortgage, and that Chase then became servicer for Wells Fargo, as trustee. See Exhibit A at "Schedule B" and Affidavit of Gary Brunton at ¶ 1.

Complaint ¶ 36. Chase was enlisted by a debt collector (WFBNA) to collect on its behalf, thus Chase's principal purpose was a "debt" servicer. See Complaint at ¶¶ 48-50.

Whether Chase became servicer in the stead of EMC for Fremont prior to February 22, 2010 is outside the timeline of the Complaint and irrelevant to the alleged communications within the one-year statute of limitations. That Chase should, after assignment of the debt from Fremont to WFBNA, now be considered a creditor-servicer *for* a debt collector "would lead to absurd results or would thwart the obvious purpose of the statute." <u>Salute v. Stratford Greens Garden Apartments</u>, 136 F.3d 293, 297 (2d Cir. 1998).

Defendants cite to <u>Pascal v. JPMorgan Chase Bank, Nat. Assn.</u>, 09-cv-10082 ER, 2013 WL 878588, at *5 (S.D.N.Y. March 11, 2013), an ***unreported*** case that is not law in this case.

The Pascal court considered "whether the FDCPA covers companies who, like Defendant, *acquired certain mortgages as a result of their acquisition of an original **mortgage servicing company**,* rather than through a specific assignment or transfer of the mortgage." (Emphasis added.) In contrast to Pascal, this case is about an evidenced transfer in debt ***ownership***—not servicing rights—"through a specific assignment or transfer of the mortgage." Here, Plaintiff alleged that the debt was in default at the time WFBNA and Chase obtained transfer of the debt through a specific assignment on February 22, 2010, when Chase became servicer for WFBNA. See Complaint, ¶¶ 17, 35, 36, 41, 42, 43. The default notice is alleged to have been sent to Consumer **on behalf of MERS as nominee for Fremont**. This Court cannot reasonably draw an inference that Chase was still servicing for Fremont after specific assignment to WFBNA. Pascal, besides being unreported, is inapposite to this case. Chase never was a "creditor."

Again, Defendants, Doc. 36 at 14-15 and fn.6 at 11, attempt to challenge Plaintiff's theory of the case that WFBNA and Chase received transfer of the debt after default. This was already discussed above in Plaintiff's Preliminary Statement, and Counter Statement of Facts and Procedural History. Plaintiff incorporates her argument here. As to Defendants' Attorney Affirmation and Exhibits, the Court should decline to consider it at this juncture.

**B. Defendants are liable for prohibited third party contacts and communications whether or not foreclosure is considered collection of a debt in this Circuit.**

**1. Pleadings filed in the foreclosure action are unlawful behavior which occured in connection with collection of a debt.**

"The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Broadly, all that's required is that a "communication" be in connection with collection of a debt to be covered. But for the debt, Defendants would not have the information to transmit to the state court. Why does

Chase bother to regularly send monthly statements about the debt stating the Amount Due, threatening foreclosure, and that "payment must be received by certified funds" (see Doc. 2-1, p. 55 of 60) if all WFBNA ever wanted is to enforce a security interest? It doesn't. Circuit law in Romea covers this. WFBNA and Chase never had, and do not seek, Consumer's place of abode. Rather, Wells Fargo seeks to recover "sums of money that are due and owing." See Exhibit A, Brunton Affidavit, Doc. 2, Page 35 of 60, ¶ 7; Complaint, ¶¶ 21, 35, 36, 57. Chase's monthly statements and other Defendants communicat[ing] with the state court are in connection with the debt "arising out of" the same transaction, see § 1692a(5).

Plaintiff has sufficiently and plausibly alleged prohibited third party contacts and communications for which Bank Defendants are directly or vicariously liable, § 1692c(b), whether or not foreclosure is considered debt collection in this Circuit:

### a. Pleadings filed in the foreclosure action conveyed "information regarding the debt" regardless of how the recipient state court interpreted it.

Defendants suggest a subjective rationale that they were not contacting the state court to collect a debt, but merely obtain a judgment of foreclosure in equity. Section 1692c(b) does not leave it up to the recipient to interpret the transmission of information regarding the debt:

The CFPB advised, in its Brief Of The Consumer Financial Protection Bureau As Amicus Curiae In Support Of Plaintiff-Appellant's Petition For Rehearing En Banc Or Rehearing By The Panel, Marx v. General Revenue Corporation,[6] No. 10-1363, 10th Cir., dated January 26, 2012, (the "Marx Brief"), as follows:

---

[6] The CFPB specifically argued that, "The panel's erroneous interpretation of the FDCPA's prohibition on communicating with third parties erodes an important consumer protection, disregards the Act's text and structure, and disturbs accepted understandings of the Act." The Brief is available at http://www.consumerfinance.gov/f/201202_cfpb_amicus-brief_marx-v-grc.pdf. The Bureau could not participate in the earlier briefing because it did not assume its powers until July 21, 2011, after briefing concluded. Rehearing was denied. The U.S. Supreme Court, in Case No. 11–1175, decided February 26, 2013, (Justices Sotomayor and Kagan dissenting) ultimately ruled against Marx and the United States on other grounds: "Section §1692k(a)(3) is not contrary to, and, thus, does not displace a district court's discretion to award costs under, Rule 54(d)(1)."

The Act's structure reflects Congress's judgment that debt collectors' interests generally outweigh the risks to consumers only when collectors need to determine "the whereabouts of missing debtors." Id. In particular, with few exceptions, the Act allows debt collectors to communicate with third parties only to ascertain "location information"—the consumer's home address, phone number, or place of employment. 15 U.S.C. §§ 1692a(7), 1692b, 1692c(b).

\* \* \*

Specifically, *any transmission* of information regarding a debt qualifies as a "communication."

\* \* \*

Most information held by debt collectors constitutes "information regarding a debt"—e.g., the debtor's name, account number, and creditor. The collector would not have the information, or be able to transmit it to anyone, but for the debt. That information remains "information regarding a debt" when the collector transmits it to a third party, regardless of how the recipient interprets it.

\* \* \*

Here, the statutory structure discussed above shows that the definition of "communication" [in § 1692a(2)] is not meant to limit the ordinary meaning of "communicate" in §1692c(b). Without that qualification, § 1692c(b) is properly interpreted as an absolute prohibition on third-party contacts, subject to narrow exceptions.

Marx Brief, pp. 10, 13–16 of 35 (emphasis and bracketed material added).

In Green v. Hocking, 9 F.3d 18 (6th Cir. 1993) (per curiam), the Court of Appeals for the Sixth Circuit candidly pointed out that, if read literally, "15 U.S.C. § 1692c(b) prevents an attorney from communicating with any third party pertaining to the consumer's debt. Under this portion of the Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit." The panel called that an example of an absurd outcome because "[a]n examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law." But "[t]he act only regulates the conduct of debt collectors, it does not prevent ***creditors***, through their attorneys, from pursuing any legal remedies available to them." 132 Cong. Rec. H10,031 (1986) (emphasis added). The Green panel, way back in 1993, reasoned this way:

An examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law. A contrary result would

11

produce absurd outcomes. For example, 15 U.S.C. § 1692g(b) provides that collection efforts must cease if, within thirty days of receiving a communication, the debtor disputes the amount owed. 15 U.S.C. § 1692c(c) provides that all debt communications must cease once the debtor makes such a request. Read literally, these provisions would mean that, once a creditor initiates a lawsuit, and the consumer responds that he does not owe the amount alleged, or that he wishes to cease communications, it would be unlawful to bring a motion for summary judgment. Or, if an attorney first writes a letter, and the consumer asks that communications cease, it would be unlawful to instigate a lawsuit. Additionally, 15 U.S.C. § 1692c(b) prevents an attorney from communicating with any third party pertaining to the consumer's debt. Under this portion of the Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit. Furthermore, Section 1692e(5) makes it unlawful to threaten "to take any action that cannot legally be taken or that is not intended to be taken." Assuming a lawsuit is brought, and the consumer prevails to any extent, it would appear that the law has been broken, as the creditor threatened to take action that apparently, as a result of the judgment, "cannot legally be taken." These examples demonstrate that appellant's interpretation, that every act by an attorney in litigation should be covered by the Act, is wrong. Neither by cited language, nor by intent, did Congress prevent attorneys from engaging in the normal practice of law.

First, the Act does not "prevent" "every" act by an attorney. Indeed the Act does not "prevent" anything (in that sense it would be odd if the Act *empowered a consumer* to cause a debt-collecting lawsuit to grind to a halt); it only makes debt collectors liable to the consumer. "Without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy," the debt collector is left with at least one choice being whether to violate the act or cease collection. See § 1692c(b). Defendants could have ceased collection efforts at any time to avoid further liability.

Second, the 1993 panel in Green, in disagreeing with the appellant's argument that "attorneys, even when engaged exclusively in litigation tasks such as filing complaints, are covered by the [FDCPA]," wrote, "we are unwilling to impose a system of strict liability that conflicts with the current system of judicial regulation. We therefore hold that the actions of an

attorney while conducting litigation are not covered by the FDCPA." Ibid. In this Circuit, "[i]f the statutes did conflict, moreover, it would be [state law], and not the FDCPA, that would have to yield. See 15 U.S.C. § 1692n." Romea, fn. 10.

*BUT,* in 1995, the U.S. Supreme Court ruled in Heintz v. Jenkins, 514 U.S. 291 (1995) that *there is no such conflict*. The FDCPA does not provide for any injunctive relief or interference with state courts, but instead makes debt collectors liable to consumers for statutory and actual damages for "deterrent effect," Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008); Complaint, ¶ 1, § 1692k. The Sixth Circuit acknowledged that Green had been superseded by Heintz.[7] *Critically, that leaves intact the panel's 1993 analysis as to the literal meaning of § 1692c(b), which agrees with both the CFPB and the text and structure of the FDCPA itself today.* That is what this Court must enforce here.

Defendants' filings are prohibited "third party *contacts*" which transmitted Plaintiff's name, WFBNA's name as trustee, and the foreclosure caption, case numbers, and facts about the alleged debt to which the alleged mortgage is incidental. Defendants have the burden to demonstrate that the contacts fit within the specific exceptions, which they failed to do in their motion. Unrepresented Consumer incorporates the Marx Brief and requests the Court take judicial notice as official interpretation of the CFPB to make the strongest argument it suggests. Objectively, the Defendants were prohibited from transmitting the information about the alleged debt to the state court regardless of whether that court interpreted it in law or equity. This Court must decline to render a provision of the FDCPA inoperable. TRW, (supra).

---

[7] "[T]he Supreme Court's reasoning in Heintz v. Jenkins, 514 U.S. 291 (1995), ... affirmed the Seventh Circuit's conclusion that the FDCPA applies to lawyers acting as debt collectors. We previously decided otherwise, based in part on our view that any other rule 'automatically would make liable any litigating lawyer who brought, and then lost, a claim, against a debtor.'" Jerman v. Carlisle, Mcnellie, Rini, Kramer & Ulrich LPA, 538 F.3d 469 (6th Cir. 2008).

**b.  Consumer is entitled to the full protection of the FDCPA
even if she may also be protected by court procedures.**

Consumer is entitled to the full protection of the FDCPA even if she may also be

protected by New York's court procedures. Assuming, arguendo, the correctness of Defendants'

assertion otherwise as a matter of law as an excuse to avoid liability for violating federal law,

their argument (Doc. 36 at 17) citing to Simmons[8] and Cohen[9] fails immediately on the facts

because Consumer was and is unrepresented at all times relevant. (See Complaint at ¶ 23.)

> "The cases cited by [defendants] are inapposite—those cases, which concern
> only misrepresentations under § 1692e, all involve representations made *to an
> attorney representing the debtor*, usually in the context of a formal proceeding.
> See, e.g., Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F.App'x 89, 92 (2d
> Cir. 2012) (alleged misstatements made in state foreclosure action); Simmons v.
> Roundup Funding, LLC, 622 F.3d 93, 95 (2d Cir. 2010) (alleged misstatements
> made in bankruptcy filing); Kropelnicki, 290 F.3d at 123 (alleged misstatement
> made over the phone to attorney during settlement discussions)."

Carlin v. Davidson Fink, No. 15-cv-3105 (2d Cir. 2017). Defendants' cite to Cohen and

Simmons is misleading. Simmons involved an FDCPA claim based on a false proof of claim

filed in a bankruptcy proceeding initiated by the consumer, through counsel. Bankruptcy is not

pending and is outside the Complaint. Simmons (2010) *was subsequently limited* by Garfield v.

Ocwen Loan Servicing, LLC, 811 F.3d 86, 91 (2d Cir. 2016), to cases where the bankruptcy case

is actually pending. The Garfield panel reasoned that "At that point the former debtor no longer

has the 'protection of the bankruptcy court,' Simmons, 622 F.3d at 96, which we deemed

decisive on the preclusion issue prior to discharge." Ibid. The panel went even further:

> Ocwen contends that these provisions conflict with the Bankruptcy Code
> because, by regulating how to collect a debt, they imply that it can collect the
> discharged debt, an action that the discharge injunction prohibits. But, as Garfield
> responds, Ocwen can avoid violating both the cited provisions and the Bankruptcy
> Code simply by not attempting to collect the discharged debt. And once Ocwen
> tries to collect the discharged debt, it risks violation of both the cited provisions

---

[8] Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010).
[9] Cohen v. Ditech Financial LLC, 15-cv-6828 (E.D.N.Y. 03/24/2017).

and the Bankruptcy Code. Either way, there is no conflict.

In sum, none of Garfield's individual FDCPA claims conflicts with the discharge injunction under the Bankruptcy Code.

In <u>Romea</u>, the Court was presented with a similar suggestion—that the FDCPA should not be applied according to its terms in light of the protections provided by New York's special landlord-tenant procedures. The Court objectively rejected this argument, explaining that "[i]f the [FDCPA] applies to [the defendant's conduct] and [the defendant's conduct] does not comply with the FDCPA's requirements, then by definition it constitutes an improper debt collection activity under federal law." <u>Romea</u>, 163 F.3d at 119. The Court further noted that it is "the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." Id. See also 15 U.S.C. §§ 1692(b), 1692n. The record contains no indication that New York has petitioned the CFPB as to the sufficiency of the foreclosure process to achieve the objectives of the FDCPA. See <u>Romea</u>, fn. 11; 15 U.S.C. § 1692o. Additionally, <u>Heintz</u> would have been decided the other way if Defendants' argument that court procedures provide sufficient protection during the course of litigation was correct.

Therefore, ***this Court should follow Circuit law in <u>Romea</u>*** and find that consumers are entitled to the protections of the FDCPA for alleged debt collection violations related to judicial foreclosure proceedings even if New York's foreclosure laws provide adequate protection.

> **c. Pleadings filed in the foreclosure action that can, by law, be avoided by paying money or result in a deficiency judgment against Consumer are communications in connection with collection of the debt under the FDCPA.**

The plausibility to be decided here is whether the subjective purpose of Defendants' contacts with the state court defeats 15 U.S.C. § 1692c(b) where transmission of information regarding the debt is concerned. "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at

odds with the intentions of its drafters." <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 242 (1989) (internal quotation marks and brackets omitted).

Because the FDCPA does not expressly delineate the set of activities that are "in connection with the collection of any debt," the CFPB is authorized to issue advisory opinions. Plaintiff incorporates the Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiff-Appellant and Reversal in <u>Cohen v. Ditech Financial LLC and Rosicki, Rosicki & Associates, P.C.</u>, No. 17-950, 2d Cir., filed on June 1, 2017. In <u>Cohen</u>, presently before the Second Circuit, the CFPB advised that "[a] debt collector that initiates a foreclosure proceeding under New York law that ***can*** result in a deficiency judgment against a consumer has taken action in connection with the collection of any debt and is, therefore, subject to those provisions of the Act," because the purpose of foreclosure is to obtain payment on the underlying debt. "Where, as here, a court sitting in equity may award a deficiency judgment against a consumer on a consumer debt, the Act manifestly applies." Id. Plaintiff, out of an abundance of caution, asserts this additional argument here and requests the Court take judicial notice of the CFPB's <u>Cohen</u> amicus brief as official interpretation of the Act to make the strongest argument it suggests in the best light for Plaintiff in opposition to dismissal.

Defendants attempt (Doc. 36 at 17) to minimize the CFPB's advisory opinion and the decisions of Sister Circuits by suggesting (Doc. 36 at 20) that the pleadings filed in the Foreclosure Action does not fall under the purview of the FDCPA because "the majority" of the courts in the Second Circuit have held, ***under New York law***, that the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for the purposes of the FDCPA. A most scathing dissent to Defendants' line of reasoning was given by The Honorable Edward R. Korman, Senior District Judge for the U.S.

District Court for the Eastern District of New York, sitting by designation in Ho v. Recontrust,

No. 10-56884, 9th Cir., 05/22/2017 (Amended Opinion).[10]

> We do not decide cases on the basis of "head counts" of district court cases, although we should at least be concerned when we reach a result that has been rejected by every circuit that has decided the issue in a published opinion.
>
> &ast; &ast; &ast;
>
> Three circuits, covering twelve states, have held that foreclosure proceedings are debt collection under the FDCPA, see Kaymark v. Bank of Am., N.A., 783 F.3d 168, 179 (3d Cir. 2015); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461–63 (6th Cir. 2013); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376–77 (4th Cir. 2006); see also Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234–36 (3d Cir. 2005), along with the Supreme Courts of Alaska and Colorado. See Alaska Tr., LLC v. Ambridge, 372 P.3d 207, 213–216 (Alaska 2016); Shapiro & Meinhold v. Zartman, 823 P.2d 120, 123–24 (Colo. 1992) (en banc).
>
> &ast; &ast; &ast;
>
> I rely on the venue clause because it demonstrates that Congress understood that mortgage foreclosure proceeding constitutes a unique way to enforce a security interest, and supports the broader proposition that a foreclosure proceeding meets the definition of debt collection. Kaymark, 783 F.3d at 179. Thus, the Third Circuit has observed that "[n]owhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of 'debt collection' under the FDCPA, and it is even contemplated in various places in the statute." Id. (citing, inter alia, 15 U.S.C. § 1692i).

The Sixth Circuit noted that if a mortgage foreclosure action were not debt collection, 15

U.S.C. §1692i, which regulates the venue of mortgage foreclosures and only applies to a "debt

collector," would otherwise allow in rem actions to be brought in remote venues:

> Consider also § 1692i. This section requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation"—e.g., a mortgage foreclosure action—to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). Although the provision itself does not speak in terms of debt collection, it applies only to "debt collectors" as defined in the first sentence of the definition, id. § 1692a(6), which does speak in terms of debt collection. This suggests that filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act. (704 F.3d at 462)

---

[10] California law allows for judicial and non-judicial foreclosure proceedings, but unlike New York law, does not allow deficiency judgments. "Both are intended to obtain money by forcing the sale of property being foreclosed upon."

Glazer v. Chase Home Finance, LLC, 704 F.3d 453 (6th Cir. 2013). Accord, Kaltenbach v. Richards, supra, 464 F.3d 524, 528 (5th Cir. 2006). Indeed, 15 U.S.C. §1692i(a)(1) applies to "any" legal "action to enforce an interest in real property securing the consumer's obligation,"— i.e., equitable proceedings—not just one in which a deficiency is sought. "Any" also does not suggest it is limited to actions by lawyers who also collect money, i.e., less than "any." Shapiro & Meinhold v. Zartman, 823 P.2d 120, 123 (Colo. 1992) (proceeding to authorize sale under power of sale is covered).

The Second Circuit's decision in Romea v. Heiberger & Assocs., 163 F.3d 111 (2d Cir. 1998), establishes the principle that debt collection activity otherwise subject to the FDCPA does not lose its character simply because it was undertaken in connection with an action against the consumer's property. Applying the FDCPA to New York foreclosure proceedings does not affect the nature of the foreclosure action. The mortgage is incident to the debt. "Heiberger maintains that the matter of the rent owed by the tenant is 'incidental' to the summary proceeding's primary purpose, that of regaining possession of the premises." (Id.) Rejecting the argument, the Second Circuit held that the statutory notice that precedes the filing of an eviction is an attempt to collect a debt even if only eviction is sought, because the proceeding must be terminated if the consumer tenders money, and at bottom the landlord wants money, not vacant property. (163 F.3d at 116) Held: "[A] tenant can avoid the eviction proceeding by paying the owed rent. Although Heiberger is correct that the notice required by §711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection." (Id.) See also Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1218 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the

enforcement of a security interest.").

> [W]e recognized in Romea v. Heiberger & Associates, 163 F.3d 111 (2d Cir.
> 1998), that a letter to a tenant threatening to initiate summary eviction
> proceedings unless the tenant paid back rent constituted a "communication" for
> purposes of the FDCPA. Id. at 116-18. The fact that the letter "also served as a
> prerequisite to commencement of the Article 7 [of the New York Real Property
> Actions and Proceedings Law] process" was deemed "wholly irrelevant to the
> requirements and applicability of the FDCPA" because the "aim in sending the
> letter was at least in part to induce [the tenant] to pay the back rent she allegedly
> owed." Id. at 116. In Romea, we considered the FDCPA's "process server
> exemption" and concluded that "[i]f Congress had wanted to exempt any
> document that was served on the consumer, rather than just the delivery of such a
> document, it presumably would have adopted language akin to that in
> § 1692e(11), which exempts 'a formal pleading made in connection with a legal
> action' from certain, but not all, of the FDCPA's disclosure requirements." Id. at
> 117 n.7 (emphasis added).

Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006).

As explained in Heintz, collecting a debt broadly encompasses any activity that involves

"obtain[ing] payment or liquidation of it, either by personal solicitation or legal proceedings."

514 U.S. at 294 (quoting Black's Law Dictionary 263 (6th ed. 1990)). New York's judicial

foreclosure process is designed to do just that by allowing the debt collector to ask a court to

force a sale of the mortgage property and, if "the debt remain[s] unsatisfied," to "award payment

. . . of the whole residue" or such other amount as the court may determine. RPAPL § 1371(1).

New York law itself treats the foreclosure proceeding as a single action. See Steuben

Trust Co. v. Buono, 254 A.D.2d 803, 804, 677 N.Y.S.2d 852, 852 (4th Dep't 1998) ("A motion

for a deficiency judgment is part of, and not separate from, the foreclosure action.") (citing

Sanders v. Palmer, 507 N.Y.S.2d 844, 845, 499 N.E.2d 1242, 1243 (1986)). Moreover, a

consumer is liable for a deficiency judgment if he is simply "made a defendant in the action, and

has appeared or has been personally served with the summons" in the foreclosure proceeding.

RPAPL § 1371(1).

Similarly, in this case Consumer can avoid the foreclosure by paying money. RPAPL § 1341. See Hooks v. Forman Holt Eliades & Ravin LLC, 11 Civ. 2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015), noting that both eviction and foreclosure notices are intended to induce the recipient to pay money and avoid the loss of property. Accord, Rinaldi v. Green Tree Servicing LLC, 14-cv-8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015) (following Glazer). See Hart v. FCI Lender Services, supra, 797 F.3d at 226 and n. 7 (Romea applies to demand for payment of mortgage loan).

For these additional reasons, Pleadings filed in the foreclosure action are communications in connection with collection of the debt under the FDCPA.

### 2. The exhibited monthly statements mailed by Chase to Consumer within the past year are regular debt collection activity.

The Second Circuit's recent decision, Hart v. FCI Lender Services, Inc., 797 F.3d 219 (2d Cir. 2015), construed the term "communication in connection with the collection of any debt" quite broadly, as including an attempt to collect a debt if, from an objective perspective, a consumer would consider the communication as an effort to collect a debt. Plaintiff duly alleged Chase's monthly statements to her, Exhibits E and F (Docs. 2-1 and 2-2) which state, among other things, "This communication is an attempt to collect a debt and any information obtained will be used for that purpose." The Hart panel decided, "We here conclude that whether a communication is 'in connection with the collection of [a] debt' is a question of fact to be determined by reference to an objective standard. … Indeed, we see few types of communications as more obviously 'in connection with the collection' of debts than attempts to collect debts." Ibid.

The Second Circuit's reference to an objective standard in Hart must presume a hypothetical objective consumer with knowledge of all the material facts, including the most

material fact—that the party is not a creditor but a debt collector. Otherwise, the analysis would ignore the objective purpose of the communication. In Hart, the collection firm had a subjective rationale—which the Court nevertheless rejected—that it was not contacting the consumer to collect a debt, but merely passing on information required under the Real Estate Settlement and Procedures Act. Defendants suggest, Doc. 36 at 19, a similar subjective rationale: that Chase's monthly statements were not contacting the consumer to collect a debt, but merely passing on information required under the Truth in Lending Act. Bank Defendants cite to Hill v. DLJ Mortgage Capital, Inc., 2017 WL 1732114 (2d Cir. May 3, 2017), which they neglect to point out is a Summary Order ("Rulings by Summary Order do not have precedential effect.") Hill was based on the **_absence_** of any debt collection language in statements to the consumer, the opposite here. Again, within the four corners of the Complaint, Chase is a debt collector—not a "mortgage servicer" for a creditor.

> [A]t the motion to dismiss stage, our role is to determine merely whether, when viewed objectively, the plaintiff "has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent 'in connection with the collection of [a] debt, 'rather than inquiring into the sender's subjective purpose." Hart, 797 F.3d at 225 (alteration in original). In Hart, we determined that the letter in question was unambiguously sent in connection with the collection of a debt because: (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter "emphatically announce[d] itself as an attempt at debt collection: 'THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.'" Id. at 226. We had "no difficulty in concluding" that the communication in question was an attempt to collect on a debt within the meaning of the FDCPA. Id.

Carlin v. Davidson Fink, No. 15-cv-3105 (2d Cir. 2017). This Court should follow Circuit law in Hart by rejecting Bank Defendants' rationale that Chase's monthly statements together with the other communications to Consumer were not debt collection activity.

### 3.  Plaintiff has stated § 1692e claims against the Bank Defendants.

#### a.  WFBNA and those it enlists are debt collectors liable for damages as a deterrent for behaving like creditors as if they had Consumer's prior consent.

It suffices to say that Plaintiff alleged that "Wells Fargo, in placing Plaintiff's debt with Chase and the Stiene Defendants, and caused the Stiene Defendants to send communications to both the Plaintiff and the New York court, and caused Chase to send its monthly statements to Plaintiff, falsely communicating (or alternatively, failing to communicate) the name of the creditor to whom the debt is owed relating to Plaintiff's debt, all in violation of the FDCPA, specifically §§ 1692c and 1692e." Complaint ¶ 49. In response, Bank Defendants argue that WFBNA is collecting its own debt it received prior to default. Discovery may uncover Consumer's creditor, if any, but it's not WFBNA. Bank Defendants argue that Plaintiff's § 1692e claim, which she presses under essentially the same standard as § 1692g(a)(2), is evaluated "according to how the 'least sophisticated consumer' would understand the communication." But as has just been pointed out, that objective consumer in Hart would also know that WFBNA cannot be a creditor. See Complaint, ¶¶ 47, 58.

#### b.  The Rooker-Feldman doctrine, whether properly stated or not, cannot be applied in this case.

Bank Defendants suggest the application of the so-called Rooker-Feldman doctrine. In support of their suggestion they cite (Doc. 36, Page 25 of 28) ultimately to Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) which quotes a portion of Exxon Mobil Corporation v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005). The Bank Defendants do not discuss and demonstrate that this federal action brought under 15 U.S.C. § 1692k jurisdiction somehow implicates 28 U.S.C. § 1257 to deprive that jurisdiction. Bank Defendants' call for the application of Rooker-Feldman comes from a profound point of misunderstanding that Plaintiff's

invocation of the term "creditor" necessarily means that the state court judgment was improper. (Doc. 36, Page 26 of 28.) Plaintiff simply alleges that Defendant WFBNA is not a creditor under FDCPA. Defendants do not point out in the Complaint where the four requirements in Hoblock are met, e.g., where she complains of injuries caused by a state court judgment, or where she invites this district court to review and reject a state court judgment. Indeed they cannot. Nor is Plaintiff a "state court loser" because, as Defendants acknowledge, the state court judgment is appealed and therefore the state proceedings have not "ended" as required under Exxon; the time to appeal to New York's highest court where relief may be had has not been allowed to expire, see footnote below.[11] Success under FDCPA "would not 'necessarily imply' the invalidity of the state-court judgment; that outcome is "hardly inevitable." Cf. Skinner v. Switzer, 131 S.Ct. 1289 (2011) ("stress[ing] the importance of the term 'necessarily'").[12]

For the foregoing reasons and in light of Plaintiff's Complaint, this case bears little resemblance to the notion of a direct appeal of the issues raised and considered in the state court; this district court has subject matter jurisdiction and the branch of Defendants' motion under Fed. R. Civ. P. 12(b)(1) should be denied.

---

[11] The Second Circuit's standard for the application of the Rooker-Feldman doctrine in Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77 (2005) is an improperly stated rule of law in serious disagreement with the seven other Circuits which have addressed the matter, and there is doubt as to the constitutionality and adequacy of the precedent relied upon in the Second Circuit. See Parker v. Lyons, et al., 757 F.3d 701 (7th Cir. 2014)(collecting cases); Houston v. Venneta Queen; EP Energy E&P Company, L.P., No. 14-30512 (5th Cir. 2015); e.g., Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17 (1st Cir. 2005)(noting a fifth condition, "It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended.") The Second Circuit stands alone with its simple four-condition test because the material fact that the state appellate process implied in § 1257 is pending and the judgment could ultimately be vacated is not analyzed but assumed otherwise (against Exxon-Mobil). See Michael V. Gabriele v. American Home Mortgage Servicing, Inc., and Law Office of Martha Croog, LLC, No. 12-cv-985 (2d Cir. 2012) (Summary Order).

[12] In Skinner, the Supreme Court held that:
> Skinner's litigation, in light of Exxon, encounters no Rooker-Feldman shoal. "If a federal plaintiff 'present[s] [an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. id., at 292--293 (quoting GASH Assocs. v. Rosemont, 995 F. 2d 726, 728 (CA7 1993).

      **c.** **Issue Preclusion (collateral estoppel): to the extent New York law supersedes FDCPA § 1692a(5) to determine the preclusive effect of the judgment, Defendants' motion failed to demonstrate that the Complaint raised an issue subject to this defense under Fed. R. Civ. P. 12(b)(6).**

Ordinary issue preclusion does not prevent federal adjudication of this private right of action, since the same issues were not necessarily decided in the state court. "The party invoking collateral estoppel must demonstrate the identity of the issues ... and must establish that the issues were previously decided on the merits," while "[t]he party seeking to defeat the application of the defense has the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior action." Lefkowitz v. Bank of New York, 676 F.Supp.2d 229, 271 (S.D.N.Y. 2009).

Even assuming Plaintiff's answer in the state court complained of all the same misconduct as alleged in her federal complaint—which it did not (Defendants do not attempt to raise *claim* preclusion)—determining whether that misconduct amounted to a lack of standing requires a substantially different analysis than determining whether it violated the FDCPA. Compare Deutsche Bank Nat'l Trust Co. v. Whalen, 107 A.D.3d 931, 932, 969 N.Y.S.2d 82, 83 (2d Dept. 2013) (evidence that original note and mortgage were delivered to custodian was sufficient to establish plaintiff's standing)[13] with the definition of "creditor" under FDCPA § 1692a(4) ("The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.") Defendants have not shown that Plaintiff's federal issue is implicated in, or has any connection with, summary judgment or the judgment of foreclosure and sale. *If they had*, Consumer could demonstrate in her favor from a more completely exhibited

---

[13] See Reply Affirmation of Michelle Tarson, ¶¶ 28-31, stated basis for WFBNA's standing to foreclose.

state court record—including the papers on which summary judgment was granted, the state court's analysis of them, and her appellant brief and appendix filed in the appeal—that WFBNA's counsel described her opposition as: "Defendant merely attacks the Affidavit of Yolanda Gardner (the "Gardner Affidavit") presented in support of Plaintiff s motion on the erroneous grounds that the exhibits to the affidavit are not properly introduced business records."

Defendants have failed to first meet their burden to (1) "demonstrate the identity of the issues" and (2) "establish that the issues were previously decided on the merits." The issue of whether a foreclosing plaintiff is a creditor under federal law is not identical or substantially similar to any issue necessarily decided in the state court, and the "standing" issue in New York does not decide the issue here, see Complaint, fn.1; ¶ 54. Defendants failed to comprehensively discuss, much less *demonstrate*, how the FDCPA definition of "creditor" and that WFBNA received transfer of the debt after default, but prior to initiating foreclosure, is an issue that could have been raised as a defense to defeat standing in the foreclosure action such that the Court might conclude as a matter of law that issue preclusion applies. Defendants also do not demonstrate how applying preclusion *under New York law*, which must yield to the FDCPA, doesn't make the phrase "whether or not such obligation has been reduced to judgment" in § 1692a(5) superfluous.

## CONCLUSION

The Verified Complaint is sufficient to state a plausible claim under the FDCPA and this Court should give effect to that remedial act of Congress according to its terms and entirely deny the Bank Defendants' motion to dismiss Plaintiff's Complaint as to each of them.

Respectfully submitted,

Nicole Johnson-Gellineau

## CERTIFICATE OF SERVICE

I certify that the foregoing PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS JPMORGAN CHASE; AND WELLS FARGO, AS TRUSTEE FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2007-FRE1, ASSET-BACKED PASS-THROUGH CERTIFICATES TO DISMISS PLAINTIFF'S COMPLAINT was filed with the Court on Thursday, October 12, 2017 and the parties' Counsel will be notified, and may access this filing, through the Court's ECF system.

Nicole Johnson-Gellineau

26