**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NICOLE JOHNSON-GELLINEAU | ) | Civil Action No. 7:16-cv-09945-KMK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **MOTION OF DEFENDANTS** |
| STIENE & ASSOCIATES, P.C.; | ) | **STIENE & ASSOCIATES, P.C.,** |
| CHRISTOPHER VIRGA, ESQ.; | ) | **CHRISTOPHER VIRGA, ESQ., AND** |
| RONNI GINSBERG, ESQ.; | ) | **RONNI GINSBERG, ESQ. TO** |
| JPMORGAN CHASE BANK, | ) | **DISMISS PLAINTIFF'S COMPLAINT** |
| NATIONAL ASSOCIATION; | ) | |
| WELLS FARGO BANK NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | |
| CARRINGTON MORTGAGE LOAN | ) | |
| TRUST, SERIES 2007-FRE1, | ) | |
| ASSET-BACKED PASS-THROUGH | ) | |
| CERTIFICATES; | ) | |
| | ) | |
| Defendants, | ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/12/17

Unrepresented Consumer-Plaintiff, Nicole Johnson-Gellineau (herein "Consumer" or "Plaintiff"), respectfully submits this her opposition to Doc. Nos. 39-43 (which are almost identical to and which Plaintiff treats as superseding Doc. Nos. 30-33), the motion of the three "Attorney Defendants" pursuant to Fed. R. Civ. P. 12(b)(6) and or 12(b)(1) to dismiss verified claims she brought against them as debt collectors under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's specific grounds are set forth in the following Memorandum.

Respectfully submitted,

Nicole Johnson-Gellineau
149 Wilkes Street
Beacon, New York 12508
Cell: 646-456-1151
nikkigelly@gmail.com



RECEIVED
OCT 12 2017
U.S.D.C.
WP

1

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT GOVERNING STANDARD....................................................................... 3

THE ALLEGATIONS IN THE COMPLAINT............................................................... 4

LEGAL ARGUMENT...................................................................................................... 4

I. THE SERVICE AND SUBMISSION OF DOCUMENTS IN THE FORECLOSURE ACTION FALLS WITHIN THE SCOPE OF THE FDCPA. ............... 4

   A. Defendants are liable for prohibited third party contacts and communications whether or not foreclosure is considered collection of a debt in this Circuit. ...............5

     1. Pleadings filed in the foreclosure action are unlawful behavior which occured in connection with collection of a debt. .................................................... 5

       a. Pleadings filed in the foreclosure action conveyed "information regarding the debt" regardless of how the recipient state court interpreted it.............................................................................................. 5

       b. Pleadings filed in the foreclosure action that can, by law, be avoided by paying money or result in a deficiency judgment against Consumer are communications in connection with collection of the debt under the FDCPA.......................................................................................................... 9

       c. Bankruptcy law does not limit or control the reach of the FDCPA in this case........................................................................................................... 15

II. PLAINTIFF'S CLAIMS ARE *NOT* BARRED BY THE ROOKER-FELDMAN DOCTRINE AND/OR THE DOCTRINE OF COLLATERAL ESTOPPEL. ................. 16

   A. The Rooker-Feldman doctrine, whether properly stated or not, cannot be applied in this case. ...................................................................................................17

   B. Issue Preclusion (collateral estoppel): to the extent New York law supersedes FDCPA § 1692a(5) to determine the preclusive effect of the judgment, Defendants' motion failed to demonstrate that the Complaint raised an issue subject to this defense under Fed. R. Civ. P. 12(b)(6). ...............................................23

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

Barbado v. U.S. Bank Nat'l Assoc., No. 14-cv-2233-NSR, (S.D.N.Y. 1/12/2016) ..................... 20

Brownell v. Krom, 446 F.3d 305 (2d Cir. 2006) ........................................................... 4

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)........................................ 4

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)............. 3

Coggeshall v. Massachusetts Board of Registration of Psychologists, No. 09-1111 (1st Cir. 2010) ............................................................................................................... 21

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991)........................................... 4

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) ............................................................... 4

Davis v. JP Morgan Chase Bank, NA, 14-cv-6263 (KMK) (S.D.N.Y. 03/30/2016)................... 18

Deutsche Bank Nat'l Trust Co. v. Whalen, 107 A.D.3d 931, 969 N.Y.S.2d 82 (2d Dept. 2013). 24

Duncan v. Walker, 533 U.S. 167 (2001)........................................................................ 3, 9

Exxon Mobil Corporation v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ................ 17, 18, 19

Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17 (1st Cir. 2005).......... 21

Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86 (2d Cir. 2015)................................... 15, 16

Glazer v. Chase Home Finance, LLC, 704 F.3d 453 (6th Cir. 2013) ..................................... 12, 15

Green v. Hocking, 9 F.3d 18 (6th Cir. 1993) (per curiam) ........................................................ 7, 8

Hart v. FCI Lender Servs., Inc., 797 F.3d 219 (2d Cir. 2015)........................................................ 15

Heintz v. Jenkins, 514 U.S. 291 (1995) ........................................................................ 2, 8

Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672 (9th Cir. 07/20/2016)................ 3

Ho v. Recontrust, No. 10-56884, 9th Cir., 05/22/2017 (Amended Opinion) ............................... 11

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) ........................... 17, 21, 22

Hooks v. Forman Holt Eliades & Ravin LLC, 11 Civ. 2767, 2015 WL 5333513 (S.D.N.Y., Sept. 14, 2015) ................................................................................................................. 15

Houston v. Venneta Queen; EP Energy E&P Company, L.P., No. 14-30512 (5th Cir. 2015)..... 21

Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85 (2d Cir. 2008) ............................................ 9

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010)........................ 5

Kaltenbach v. Richards, supra, 464 F.3d 524 (5th Cir. 2006) ...................................................... 12

Lefkowitz v. Bank of New York, 676 F.Supp.2d 229 (S.D.N.Y. 2009)....................................... 24

Michael V. Gabriele v. American Home Mortgage Servicing, Inc., and Law Office of Martha
    Croog, LLC, No. 12-cv-985 (2d Cir. 2012) (Summary Order) ............................................... 22

New Hampshire v. Maine, 532 U.S. 742 (2001) .......................................................................... 23

Parker v. Lyons, et al., 757 F.3d 701 (7th Cir. 2014)(collecting cases) ....................................... 21

Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012) ..................... 13

Rinaldi v. Green Tree Servicing LLC, 14-cv-8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015)
    ....................................................................................................................................................... 15

Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998) ................................................. passim

Sanders v. Palmer, 507 N.Y.S.2d 844, 499 N.E.2d 1242 (1986)................................................. 14

Shapiro & Meinhold v. Zartman, 823 P.2d 120 (Colo. 1992) ...................................................... 12

Skinner v. Switzer, 131 S.Ct. 1289 (2011) .................................................................................. 23

Steuben Trust Co. v. Buono, 254 A.D.2d 803, 804, 677 N.Y.S.2d 852 (4th Dep't 1998) ........... 14

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006).............................................. 4

TRW, Inc. v. Andrews, 534 U.S. 19 (2001) ................................................................................. 3

United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989) ..................................................... 10

Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014) (per curiam) ......... 19

Wells Fargo Bank National Association v. Nicole Johnson, et al., App. Division, 2d. Dept., No.:
    2016-05466 ................................................................................................................................... 1

## Statutes

11 U.S.C. § 524.............................................................................................................................. 15

12 U.S.C. § 5512(b)(4)(B) ............................................................................................................. 3

15 U.S.C. § 1601 et seq. (Consumer Credit Protection Act) ......................................................... 4

15 U.S.C. § 1692(b) ................................................................................................. 22

15 U.S.C. § 1692(e) ................................................................................................. 22

15 U.S.C. § 1692a(2) ........................................................................................ 5, 7, 12

15 U.S.C. § 1692a(4) ................................................................................... 1, 2, 13, 24

15 U.S.C. § 1692a(5) ................................................................................... 1, 5, 17, 23

15 U.S.C. § 1692a(6) ................................................................................................. 11

15 U.S.C. § 1692a(7) ................................................................................................... 6

15 U.S.C. § 1692b ..................................................................................................... 6

15 U.S.C. § 1692c(b) ...................................................................... 2, 5, 6, 7, 8, 9, 12, 13

15 U.S.C. § 1692c(c) .................................................................................................. 7

15 U.S.C. § 1692e(11) ......................................................................................... 14, 15

15 U.S.C. § 1692g(a)(4) ............................................................................................ 13

15 U.S.C. § 1692g(b) ................................................................................................. 7

15 U.S.C. § 1692g(b) ................................................................................................ 13

15 U.S.C. § 1692g(d) ................................................................................................ 15

15 U.S.C. § 1692i .............................................................................................. 11, 12

15 U.S.C. § 1692i(a)(1) ....................................................................................... 11, 12

15 U.S.C. § 1692i(b) ........................................................................................... 12, 13

15 U.S.C. § 1692k ......................................................................................... 9, 17, 22

15 U.S.C. § 1692k(e) .................................................................................................. 3

15 U.S.C. § 1692l ...................................................................................................... 3

15 U.S.C. § 1692l(b)(6) .............................................................................................. 3

15 U.S.C. § 1692l(d) .................................................................................................. 3

15 U.S.C. § 1692n ............................................................................................... 8, 25

15 U.S.C. § 1692o .............................................................................................. 15, 25

28 U.S.C. § 1257 ............................................................................................ 17, 22

28 U.S.C. § 1331 ................................................................................................... 22

28 U.S.C. § 1738 ................................................................................................... 23

Const., Art XI, Clause 2 ........................................................................................ 25

RPAPL § 1341 ...................................................................................................... 15

RPAPL § 1371(1) .................................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 23

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 23

**Other Materials**

132 Cong. Rec. H10,031 (1986) .............................................................................. 7

Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, filed 08/20/2014 ............................................................................................................ 3

Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiff-Appellant and Reversal in Cohen v. Ditech Financial LLC and Rosicki, Rosicki & Associates, P.C., No. 17-950, 2d Cir., filed on June 1, 2017 .................................................................... 10

Brief of the Consumer Financial Protection Bureau As Amicus Curiae In Support Of Plaintiff-Appellant's Petition for Rehearing En Banc or Rehearing By The Panel, Marx v. General Revenue Corporation, No. 10-1363, 10th Cir., dated January 26, 2012 .................................... 6

## PRELIMINARY STATEMENT

For the purpose of this federal action, Plaintiff embraces the April 2016 judgment of the Supreme Court of the State of New York ("judgment" of the "state court"), and readily concedes that the state court adjudged: that she was in default as alleged, that WFBNA had standing to foreclose, that Plaintiff owed $430,431.62 to WFBNA, and that WFBNA be permitted to proceed with a foreclosure sale of the Beacon, New York property to satisfy the judgment. The judgment, procured by debt collectors and not a creditor, is not central to Plaintiff's independent claim; it is simply a manifestation of the debt asserted to be owed, "whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5). Plaintiff's appeal of that judgment is pending. See Wells Fargo Bank National Association v. Nicole Johnson, et al., App. Division, 2d. Dept., No.: 2016-05466.

Plaintiff objects to Defendants' conflation of the FDCPA term "creditor" as defined in 15 U.S.C. § 1692a(4) with that word in its other usages outside the Act. The state court did ***not*** adjudge that WFBNA was Plaintiff's "creditor" as defined in the FDCPA,[1] even though it may have necessarily decided that WFBNA had "standing" to foreclose. WFBNA's standing to foreclose in the New York court is not challenged by the Verified Complaint.

Defendants' subjective purpose in taking the foreclosure action to judgment under state law is "wholly irrelevant to the requirements and applicability of the FDCPA" to their communications, Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998). Defendants characterize their activity as being in the context of a foreclosure in equity, but the "set of facts" cognizable under the FDCPA is litigation in the context of debt collection whether or not foreclosure is, by itself, collection of a "debt" under Second Circuit law.

---

[1] The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

1

Whether WFBNA is the entity to whom Plaintiff owes her debt is not dispositive of whether WFBNA is her "creditor" under the statute in light of the term's exclusion, "but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). WFBNA is factually and plausibly alleged to fit precisely within that exclusion.

Consumer's allegations are based upon the Attorney Defendants' actions in sending notices to me and to the state court in connection with the collection of the alleged debt. The latter are prohibited contacts with third party in violation of 15 U.S.C. § 1692c(b), see Complaint, ¶¶ 30, 31, 33, 56. It is undisputed that Attorney Defendants are debt collectors. Attorney Defendants seek dismissal because, in their erroneous view of the law, in seeking a judgment of foreclosure and sale, "the service of documents in the context of a foreclosure proceeding does not fall within the purview of the FDCPA." Doc. 42 at 1.

Each of those actions of the Attorney Defendants was a ***step*** **in the process**, and ***part*** **of a strategy**, to make collection of the same obligation Chase is attempting to collect via monthly statements arising from the same transaction more likely to succeed, either *directly* from Consumer herself, or *indirectly* through foreclosure under New York law which ***provides for both a sale and deficiency judgment in one action unless the defendant pays up***. This activity is the U.S. Supreme Court's very definition of debt collection. In Heintz v. Jenkins, 514 U.S. 291 (1995), the Court concluded that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts" and, thus, is subject to the FDCPA, 514 U.S. at 294 (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings")).

Plaintiff has included cites to amicus briefs filed by the CFPB for due consideration by this Court for this reason: The Consumer Financial Protection Bureau has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA, see Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672, n.3 (9th Cir. 07/20/2016); Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez, Dkt. No. 14, Page 28 of 42, filed 08/20/2014 ("Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its interpretation of the Act is therefore entitled to deference." See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) (holding that "if the statute is silent or ambiguous with respect to the specific issue" a court should defer to a reasonable administrative interpretation of the statute).

Consumer-Plaintiff has, beyond the speculative level, claimed a right to actual damages for violation of the FDCPA by the Attorney Defendants for their *direct* liability thereunder. The Motion of the Attorney Defendants should be denied in its entirety.

## RELEVANT GOVERNING STANDARD

Plaintiff agrees with the standard of review for a motion pursuant to FRCP 12(b)(6) except to add the following: "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) quoting Duncan v. Walker, 533 U.S. 167, 174 (2001). Because it is part of the Consumer

Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its consumer protection purposes. Additionally, the Court is required to construe liberally pro se pleadings and interpret them "to raise the strongest argument that they suggest," Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

Preliminarily, as to Defendants' Attorney Affirmation and Exhibits, the Court should decline to consider it at this juncture. In ruling on a motion to dismiss, "the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference." Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted). Still, a document that is not incorporated by reference may nevertheless be considered "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted). And even though the purpose of this restriction is to provide the plaintiff with notice of and an opportunity to respond to the documents being considered, see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough," Chambers, 282 F.3d at 153 (citation omitted).

### THE ALLEGATIONS IN THE COMPLAINT

Plaintiff has no quarrel with the allegations in the Verified Complaint.

### LEGAL ARGUMENT

## I. THE SERVICE AND SUBMISSION OF DOCUMENTS IN THE FORECLOSURE ACTION FALLS WITHIN THE SCOPE OF THE FDCPA.

Attorney Defendants argue that the service and submission of documents in the

4

foreclosure action does not fall within the scope of the FDCPA. "[T]he FDCPA's definition of 'debt collector' includes lawyers who regularly, through litigation, attempt to collect consumer debts," <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573, 593 (2010).

### A. Defendants are liable for prohibited third party contacts and communications whether or not foreclosure is considered collection of a debt in this Circuit.

#### 1. Pleadings filed in the foreclosure action are unlawful behavior which occured in connection with collection of a debt.

"The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Broadly, all that's required is that a "communication" be in connection with collection of a debt to be covered. But for the debt, Defendants would not have the information to transmit to the state court. Why does Chase bother to regularly send monthly statements about the debt stating the Amount Due, threatening foreclosure, and that "payment must be received by certified funds" (see Doc. 2-1, p. 55 of 60) if all WFBNA ever wanted is to enforce a security interest? It doesn't. Circuit law in <u>Romea</u> covers this. WFBNA and Chase never had, and do not seek, Consumer's place of abode. Rather, WFBNA seeks to recover "sums of money that are due and owing." See Exhibit A, Brunton Affidavit, Doc. 2, Page 35 of 60, ¶ 7; Complaint, ¶¶ 21, 35, 36, 57. Chase's monthly statements and Attorney Defendants communicat[ing] with the state court are in connection with the same debt "arising out of" the same transaction, see § 1692a(5).

Plaintiff has sufficiently and plausibly alleged prohibited third party contacts and communications for which Attorney Defendants are directly liable, § 1692c(b), whether or not foreclosure is considered debt collection in this Circuit:

#### a. Pleadings filed in the foreclosure action conveyed "information regarding the debt" regardless of how the recipient state court interpreted it.

5

15 U.S.C. § 1692c(b), Communication with third parties, provides:

> Except as provided in section 804 [Acquisition of location information], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Defendants suggest a subjective rationale that they were not contacting the state court to collect a debt, but merely obtain a judgment of foreclosure in equity. Section 1692c(b) does not leave it up to the recipient to interpret the transmission of information regarding the debt:

The CFPB advised, in its Brief Of The Consumer Financial Protection Bureau As Amicus Curiae In Support Of Plaintiff-Appellant's Petition For Rehearing En Banc Or Rehearing By The Panel, Marx v. General Revenue Corporation,[2] No. 10-1363, 10th Cir., dated January 26, 2012, (the "Marx Brief"), as follows:

> The Act's structure reflects Congress's judgment that debt collectors' interests generally outweigh the risks to consumers only when collectors need to determine "the whereabouts of missing debtors." Id. In particular, with few exceptions, the Act allows debt collectors to communicate with third parties only to ascertain "location information"—the consumer's home address, phone number, or place of employment. 15 U.S.C. §§ 1692a(7), 1692b, 1692c(b).
>
> * * *
>
> Specifically, *any transmission* of information regarding a debt qualifies as a "communication."
>
> * * *
>
> Most information held by debt collectors constitutes "information regarding a debt"—e.g., the debtor's name, account number, and creditor. The collector would not have the information, or be able to transmit it to anyone, but for the debt. That information remains "information regarding a debt" when the collector

---

[2] The CFPB specifically argued that, "The panel's erroneous interpretation of the FDCPA's prohibition on communicating with third parties erodes an important consumer protection, disregards the Act's text and structure, and disturbs accepted understandings of the Act." The Brief is available at http://www.consumerfinance.gov/f/201202_cfpb_amicus-brief_marx-v-grc.pdf. The Bureau could not participate in the earlier briefing because it did not assume its powers until July 21, 2011, after briefing concluded. Rehearing was denied. The U.S. Supreme Court, in Case No. 11–1175, decided February 26, 2013, (Justices Sotomayor and Kagan dissenting) ultimately ruled against Marx and the United States on other grounds: "Section §1692k(a)(3) is not contrary to, and, thus, does not displace a district court's discretion to award costs under, Rule 54(d)(1)."

transmits it to a third party, regardless of how the recipient interprets it.

* * *

Here, the statutory structure discussed above shows that the definition of "communication" [in § 1692a(2)] is not meant to limit the ordinary meaning of "communicate" in §1692c(b). Without that qualification, § 1692c(b) is properly interpreted as an absolute prohibition on third-party contacts, subject to narrow exceptions.

Marx Brief, pp. 10, 13–16 of 35 (emphasis and bracketed material added).

In Green v. Hocking, 9 F.3d 18 (6th Cir. 1993) (per curiam), the Court of Appeals for the Sixth Circuit candidly pointed out that, if read literally, "15 U.S.C. § 1692c(b) prevents an attorney from communicating with any third party pertaining to the consumer's debt. Under this portion of the Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit." The panel called that an example of an absurd outcome because "[a]n examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law." But "[t]he act only regulates the conduct of debt collectors, it does not prevent ***creditors***, through their attorneys, from pursuing any legal remedies available to them." 132 Cong. Rec. H10,031 (1986) (emphasis added). The Green panel, way back in 1993, reasoned this way:

An examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law. A contrary result would produce absurd outcomes. For example, 15 U.S.C. § 1692g(b) provides that collection efforts must cease if, within thirty days of receiving a communication, the debtor disputes the amount owed. 15 U.S.C. § 1692c(c) provides that all debt communications must cease once the debtor makes such a request. Read literally, these provisions would mean that, once a creditor initiates a lawsuit, and the consumer responds that he does not owe the amount alleged, or that he wishes to cease communications, it would be unlawful to bring a motion for summary judgment. Or, if an attorney first writes a letter, and the consumer asks that communications cease, it would be unlawful to instigate a lawsuit. Additionally, 15 U.S.C. § 1692c(b) prevents an attorney from communicating with any third party pertaining to the consumer's debt. Under this portion of the Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit. Furthermore, Section 1692e(5) makes it unlawful to threaten "to take any action that cannot legally be taken or that is not intended to be taken."

7

Assuming a lawsuit is brought, and the consumer prevails to any extent, it would appear that the law has been broken, as the creditor threatened to take action that apparently, as a result of the judgment, "cannot legally be taken." These examples demonstrate that appellant's interpretation, that every act by an attorney in litigation should be covered by the Act, is wrong. Neither by cited language, nor by intent, did Congress prevent attorneys from engaging in the normal practice of law.

First, the Act does not "prevent" "every" act by an attorney. Indeed the Act does not "prevent" anything (in that sense it would be odd if the Act *empowered a consumer* to cause a debt-collecting lawsuit to grind to a halt); it only makes debt collectors liable to the consumer. "Without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy," the debt collector is left with at least one choice being whether to violate the act or cease collection. See § 1692c(b). Defendants could have ceased collection efforts at any time to avoid further liability.

Second, the 1993 panel in Green, in disagreeing with the appellant's argument that "attorneys, even when engaged exclusively in litigation tasks such as filing complaints, are covered by the [FDCPA]," wrote, "we are unwilling to impose a system of strict liability that conflicts with the current system of judicial regulation. We therefore hold that the actions of an attorney while conducting litigation are not covered by the FDCPA." Ibid. In this Circuit, "[i]f the statutes did conflict, moreover, it would be [state law], and not the FDCPA, that would have to yield. See 15 U.S.C. § 1692n." Romea, fn. 10.

***BUT,*** in 1995, the U.S. Supreme Court ruled in Heintz v. Jenkins, 514 U.S. 291 (1995) that ***there is no such conflict***. The FDCPA does not provide for any injunctive relief or interference with state courts, but instead makes debt collectors liable to consumers for statutory and actual damages for "deterrent effect," Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85,

8

91 (2d Cir. 2008); Complaint, ¶ 1, § 1692k. The Sixth Circuit acknowledged that <u>Green</u> had been superseded by <u>Heintz</u>.[3] ***Critically, that leaves intact the panel's 1993 analysis as to the literal meaning of § 1692c(b), which agrees with both the CFPB and the text and structure of the FDCPA itself today.*** That is what this Court must enforce here.

Defendants' filings are prohibited "third party ***contacts***" which transmitted Plaintiff's name, WFBNA's name as trustee, and the foreclosure caption, case numbers, and facts about the alleged debt to which the alleged mortgage is incidental. Defendants have the burden to demonstrate that the contacts fit within the specific exceptions, which they failed to do in their motion. Unrepresented Consumer incorporates the Marx Brief and requests the Court take judicial notice as official interpretation of the CFPB to make the strongest argument it suggests. Objectively, the Defendants were prohibited from transmitting the information about the alleged debt to the state court regardless of whether that court interpreted it in law or equity. This Court must decline to render a provision of the FDCPA inoperable. <u>TRW</u>, (supra).

### b. Pleadings filed in the foreclosure action that can, by law, be avoided by paying money or result in a deficiency judgment against Consumer are communications in connection with collection of the debt under the FDCPA.

The plausibility to be decided here is whether the subjective purpose of Defendants' contacts with the state court defeats the objective standard in 15 U.S.C. § 1692c(b) where transmission of information regarding the debt is concerned. "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." <u>United States v. Ron</u>

---

[3] "'[T]he Supreme Court's reasoning in Heintz v. Jenkins, 514 U.S. 291 (1995), ... affirmed the Seventh Circuit's conclusion that the FDCPA applies to lawyers acting as debt collectors. We previously decided otherwise, based in part on our view that any other rule 'automatically would make liable any litigating lawyer who brought, and then lost, a claim, against a debtor.'" <u>Jerman v. Carlisle, Mcnellie, Rini, Kramer & Ulrich LPA</u>, 538 F.3d 469 (6th Cir. 2008).

Pair Enters., Inc., 489 U.S. 235, 242 (1989) (internal quotation marks and brackets omitted).

Because the FDCPA does not expressly delineate the set of activities that are "in connection with the collection of any debt," the CFPB is authorized to issue advisory opinions. Plaintiff incorporates the Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiff-Appellant and Reversal in Cohen v. Ditech Financial LLC and Rosicki, Rosicki & Associates, P.C., No. 17-950, 2d Cir., filed on June 1, 2017. In Cohen, presently before the Second Circuit, the CFPB advised that "[a] debt collector that initiates a foreclosure proceeding under New York law that *can* result in a deficiency judgment against a consumer has taken action in connection with the collection of any debt and is, therefore, subject to those provisions of the Act," because the purpose of foreclosure is to obtain payment on the underlying debt. "Where, as here, a court sitting in equity may award a deficiency judgment against a consumer on a consumer debt, the Act manifestly applies." Id. Plaintiff, out of an abundance of caution, asserts this additional argument here and requests the Court take judicial notice of the CFPB's Cohen amicus brief as official interpretation of the Act to make the strongest argument it suggests in the best light for Plaintiff in opposition to dismissal.

Although Defendants point out that the Second Circuit has not addressed whether *instituting* a foreclosure action constitutes debt collection, they suggest (Doc. 42 at 5) that the service and submission of documents in the Foreclosure Action does not fall within the scope of the FDCPA because "the large majority" of the courts in the Second Circuit have held, *under New York law*, that the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for the purposes of the FDCPA. A most scathing dissent to Defendants' line of reasoning was given by The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of

New York, sitting by designation in Ho v. Recontrust, No. 10-56884, 9th Cir., 05/22/2017

(Amended Opinion).[4]

> We do not decide cases on the basis of "head counts" of district court cases, although we should at least be concerned when we reach a result that has been rejected by every circuit that has decided the issue in a published opinion.
>
> \* \* \*
>
> Three circuits, covering twelve states, have held that foreclosure proceedings are debt collection under the FDCPA, see Kaymark v. Bank of Am., N.A., 783 F.3d 168, 179 (3d Cir. 2015); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461–63 (6th Cir. 2013); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376–77 (4th Cir. 2006); see also Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234–36 (3d Cir. 2005), along with the Supreme Courts of Alaska and Colorado. See Alaska Tr., LLC v. Ambridge, 372 P.3d 207, 213–216 (Alaska 2016); Shapiro & Meinhold v. Zartman, 823 P.2d 120, 123–24 (Colo. 1992) (en banc).
>
> \* \* \*
>
> I rely on the venue clause because it demonstrates that Congress understood that mortgage foreclosure proceeding constitutes a unique way to enforce a security interest, and supports the broader proposition that a foreclosure proceeding meets the definition of debt collection. Kaymark, 783 F.3d at 179. Thus, the Third Circuit has observed that "[n]owhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of 'debt collection' under the FDCPA, and it is even contemplated in various places in the statute." Id. (citing, inter alia, 15 U.S.C. § 1692i).

The Sixth Circuit noted that if a mortgage foreclosure action were not debt collection, 15 U.S.C. §1692i, which regulates the venue of mortgage foreclosures and only applies to a "debt collector," would otherwise allow in rem actions to be brought in remote venues:

> Consider also § 1692i. This section requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation"—e.g., a mortgage foreclosure action—to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). Although the provision itself does not speak in terms of debt collection, it applies only to "debt collectors" as defined in the first sentence of the definition, id. § 1692a(6), which does speak in terms of debt collection. This suggests that filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act. (704 F.3d at 462)

---

[4] California law allows for judicial and non-judicial foreclosure proceedings, but unlike New York law, does not allow deficiency judgments. "Both are intended to obtain money by forcing the sale of property being foreclosed upon." Id.

Glazer v. Chase Home Finance, LLC, 704 F.3d 453 (6th Cir. 2013). Accord, Kaltenbach v. Richards, supra, 464 F.3d 524, 528 (5th Cir. 2006). Indeed, 15 U.S.C. §1692i(a)(1) applies to "any" legal "action to enforce an interest in real property securing the consumer's obligation,"— i.e., equitable proceedings—not just one in which a deficiency is sought. "Any" also does not suggest it is limited to actions by lawyers who also collect money, i.e., less than "any." Shapiro & Meinhold v. Zartman, 823 P.2d 120, 123 (Colo. 1992) (proceeding to authorize sale under power of sale is covered).

Based on a closer look at § 1692i, there is no support in the statute for the proposition (Doc. 42 at 5-6) that, "[p]rosecuting a state foreclosure action is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating."

Section 1692i(b) provides:

> § 811. Legal actions by debt collectors
>  (b) Authorization of actions
>  Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors.

Section 1692i(b) is not surplusage. Section 1692i(b) establishes that WFBNA, as a *debt collector* and not the creditor, is ***specifically*** not authorized to bring legal actions such as its foreclosure against Plaintiff, and § 1692c(b) establishes that Defendants communicating with the state court about its foreclosure is a prohibited contact regardless of (i) whether rules of procedure may generally permit it and (ii) whether a filing on behalf of a debt collector is a "communication" under § 1692a(2); they transmit information about the debt. A court of competent jurisdiction must give express permission by way of judgment obtained by the creditor. Marx Brief, fn1. ("[D]ebt collectors often may contact employers to assess garnishment possibilities *after* obtaining a court judgment.")(Emphasis in original.) This might at first only *seem* to be absurd because, how can a debt collector *obtain* a judgment without communicating with a court? The

answer is that the **_creditor_** described in § 1692a(4) must bring the legal action, § 1692i(b), and the judgment would be in favor of the creditor. WFBNA is not the creditor. See also the language of §§ 1692g(a)(4) and 1692g(b) that "the debt collector **_obtains_** any **_copy_** of a judgment" and a copy of such judgment is mailed to the consumer by the debt collector. The phrase "the express permission of a court of competent jurisdiction" in § 1692c(b) is not defined but "the express permission" arguably means by order or judgment where res judicata attaches.

The Second Circuit's decision in <u>Romea v. Heiberger & Assocs.</u>, 163 F.3d 111 (2d Cir. 1998), establishes the principle that debt collection activity otherwise subject to the FDCPA does not lose its character simply because it was undertaken in connection with an action against the consumer's property. Applying the FDCPA to New York foreclosure proceedings does not affect the nature of the foreclosure action. The mortgage is incident to the debt. "Heiberger maintains that the matter of the rent owed by the tenant is 'incidental' to the summary proceeding's primary purpose, that of regaining possession of the premises." (Id.) Rejecting the argument, the Second Circuit held that the statutory notice that precedes the filing of an eviction is an attempt to collect a debt even if only eviction is sought, because the proceeding must be terminated if the consumer tenders money, and at bottom the landlord wants money, not vacant property. (163 F.3d at 116) Held: "[A] tenant can avoid the eviction proceeding by paying the owed rent. Although Heiberger is correct that the notice required by §711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection." (Id.) See also <u>Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1211, 1218 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.").

> [W]e recognized in Romea v. Heiberger & Associates, 163 F.3d 111 (2d Cir. 1998), that a letter to a tenant threatening to initiate summary eviction proceedings unless the tenant paid back rent constituted a "communication" for purposes of the FDCPA. Id. at 116-18. The fact that the letter "also served as a prerequisite to commencement of the Article 7 [of the New York Real Property Actions and Proceedings Law] process" was deemed "wholly irrelevant to the requirements and applicability of the FDCPA" because the "aim in sending the letter was at least in part to induce [the tenant] to pay the back rent she allegedly owed." Id. at 116. In Romea, we considered the FDCPA's "process server exemption" and concluded that "[i]f Congress had wanted to exempt any document that was served on the consumer, rather than just the delivery of such a document, it presumably would have adopted language akin to that in § 1692e(11), which exempts 'a formal pleading made in connection with a legal action' from certain, but not all, of the FDCPA's disclosure requirements." Id. at 117 n.7 (emphasis added).

Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006).

As explained in Heintz, collecting a debt broadly encompasses any activity that involves "obtain[ing] payment or liquidation of it, either by personal solicitation or legal proceedings." 514 U.S. at 294 (quoting Black's Law Dictionary 263 (6th ed. 1990)). New York's judicial foreclosure process is designed to do just that by allowing the debt collector to ask a court to force a sale of the mortgage property and, if "the debt remain[s] unsatisfied," to "award payment . . . of the whole residue" or such other amount as the court may determine. RPAPL § 1371(1).

New York law itself treats the foreclosure proceeding as a single action. See Steuben Trust Co. v. Buono, 254 A.D.2d 803, 804, 677 N.Y.S.2d 852, 852 (4th Dep't 1998) ("A motion for a deficiency judgment is part of, and not separate from, the foreclosure action.") (citing Sanders v. Palmer, 507 N.Y.S.2d 844, 845, 499 N.E.2d 1242, 1243 (1986)). Moreover, a consumer is liable for a deficiency judgment if he is simply "made a defendant in the action, and has appeared or has been personally served with the summons" in the foreclosure proceeding. RPAPL § 1371(1).

Similarly, in this case Consumer can avoid the foreclosure by paying money. RPAPL

§ 1341. See Hooks v. Forman Holt Eliades & Ravin LLC, 11 Civ. 2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015), noting that both eviction and foreclosure notices are intended to induce the recipient to pay money and avoid the loss of property. Accord, Rinaldi v. Green Tree Servicing LLC, 14-cv-8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015) (following Glazer). See Hart v. FCI Lender Servs., Inc., 797 F.3d 219 (2d Cir. 2015) at 226 and n. 7 (Romea applies to demand for payment of mortgage loan).

Congress knows how to write exceptions to the FDCPA, see e.g., §§ 1692g(d), 1692e(11), and as noted above, nowhere does the FDCPA exclude foreclosure actions from its reach. The record contains no indication that New York has petitioned the CFPB as to the sufficiency of the foreclosure process to achieve the objectives of the FDCPA. See Romea, fn. 11; 15 U.S.C. § 1692o.

### c. Bankruptcy law does not limit or control the reach of the FDCPA in this case.

Attorney Defendants, Doc. 42 at 6, attempt to apply the Bankruptcy Code to the Complaint, reasoning that if foreclosing on real property is an act of a debt collector (rather than that of an enforcer of a security interest), then there would always be a debt to collect, and it's not *bankruptcy law* that post-discharge foreclosure would be prohibited as an illegal attempt to collect a discharged debt in violation of 11 U.S.C. § 524. Assuming, *arguendo* (because bankruptcy is outside the Complaint and facts in this case), that a debtor's discharge extinguishes his/her in personam liability on the note secured by a mortgage, but the secured creditor's right to foreclose on the mortgage survives and passes through the bankruptcy, that does not mean that there is a conflict between the Bankruptcy Code and the FDCPA post-discharge. See Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86 (2d Cir. 2015):

> Our Court has ruled that the FDCPA does not authorize suit during the pendency of bankruptcy proceedings. See *Simmons v. Roundup Funding, LLC,*

622 F.3d 93, 96 (2d Cir. 2010). This ruling appears to construe FDCPA provisions to be inapplicable when invoked for claims made during bankruptcy, rather than determine that such provisions have been impliedly repealed by the provision of the Bankruptcy Code authorizing a discharge injunction. See id. at 94.

\* \* \*

The Seventh Circuit concluded, "It is easy to enforce both statutes, and any debt collector can comply with both simultaneously."

\* \* \*

No irreconcilable conflict exists between the post-discharge remedies of the Bankruptcy Code and the FDCPA. There is no reason to assume that Congress did not expect these two statutory schemes to coexist in the post-discharge context. The Seventh Circuit's analysis of FDCPA and Bankruptcy Code provisions, although leading that Court to a result that differs from our *Simmons* decision in the pre-discharge context, argues against preclusion of FDCPA claims after discharge. At that point the former debtor no longer has the "protection of the bankruptcy court," *Simmons*, 622 F.3d at 96, which we deemed decisive on the preclusion issue prior to discharge.

\* \* \*

Ocwen's communication, even without a mini- *Miranda* warning, was an attempt to collect a discharged debt in violation of the Bankruptcy Code. The absence of a mini- *Miranda* warning also violated the FDCPA. There is no conflict.

\* \* \*

Ocwen contends that these [FDCPA] provisions conflict with the Bankruptcy Code because, by regulating how to collect a debt, they imply that it can collect the discharged debt, an action that the discharge injunction prohibits. But, as Garfield responds, **Ocwen can avoid violating both the cited provisions and the Bankruptcy Code simply by not attempting to collect the discharged debt. And once Ocwen tries to collect the discharged debt, it risks violation of both the cited provisions and the Bankruptcy Code. Either way, there is no conflict.**

In sum, none of Garfield's individual FDCPA claims conflicts with the discharge injunction under the Bankruptcy Code.

<u>Garfield</u> at 93 (emphasis added). Defendants argue for an imaginary world, without liability, in which they are neither prevented nor deterred from directly or indirectly collecting the debt.

## II. PLAINTIFF'S CLAIMS ARE *NOT* BARRED BY THE ROOKER-FELDMAN DOCTRINE AND/OR THE DOCTRINE OF COLLATERAL ESTOPPEL.

Attorney Defendants' call for the application of Rooker-Feldman and/or the doctrine of collateral estoppel comes from a profound point of misunderstanding that Plaintiff's claim based on the FDCPA term "creditor" necessarily means that the state court judgment was improper.

16

### A. The Rooker-Feldman doctrine, whether properly stated or not, cannot be applied in this case.

There is no basis in fact or law for Attorney Defendants' suggestion for the application of the Rooker-Feldman doctrine. In support of their suggestion they cite (Doc. 42, Page 13 of 17) ultimately to Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) which quotes a portion of Exxon Mobil Corporation v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005). Assuming, for argument's sake, that the "judgment" described as a "debt" in 15 U.S.C. § 1692a(5) mentioned in Plaintiff's Complaint is a "state court judgment," and that four requirements must be met under Hoblock, the Attorney Defendants do not discuss and demonstrate that all four requirements are actually met, and that this federal action brought strictly under 15 U.S.C. § 1692k jurisdiction implicates 28 U.S.C. § 1257. See Doc. 42, Page 14 of 17.

> "Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Phillips ex rel. Green v. City of N.Y., 453 F.Supp.2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. After Exxon Mobil, the Second Circuit reexamined Rooker-Feldman and laid out four conditions that, if met, require the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); see also Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third as 'substantive.'" Done v. Wells Fargo, N.A., No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing Hoblock, 422 F.3d at 85).

* * *

2. Substantive Requirements

17

If Plaintiffs' Second Amended Complaint merely "complain[s] of injur[ies]" caused by the state-court foreclosure judgment and seeks this Court's "review and rejection of" that judgment, then Plaintiffs' claims satisfy the substantive requirements of Rooker-Feldman and this Court lacks subject matter jurisdiction over them. Hoblock, 422 F.3d at 85; see also Scott v. Capital One, Nat'l Assocs., No. 12- CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (same). The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the "core requirement" of the Rooker-Feldman doctrine. Hoblock, 422 F.3d at 87. Accordingly, Rooker-Feldman would not prevent Plaintiffs from "raising federal claims based on the same facts as a prior state case . . . so long as the plaintiff complains of an injury independent of an adverse decision." Scott, 2013 WL 1655992, at *3; see also McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007) ("What Exxon and Hoblock do make clear is that the applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . ., but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court."). Such an "independent claim" is not barred by Rooker-Feldman, even if the claim "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." Exxon, 544 U.S. at 293 (internal quotation marks omitted); see also Hoblock, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside Rooker-Feldman's compass even if they involve the identical subject matter and parties as previous state-court suits." (citing Exxon, 544 U.S. at 293)).[6]

Davis v. JP Morgan Chase Bank, NA, 14-cv-6263 (KMK) (S.D.N.Y. 03/30/2016).

The principle behind the Rooker-Feldman doctrine seems simple enough: of all the federal courts, only the United States Supreme Court has appellate jurisdiction over state court judgments. As that Court observed in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), "what has come to be known as the Rooker-Feldman doctrine" has been "variously interpreted in the lower courts," and "the doctrine has sometimes been construed to extend far beyond the contours of the Rooker-Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law[.]" Ibid. Continuing from Exxon:

Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U. S. C. §1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of

authority, e.g., §1330 (suits against foreign states), §1331 (federal question), and §1332 (diversity). **In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.** Because §1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, e.g., Feldman, 460 U. S., at 476; Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U. S. 281, 286 (1970); Rooker, 263 U. S., at 416, the District Courts in Rooker and Feldman lacked subject-matter jurisdiction. See Verizon Md. Inc., 535 U. S., at 644, n. 3 ("The Rooker-Feldman doctrine merely recognizes that 28 U. S. C. §1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see §1257(a)."). *fn8

* * *

Nor does §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. **If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ... , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."** GASH Assocs. v. Village of Rosemont, 995 F. 2d 726, 728 (CA7 1993); accord Noel v. Hall, 341 F. 3d 1148, 1163-1164 (CA9 2003).

Exxon (emphasis added). Even with the blatant relief sought in Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014) (per curiam), the Second Circuit Court of Appeals determined that the District Court's dismissal of Vossbrinck's fraud claims "outright" was error.

To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars Vossbrinck's claim. Vossbrinck "invite[s] . . . review and rejection" of the state judgment. Id. (internal alterations and quotation marks omitted). He is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose. This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error. And the injury of which Vossbrinck "complains" in this claim for relief, and which he seeks to have remedied, is the state foreclosure judgment. This is evident from the relief Vossbrinck requests—title to and tender of his property and, in his brief on appeal, to have the state judgment declared "void." Cf. Exxon Mobil, 544 U.S. at 293 (Rooker-Feldman's "paradigm situation" is where the plaintiff has "repaired to federal court to undo the [state] judgment"). While we agree with the district court that Rooker-Feldman bars such claims, the district

court erred in dismissing these claims outright.

The cases cited by Defendants to suggest today that "any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine," and considerations as to whether claims are "inextricably intertwined"[5] with state court determinations are all old, pre-Vossbrinck (2014) cases or even pre-Exxon (2005) and cannot be persuasive any longer. Besides Plaintiff's embracing—rather than attacking—the judgment, these considerations have been clarified and superseded in Exxon and later cases. Her damages-only claim does not seek anything remotely resembling the relief Mr. Vossbrinck requested, or the relief the Barbados requested, to wit:

> Plaintiffs' "Prayer for Relief" requests, among other things, "[q]uieting title against Defendants," "[r]eturning possession of the property to Plaintiff," and "[e]xpunging the debt obligations and instruments asserted by Defendants against Plaintiff's subject property from the record." (AC, at Prayer For Relief (a)-(c).) Although Plaintiffs contend that this matter "seeks to address only the uses of... the Note," (AC ¶ 15), it is clear from Plaintiffs' requested relief that they are asking this Court to find that Defendant does not own the Note or the Mortgage, thus invalidating the foreclosure judgment and returning the property to Plaintiffs. In simplest terms, Plaintiffs appear to be arguing that Defendant lacked standing to foreclose or procured the foreclosure through fraudulent means.
> In order to grant Plaintiffs the relief they seek, this Court would need to review and reject the state court judgment.

Barbado v. U.S. Bank Nat'l Assoc., No. 14-cv-2233-NSR, (S.D.N.Y. 1/12/2016). Besides all that, the Barbados' Amended Complaint "lack[ed] any allegations asserting that Defendant is a debt collector within the meaning of the FDCPA." Id. It's no wonder their FDCPA claim was dismissed. Citing to this case mixes apples and oranges and Defendants' reliance on Barbado is misplaced in this case.

Plaintiff simply alleges that Defendant WFBNA is not a creditor under FDCPA. This independent action does not seek review or a mere revision of errors—the core essence of the appellate function. To the contrary, it raises new and original claims arising upon new facts.

---

[5] Defendants cite to Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002).

Defendants do not point out in Plaintiff's Complaint where she attacks a state court judgment. Defendants do not point out in the Complaint where the four requirements in Hoblock are met, e.g., where she complains of injuries caused by a state court judgment, or where she invites this district court to review and reject a state court judgment. Indeed they cannot. Nor is Plaintiff a "state court loser" because, as Defendants acknowledge, the state court judgment is being appealed and therefore the state proceedings have not "ended" as required under Exxon; the time to appeal has not been allowed to expire.

The Second Circuit's standard for the application of the Rooker-Feldman doctrine in Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77 (2005) is an improperly stated rule of law in serious disagreement with the seven other Circuits which have addressed the matter, and there is doubt as to the constitutionality and adequacy of the precedent relied upon in the Second Circuit. See Parker v. Lyons, et al., 757 F.3d 701 (7th Cir. 2014)(collecting cases); Houston v. Venneta Queen; EP Energy E&P Company, L.P., No. 14-30512 (5th Cir. 2015); e.g., Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17 (1st Cir. 2005) (noting a fifth condition, "It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended.")

> The district court erred in relying upon the Rooker-Feldman doctrine because, at the time that the appellants filed their federal complaint, the state case was still pending before the Massachusetts Appeals Court. It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended. Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17, 24-29 (1st Cir. 2005). Here, the state-court proceedings had not yet ended, so the Rooker-Feldman doctrine was inapposite.

Coggeshall v. Massachusetts Board of Registration of Psychologists, No. 09-1111 (1st Cir. 2010).

The Second Circuit stands alone with its simple four-condition test because the material

fact that the state appellate process implied in 28 U.S.C. § 1257 is pending and the judgment could ultimately be vacated is not analyzed but "assumed without deciding" otherwise. See Michael V. Gabriele v. American Home Mortgage Servicing, Inc., and Law Office of Martha Croog, LLC, No. 12-cv-985 (2d Cir. 2012) (Summary Order).

Even though the Second Circuit softened the application of Hoblock in Vossbrinck, as can be seen above, by starting off using the phrase "[T]o the extent," the Second Circuit's standard for the application of the Rooker-Feldman doctrine in Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77 (2005) is an improperly stated rule of law. As such, its application would violate separation of powers principles.

Moreover, the so-called jurisdictional mandate of Rooker-Feldman conflicts with other jurisdictional mandates—those of 28 U.S.C. § 1331 and 15 U.S.C. § 1692k, which reflect a congressional judgment that state court vehicles for the vindication of federal rights and interests are inadequate. See 15 U.S.C. §§ 1692(b) ("Existing laws and procedures for redressing these injuries are inadequate to protect consumers.") and 1692(e) ("It is the purpose of this title to … promote consistent State action to protect consumers against debt collection abuses.")

This case does not satisfy the substantive requirements of the Rooker Feldman doctrine: that the plaintiff complain of an injury from a state-court judgment and that the plaintiff seek federal-court review and rejection of the state-court judgment. The causes of action for … do not require that this Court review and reject the state foreclosure judgment, nor does the success of Plaintiff's sole Count depend on this Court's conclusion that the state court improperly entered a judgment of foreclosure. Success under FDCPA "would not 'necessarily imply' the invalidity of the state-court judgment; that outcome is "hardly inevitable." Cf. Skinner v. Switzer, 131 S.Ct.

1289 (2011) ("stress[ing] the importance of the term 'necessarily'").[6]

For the foregoing reasons and in light of Plaintiff's Verified Complaint, this case bears little resemblance to the notion of a direct appeal of the issues raised and considered in the state court; this district court has subject matter jurisdiction and the branch of Defendants' motion under Fed. R. Civ. P. 12(b)(1) should be denied.

**B. Issue Preclusion (collateral estoppel): to the extent New York law supersedes FDCPA § 1692a(5) to determine the preclusive effect of the judgment, Defendants' motion failed to demonstrate that the Complaint raised an issue subject to this defense under Fed. R. Civ. P. 12(b)(6).**

Collateral estoppel prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001); see 28 U.S.C. § 1738.

Defendants suggest that, instead of applying the FDCPA "broadly according to its terms," the Court should enter into issue preclusion analysis under New York law which conflicts with § 1692a(5). The alleged payment obligation, reduced to "judgment," is specifically defined a "debt" under the FDCPA, 15 U.S.C. § 1692a(5). Defendants have provided no argument in relation to the statutory text itself or the legislative history, and whether it comports with the requirements under the FDCPA. Defendants do not demonstrate how applying preclusion under state law doesn't make the phrase "whether or not such obligation has been reduced to judgment" in § 1692a(5) superfluous.

To the extent New York law applies, ordinary issue preclusion does not prevent federal adjudication of this private right of action, since the same issues were not necessarily decided in

---

[6] In Skinner, the Supreme Court held that:
  Skinner's litigation, in light of Exxon, encounters no Rooker-Feldman shoal. "If a federal plaintiff 'present[s] [an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. id., at 292- -293 (quoting GASH Assocs. v. Rosemont, 995 F. 2d 726, 728 (CA7 1993); first alteration in original).

the state court. "The party invoking collateral estoppel must demonstrate the identity of the issues ... and must establish that the issues were previously decided on the merits," while "[t]he party seeking to defeat the application of the defense has the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior action." Lefkowitz v. Bank of New York, 676 F.Supp.2d 229, 271 (S.D.N.Y. 2009).

Even assuming Plaintiff's answer in the state court complained of all the same misconduct as alleged in her federal complaint—which it did not (Defendants do not attempt to raise *claim* preclusion)—determining whether that misconduct amounted to a lack of standing requires a substantially different analysis than determining whether it violated the FDCPA. Compare Deutsche Bank Nat'l Trust Co. v. Whalen, 107 A.D.3d 931, 932, 969 N.Y.S.2d 82, 83 (2d Dept. 2013) (evidence that original note and mortgage were delivered to custodian was sufficient to establish plaintiff's standing)[7] with the definition of "creditor" under FDCPA § 1692a(4) ("The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.") Defendants have not shown that Plaintiff's federal issue is implicated in, or has any connection with, summary judgment or the judgment of foreclosure and sale. ***If they had***, Consumer could demonstrate in her favor from a more completely exhibited state court record—including the papers on which summary judgment was granted, the state court's analysis of them, and her appellant brief and appendix filed in the appeal—that WFBNA's counsel described her opposition as: "Defendant merely attacks the Affidavit of Yolanda Gardner (the "Gardner Affidavit") presented in support of Plaintiff s motion on the erroneous grounds that the exhibits to the affidavit are not properly introduced business records."

---

[7] See Reply Affirmation of Michelle Tarson, ¶¶ 28-31, stated basis for WFBNA's standing to foreclose.

Defendants have failed to first meet their burden to (1) "demonstrate the identity of the issues" and (2) "establish that the issues were previously decided on the merits." The issue of whether a foreclosing plaintiff is a creditor under federal law is not identical or substantially similar to any issue necessarily decided in the state court, and the "standing" issue in New York does not decide the issue here. In fact, Plaintiff alleged that the identity of the creditor is ***not*** an issue in New York foreclosure proceedings, see Complaint, fn.1; ¶ 54:

> 54. The New York foreclosure proceedings have no preclusive effect on Plaintiff's federal claim herein—which has never been adjudicated in any court—and which is an independent cause of action subsequent to those proceedings. The FDCPA preempts state law to the extent state law affords a consumer less protection than the FDCPA does. 15 U.S.C. § 1692n; Const., Art XI, Clause 2. New York law does not distinguish a creditor from a debt collector pursuing foreclosure against a consumer, and does not require a creditor, and therefore offers less protection than would be consistent with federal law. New York has not received an exemption under 15 U.S.C. § 1692o.

Defendants failed to comprehensively discuss, much less ***demonstrate***, how the FDCPA definition of "creditor" and that WFBNA received transfer of the debt after default, but prior to initiating foreclosure, is an issue that could have been raised as a defense to defeat standing in the foreclosure action such that the Court might conclude as a matter of law that issue preclusion applies.

## CONCLUSION

The Verified Complaint is sufficient to state a plausible claim under the FDCPA and this Court should give effect to that remedial act of Congress according to its terms and deny the Attorney Defendants' motion to dismiss Plaintiff's Complaint as to each of them.

Respectfully submitted,

Nicole Johnson-Gellineau

## CERTIFICATE OF SERVICE

I certify that the foregoing PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS STIENE & ASSOCIATES, P.C., CHRISTOPHER VIRGA, ESQ., AND RONNI GINSBERG, ESQ. TO DISMISS PLAINTIFF'S COMPLAINT was filed with the Court on Thursday, October 12, 2017 and the parties' Counsel will be notified, and may access this filing, through the Court's ECF system.

Nicole Johnson-Gellineau