UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE JOHNSON-GELLINEAU,

                                Plaintiff,

        v.

STEINE & ASSOCIATES, P.C.;
CHRISTOPHER VIRGA, ESQ.; RONNI
GINSBERG, ESQ.; JPMORGAN CHASE
BANK NATIONAL ASSOCIATION; and
WELLS FARGO BANK NATIONAL
ASSOCIATION, *as Trustee for Carrington
Mortgage Loan Trust, Series 2007-FRE1,
Asset-Backed Pass-Through Certificates*,

                                Defendants.

No. 16-CV-9945 (KMK)

OPINION & ORDER

---

Appearances:

Nicole Johnson-Gellineau
Beacon, NY
*Pro Se Plaintiff*

Matthew J. Bizzaro, Esq.
L'Abbate, Balkan, Colavita & Contini, LLP
Garden City, NY
*Counsel for Defendants Steine & Associates, P.C., Christopher Virga, Esq., and Ronni Ginsberg, Esq.*

Brian P. Scibetta, Esq.
Buckley Madole, P.C.
Iselin, NJ
*Counsel for Defendants JPMorgan Chase Bank National Association and Wells Fargo Bank National Association*

KENNETH M. KARAS, District Judge:

        Nicole Johnson-Gellineau ("Plaintiff") brings this Action against the law firm Steine &

Associates, P.C., attorneys Christopher Virga, Esq. ("Virga") and Ronni Ginsberg, Esq.

("Ginsberg") (collectively, "Attorney Defendants"), JPMorgan Chase Bank National Association ("Chase"), and Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates ("Wells Fargo") (collectively, "Bank Defendants"), seeking damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  (*See* Compl. (Dkt. No. 2).)  Before the Court are the Attorney Defendants' Motion To Dismiss and the Bank Defendants' Motion To Dismiss.  (*See* Dkt. Nos. 34, 39.)  For the following reasons, the Bank Defendants' Motion is granted and the Attorney Defendants' Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and documents attached to it, (Compl.), and are taken as true for the purpose of resolving the instant Motion.[1]

On December 18, 2006, Plaintiff took out a $262,880.00 loan.  (Compl. ¶ 14.)  She executed a note payable to Fremont Investment & Loan ("Fremont") or any transferees, denominated "the Lender," (*id.* Ex. A at A ("Note")), and the loan was secured by a mortgage on her home, located at 149 Wilkes St., Beacon, NY 12508 (the "Property"), in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont and Fremont's successors in interest, (*id.* Ex. A at B ("Mortgage")).  The Mortgage noted that:

> The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times.  [Plaintiff] might not receive any prior notice of these sales.

---

[1] Plaintiff submitted multiple documents together in each "Exhibit" attached to the Complaint, and the beginning of Exhibit A is contained in the same docket entry as the second half of the Complaint document itself.  Plaintiff also sub-divided Exhibit A with hand-labelled parts "A" and "B", beginning on ECF-generated page 40 in the docket entry containing the second half of the Complaint.  The Court therefore attempts to cite to the sub-division containing the relevant document where appropriate, but otherwise cites to the ECF-generated page number for Plaintiff's exhibits.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that [Plaintiff] be given written notice of any change of the Loan Servicer.

(Mortgage ¶ 20; *see also* Pl.'s Opp. To Defs.' Mot. to Dismiss ("Pl.'s Banks Mem.") (Dkt. No. 45) 5.) The Mortgage was recorded on March 3, 2008 in the Dutchess County Clerk's Office. (Compl. Ex. A at B.) On August 26, 2008, Plaintiff entered into a Loan Modification Agreement ("Modification") with EMC Mortgage Corporation ("EMC"), as servicer for Wells Fargo, "as Trustee under the applicable agreement ("Lender") [and] current holder of the Note and Mortgage." (*Id.* Ex. A at B ("Modification").) The Modification modified the principal balance of the loan to $279,763.22. (*Id.*)

Plaintiff defaulted on the loan in either September or October of 2009. (Compl. ¶¶ 32, 35.) A notice of default was mailed to Plaintiff on October 30, 2009. (Compl. Ex. A at 34 ("Brunton Aff.") ¶ 8; Compl. ¶ 35.)[2] The assignment of the mortgage from Fremont to Wells Fargo was recorded in Dutchess County on March 5, 2010. (Compl. Ex. A at B ("Assignment Recording").)[3] "Chase then became servicer for Wells Fargo, as trustee." (Compl. ¶ 36;

---

[2] The Complaint states that the notice of default "was alleged to have been sent on behalf of [MERS], as nominee for [Fremont], to Plaintiff at her home," but it does not state who made this allegation or whether it is correct. (Compl. ¶ 35.) Indeed, the Complaint cites the Brunton affidavit for this proposition, (Compl. ¶ 35 (citing Brunton Aff. ¶ 8)), but Brunton averred only that Chase's records "reveal[] that a notice of default, dated 10/30/2009, was sent to [Plaintiff]," (Brunton Aff. ¶ 8). To the extent that Plaintiff herself is alleging this fact, (Pl.'s Banks Mem. 9), it is contradicted by several documents attached to the Complaint which show that, as of 2007, (Compl. Ex. G), or 2008, (Modification), Chase/EMC, (*see infra* n.6 (explaining that Chase assumed all loans originally serviced by EMC in 2011)), were the loan servicers for Plaintiff's loan—not MERS. Similarly, the Modification belies the allegation that Fremont was still the lender as of the date of default. (Modification; *see also infra* n.3.)

[3] The Parties disagree about whether Wells Fargo acquired the Note and Mortgage before or after Plaintiff defaulted. Plaintiff alleges that they were transferred to Wells Fargo on

Brunton Aff. ¶ 1.)  However, "Wells Fargo exercised control or had the right to exercise control over the collection activities of Chase."  (Compl. ¶ 48.)

---

February 22, 2010, subsequent to her default, "as evidenced by [the] Assignment of Mortgage," which was recorded on March 2010.  (Compl. ¶ 36; Assignment Recording.)  The Bank Defendants assert that the loan was transferred to Wells Fargo before Plaintiff signed the Modification in August 2008.  (Bank Defs.' Mem. 4.)  Although the Court normally accepts the allegations in the Complaint as true at the Motion to Dismiss stage, this rule does not apply where a document attached to the complaint contradicts Plaintiff's allegations.  *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *see also MBIA Inc. v. Certain Underwriters at Lloyd's*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness.") (quoting *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013)).  Here, the Modification, which Plaintiff attached to the Complaint and which she does not deny she signed, refers to Wells Fargo as "Lender," the terminology used in the original Mortgage to refer to Fremont, and states that Wells Fargo is "current holder of the Note and Mortgage/Deed of Trust/Security Instrument or Retail Installment Contract (collectively referred to as the 'Loan Agreement') dated December 18, 2006."  (Modification.)

Plaintiff argues that this is "contradicted by (1) the recorded assignment of (2) the recorded Mortgage in the public record."  (Pl.'s Banks Mem. 5.)  But, the fact that the assignment from Fremont to Wells Fargo was not *recorded* until March 6, 2010, does not mean the assignment itself, corroborated by the Modification, did not occur earlier.  (*See* Assignment Recording.)  *See, e.g.*, *Obal v. Deutsche Bank Nat. Tr. Co.*, No. 14-CV-2463, 2015 WL 631404, at *9 (S.D.N.Y. Feb. 13, 2015) ("The fact that the Assignment was recorded after the closing date of the PSA does not mean that the Loan was not assigned with the PSA."), *aff'd*, 670 F. App'x 10 (2d Cir. 2016).  Indeed, the original Mortgage is dated December 18, 2006, (Mortgage), but was not recorded until March 3, 2008, (Compl. Ex. A at B), but Plaintiff does not dispute it went into effect in 2006.  Plaintiff cites no authority requiring Wells Fargo to have publically recorded the transfer in order to establish ownership of the Note and Mortgage.  (*See* Pl.'s Banks Mem. 5.)  Moreover, Plaintiff argues that "[f]rom [her] perspective, her Note had been sold to [Wells Fargo] *together with the Mortgage* based on the language of Paragraph 20 of the Mortgage," which she asks the Court to take judicial notice of.  (*Id.* (citing Mortgage ¶ 20).)  That paragraph states that "[t]he Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times.  [Plaintiff] might not receive any prior notice of these sales."  (Mortgage ¶ 20.)  The Court does not understand how this statement supports Plaintiff's argument.  It provides that Fremont may sell the Note, along with the Mortgage, without notifying Plaintiff.  Based on the Modification's representation that, as of August 2008, Wells Fargo owned the Note *and* Mortgage, it appears that Fremont did just that.  (*See* Modification.)  Therefore, the Court does not accept as true Plaintiff's allegations that the Note and Mortgage were not transferred to Wells Fargo until after default, in February 2010. (Compl. ¶ 36.)

On June 3, 2013, Wells Fargo commenced a foreclosure action against Plaintiff and other unnamed defendants with an interest in the Property in the New York Supreme Court, Dutchess County. (Decl. of Brian P. Scibetta, Esq. in Supp. of Defs.' Mot. to Dismiss ("Scibetta Decl.") (Dkt. No. 35) Ex. 3 ("Foreclosure Compl.").)[4] Steine & Associates, P.C. represented Wells Fargo in the foreclosure action. (*Id.*; *see also* Compl. ¶ 45.) On June 28, 2013, Plaintiff filed a Verified Answer, Affirmative Defenses and Counter Claims in the foreclosure action. (Scibetta Decl. Ex. 4.) As one of her affirmative defenses, Plaintiff argued that Wells Fargo lacked standing to foreclose because it was not "the true and lawful owner of [the] Note and Mortgage." (*Id.* ¶ 31.) On August 10, 2015, the New York Supreme Court issued an Order that granted Wells Fargo's motion for summary judgment, struck Plaintiff's Verified Answer, and appointed a Referee "to ascertain and compute the amount due to [Wells Fargo] upon the [N]ote and [M]ortgage upon which [the foreclosure] action was brought and to examine and report whether the mortgaged premises can be sold in one parcel." (Scibetta Decl. Ex. 5 at 2.)

On December 30, 2015, Plaintiff received in the mail a Notice of Hearing & Referee's Oath and Report ("Notice of Hearing") in connection with the foreclosure proceeding. (Compl. ¶ 21; *id.* Ex. A ("Notice of Hearing").) The Notice of Hearing was signed by Virga, "on behalf of Steine & Associates, P.C.," and indicated that the Attorney Defendants "are attorneys for [Wells Fargo] . . . as the plaintiff in [the] foreclosure action." (Compl. ¶ 21; Notice of Hearing.) The document also included a Referee's Oath and a Report, supported by a statement of computation and exhibits and concluding that Plaintiff owes Wells Fargo "on the . . . Note and

---

[4] The Court takes judicial notice of this Summons and Complaint, and other documents filed in the state foreclosure proceeding, in order "to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

Mortgage . . . $430,431.62" and "that the mortgaged premises should be sold in one parcel."

(Notice of Hearing at Referee's Report of Amount Due ¶¶ 2, 6; *see also* Compl. ¶ 21.)  Gary

Brunton, a Vice President at Chase, also filed an affidavit in the foreclosure action dated

December 8, 2015, on behalf of Chase, "the loan servicer for [Wells Fargo]," attesting that,

based upon his review of Chase's business records and his own personal knowledge of how they

are kept and maintained, Plaintiff is in default and itemizing the sums of money due and owing

to Wells Fargo under the Note and Mortgage.  (Brunton Aff. ¶¶ 1, 4, 6, 7.)[5]  "Mailing the Notice

of Hearing was a step in the process of obtaining a money judgment and liquidation of Plaintiff's

place of abode, and part of a strategy to make collection of a debt by way of foreclosure and sale

more likely."  (Compl. ¶ 22.)  "At the time Plaintiff received the Notice of Hearing, Plaintiff was

an unrepresented consumer in the foreclosure action and remains so."  (*Id.* ¶ 23.)

"On January 12, 2016, within thirty days of receiving the Notice of Hearing, Plaintiff

mailed [the Attorney Defendants] . . . a Consumer Notice of Dispute . . . disputing the entire

debt, and requiring Defendants to cease and desist from collection efforts and communications

under [15 U.S.C.] § 1692c(c) unless certain information is provided to Plaintiff, including among

other things 'the name of the creditor to whom the debt is owed.'"  (*Id.* ¶ 26 (citing *id.* Ex. B.

("Consumer Notice of Dispute of Debt, 15 U.S.C. § 1692g")).)  Chase responded "with two non-

responsive letters that use [the] terms 'investor,' [and] 'owner,' but not 'creditor,'" and therefore

"did not validate or provide the information to which [Plaintiff] was entitled, including the name

of the creditor to whom the debt is owed."  (*Id.* ¶ 27.)  Chase's first letter, dated January 20,

2016, stated that Chase "service[s] the mortgage on behalf of the investor" and provides the

---

[5] The Bank Defendants claim this affidavit was attached to the Notice of Hearing, but that
is unclear from the document in the form it is attached to the Complaint.  (*Compare* Defs.' Mem.
Of Law in Supp. of the Mot. to Dismiss ("Bank Defs.' Mem.") 6 ¶ 7 *with* Brunton Aff.)

contact information "for the owner of the mortgage loan," Wells Fargo.  (*Id.* Ex .G.)  The second letter, dated January 21, 2016, providing "loan details," information about the "[l]oan origination"—including that "servicing of this loan transferred to [Chase] on May 1, 2007"—and "the name and contact information for the investor of this loan," Wells Fargo.  (*Id.*)[6]  The Attorney Defendants did not respond to Plaintiff's mailing.  (Compl. ¶ 27.)

On March 17, 2016, Wells Fargo moved for a judgment of foreclosure and sale in the New York foreclosure action.  (Compl. Ex. C ("Motion for Judgment of Foreclosure").) Defendant Ginsberg filed an "Affirmation of Regularity in Support of [the] Motion."  (*Id.*) Ginsberg also signed the "Notice of Motion" on behalf of Steine & Associates, P.C. and mailed a copy to Plaintiff.  (Compl. ¶ 28.)  On April 18, 2016, the New York Supreme Court entered a Judgement of Foreclosure and Sale in favor of Wells Fargo, determining that Plaintiff owed $430,431.62 to Wells Fargo, and ordering a sale of the Property to satisfy that debt.   (*Id.* Ex. D

---

[6] As of the date the Modification was signed—August 26, 2008—EMC was servicing the loan for Wells Fargo.  (Modification.)  However, the second letter from Chase to Plaintiff indicates that it took over servicing of Plaintiff's loan on May 1, 2007.  (Compl. Ex. G.)  This discrepancy is likely explained by the fact, of which the Court takes judicial notice because it is a matter of public record, that Chase became the successor servicer to loans formerly serviced by EMC as of April 1, 2011.  (Scibetta Decl. Ex. 7 (Consent Order, *In re JPMorgan Chase & Co. and EMC Mortg. Corp.*, Dkt. No. 11-023 (U.S. Board of Governors of the Fed. Reserve Sys.) ("Consent Order") at 2 ("[O]n or about April 1, 2011, [Chase] transferred all of the residential mortgage loan servicing rights and certain related assets and liabilities of the Mortgage Servicing Companies to the Bank (the 'EMC Servicing Rights Transfer').  Following consummation of that transfer, the Mortgage Servicing Companies are no longer in the business of residential mortgage loan servicing, and only the Bank is conducting residential mortgage loan servicing within the [Chase] organization."), *available at* https://www.federalreserve.gov/newsevents/pressreleases/files/enf20110413a5.pdf)).)  *See Pascal v. JPMorgan Chase Bank, Nat. Ass'n*, No. 09-CV-10082, 2013 WL 878588, at *4 n.4 (S.D.N.Y. Mar. 11, 2013) (taking judicial notice of an assumption agreement between FDIC and JPMorgan which is publicly available on the FDIC's website).

("Judgement of Foreclosure"); Compl. ¶ 29.)[7] "Plaintiff has timely appealed [the Judgment] to the [New York] Appellate Division." (Compl. ¶ 29; *see also id.* ¶ 27 (alleging that "Plaintiff has resisted" the Judgment).)

Meanwhile, throughout 2016, Chase, in its capacity as loan servicer for Wells Fargo, mailed Plaintiff monthly statements indicating that Plaintiff's loan was in default, the amount due, and that she was "at risk of foreclosure." (Compl. Ex. E, F; *see also id.* ¶ 32.) "Chase directed [the] collection efforts of the [Attorney] Defendants and communicated the affidavit to the New York court through the [Attorney Defendants] on December 24, 2015." (Compl. ¶ 33; *see also id.* ¶ 48 ("Wells Fargo and Chase each exercised control or had the right to exercise control over the collection activities of the [Attorney] Defendants.").)[8] "Chase did not have Plaintiff's prior consent . . . or the express permission of a court of competent jurisdiction to communicate about . . . Plaintiff's debt, nor was it reasonably necessary to effectuate a postjudgment remedy *without a creditor*." (*Id.* ¶ 33; *see also id.* ¶ 51 (same).) "Wells Fargo, in placing Plaintiff's debt with Chase and the [Attorney] Defendants . . . caused the [Attorney] Defendants to send communications to both . . . Plaintiff and the New York court, and caused Chase to send it monthly statements to Plaintiff, falsely communicating (or alternatively, failing to communicate) *the name of the creditor to whom the debt is owed* relating to Plaintiff's debt." (*Id.* ¶ 49.)

_____

[7] Plaintiff alleges that the Defendants filed "misleading formal pleadings as a deceptive means to circumvent [the FDCPA]," but does not identify which pleadings she is referring to, or how they were misleading. (Compl. ¶ 31.) Construing the Complaint liberally, she is likely alleging that the failure to identify a creditor was misleading. (*See id.* ("Without a creditor, the [Attorney] Defendants cannot avoid the FDCPA's broad consumer protections for Plaintiff.").)

[8] Plaintiff does not cite or name the affidavit she refers to here, but she likely is referring to the Brunton Affidavit. (*See* Brunton Aff.)

<u>B.  Procedural Background</u>

Plaintiff filed the Complaint on December 23, 2016, alleging that Defendants violated the

FDCPA, 15 U.S.C. §§ 1692c(b) and 1692e.  (Compl. (Dkt. No. 2).)  Plaintiff was granted in

forma pauperis status, (Dkt. No. 4), and the Court issued an Order of Service on March 30, 2017

to allow Plaintiff to effect service on Defendants, (Order of Service (Dkt. No. 6)).  All

Defendants were served.  (*See* Dkt. Nos. 13, 22, 23, 26, 28.)  On May 9, 2017, the Attorney

Defendants filed a pre-motion letter indicating the grounds upon which they would move to

dismiss.  (Letter from Mathew J. Bizzaro, Esq., to Court (May 9, 2017) (Dkt. No. 20).)  The

Bank Defendants also filed a pre-motion letter the next day.  (Letter from Brian P. Scibetta, Esq.

to Court (May 10, 2017) (Dkt. No. 21).)  Plaintiff filed letters opposing both pre-motion letters.

(*See* Letter from Plaintiff to Court (May 16, 2017) (Dkt. No. 24); Letter from Plaintiff to Court

(May 16, 2017) (Dkt. No. 25).)

The Court held a pre-motion conference on July 11, 2017 and set a briefing schedule for

the Motions to Dismiss.  (*See* Dkt. (entry for July 11, 2017); Mot. Scheduling Order (Dkt. No.

29).)  On August 11, 2017, the Bank Defendants filed their Motion To Dismiss and

accompanying papers.  (Notice of Mot. to Dismiss (Dkt. No. 34); Scibetta Decl. (Dkt. No. 35);

Bank Defs.' Mem. (Dkt. No. 36).)  The same day, after fixing docketing errors, (*see* Dkt. Nos.

30–33), the Attorney Defendants filed their Motion To Dismiss and accompanying papers,

(Notice of Mot. to Dismiss (Dkt. No. 39); Decl. of Matthew J. Bizzaro, Esq. in Supp. of Mot. to

Dismiss ("Bizzaro Decl.") (Dkt. No. 40); Defs.' Mem. of Law in Supp. of Mot. to Dismiss

("Attorney Defs.' Mem.") (Dkt. No. 42).)  Plaintiff filed oppositions to both Motions on October

12, 2017.  (Pl.'s Banks Mem. (Dkt. No. 45); Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Attorneys

Mem.") (Dkt. No. 46).)  The Attorney Defendants filed a reply memorandum on November 3,

2017, (Reply Mem. of Law in Supp. of Mot. to Dismiss ("Attorney Defs.' Reply") (Dkt. No. 51)), and the Bank Defendants filed a reply memorandum on November 9, 2017, (Reply Mem. of Law in Supp. of Mot. to Dismiss ("Bank Defs.' Reply") (Dkt. No. 53)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug.

2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. § 1692c(b), by sending or causing to be sent communications in connection with the collection of the debt to the New York Supreme Court, and 15 U.S.C. § 1692e, for failing to identify Plaintiff's current creditor in its attempts to collect the debt.  (Compl. ¶¶ 56–58.)  Defendants seek dismissal on the grounds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and collateral estoppel, and, in the alternative, that the Complaint fails to state a claim under the FDCPA.  (*See generally* Bank Defs.' Mem; Attorney Defs.' Mem.)

1.  Rooker-Feldman[9]

"Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments."  *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam); *see generally Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16 (1923).  This is because Congress's grant of federal jurisdiction to review final state

---

[9] The Court notes that this argument relating to the Court's jurisdiction should have been brought pursuant to Rule 12(b)(1), rather than Rule 12(b)(6).   However, this posture does not affect the Court's analysis, because "[t]he only substantive difference" between a motion to dismiss under Rule 12(b)(6) and Rule 12(b)(1) is that, under the latter motion, Plaintiff bears "the burden of proof" of establishing jurisdiction.  *Fagan v. U.S. Dist. Court for S. Dist. of New York*, 644 F. Supp. 2d 441, 447 n.7 (S.D.N.Y. 2009) (internal quotation marks omitted).

court judgments pursuant to 28 U.S.C. § 1257 "vests authority to review a state court's judgment solely" in the hands of the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). In *Exxon Mobil*, the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that *Exxon Mobil* narrowed the Second Circuit's previously "expansive[ ]" interpretation of the *Rooker–Feldman* doctrine (internal quotation marks omitted)).

After *Exxon Mobil*, the Second Circuit reexamined *Rooker–Feldman* and laid out

> four 'requirements' that must be met before the *Rooker–Feldman* doctrine applies: First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain of injuries caused by a state-court judgment.' Third, the plaintiff must 'invite district court review and rejection of that judgment.' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green*, 585 F.3d at 101 (alterations omitted) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). "[T]he first and fourth requirements 'may be loosely termed procedural,' while the second and third requirements 'may be termed substantive.'" *Id.* (quoting *Hoblock*, 422 F.3d at 85).[10]

*Rooker-Feldman* would not prevent Plaintiff from "raising federal claims based on the same facts as a prior state case, . . . so long as . . . [P]laintiff complains of an injury *independent*

---

[10] Although Plaintiff disagrees with the Second Circuit's analysis in *Hoblock*, (*see* Pl.'s Banks Mem. 23 n.11; Pl.'s Attorneys Mem. 21), the Court is bound by it. Similarly, to the extent Plaintiff requests the Court not follow *Rooker-Feldman* because it "conflicts with other jurisdictional mandates," (Pl.'s Attorneys Mem. 22), the Court also declines this invitation to ignore binding precedent.

*of* an adverse state court decision." *Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013). "[T]he applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007); *see also Hoblock*, 422 F.3d at 87 (explaining that "the second substantive *Rooker-Feldman* requirement" that the plaintiff must "*complain of an injury* caused by a state judgment . . . is the core requirement from which the others derive"). *Rooker-Feldman* does not bar independent claims, even if those claims "den[y] a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits."). "Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman*." *Hoblock*, 422 F.3d at 86. Rather, "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Id.* at 86–87.

In this case, the procedural requirements of *Rooker-Feldman* are clearly satisfied: "[Plaintiff] lost in the state foreclosure action, and the foreclosure judgment was entered before [Plaintiff] filed [her] . . . federal complaint." *Vossbrinck*, 773 F.3d 426. (*See* Judgement of Foreclosure (entered April 18, 2016); Compl. (filed Dec. 23, 2016).) The Court thus focuses on

the substantive requirements.[11]

"Courts in [the Second] Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012). But, Plaintiff is not requesting that the Court review the New York Supreme Court's reasoning or void the Judgment of Foreclosure. (*See* Pl.'s Banks Mem. 1 ("For the purpose of this federal action, Plaintiff embraces the [Judgment of Foreclosure] and readily concedes that the state court adjudged: that she was in default . . . that [Wells Fargo] had standing to foreclose, that Plaintiff owed $430,431.62 to [Wells Fargo], and that [Wells Fargo] be permitted to proceed with a foreclosure sale . . . to satisfy the judgment."); Pl.'s Attorneys Mem. 20 ("This independent action does not seek review or a mere revision of errors . . . it raises new and original claims arising upon new facts."); *id.* ("Plaintiff's embracing—rather than attacking-the judgment . . . Her damages-only claim does not seek anything remotely resembling [voiding the foreclosure sale]."); *id.* at 22 (arguing that Plaintiff's claim does not require that [the] Court review and

_____

[11] Plaintiff argues that she is not a "state court loser" because she appealed the Judgment of Foreclosure, so the state proceedings have not "ended." (Pl.'s Banks Mem. 23.) However, the Second Circuit has not adopted that interpretation of *Rooker-Feldman*, and district courts in the Circuit have also rejected it. *See In re Buckskin Realty Inc.*, No. 13-40083, 2017 WL 1130166, at *4–5 (Bankr. E.D.N.Y. Mar. 24, 2017) (listing cases and explaining that "the Second Circuit has either reserved judgment on the issue of whether *Rooker-Feldman* applies when a state court appeal is pending, or has, without comment, applied the doctrine irrespective of a pending appeal" (citations omitted)); *Liberty Square Realty Corp. v. Boricua Vill. Hous. Dev. Fund Co.*, No. 12-CV-1395, 2012 WL 3191963, at *3 n.3 (S.D.N.Y. Aug. 7, 2012) ("Although the Second Circuit has not directly addressed whether *Rooker-Feldman* applies in this situation, a summary order in *Swiatkowski v. New York* suggests that the doctrine bars suits brought while a state court appeal is pending." (citing *Swiatkowski v. New York*, 160 Fed. App'x 30 (2d Cir. 2005))); *Davis v. Baldwin*, 2013 WL 6877560, at *4 n.5 (S.D.N.Y. Dec. 31, 2013) (same). In any event, because the Court ultimately concludes that the substantive requirements are not met here, it need not decide this open question in the Second Circuit.

reject the state foreclosure judgment, nor does the success of Plaintiff's sole Count depend on th[e] Court's conclusion that the state court improperly entered a judgment of foreclosure.") Rather, Plaintiff brings claims for damages sustained by Defendants' alleged violations of the FDCPA. (Compl. ¶¶ 56–62.) Specifically, the Complaint alleges two ways Defendants violated the FDCPA: (1) by communicating with a third party, the New York Supreme Court, in connection with the collection of the debt, without permission; and (2) by attempting to collect the debt without identifying Plaintiff's current creditor, which was false, deceptive, or misleading. (Compl. ¶¶ 56–58.)

The first claim, regardless of its merit, is not barred by *Rooker-Feldman*.[12] Plaintiff is not complaining of an injury caused by the Judgment of Foreclosure; rather, she is complaining about Defendants revealing personal information about her debt to a third party without permission. (*See id.* ¶¶ 56–57 (citing 15 U.S.C. § 1692c(b)). Indeed, she requests damages for "embarrassment, loss of reputation, anxiety and loss of sleep worrying about what will happen to her . . . [and] her personal information." (*Id.* ¶ 59.) Because this claim does not complain of actions "produced by [the] state-court judgment," but rather ones that are "simply ratified acquiesced in, or left unpunished by it," it does not satisfy the second *Rooker-Feldman* requirement. *Hoblock*, 422 F.3d at 88.

Plaintiff's second claim, however, poses a closer question. Construing her submissions liberally, Plaintiff contends that Wells Fargo is not a "creditor" under the FDCPA, because it acquired the Note and Mortgage after Plaintiff defaulted. (Compl. ¶¶ 16–17; *see also id.* ¶¶ 19,

---

[12] Indeed, Defendants do not appear to argue that this claim is barred by *Rooker-Feldman*, and instead devote their briefing to whether Plaintiff's claims about Wells Fargo not being the creditor constitute an attack on the state court's determination that Wells Fargo had standing to foreclose. (*See* Attorney Defs.' Mem. 9; Bank Defs.' Mem. 21.)

34, 36, 41, 45, 58; Pl.'s Banks Mem. 2, 7, 22–23). In so arguing, Plaintiff relies on the definition of "creditor" in the FDCPA:

> The term 'creditor' means any person . . . to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4). Therefore, Plaintiff claims, Defendants violated § 1692e(10) by sending misleading communications in connection with debt collection that named Wells Fargo instead of her actual "creditor." (*See* Compl. ¶¶ 19–20, 49, 58, 62.) The Complaint describes the claim as follows:

> **All Defendants violated 15 U.S.C. § 1692e.** This is Defendants' overarching violation. This suit is about debt collection without a creditor. Congress unequivocally requires Wells Fargo be "the creditor to whom the debt is owed" in communications as well as in this Court in order for Defendants to even send [Plaintiff] an initial communication in compliance with 15 U.S.C. § 1692g(a)(2) . . . .
>
> All their communications . . . when viewed through the eyes of a least sophisticated consumer are misleading representations and deceptive means. . . . [B]y alleging that Defendants failed to identify Plaintiff['] s current creditors, Plaintiff['] s allegations are also sufficient to state a claim against Defendants arising under 15 U.S.C. § 1692e. . . . .
>
> Based on [the] requirement in § 1692g(a)(2) as to the communications of Wells Fargo and Chase, Plaintiff had the right to expect that Wells Fargo was the creditor to whom the debt was owed and for whom all of the Defendants were collecting. The [Attorney] Defendants' communications when viewed together with Chase's communications, are false, misleading, and deceptive means in violation of § 1692e.

(*Id.* ¶ 58.) And, therefore, the damages Plaintiff requests stem from the fact that the Defendants did not inform Plaintiff "at the threshold of their collection activity" that there was no "creditor." (*Id.* ¶ 62.)

Defendants argue that, in requesting the Court to find that Wells Fargo was not the creditor, Plaintiff asks the Court to find that Wells Fargo did not own the Note and Mortgage or

that Plaintiff did not owe Wells Fargo—a conclusion contrary to the one the New York Supreme Court reached in order to enter the Judgment of Foreclosure in favor of Wells Fargo.   (*See* Bank Defs.' Mem. 21; Attorney Defs.' Mem. 9; Attorney Defs.' Reply 9–10.)  Defendants' argument misunderstands Plaintiff's claim.  As she explains, "[w]hether '[Wells Fargo] is the entity to whom Plaintiff owes her debt' is not dispositive of whether [Wells Fargo] is her 'creditor' under the statute in light of the term's exclusion" under § 1692a(4).  (Pl.'s Banks Mem. 2.)  Although the Complaint sometimes uses the phrase "to whom the debt was owed," (*e.g.*, Compl. ¶ 45), Plaintiff is not contesting the state court's decision that she owed her debt to Wells Fargo at the time of the foreclosure action, (*see* Pl.'s Banks Mem. 1 (explaining that Plaintiff embraces the state court's determination that "Plaintiff owed $430,431.62 to [Wells Fargo], and that [Wells Fargo] be permitted to proceed with a foreclosure sale . . . to satisfy the judgment").)

Instead, she argues that Wells Fargo, while the owner of the Note and Mortgage and the entity to whom she owed money, was not a "creditor" under the FDCPA because it acquired her debt after she defaulted, and she requests damages for Defendants' failure to inform her of that fact in their communications with her when attempting to collect her debt.   If Plaintiff prevails on that claim, the Court would have to find that Wells Fargo is not a "creditor" under the FDCPA, but that decision would not invalidate the Judgment of Foreclosure or contradict the New York Supreme Court's conclusion that Wells Fargo had standing to bring that action or was owed money by Plaintiff.  *Cf. Gurdon v. Doral Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) (finding claim that the defendants "lacked standing" to bring the state foreclosure action and that "therefore, the state court judgement should be voided," was barred by *Rooker-Feldman*), *adopted by* 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937, 2016 WL 5791193, at *7 (S.D.N.Y. Sept. 30, 2016)

(concluding that the plaintiff's claims "seek[ing] either rescission of the [l]oan [m]odification [a]greement, or the cancellation . . . of various purported assignments in the chain of title for the [s]ubject [p]roperty" asked the federal court to review and reject the state court's determination that the defendant "had standing to foreclose"); *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (concluding that the complaint, which alleged the defendants did not own the note or mortgage and therefore improperly used the state courts "to wrongfully foreclose and obtain the title to the property," was essentially "arguing that [the] [d]efendant lacked standing to foreclose" and therefore asked the court to invalidate the foreclosure judgment). Nor does Plaintiff request relief in the form of voiding or reversing the Judgment of Foreclosure—let alone the Note and Mortgage—or granting her title to the Property. *Cf. Vossbrinck*, 773 F.3d at 427 (finding it "evident" that the injury the plaintiff complained of was the state foreclosure judgment based on "the relief [he] request[ed]—title to and tender of his property and . . . to have the state judgment declared 'void'"); *Gurdon*, 2016 WL 721019, at *6 (finding the plaintiff's request that the court grant the plaintiff "free and clear [t]itle to the subject property" and enjoin the defendants from asserting any claim to the property to be barred by *Rooker-Feldman* because "it expressly seeks to have the [c]ourt reverse the state-court judgment, which resulted in [the plaintiff] being divested of his property interest"); *Nath*, 2016 WL 5791193, at *7 ( (holding that the "[p]laintiff's quiet title causes of action . . . undeniably complain of, and seek to have remedied, the [s]tate [f]oreclosure [j]dgement"); *Barbato*, 2016 WL 158588, at *3 (concluding that the complaint's requested relief—"quieting title against [the] [d]efendants, returning possession of the property to [the p]laintiff, and expunging the debt obligations and instruments asserted by [the d]efendants against [the p]laintiff's subject property from the record"—would require the Court to review and reject the

state court judgment (internal quotation marks omitted)).

Because Plaintiff does not seek review and reversal of a state court judgment, nor does she assert an injury from that judgment, *Rooker-Feldman* does not apply. *See Hoblock*, 422 F.3d at 86–87. The Court therefore denies Defendants' Motion To Dismiss on *Rooker-Feldman* grounds.

### 2. Collateral Estoppel[13]

Even if Plaintiff's claims are "outside *Rooker-Feldman*'s compass," *Hoblock*, 422 F.3d at 86, a "subsequent federal suit could [also], of course, be barred by ordinary preclusion principles," *id.* at 88 n.6. Here, collateral estoppel similarly does not preclude Plaintiff's claims.

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen*, 481 F.3d at 105 (internal quotation marks omitted); *see also Hayes v.*

---

[13] Both Defendants frame their argument as "issue preclusion" relating to the issue of Wells Fargo's standing and ownership of the Note and Mortgage. (*See* Attorney Defs.' Mem. 9–10; Bank Defs.' Mem. 21–22.) Therefore, to the extent the Parties cite cases relating to *claim* preclusion, the Court does not address them.

*County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Defendants argue that Plaintiff is barred from attempting to relitigate whether Wells Fargo is her creditor, because that issue was previously decided in the foreclosure action when the New York Supreme Court found that Wells Fargo had standing and was entitled to judgment as the owner of the Note and Mortgage. (Bank Defs.' Mem. 21–22; Attorney Defs.' Mem. 9–10.)[14] However, as explained above, Plaintiff did not raise, and the New York Supreme Court did not decide, the issue of whether Wells Fargo is a "creditor" under the FDCPA. Rather, Plaintiff argued, as an affirmative defense, that Wells Fargo had no standing to bring the foreclosure action because it "is not the true and lawful owner of [the] Note and Mortgage . . . nor are any sums due [Wells Fargo] thereunder," because Wells Fargo did not "show[] any legal assignment of the Note." (Scibetta Decl. Ex. 4 ¶ 31; *see also id.* ¶¶ 26–40.) The New York Supreme Court struck Plaintiff's Answer, including her affirmative defenses, (Scibetta Decl. Ex. 5 at 2), and, later entered a Judgement of Foreclosure in favor of Wells Fargo, determining that Plaintiff owed $430,431.62 to Wells Fargo, (Judgement of Foreclosure).

Neither Plaintiff's filings in the foreclosure action nor the Judgment of Foreclosure itself

---

[14] To the extent that there are other issues Defendants believe the state court necessarily decided, they fail to identify them here, as is their burden. *See Colon*, 58 F.3d at 869 ("The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided.")

mention the FDCPA or the word "creditor." Indeed, as Plaintiff has alleged, New York law does

not require one to be a creditor as defined under the FDCPA—that is, one who acquired the Note

and Mortgage *before* default—in order to have standing to bring a foreclosure action; rather,

ownership prior to initiating the foreclosure action is sufficient. (*See* Compl. ¶ 54 (alleging that

"Plaintiff's federal claim . . . has never been adjudicated in any court" and that "New York law

does not distinguish a creditor from a debt collector pursuing foreclosure against a consumer,

and does not require a creditor"); Pl.'s Attorneys Mem. 25 (arguing that "the identity of the

creditor is *not* an issue in New York foreclosure proceedings" and that Defendants failed to show

"how the FDCPA definition of 'creditor' and that [Wells Fargo] received transfer of the debt

after default, but prior to initiating foreclosure, is an issue that could have been raised as a

defense to defeat standing in the foreclosure action"); Pl.'s Banks Mem. 24 ("[D]etermining

whether [Defendants'] misconduct amounted to a lack of standing requires a substantially

different analysis than determining whether it violated the FDCPA").) [15] *Compare Deutsche

Bank Nat. Tr. Co. v. Whalen*, 969 N.Y.S.2d 82, 83–84 (App. Div. 2013) ("In a mortgage

foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject

mortgage and the holder or assignee of the underlying note at the time the action is commenced."

(internal quotation marks omitted)) *with* § 1692a(4) (excluding persons who "receive[] an

assignment or transfer of a debt in default solely for the purpose of facilitating collection of such

debt for another" from the definition of "creditor" under the FDCPA). Moreover, as explained

earlier, Plaintiff concedes that Wells Fargo had standing to bring the foreclosure action and was

the owner of the Note and Mortgage. (*See, e.g.*, Pl.'s Banks Mem. 1.) Thus, the cases cited by

---

[15] Plaintiff also makes an argument about the definition of "debt" under the FDCPA, (*see* Pl.'s Attorneys Mem. 23 (citing 15 U.S.C. § 1692a(5)); Pl.'s Banks Mem. 25 (same)), but the Court does not understand its relevance in the issue preclusion analysis.

Defendants are inapposite. (*See* Attorney Defs.' Mem. 10; Attorney Defs.' Reply 10 (listing New York cases holding that "the mortgagee would only have the right to foreclose if it is the owner of the subject note and mortgage").)

Therefore, because Defendants have not satisfied their "burden of showing that the identical issue was previously decided" in the foreclosure proceeding, the Court denies the Motion To Dismiss on collateral estoppel grounds.

### 3. FDCPA

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)). "The FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *Id.* (internal quotation marks omitted). "Debt collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (internal quotation marks omitted). Moreover, a single violation is sufficient to subject a debt collector to liability under the statute. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010) (noting that "a single violation of the FDCPA is sufficient to impose liability").

"To state a claim under the FDCPA, a plaintiff must show (1) [s]he has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."

*Nath v. Select Portfolio Servicing, Inc.*, No. 15-CV-8183, 2017 WL 782914, at *11 (S.D.N.Y.

Feb. 28, 2017) (alteration and internal quotation marks omitted); *see also Okyere v. Palisades

Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (same).[16]  Construed liberally, the

Complaint alleges that (1) Defendants violated § 1692c(b) by sending communications in

connection with the collection of the debt to the New York Supreme Court, and (2) Defendants

violated § 1692e(10) and § 1692(g)(a)(2) by failing to identify the creditor in their

communications with the New York Supreme Court and with Plaintiff.  (*See generally* Compl.)

Defendants all argue that the service and submission of documents in the foreclosure proceeding

do not constitute debt collection under the FDCPA.  (Attorney Defs.' Mem. 5–8; Bank Defs.'

Mem. 15–18.)  The Bank Defendants also argue that they are not debt collectors under the

FDCPA, the monthly mortgage statements sent by Chase are not debt collection under the

FDCPA, and that listing Wells Fargo was not misleading or deceptive.  (*See* Bank Defs.' Mem.)

### a.  Debt Collectors

As a threshold matter, "[t]he relevant provisions of the FDCPA apply only to the

activities of a 'debt collector,'" *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462

(S.D.N.Y. 2009), and generally, "creditors are not subject to the FDCPA," *Maguire v. Citicorp

Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).  Under the FDCPA,

> [t]he term "debt collector" means any person who uses any instrumentality of
> interstate commerce or the mails in any business the principal purpose of which is
> the collection of any debts, or who regularly collects or attempts to collect, directly
> or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6); *see also Goldstein v. Hutton*, 374 F.3d 56, 61 (2d Cir. 2004) ("The FDCPA

establishes two alternative predicates for 'debt collector' status—engaging in such activity as the

---

[16] All Parties agree that Plaintiff is a consumer owing debt, which satisfies the first
element.

'principal purpose' of the entity's business and 'regularly' engaging in such activity.")  However, the term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

§ 1692a(6)(F).  By contrast,

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

*Id.* § 1692a(4).   Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it.  This "distinction between creditors and external debt collectors reflects Congress's judgment that debt collectors were more likely than creditors to engage in abusive practices: Whereas creditors seeking to recover their own debts are apt to be restrained by their desire to maintain a good relationship with the consumer, a third-party debt collector does not have the same inhibition."  *Muniz v. Bank of Am., N.A.*, No. 11-CV-8296, 2012 WL 2878120, at *3 (S.D.N.Y. July 13, 2012).  The same logic applies to loan servicers acting as "agents of the creditor."  *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998)

The Bank Defendants argue that they are not "debt collectors" and thus not subject to the FDCPA.  (Bank Defs.' Mem. 9–15.)  The Court will address the argument with respect to both Wells Fargo and Chase separately.

i. Wells Fargo

Plaintiff alleges that Wells Fargo is a debt collector, and not a creditor, because it collects defaulted debt for another person—namely, for the Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates holders of which it is trustee.  (Compl. ¶¶ 41–44; Pl.'s Banks Mem. 7.)  However, when Wells Fargo acts as trustee for the mortgage loan trust, it acts on behalf of, or as, the trust itself.  *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) ("[A] trustee stands in the shoes of the corporation.").  That Wells Fargo is a "trustee" does not mean, as Plaintiff contends, that it is collecting debt owed to another. (*Contra* Pl.'s Mem. 7; Compl. ¶ 41.)[17]  Indeed, courts frequently find entities acting in the trustee capacity that Wells Fargo does here to be creditors under the FDCPA.  *See, e.g.*, *Munroe v. Specialized Loan Serv. LLC*, No. 14-CV-1883, 2016 WL 1248818, at *1, *5 (E.D.N.Y. Mar. 28, 2016) (finding that the Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage  Pass-Through Trust 2004-04 Mortgage Pass-Through Certificates Sires 2005-4, "is a 'creditor' not a 'debt collector' under the FDCPA" because it was collecting on behalf of itself); *Houck v. US Bank NA*, No. 15-CV-10042, 2016 WL 5720783, at *9 (S.D.N.Y. Sept. 30, 2016) (holding that US Bank as Trustee for Citigroup Mortgage Loan Trust 207-AR5 is not a debt collector under the FDCPA), *aff'd*, 689 F. App'x 662, 664–65 (2d Cir. 2017) ("Because the [d]efendants are 'creditors' seeking to collect debts owed to them, the district court properly concluded that . . . U.S. Bank [is] not [a] 'debt collector[]' within the meaning of the statute.").

---

[17] The Court also notes that, to the extent Plaintiff is attempting to relitigate the issue of whether Wells Fargo owns the Note and Mortgage, she is precluded from doing so under the *Rooker-Feldman* and issue preclusion doctrines.  (*See* Judgment of Foreclosure.)

Plaintiff also alleges that Wells Fargo acquired the debt after Plaintiff defaulted, solely for the purposes of collection, and therefore cannot be a creditor under the FDCPA. (Compl. ¶¶ 17, 36, 41, 42, 43; Pl.'s Banks Mem. 5, 7.) *See* § 1692a(4) (excluding from the definition of creditor "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another"); *see also Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ("[U]nder § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used."). However, as discussed earlier, (*see supra* n.3), Plaintiff's allegations that Wells Fargo acquired the Note and Mortgage on February 22, 2010, after she defaulted, are contradicted by the Modification, and therefore are not plausible. *Cf. Hoo-Chong v. Citimortgage, Inc.*, No. 15-CV-4051, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016) (declining to consider a letter submitted by defendant, outside the complaint, that stated when servicing of the plaintiff's loan transferred to the defendant, and noting that the letter, even if considered, "d[id] not conclusively establish that [the defendant] took assignment of the [m]ortgage . . . before [the] [p]laintiff defaulted because the [a]ssignment of [m]ortgage is dated . . . after [the] [p]laintiff defaulted'). The Modification states that Wells Fargo owned the Note and Mortgage as of August 26, 2008, (Modification), and it is undisputed that Plaintiff defaulted in either September or October of 2009, (Compl. ¶¶ 32, 35).[18] Therefore, even if Wells Fargo

---

[18] The Court acknowledges that default does not occur "immediately after payment becomes due," but rather occurs "well after a debt becomes outstanding." *Alibrandi*, 333 F.3d at 87. However, because the Complaint alleges a September or October 2009 default date, (Compl. ¶ 35), and Plaintiff does not allege that the loan went into default on any other date, the Court accepts this default date as true, *see Houck*, 2016 WL 5720783, at *10 (explaining that the "[p]laintiff has made no allegations suggesting that his debt went into default before" the date the Notice of Default was sent).

may regularly purchase and collect upon defaulted debts, (*e.g.*, Compl. ¶ 42), because Plaintiff

has failed to plausibly allege that her loan was in default at the time Wells Fargo obtained it, she

has not alleged that Wells Fargo was acting as a debt collector under the FDCPA with respect to

the collection of *her* debt. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014)

("[T]he amended complaint does not allege that CitiMortgage acquired [the plaintiff's] debt after

it was in default and so fails to plausibly allege that CitiMortgage qualifies as a debt collector

under FDCPA."); *Houck*, 2016 WL 5720783, at *9 ("When the right to collect on a mortgage

loan is transferred or assigned, the assignee is a 'debt collector' within the meaning of the

FDCPA only if the loan was in default at the time of the transfer."); *Suquilanda v. Cohen &

Slamowitz, LLP*, No. 10-CV-5868, 2011 WL 4344044, at *10 (S.D.N.Y. Sept. 8, 2011) ("The

FDCPA also recognizes that one who acquires debt merely for collection purposes is acting more

like a debt collector than a creditor; thus, the Act treats assignees of debt as debt collectors if the

debt sought to be collected was in default when acquired by the assignee." (internal quotation

marks omitted)).[19]

---

[19] Indeed, even if the loan *was* in default before Wells Fargo acquired it, it is not clear
that Wells Fargo would be a "debt collector" if it was only acting to collect upon now-defaulted
debts it already owns. *See, e.g.*, *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718,
1724 (2017) (explaining that "a company collecting purchased defaulted debt for its own account
. . . would hardly seem to be barred from qualifying as a creditor under the statute's plain
terms"); *Estate of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084, 2017 WL 1194464, at *13
(E.D.N.Y. Mar. 30, 2017) (explaining that "the caselaw makes clear that . . . a loan servicing
company who is assigned a defaulted mortgage but does not seek to collect the debt for an entity
other than itself . . . is [not] a debt collector subject to the FDCPA's provisions"); *Daniels v. US
Bank Nat'l Ass'n*, No. 15-CV-5163, 2016 WL 5678563, at *4 (E.D.N.Y. Sept. 28, 2016) ("Even
where an entity acquired a defaulted debt, it is not a debt collector pursuant to the FDCPA where
it does not engage in collection activities 'for another.'"); *Munroe*, 2016 WL 1248818, at *5
("While a creditor does not include an entity that is assigned defaulted debt in order to collect
that debt for another, there is no evidence that BNY was assigned the defaulted mortgage for the
purpose of collecting on behalf of an entity other than itself. . . . Accordingly, while Plaintiff
correctly notes that, in certain circumstances, an entity's purchase of a debt in default can make
that entity a debt collector, this conclusion is inapplicable where there is no evidence that the

The Complaint also makes other allegations that Wells Fargo regularly collects debt and that the principal purpose of its business is to collect debt, but these allegations merely parrot the statutory language and contain no specific factual allegations. (*See* Compl. ¶¶ 34, 37–38, 42–43.) *Cf. Goldstein*, 374 F.3d at 62–63 (listing facts bearing on the "regularly" collecting analysis). Therefore, they are insufficient to plausibly allege that Wells Fargo is a debt collector under the FDCPA. *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions" and explaining that "a formulaic recitation of the elements of a cause of action will not do"); *Schuh*, 602 F. Supp. 2d at 463 (requiring plausible allegations that the defendant is a debt collector).[20] The Court therefore grants Wells Fargo's Motion To Dismiss Plaintiff's FDCPA claims against it because it is not a debt collector.[21]

### ii. Chase

It is undisputed that, at the time of the events relevant to the Complaint, Chase was the loan servicer for Wells Fargo. (*See* Compl. ¶¶ 11, 32, 36; Bank Defs.' Mem. 12–13.) However, Chase argues that it is not a debt collector, because it began servicing Plaintiff's loan before

---

entity is principally involved in debt collection on behalf of another." (citations omitted)); *Izmirligil v. Bank of New York Mellon*, No. 11-CV-4491, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) (explaining that because "plaintiff alleges that BNYM is a debt collector simply because BNYM took an assignment of the alleged debt while the debt was allegedly in default," but "does not sufficiently allege that BNYM is a debt collector in the first place," the exception to the definition of "debt collector" under § 1692a(6)(F)(iii) for debts not in default "is irrelevant").

[20] This holding applies equally to the conclusory allegations regarding Chase's debt collection activity. (*See* Compl. ¶¶ 34, 37–38.)

[21] To the extent that the Complaint alleges that Wells Fargo should be held vicariously liable for Chase's and the Attorney Defendants' purported FDCPA violations, (Compl. ¶ 50), this legal conclusion is inconsistent with governing caselaw, *see, e.g.*, *Munroe*, 2016 WL 1248818, at *5 ("[A] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." (internal quotation marks omitted)).

default.  (Bank Defs.' Mem. 12–13.)  In other words, although Chase attempted to collect a debt "owed or due another"—Wells Fargo—it argues that it did so "concern[ing] a debt which was not in default at the time it was obtained by such person," and thus is not a debt collector. § 1692a(6)(F)(iii).  The Court notes that, as written, the statute is unclear regarding whether "such person" who must have obtained the debt before default means the person *collecting* the debt owed to another, or to the actual debt *owner*.  *Id.*  However, the Court need not decide that question, because, under either interpretation, Chase meets the exception in § 1692a(6)(F)(iii). *See Franceschi*, 22 F. Supp. 2d at 253 (holding the § 1692a(6)(F)(iii) exception covers entities who serviced the loan prior to default).[22]

As explained above, the debt was not in default at the time it was obtained by Wells Fargo, and therefore, Chase's attempt to collect a debt owed to Wells Fargo "concerns a debt which was not in default at the time it was obtained by [Wells Fargo]."  § 1692a(6)(F)(iii).[23] Nor was the debt in default at the time Chase began servicing—in other words, "obtained"— Plaintiff's loan.  *Id.*  Plaintiff alleges that Chase did not become the servicer for Wells Fargo until after February 22, 2010, which is after she defaulted.   (Compl. ¶ 36; *see also* Pl.'s Banks Mem. 9.)  This allegation, however, relies on a factual allegation that the Court has already rejected—that Wells Fargo "received transfer of the debt on February 22, 2010 as evidenced by [the] Assignment of Mortgage."  (Compl. ¶ 36.)

---

[22] The Court therefore declines to address Chase's alternative arguments regarding why it is not a debt collector.  (*See* Bank Defs.' Mem. 12–15.)

[23] Therefore, to the extent that Plaintiff alleges that Chase is a debt collector because it "stand[s] in the shoes of" Wells Fargo, a debt collector, this allegation is not plausible.  (Compl. ¶ 17.)

Moreover, the other exhibits attached to the Complaint, along with the Consent Order of which this Court takes judicial notice, (*see supra* n.6), again contradict Plaintiff's allegations regarding when Chase obtained her loan. As of August 26, 2008, EMC was servicing the loan for Wells Fargo. (Modification.) As of April 1, 2011, Chase became the successor servicer for loans formerly serviced by EMC, acquiring all of EMC's mortgage loan servicing rights. (Consent Order at 2.) In other words, Chase obtained Plaintiff's loan as part of an acquisition of *all* of EMC's mortgage servicing rights and obligations, rather than through a specific assignment or transfer of Plaintiff's mortgage for the purposes of debt collection after default. Therefore, Chase "stand[s] in the place of [EMC] as Plaintiffs' loan servicer," and obtained Plaintiff's loan at least as of August 26, 2008—before her default in 2009.[24] *Pascal*, 2013 WL 878588, at *4 (internal quotation marks omitted). Plaintiff argues that *Pascal* is inapplicable because Chase obtained transfer of the debt through "a specific assignment"—the recorded assignment of mortgage—but that document does not mention Chase or servicing rights; rather, it reflects only an assignment of the mortgage from Fremont to Wells Fargo. (*See* Pl.'s Banks Mem. 9; Assignment Recording.) *See Pascal*, 2013 WL 878588, at *4 ("This Court must therefore determine whether the FDCPA covers companies who, like [the] [d]efendant, acquired certain mortgages as a result of their acquisition of an original mortgage servicing company, rather than through a specific assignment or transfer of the mortgage."). Indeed, courts have found transfers similar to the one between EMC and Chase here constitute "obtain[ing]" the loan

---

[24] Plaintiff also attached to the Complaint a letter Chase sent to her on January 21, 2016, which stated that "servicing of th[e] loan transferred to [Chase] on May 1, 2007." (Compl. Ex. G.) This date likely reflects when EMC began servicing Plaintiff's loan, before the Modification, indicating that servicing role for Wells Fargo, was signed in 2008. (Modification.) However, drawing all inferences in favor of Plaintiff, the Court will assume that Chase did not obtain the loan until the later date in August 2008, as documented in the Modification.

for FDCPA purposes.  *See, e.g.*, *Nichols v. BAC Home Loans Servicing LP*, No. 13-CV-224, 2013 WL 5723072, at *2, *6 (N.D.N.Y. Oct. 18, 2013) (finding, in case where one entity "transferred the loan and servicing responsibilities" to the defendant, that the defendant stood in the shoes of the original loan servicing company);  *Pascal*, 2013 WL 878588, at *4 (finding that JPMorgan stood in the place of WaMu, the original loan servicer, and acquired the loan before default where the documents established that "JPMorgan acquired the right to service Plaintiff's loan upon its acquisition of WaMu's assets," JPMorgan "assum[ed] all mortgage servicing rights and obligations of WaMu," and "JPMorgan would continue to operate WaMu as the servicer of [the] [p]laintiffs' mortgage").[25]

Because Chase obtained Plaintiff's loan before she defaulted, Plaintiff has not plausibly pled that it is a debt collector under the FDCPA.  The Court therefore grants Chase's Motion To Dismiss the FDCPA claims against it.  *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 143 (E.D.N.Y. 2017) ("[I]t is true that district courts in the Second Circuit have interpreted section 1692a(6) to exclude from the definition of 'debt collectors' only loan servicers who obtain a debt prior to default." (alterations and internal quotation marks omitted)); *Hoo-Chong*, 2016 WL 868814, at *3 ("[M]ortgage servicers are not 'debt collectors' as defined by the FDCPA if they obtained the particular mortgage at issue before the mortgagor defaulted."); *Pascal*, 2013 WL 878588, at *4 ("Mortgage servicers are therefore not covered by the FDCPA if the debt at issue was acquired before a customer default.  That is, the FDCPA only covers servicers who obtain a mortgage that is already in default." (italics omitted)); *see also*

---

[25] Plaintiff argues that Chase's previous acquisition of EMC's loan servicing obligations is "irrelevant" to the claims asserted in the Complaint, because the Court should only look at activity in "the one-year statute of limitations" under the FDCPA, but she cites no authority for this proposition.  (Pl.'s Banks Mem. 8.)

*Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012) ("As the district court held, the complaint does not allege that [the loan servicing corporation] acquired [the plaintiff's] debt before it was in default and so fails plausibly to allege that [the loan servicing corporation] qualifies as a debt collector under the FDCPA.")[26]

### b. Claims Against the Attorney Defendants

The Complaint alleges that the Attorney Defendants violated § 1692c(b) and § 1692e(10). (Compl. ¶¶ 56, 58.) However, the only alleged acts taken by these Defendants involve their filings with the New York Supreme Court in the foreclosure action, and their mailing of a copy of those filings to Plaintiff. (*Id.*) Therefore, the Attorney Defendants argue that documents sent in connection with a foreclosure action do not constitute debt collection under the FDCPA. (Attorney Defs.' Mem. 5–8; *see also* Bank Defs.' Mem. 15–18 (same).) Plaintiff argues that Defendants' communications are covered, because they seek to recover money owed, i.e., the debt, not Plaintiff's property. (Pl.'s Banks Mem. 9–20; Pl.'s Attorneys Mem. 4–16.)

The Second Circuit has yet to address whether documents filed or served in a foreclosure action are covered by the FDCPA. However, on October 2, 2017, the Second Circuit heard oral argument in a case that presents this very issue. *See Cohen v. Ditech Fin. LLC*, No. 17-950 (2d Cir. 2017). Indeed, the Parties rely extensively on the district court opinion and the appellate

---

[26] Plaintiff argues that the monthly statements and unspecified "additional mailed notices from Chase" are attempts to collect a debt, and therefore Chase must be a debt collector. (Pl.'s Banks Mem. 8.) However, the cited case is inapposite, because it involved a defendant loan servicer that was not contesting its status as a debt collector, and instead analyzed only whether a letter from that debt collector was an "initial communication in connection with the collection of a debt" under § 1692g(a). *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 220, 229 (2d Cir. 2015). Moreover, even if Chase sends affidavits and monthly statements "with the degree of regularity described in [§] 1692a(6)," (Pl.'s Banks Mem. 8), Chase is still not a debt collector if it is covered by the § 1692a(6)(F)(iii) exception.

briefs filed in *Cohen* in their briefing before this Court. (*See* Pl.'s Attorneys Mem. 10; Attorney Defs.' Mem. 5, 7; Bank Defs.' Mem. 17.) Therefore, the Court denies the Attorney Defendants' Motion to Dismiss on this ground without prejudice to re-filing once the Second Circuit issues its opinion in *Cohen*.

## III. Conclusion

In light of the foregoing analysis, the Court grants the Bank Defendants' Motion To Dismiss and denies the Attorney Defendants' Motion to Dismiss without prejudice to re-filing once the Second Circuit issues its opinion in *Cohen v. Ditech Fin. LLC*. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of the claims against the Bank Defendants is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should file one within 30 days, and include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, affidavits, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. No. 34, 39), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:   March 29, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

34