# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

NICOLE JOHNSON-GELLINEAU,

      Plaintiff,

      v.

STIENE & ASSOCIATES, P.C.;
CHRISTOPHER VIRGA, ESQ.; RONNI
GINSBERG, ESQ.; JPMORGAN CHASE
BANK, NATIONAL ASSOCIATION;
WELLS FARGO BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR
CARRINGTON MORTGAGE LOAN
TRUST, SERIES 2007-FRE1, ASSET-
BACKED PASS-THROUGH
CERTIFICATES,

      Defendants.

*Document filed electronically*

Civil Action No. 7:16-cv-09945-KMK

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)

---

MCCALLA RAYMER LEIBERT PIERCE, LLC
420 Lexington Avenue, Suite 840
New York, New York 10170
Telephone: 347-286-7409
Brian P. Scibetta, Esq.
*Attorneys for Defendants, JPMorgan Chase Bank,
National Association and Wells Fargo Bank
National Association, as Trustee for Carrington
Mortgage Loan Trust, Series 2007-FRE1, Asset-
Backed Pass-Through Certificates*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................................. 4

LEGAL ARGUMENT ............................................................................................................... 7

   I.    FRCP 12(b)(6) STANDARD OF REVIEW .................................................... 7

   II.    PLAINTIFF HAS AGAIN FAILED TO ALLEGE THAT WELLS FARGO IS A "DEBT COLLECTOR" AS DEFINED BY THE FDCPA .................................................... 8

     A.   All of the Documents The Court May Consider On This Motion Support that Wells Fargo is the Entity to Whom Plaintiff Owes Her Debt ............................................. 9

     B.   Plaintiff's Challenge To Wells Fargo As The Entity To Whom She Owes Her Debt Runs Afoul of the Doctrines of Rooker-Feldman and Collateral Estoppel .................... 11

     C.   Plaintiff Has Not Plausibly Alleged That The "False Name" Exception Pursuant to 15 U.S.C. § 1692a(6) Is Applicable to Wells Fargo .......................................................... 13

   III.    PLAINTIFF HAS AGAIN FAILED TO ALLEGE FDCPA CLAIMS AGAINST CHASE .......................................................................................................................... 14

     A.   Chase Is Not A "Debt Collector" As Defined By The Statute .................................. 14

     1.   Chase should be deemed to have begun servicing the Subject Loan prior to Plaintiff's default ........................................................................................................................... 15

     2.   Chase in its role as mortgage servicer is not the type of entity intended to be covered by the FDCPA .......................................................................................................................... 17

     B.   Plaintiff Has Failed to Plausibly Allege That Chase Engaged in "Debt Collection" Activity ...................................................................................................................... 18

CONCLUSION ........................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................... 7, 8

*Augustus v. Brookdale Hosp. Medical Center*, 2015 U.S. Dist. LEXIS 128495 (E.D.N.Y. Sept. 24, 2015).............................................................................................................. 16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................... 7, 8

*Bloomingburg Jewish Educ. Center v. Village of Bloomingburg, N.Y.*, 111 F.Supp.3d 459 (S.D.N.Y. 2015) ........................................................................................................ 5

*Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993) ............................... 4

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359 (2d Cir.1995) 12

*Cortec Indus., Inc. v Sum Holding L.P.*, 949 F.2d 42 (2d Cir 1991) ........................................ 4, 16

*Frederick v. Capital One Bank (USA), N.A.*, 14-CV-5460, 2018 U.S. Dist. LEXIS 50768 (S.D.N.Y. Mar. 27, 2018) ...................................................................................... 11

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56 (2d Cir. 2004)………………………………………………………………………..…9, 15

*Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) ................................................................. 7

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ....................... 10, 13

*Hill v. DLJ Mortgage Capital, Inc.*, 15-cv-3083, 2016 U.S. Dist. LEXIS 138526 (E.D.N.Y. Sept. 30, 2016)........................................................................................................... 19

*Hill v. DLJ Mortgage Capital, Inc.*, 689 Fed. Appx. 97 (2d Cir. 2017)........................ 19

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)..................... 12

*Hoo-Chong v Citimortgage, Inc.*, 15-CV-4051, 2016 WL 868814 (E.D.N.Y. Mar. 7, 2016)....... 15

*Hunt v. Arthur Kill Correctional Facility*, 2012 U.S. Dist. LEXIS 186664 (E.D.N.Y. Oct. 9, 2012)....................................................................................................................... 17

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991)................. 4

*In re NYSE Specialists Secs. Litig.,* 503 F.3d 89 (2d Cir. 2007)................................... 8

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66 (2d Cir. 1998) ........................................................................................................... 4, 17

*Kilpakis v. JPMorgan Chase Financial Company, LLC*, 229 F.Supp.3d 133 (E.D.N.Y. 2017).... 15

*Macias v. Ocwen Loan Servicing LLC*, 16-cv-2215, 2017 WL 836028 (S.D.N.Y. March 2, 2017) ........................................................................................................................... 15

*Maguire v. Citicorp Retain Servs.*, 147 F.3d 232 (2d Cir. 1998) .................................. 14

*Munroe v. Specialized Loan Servicing LLC*, 14-cv-1883, 2016 WL 1248818 (E.D.N.Y. March 28, 2016) .................................................................................................................. 10

*Pascal v JPMorgan Chase Bank, Nat. Assn.*, 09-CV-10082 ER, 2013 WL 878588 (S.D.N.Y. March 11, 2013) ................................................................................................. 17

*Plummer v. Atlantic Credit & Finance, Inc.*, 66 F.Supp.3d 484 (S.D.N.Y. 2014) ......................... 9

*Roth v. Jennings*, 438 F.3d 499 (2d Cir. 2007) .......................................................... 16

*Vincent v. Money Store*, 736 F.3d 88 (2d Cir. 2013) ..................................................... 14

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ........................................... 11

*Williams v. Citibank, N.A.*, 565 F.Supp.2d 523 (S.D.N.Y. 2008) .................................. 9

*Zinermon v. Burch*, 494 U.S. 113 (1990)..................................................................... 8

## <u>Statutes</u>

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*.......................... passim

## <u>Other Authorities</u>

Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013) ........................................................... 19

## <u>Rules</u>

Fed R. Civ. P. 12(b)(6).......................................................................................... 1, 4, 7, 8

Fed. R. Evid. § 201 .................................................................................................... 4

Defendants, JPMorgan Chase Bank, National Association ("Chase") and Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates ("Wells Fargo," and collectively with Chase, the "Bank Defendants") submit this memorandum of law in support of their Motion to Dismiss the First Amended Complaint (the "AC") filed by Plaintiff, Nicole Johnson-Gellineau ("Plaintiff"), pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

This action concerns a $262,880 loan entered into by Plaintiff with Wells Fargo's predecessor in interest on December 18, 2006, secured by a mortgage on real property she owns located in Beacon, New York.  Plaintiff concededly defaulted on her payment obligations in September 2009, resulting in the commencement of a foreclosure action by Wells Fargo in June 2013 in the Supreme Court of the State of New York.  Though Plaintiff contested the foreclosure action, in particular on the alleged basis that Wells Fargo lacked standing to enforce the note and mortgage, the state court ruled against her and entered judgment of foreclosure and sale in Wells Fargo's favor.  In doing so, *inter alia* the state court found that Wells Fargo was the entity to whom Plaintiff owed her debt.  This judgment remains undisturbed to date.

In apparent response to the foreclosure, Plaintiff brought the instant action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. against Wells Fargo, Wells Fargo's mortgage servicer, Chase, and the attorneys/law firm who represented Wells Fargo in the foreclosure (collectively, the "Attorney Defendants"), based on court filings and other alleged conduct by those parties during the pendency of the foreclosure.  As to Plaintiff's original pleading, the Bank Defendants moved for dismissal on the basis that Plaintiff failed to plausibly allege that either could be considered a "debt collector" within the meaning of the

FDCPA.  The Court agreed, finding that Wells Fargo was a "creditor" under the statute, rather than a "debt collector," and therefore exempt from the statute's reach.  The Court also agreed that Plaintiff failed to plausibly establish that Chase was a "debt collector" in its role as mortgage servicer for Wells Fargo, primarily because Chase began servicing the loan prior to Plaintiff's default.

In her amended pleading asserting substantively identical FDCPA violations, Plaintiff doubles down on her previous narrative through which she purports to "pull back the cover" on the alleged impropriety of the origination, securitization, and transfer of her mortgage loan to Wells Fargo.  To the unfamiliar reader, the notion that this is an FDCPA lawsuit would not be readily apparent, as Plaintiff's narrative first and foremost purports to challenge/unwind the alleged securitization and transfer of the loan.  Clear is Plaintiff's disagreement with the state court's judgment – she contends it is an "unnamed investor," rather than Wells Fargo, who actually owns her loan.  However, that premise is untenable as the basis for an FDCPA lawsuit, and should be rejected.  The state court already adjudged that Wells Fargo is the entity to whom Plaintiff owes her debt, and two distinct legal doctrines (Rooker-Feldman and collateral estoppel) prohibit a subsequent attack in this Court.

Even were that not the case, under this spectrum of facts Wells Fargo qualifies as a "creditor" under the FDCPA.  Whether based on Plaintiff's allegations/prior exhibits, public land records, or court pleadings, all roads lead to the same conclusion – Wells Fargo is the entity to whom Plaintiff owes her debt and therefore outside the statute's reach.  Contrary to Plaintiff's position, it is immaterial whether Wells Fargo acquired Plaintiff's debt before or after her conceded default, as the Supreme Court has found that an entity who purchases defaulted debt is still not deemed a "debt collector" where the purchased debt is "for its own account," and not owed to

2

"another."  Wells Fargo foreclosed in its own name for "its own account," and no amount of amendment or conspiratorial allegations from Plaintiff would ever change that fact.

The Court should also again find that Chase is not a "debt collector" within the meaning of the FDCPA.  In an effort to prevent that conclusion, Plaintiff omits as an exhibit to her amended pleading a document she previously attached to the original Complaint and presumably deems harmful based on the Court's prior decision, the August 26, 2008 Loan Modification Agreement she entered into with EMC Mortgage Corporation ("EMC"), as servicer for Wells Fargo.  The Court previously concluded that Chase began servicing Plaintiff's debt before her default and was thus exempt from "debt collector" status, predicated on the modification agreement and Chase's judicially noticeable status as successor servicer to EMC's entire loan portfolio. Plaintiff's effort in the amended pleading to conceal the existence of the modification agreement should not survive judicial scrutiny.  As the agreement is pertinent and integral to her narrative, it is reviewable on a pre-answer motion to dismiss whether or not she has attached or incorporated it by reference.

Even absent the modification agreement, there are other reasons supporting the dismissal of Chase.  As this Court has previously found, Chase is not the type of entity that the legislature intended to be covered by the FDCPA, irrespective of Plaintiff's conclusory allegations concerning Chase's alleged debt collection activity.  Also dispositive, Plaintiff alleges no communications by Chase that could subject it to the statute.  The monthly mortgage statements Chase sent to her are statutorily mandated and do not constitute debt collection activity.  Further, since Chase was not a party to the foreclosure proceeding, any pleadings filed therein cannot be attributable as communications sent by Chase to a third-party.

Overall, Plaintiff has again failed to plausibly allege that the Bank Defendants are "debt collectors" and/or engaged in any prohibited act or omission under the FDCPA.  Accordingly, the

AC should be dismissed as to the Bank Defendants pursuant to FRCP 12(b)(6), and this time with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As pleaded by Plaintiff, and as set forth in publicly filed court pleadings and other documents the Court may consider on this Motion,[1] the Bank Defendants set forth the following facts in support of the Motion:

1.  On December 18, 2006, Plaintiff entered into a mortgage loan with Fremont Investment & Loan ("Fremont") in the amount of $262,880.00 (the "Subject Loan"), secured by a mortgage (the "Mortgage") granted to Fremont on real property located at 149 Wilkes St., Beacon, NY 12508 (the "Property").  *See* AC, ¶ 14; Declaration of Brian P. Scibetta ("Scibetta Dec."), Exh. 2 at Exhs. A and C.  The Mortgage was recorded in the Dutchess County Clerk's Office on March 3, 2008.  *Id*.

2.  The Subject Loan transferred to Wells Fargo.  *See* AC, ¶¶ 24, 27; Scibetta Dec., Exh. 4 at Affidavit of Yolanda Gardner ("Gardner Aff."), ¶¶ 6-10.  Plaintiff thereafter entered into a loan modification agreement (the "Mod Agreement") dated August 26, 2008 with EMC,[2]

---

[1] Pleadings filed in another action may be considered on a pre-answer motion to dismiss, along with any other documents of which the Court may take judicial notice.  *See Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (the Court is permitted to consider "matters of which judicial notice may be taken on Rule 12(b)(6) motion); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("a court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings"); Fed. R. Evid. § 201 (judicial notice may be taken of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  The Court may also consider documents that are "integral" to the pleading, even if not incorporated as an attachment or by reference.  *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *Cortec Indus., Inc. v Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir 1991).

[2] Chase is successor servicer to loans formerly serviced by EMC as of April 1, 2011.  The Court may take judicial notice of this fact based on the Consent Order entered before the Board of Governors of the Federal Reserve System, Washington D.C., in the matter titled, *In re JPMorgan*

as Servicing Agent for Wells Fargo, which *inter alia* modified the principal balance of the Subject Loan to $279,763.22.  *See* Scibetta Dec., Exh. 2 at Exh. D; Exh. 4 at Gardner Aff. at Exh. F.  The Mod Agreement expressly states that Wells Fargo is the holder of the Note and Mortgage for the Subject Loan.  *Id.*

3.  Plaintiff alleges that Wells Fargo is collecting the debt on behalf of an "unnamed investor," and is a "sham trust."  *See* AC, ¶¶ 22, 35-36, 39.

4.  Plaintiff defaulted on her payment obligations under the Subject Loan by failing to make the payment due on September 1, 2009, and each payment thereafter.  *See* AC, ¶ 23; Scibetta Dec., Exh. 2 at ¶ 10.

5.  Resulting from Plaintiff's default, on June 3, 2013, Wells Fargo commenced a foreclosure action against Plaintiff and other defendants with an interest in the Property in the Supreme Court of the State of New York, Dutchess County, titled *Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates*, Index No. 2013/3344 (the "Foreclosure Action").  *See* Scibetta Dec., Exh. 2.  The Attorney Defendants represented Wells Fargo in the Foreclosure Action.  *Id.*

6.  On June 28, 2013, Plaintiff filed a Verified Answer, Affirmative Defenses and Counterclaims in the Foreclosure Action.  *See* Scibetta Dec., Exh. 3.   In her First

---

*Chase & Co. and EMC Mortgage Corporation*, Docket No. 11-023, publicly available online at https://www.federalreserve.gov/newsevents/pressreleases/files/enf20110413a5.pdf.  *See* Scibetta Dec., Exh. 8 (referring to the "EMC Servicing Rights Transfer" to Chase on April 1, 2011, after which EMC no longer engaged in residential mortgage loan servicing); *see also Bloomingburg Jewish Educ. Center v. Village of Bloomingburg, N.Y.*, 111 F.Supp.3d 459, 472 (S.D.N.Y. 2015) (court may take judicial notice of "matters of public record").

Affirmative Defense, Plaintiff alleged that Wells Fargo was not the entity to whom she owed her debt, and therefore lacked standing to foreclose. *Id.*

7.  In March 2015, Wells Fargo moved for summary judgment in the Foreclosure Action. *See* Scibetta Dec., Exh. 4.  On August 10, 2015, the state court issued an Order: i) granting summary judgment on the foreclosure in favor of Wells Fargo; ii) striking Plaintiff's Verified Answer, including the affirmative defenses and counterclaims; and iii) appointing a Referee to compute and ascertain the amount Plaintiff owed to Wells Fargo. *Id.* at Exh. 5.

8.  On or about March 17, 2016, Wells Fargo moved for Judgment of Foreclosure and Sale in the Foreclosure Action. *See* Scibetta Dec., Exh. 6.  On April 18, 2016, the state court granted Judgment of Foreclosure and Sale in favor of Wells Fargo, *inter alia* adjudging that Plaintiff owed the amount of $430,431.62 to Wells Fargo, and permitting Wells Fargo to proceed with a foreclosure sale of the Property. *Id.*  Wells Fargo's foreclosure judgment against Plaintiff remains undisturbed to date. *Id.* at Exh. 7

9.  In connection with its servicing of the Subject Loan, Chase mailed to Plaintiff monthly mortgage statements in 2016. *See* AC, Exh. B.  In addition, through a January 20, 2016 letter, Chase identified Wells Fargo as the owner of the Subject Loan, further stating it serviced the loan for Wells Fargo. *See* AC, Exh. A.

10. Plaintiff commenced this action through the filing of the original Complaint on December 23, 2016. *See* ECF Docket Entry No. 1.  In response to the Complaint, both the Bank Defendants and the Attorney Defendants filed separate pre-answer motions to dismiss pursuant to FRCP 12(b)(6). *Id.* at Nos. 34 and 39.  On March 29, 2018, the Court issued an Opinion and Order (the "First MTD Order"), dismissing the Bank Defendants from the

action on the basis that Plaintiff had failed to plausibly allege that either were "debt collectors" as defined by the FDCPA. *See* ECF Docket Entry No. 55. The Court also permitted Plaintiff to file an amended pleading in an effort to rectify the pleading deficiencies resulting in the dismissal of the Bank Defendants. *Id.*

11.     On April 30, 2018, Plaintiff filed the AC. *See* Scibetta Dec., Exh. 1. While her FDCPA claims against the Bank Defendants are largely the same, her narrative now focuses on an alleged "unnamed investor" that she contends has been pulling the strings behind everything that happened concerning the loan. Far more so than the original pleading, the AC reads as a rebuke of the state court's findings in the Foreclosure Action.

12.     Both the Bank Defendants and the Attorney Defendants indicated their intent to seek dismissal of the amended pleading, and the Court entered a Scheduling Order on August 23, 2018 for the anticipated motions. *See* ECF Docket Entry No. 74.

13.     The Bank Defendants now move to dismiss the AC pursuant to FRCP 12(b)(6), again for failure to state a claim under which relief can be granted.

## **LEGAL ARGUMENT**

### I.     **FRCP 12(b)(6) STANDARD OF REVIEW**

Fed R. Civ. P. 12(b)(6) allows a party to move for dismissal based on the pleader's "failure to state a claim upon which relief can be granted." A complaint should be dismissed if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *See Harris v. Mills,* 572 F.3d 66 (2d Cir.2009), *citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to

legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* at 72, *quoting Iqbal,* 556 U.S. at 678. " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 556 U.S. at 663–64).

The Court must accept as true the factual allegations set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir. 2007). Plaintiffs, however, must do more than simply set out the elements of their claims; they must plead "enough factual matter (taken as true) to suggest" the required element." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010), *quoting Twombly,* 550 U.S. at 556 (2007). The "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* If the Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief," it will grant dismissal pursuant to Rule 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993).

In the case at bar, Plaintiff has insufficiently pleaded FDCPA claims against Wells Fargo and Chase, and the AC should be dismissed against both of them accordingly.

## II.   PLAINTIFF HAS AGAIN FAILED TO ALLEGE THAT WELLS FARGO IS A "DEBT COLLECTOR" AS DEFINED BY THE FDCPA

There are three elements that must be pleaded to establish an FDCPA claim: "1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object

of efforts to collect a consumer debt, (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Okyere v. Palisades Collection, LLC*, 961 F.Supp.2d 508, 513 (S.D.N.Y. 2013). Throughout the course of this proceeding, Plaintiff has consistently fallen short on the second element as to Wells Fargo, because the allegations and documents the Court may consider on this type of motion do not permit a finding that Wells Fargo is a "debt collector" under the statute.

### A. All of the Documents The Court May Consider On This Motion Support that Wells Fargo is the Entity to Whom Plaintiff Owes Her Debt

The FDCPA defines a "debt collector" as "a person who regularly collects . . . debts owed … to another" or a person involved "in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6); *Okyere*, 961 F.Supp.2d at 514. The Second Circuit has affirmed that "[t]he FDCPA establishes two alternative predicates for 'debt collector' status— engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 61 (2d Cir. 2004) (*citing* 15 U.S.C. § 1692a(6)). However, a party considered to be a "creditor" under the statute, defined as "any person who offers or extends credit creating a debt *or to whom a debt is owed*…." (15 U.S.C. § 1692a(4) (emphasis added)), is largely exempt from the statute's reach. Indeed, it is well-established in this Court that "creditors" attempting to collect their own debts are not "debt collectors," and therefore do not fall within the ambit of the FDCPA. *See, e.g., Huock v. US Bank NA*, 15-cv-10042, 2016 WL 5720783, at *9 (S.D.N.Y. Sept. 30, 2016) (FDCPA "does not apply to creditors"); *Plummer v. Atlantic Credit & Finance, Inc.*, 66 F.Supp.3d 484, 488 (S.D.N.Y. 2014) ("creditor... is [] not subject to the FDCPA"); *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 528 (S.D.N.Y. 2008) ("creditors are not subject to the FDCPA"); *see also, e.g.,*

9

*Munroe v. Specialized Loan Servicing LLC*, 14-cv-1883, 2016 WL 1248818 (E.D.N.Y. March 28, 2016) (same).

Both the allegations in the AC and the documents the Court may consider on this type of motion compel a conclusion that Wells Fargo is a "creditor" attempting to collect its own debt. Wells Fargo initiated a foreclosure in its own name concerning the debt, which it has prosecuted to judgment. *See* Scibetta Dec., Exhs. 2 and 6. In issuing judgment, the state court found that Plaintiff owed to Wells Fargo the sum of $430,431.62 under the Subject Loan. *Id.* at Exh. 6. This ruling accords with loan documents that Plaintiff signed – as per the Mod Agreement dated August 26, 2008, Wells Fargo is identified as the holder of the Note and Mortgage. *Id.* at Exh. 2 at Exh. D; Exh. 4 at Gardner Aff. at Exh. F.[3]

The allegations in the AC further confirm Wells Fargo's relationship to the debt. Plaintiff alleges that "the Note together with the Security Instrument [was transferred] to Wells Fargo on February 22, 2010, . . . and Chase began collecting the debt for Wells Fargo." *See* AC, ¶ 26. And, "Wells Fargo received and acquired . . . the defaulted debt together with the [] (Mortgage). . . ." *Id.* at ¶ 27. Though Plaintiff operates under the assumption that a party cannot be considered a creditor if it has acquired defaulted debt – which the facts demonstrate is not even the case here (*see* Scibetta Dec., Exh. 4 at Gardner Aff., ¶¶ 6-10 and Exh. F) – the Supreme Court has already rejected that position. In *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017), the Supreme Court found that even a defaulted debt purchaser could be considered a creditor so long as it collects the debt "for its own account" rather than for another. *See also Frederick v. Capital One Bank (USA), N.A.*, 14-CV-5460, 2018 U.S. Dist. LEXIS 50768, at *35 (S.D.N.Y. Mar.

---

[3] The Court should consider the Mod Agreement on this motion, despite Plaintiff's purposeful omission of the document as an attachment to the AC. For a more detailed analysis, *see infra*, Section III.A.

27, 2018) ("debt buyers" who purchase defaulted debt for their own purposes "are not debt collectors").  Thus, whether Plaintiff went into default before or after Wells Fargo acquired her debt is immaterial, as Wells Fargo only sought collection in its own name for its own account.

Plaintiff also tries to escape this inevitable conclusion through a series of implausible allegations that Wells Fargo has been collecting the debt for an "unnamed investor" and is a "sham trust."  *See* AC, ¶¶ 22, 35-36, 39.  However, that position is contrary to what the state court found in the Foreclosure Action, and Plaintiff has not attached any document or communication supporting her conjecture that an unnamed entity has stood behind Wells Fargo pulling the strings. To accept her judicially refuted conjecture even at the pleading stage would create harmful precedent, as it would essentially rewrite the "creditor" exemption out of the statute – any FDCPA plaintiff could allege that there is an "unnamed investor" behind the party that owns the debt to avoid a "creditor" finding.  In the absence of any allegations other than that the loan has been securitized, this position is simply not plausible.[4]

For all of the above reasons, the Court should find, again, that Wells Fargo is a "creditor" under the statute and exempt from its reach.

**B. Plaintiff's Challenge To Wells Fargo As The Entity To Whom She Owes Her Debt Runs Afoul of the Doctrines of Rooker-Feldman and Collateral Estoppel**

Plaintiff's effort to challenge Wells Fargo's relationship to her loan, the only possible characterization of Paragraphs 14 through 36 of the AC, should also be rejected as running afoul of the Rooker-Feldman abstention doctrine and the doctrine of collateral estoppel.  Previously the

---

[4] To the extent Plaintiff also again takes the position that a trustee should be deemed collecting debt for another based solely on its trustee status, this Court should again reject that notion as it did before.  *See* ECF Docket Entry No. 55 at p. 26.  Under well-established precedent, a "trustee stands in the shoes of the corporation." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000).

Court declined to make this ruling, but the additional attention devoted to these allegations in the AC warrants a different finding this time around.  Public court records reflect that Plaintiff raised a standing defense in the Foreclosure Action through which she asserted that Wells Fargo was not the entity to whom she owed her debt, and that after a "full and fair opportunity" to litigate the state court struck that defense and awarded judgment in favor of Wells Fargo.  *See* Scibetta Dec., Exhs. 3 and 5.  In seeking to prove in the AC that an unnamed party is actually the owner of her loan, Plaintiff has impermissibly attacked the state court judgment.

The Rooker-Feldman abstention doctrine bars a federal court from exercising jurisdiction over claims that would be the equivalent of an appeal from a state court judgment, and employs a four-part test for its application: "[1], the federal-court plaintiff must have lost in state court. [2], the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[.]  [3], the plaintiff must invit[e] district court review and rejection of [that] judgment[].  [4], the state-court judgment must have been rendered before the district court proceedings commenced."  *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  Though different in concept, the doctrine of collateral estoppel also bars an unsuccessful litigant from relitigating an issue previously decided in another proceeding, also through a four-part test: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits."  *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995).

While agreeing that most of those elements were readily met here, the Court stopped short in the First MTD Order of finding that Rooker-Feldman and collateral estoppel barred Plaintiff's FDCPA claim against Wells Fargo.  Pertaining to both doctrines, the Court felt that Plaintiff's

allegation that Wells Fargo acquired her debt after default was sufficient to place her claim outside their reach. *See* ECF Docket Entry No. 55 at p. 18, 22. However, as discussed *supra*, Plaintiff's mere allegation that Wells Fargo acquired a defaulted debt would not prohibit Wells Fargo from being deemed a "creditor" so long as it collects "for its own account," rather than for another. *See Henson*, 137 S. Ct. at 1724. To find that Wells Fargo is a "debt collector" rather than a "creditor," the Court would have to ultimately rule that Plaintiff owed her debt to another party, in direct contradiction to the state court's judgment in the Foreclosure Action. Accordingly, Plaintiff's FDCPA claim against Wells Fargo should be deemed to run afoul of Rooker-Feldman and collateral estoppel.

It is also beyond plausible dispute that Plaintiff intends to litigate in this action the party to whom she owes her debt, based on the sheer amount of attention devoted to these allegations in the AC. Most notably, Plaintiff repeatedly alleges that party is not Wells Fargo, but rather an "unnamed investor." *See* AC, ¶¶ 22, 35-36, 39. In fact, it would be fair to characterize the FDCPA claim as merely a vehicle through which Plaintiff intends to make that demonstration. But she already had a "full and fair opportunity" to litigate that issue in the Foreclosure Action, and the state court found her position lacking in merit. *See* Scibetta Dec., Exhs. 5, 7-8. The aforementioned doctrines prevent her from getting a second bite at the apple here.

## C. Plaintiff Has Not Plausibly Alleged That The "False Name" Exception Pursuant to 15 U.S.C. § 1692a(6) Is Applicable to Wells Fargo

In perhaps the most specious aspect of the AC as it pertains to Wells Fargo, Plaintiff makes reference to the "false name" provision of the FDCPA set forth in 15 U.S.C. § 1692a(6). Under this provision, the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In interpreting the elements required in the latter

portion of the provision, the Second Circuit has determined three ways in which those could be satisfied: "(1) the creditor uses a name that falsely implies that a third party is involved in collecting its debts; (2) the creditor pretends to be someone else; or (3) the creditor uses a pseudonym or alias." *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013), *citing Maguire v. Citicorp Retain Servs.*, 147 F.3d 232, 235 (2d Cir. 1998).  In any circumstance, however, "there must be some active involvement in the misrepresentation by the creditor before triggering liability under the false name exception."  *Vincent*, 736 F.3d at 99.

Here, the exception is very plainly not applicable.  Wells Fargo foreclosed in its own name, and had previously identified itself by name in the Mod Agreement.  *See* Scibetta Dec., Exhs. 2 and 4 at Gardner Aff. at Exh. F.  In addition, in a correspondence to Plaintiff, Chase also identified Wells Fargo by its actual name as the owner of the Subject Loan.  *See* AC, Exh. A.  Even Plaintiff's own allegations do not support that Wells Fargo used a "false name," as she seems to suggest that it is the "unnamed investor" who has used the false name rather than Wells Fargo.  *Id.* at ¶ 34.  In short, to the extent Plaintiff alleges that Wells Fargo should be deemed a "debt collector" pursuant to 15 U.S.C. § 1692a(6), that position fails and should be rejected.

## III.   PLAINTIFF HAS AGAIN FAILED TO ALLEGE FDCPA CLAIMS AGAINST CHASE

The AC should be dismissed as to Chase because Plaintiff has again failed to sufficiently allege that Chase is a "debt collector," and further because Plaintiff has failed to allege any "debt collection activity" by Chase that could subject it to the statute.

### A.  Chase Is Not A "Debt Collector" As Defined By The Statute

As discussed *supra*, "[t]he FDCPA establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and

'regularly' engaging in such activity." *Goldstein,* 374 F.3d at 61.  Based on both a statutory carve-out and the statute's intended purpose, Chase should not be deemed a "debt collector."

1. Chase should be deemed to have begun servicing the Subject Loan prior to Plaintiff's default

The FDCPA also exempts from the "debt collector" definition "any person collecting or attempting to collect any debt owed or due ... another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).  Thus, "mortgage servicers are not 'debt collectors' as defined by the FDCPA if they obtained the particular mortgage at issue before the mortgagor defaulted." *E.g., Hoo-Chong v Citimortgage, Inc.*, 15-CV-4051, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016); *Pascal v JPMorgan Chase Bank, Nat. Assn.*, 09-CV-10082 ER, 2013 WL 878588, at *4 (S.D.N.Y. March 11, 2013).  As this Court has stated, the "FDCPA only covers servicers who obtain a mortgage that is *already* in default."  *Macias v. Ocwen Loan Servicing LLC*, 16-cv-2215, 2017 WL 836028, at *2 (S.D.N.Y. March 2, 2017).  The burden therefore lies with the FDCPA plaintiff to plausibly allege that the mortgage servicer acquired the mortgage loan after it was already in default.  *See Kilpakis v. JPMorgan Chase Financial Company, LLC*, 229 F.Supp.3d 133, 143 (E.D.N.Y. 2017) (burden on FDCPA plaintiff to plead "enough facts to make it plausible that [the mortgage servicer] began servicing the Mortgage only after the [] default").

Plaintiff has not.  In the Mod Agreement dated August 26, 2008, she contracts with "EMC Mortgage Corporation, as servicer for Wells Fargo Bank N.A., as trustee under the applicable agreement. . . ."  *See* Scibetta Dec., Exh. 2 at Exh. D.  As her date of default is alleged to have occurred after that time, on September 1, 2009 (*see* AC, ¶ 23), the only available conclusion is that EMC serviced the Subject Loan prior to Plaintiff's default.  The Court may again take judicial notice that Chase is successor servicer for mortgage loans formerly serviced by EMC, as it did

15

previously. *See* FN 2; Scibetta Dec., Exh. 8; ECF Docket Entry No. 55 at p. 31-32. This fact proves dispositive because "where a defendant company acquires a debt through its merger with a previous creditor or servicer of the plaintiff, rather than via a specific assignment, the debt was not 'obtained' while it was in default." *Pascal*, 2013 WL 878588, at *4. By taking assignment of EMC's loans across the board, rather than through a solitary assignment of this specific loan, Chase "stands in the place of [EMC] as Plaintiff's loan servicer" (*id.*), and cannot be deemed to have acquired the servicing of the Subject Loan after Plaintiff's September 1 2009 default. *See also Nichols v. BAC Home Loan Servicing LP*, No. 13-cv-224, 2013 WL 5723072, at *6 (N.D.N.Y. Oct. 18, 2013) (successor servicer stands in the shoes of original loan servicing company).

Perhaps in acknowledgment that she has no way around this prior ruling, Plaintiff attempts to sidestep by omitting the Mod Agreement as an exhibit to the AC, and arguing in her pre-motion letter than the Mod Agreement "cannot be considered in that it is outside the []AC [and] is generally inconsistent with the []AC. . . . " *See* ECF Docket Entry No. 62 at FN 1. However, that position fails under prevailing law. Indeed, it is well-established that a court may consider documents that are integral to the operative pleading, "even if not attached or incorporated by reference." *E.g., Roth v. Jennings*, 438 F.3d 499, 509 (2d Cir. 2007). Where a plaintiff intentionally omits certain documents that are relied upon or integral, those are still properly considered on a pre-answer motion to dismiss because a plaintiff "should not so easily be allowed to escape the consequences" of the omission. *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). This holds true particularly where a plaintiff has omitted documents from an amended pleading that were attached to an original pleading. *See Augustus v. Brookdale Hosp. Medical Center*, 2015 U.S. Dist. LEXIS 128495, at FN 1 (E.D.N.Y. Sept. 24, 2015) ("The Court will consider facts from the Plaintiff's Original Complaint that are not repeated in the Amended

Complaint[,] . . . [and t]he Court will also consider facts derived from the documents annexed to the Original Complaint."); *Hunt v. Arthur Kill Correctional Facility*, 2012 U.S. Dist. LEXIS 186664, at FN 1 (E.D.N.Y. Oct. 9, 2012) ("The factual allegations are taken from the amended complaint and two documents which were attached to the original complaint but omitted from the amended complaint…").  In addition to being the type of document the Court could consider under the above principles, the Court could further take judicial notice of the Mod Agreement as among the documents considered by the state court in the Foreclosure Action in granting judgment to Wells Fargo.  *See* Scibetta Dec., Exhs. 2, 4-6; *see also Int'l Star*, *supra*, 146 F.3d at 70.

Simply put, Plaintiff cannot escape the consequences of this document by intentionally omitting same from her amended pleading, under the self-serving premise that the document is somehow not integral to her narrative regarding Wells Fargo's relationship to her loan.  And she should also not escape the consequences of this Court's prior ruling, when there are no new allegations in the AC that would serve to alter the basis for that ruling.  In appropriate consideration of the Mod Agreement, the Court should again find that Chase's servicing of the Subject Loan began prior to Plaintiff's default and therefore that Chase is not a "debt collector" under the FDCPA.

2. Chase in its role as mortgage servicer is not the type of entity intended to be covered by the FDCPA

This Court could also decline to find that Chase is a "debt collector" under the statute more generally, as it has done in the past.  In *Pascal*, *supra*, this Court disagreed with the plaintiff-mortgagor's premise that Chase could be deemed a "debt collector" subject to the FDCPA, opining as follows:

The Court finds that the legislative history of the FDCPA supports the finding that [Chase] is not a "debt collector" under the statute. The history suggests that the Act was not intended to cover the servicing of loans by widely-recognized national

banks in the ordinary course of their business, as is the case here, but rather, to regulate the actions of 'third party debt collectors' who regularly engage in '[c]ollection abuse' by, among other things, using 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.' S.Rep. No. 95–382, at 2 (1977). The FDCPA was clearly intended to cover 'independent collectors' who, unlike creditors and mortgage servicers, 'are likely to have no future contact with the consumer and often are unconcerned with the consumers' opinion of them,' and 'generally operate on a 50–percent commission.' *Id.* Thus, the legislative history makes clear that the FDCPA does not cover 'mortgage service companies,' like [Chase], 'who service outstanding debts for others.' *Id.* at 3–4.

This analysis holds true to date, and there is no reason for the Court to deviate from its prior ruling in this action.  Plaintiff alleges nothing more than that Chase is the mortgage servicer for Wells Fargo, and as this Court already found, Chase in that capacity does not fall within the scope of the FDCPA.  *Pascal* has not been reversed or even criticized in any other decision, and provides an additional basis for this Court to find that Chase is not a "debt collector" under the statute.

**B. Plaintiff Has Failed to Plausibly Allege That Chase Engaged in "Debt Collection" Activity**

Even assuming, *arguendo*, that Chase could somehow be deemed a "debt collector" under the statute, Plaintiff's FDCPA claims as to Chase would still fail because she has not sufficiently alleged that Chase engaged in "debt collection activity."  To the AC, Plaintiff attaches a January 20, 2016 correspondence from Chase that identifies Wells Fargo as the owner of her loan, and several mortgage statements Chase sent to her in 2016.  *See* AC, Exhs. A and B.  None of these documents constitute debt collection activity.

Contrary to Plaintiff's view, a party "cannot state a claim under the FDCPA with respect to the periodic mortgage statements [] sent [by the servicer] pursuant to federal law. . . ." *Hill v. DLJ Mortgage Capital, Inc.*, 15-cv-3083, 2016 U.S. Dist. LEXIS 138526, at *28 (E.D.N.Y. Sept. 30,

2016).   In affirming that ruling, the Second Circuit found that mortgage statements sent by servicers pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(f), "which [statute] requires mortgage loan servicers to transmit monthly statements to customers," are "not [] attempts to collect on the debt. . . ."   *Hill v. DLJ Mortgage Capital, Inc.*, 689 Fed. Appx. 97, 98 (2d Cir. 2017).   The logic of this ruling is compelling, as it would be grossly unfair to subject mortgage servicers to FDCPA liability for merely following the mandate of federal statute (TILA).   *Hill*, 2016 U.S. Dist. LEXIS 138526, at \*28-32.   Indeed, as even the Consumer Financial Protection Bureau has concluded, loan servicers are not liable under the FDCPA for sending federally required mortgage statements.   *See* Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013).

With respect to the January 20, 2016 correspondence, this also falls outside the contours of "debt collection activity."   In fact, Plaintiff concedes the correspondence was a direct response to her inquiry regarding the owner of her loan.   *See* AC, ¶ 45.   By merely responding truthfully to Plaintiff's request, Chase cannot be deemed to have "engaged in any act or omission in violation of FDCPA requirements." *Okyere*, *supra*, 961 F.Supp.2d at 513.

For these additional reasons, Plaintiff's FDCPA claim against Chase fails and should be dismissed, with prejudice.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants, JPMorgan Chase Bank, National Association and Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates respectfully request that the Court dismiss Plaintiff's First Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Respectfully submitted,

**MCCALLA RAYMER LEIBERT PIERCE, LLC**

Dated: September 28, 2018          By:   */s/ Brian P. Scibetta*
                                             Brian P. Scibetta