## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE JOHNSON-GELLINEAU ) | Civil Action No. 7:16-cv-09945-KMK |
| Plaintiff, ) | |
| vs. ) | **PLAINTIFF'S MEMORANDUM IN** |
| ) | **OPPOSITION TO THE MOTION OF** |
| STIENE & ASSOCIATES, P.C.; ) | **THE ATTORNEY DEFENDANTS FOR** |
| CHRISTOPHER VIRGA, ESQ.; ) | **JUDGMENT ON THE PLEADINGS** |
| RONNI GINSBERG, ESQ.; ) | |
| JPMORGAN CHASE BANK, ) | |
| NATIONAL ASSOCIATION; ) | |
| WELLS FARGO BANK NATIONAL ) | |
| ASSOCIATION, *As Trustee For* ) | |
| *Carrington Mortgage Loan Trust,* ) | |
| *Series 2007-FRE1, Asset-Backed* ) | |
| *Pass-Through Certificates*; ) | |
| Defendants, ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-29-18

Unrepresented Consumer-Plaintiff, Nicole Johnson-Gellineau ("Plaintiff"), respectfully submits this her opposition to Doc. No. 83, the motion of the three "Attorney Defendants" (Stiene & Associates, P.C., Christopher Virga, Esq., and Ronni Ginsberg, Esq.) pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing claims she brought against them as debt collectors under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's specific grounds are set forth in the following Memorandum.

> Nicole Johnson-Gellineau
> 149 Wilkes Street
> Beacon, New York 12508
> Cell: 646-456-1151
> nikkigelly@gmail.com



NOV 3 0 2018
U.S.D.C.
WP

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

    I.   ATTORNEY DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE THAT THEY ATTEMPTED TO COLLECT A DEBT WITHOUT A CREDITOR HAS NO MERIT ................................................... 3

    II.  SECTION 1692c(b) REFLECTS CONGRESS' JUDGMENT THAT THE RISKS TO CONSUMERS GENERALLY OUTWEIGH DEBT COLLECTORS' INTERESTS IN COLLECTING DEBT ................................................................ 11

    III. ATTORNEY DEFENDANTS ADMIT THEY COMMUNICATED INFORMATION ABOUT PLAINTIFF'S DEBT WITH A THIRD PARTY NOT PERMITTED BY LAW BUT HAVE NOT PLED AND PROVEN ANY AFFIRMATIVE DEFENSES .................................................................................. 21

    IV. ATTORNEY DEFENDANTS HAVE NOT PLED AND PROVEN THAT THEY MEET THE OBJECTIVE STANDARD FOR AN EXCEPTION THAT THEIR FILINGS WITH THE COUNTY CLERK WERE "REASONABLY NECESSARY TO EFFECTUATE A POSTJUDGMENT JUDICIAL REMEDY." ....... 22

CLOSING SUMMARY ............................................................................................. 25

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) ............................. 8

*Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708 (SDNY 2018) ..................... 10

*Black v. Coughlin*, 16 F.3d 72 (2d Cir. 1996) ............................................................................ 4

*Chen v. Major League Baseball Props.*, Inc., 798 F.3d 72 (2d Cir. 2015) ........................... 4, 12

*Cohen v. Wolpoff & Abramson, LLP*, 2008 WL 4513569 (D.N.J. 2008) ........................... 15, 18

*Dada v. Mukasey*, 554 U. S. 1 (2008) ..................................................................................... 19

*Darlene Garner v. Select Portfolio Servicing, et al*, No. 17-1303 (6th Cir. 2017) ...................... 4

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992) ......................................................................... 4

*Duncan v. Walker*, 533 U.S. 167 (2001) ................................................................................ 12

*Evankavitch v. Green Tree Servicing*, 793 F.3d 355 (3rd Cir. 2015) ................................. 2, 3, 17

*FCC v. AT&T, Inc.*, 131 S. Ct. 1177 (2011) ........................................................................... 13

*Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250 (S.D.N.Y. 1998) ................................. 19

*Gomez v. Toledo*, 446 U.S. 635 (1980) .................................................................................... 9

*Green v. Hocking*, 9 F.3d 18 (6th Cir. 1993) ..................................................................... 15, 16

*Heintz v. Jenkins*, 514 U.S. 291 (1995) .......................................................................... passim

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ..................................... 7, 10

*Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) ......................... 3

*Heredia, Hortansa and Schultze v. Green*, 667 F.2d 392 (3rd Cir. 1981) ................................. 23

*Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ...................... 13

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008) ..................................... 14

*Jennings v. Continental Service Group, Inc.*, 15-cv-00575 (EAW) (W.D.N.Y. 2017) ................. 4

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469 (6th Cir. 2008) ......... 16

*Jerman v. Carlisle, McNellie. Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).......................... 17

*King v. Burwell*, 135 S.Ct. 2480 (2015)................................................................................ 12

*Loubier Irrevocable Trust et al v. Noella Loubier et al*, No. 15-802 (2d. Cir 2017)................... 6, 8

*Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996) .................................................................... 7

*Maynard v. Cannon*, 650 F.Supp.2d 1138 (D.Utah 2008)................................................. 21, 22

*Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84 (2008)........................................ 3, 17

*Monahan v. Comm'r*, 109 T.C. 235, 240 (1997) ................................................................ 7

*National Credit Union Administration Board v. U.S. Bank National Association*, 17-756-cv (2d Cir. 2018)...................................................................................................................... 5

*Papetti v. Rawlings Fin Svcs LLC* 15-cv-2933 (PAE) (SDNY 2016) ......................................... 19

*Romea v. Heiberger*, 163 F.3d 111 (2d Cir. 1998) ............................................................... 18

*Speca v. Comm'r*, 630 F.2d 554 (7th Cir. 1980)................................................................... 6

*Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008).................................. 6

*Taylor v. Sturgell*, 553 U.S. 880 (2008)............................................................................. 4

*Tharpe v. Nationstar Mortgage LLC*, 632 F. App'x 586 (11th Cir. 2016)................................... 5

*Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290 (E.D. Mo. 2008) .......................... 12

*Torres v. Midland Credit Management, Inc.*, 17-cv-2794 (SJF)(ARL) (E.D.N.Y. 2018)............. 24

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) .......................................................................... 12

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)........ 12

*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996) ....................................... 19

*Wight v. BankAmerica Corp.* 219 F.3d 79 (2d Cir. 2000) ...................................................... 8

*Worsham v. Accounts Receivable Management, Inc.*, 497 F.App'x 274 (4th Cir. 2012)............. 17

## INTRODUCTION

"The landscape of debt collection has changed since the FDCPA's enactment in 1977, and not all those who collect debt look like the classic 'repo man.'" *Tepper v. Amos Financial, LLC*, No. 17-2851 (3d Cir. 2018). "Since this shift, courts have had to find new ways to distinguish 'debt collectors' from 'creditors' to determine whether the FDCPA applies to a particular entity." *Id.*

Alleged trustee Wells Fargo, while the legal owner of Plaintiff's debt and the entity to whom she owed money, was not a "creditor" under the FDCPA because it obtained her debt after she defaulted solely to facilitate collection for a beneficiary-investor and she requests damages for Defendants' failure to inform her of that fact in their communications with her when attempting to collect her debt. The Court has previously said that if Plaintiff prevails on her claim, it would have to find that Wells Fargo is not a "creditor" under the FDCPA, but that decision would not bar or invalidate a state foreclosure action, or contradict a state court's conclusion that Wells Fargo had standing to bring that action or was owed money by Plaintiff. As to Plaintiff's first complaint, the Court determined that Plaintiff did not sufficiently allege that the Bank Defendants were debt collectors in the first place, that Wells Fargo is a trustee standing in the shoes of that corporation collecting for itself and qualifies as a creditor because both Wells Fargo and Chase meet the exception in § 1692a(6)(F)(iii) concerning a debt which was not in default at the time it was obtained by such person. The Court directed as follows:

> Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of the claims against the Bank Defendants is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should file one within 30 days, and include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain all of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, affidavits, or memoranda.

Opinion & Order, Doc. 55 at 34. Plaintiff then filed her Amended Complaint ("AC") within the thirty days, alleging, among other things, that the Defendants are debt collectors in the first place and particularly describing the trust relationships, events, and parties involved. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. Therefore, Plaintiff integrated only enough facts and exhibits she "wishes the Court to consider" to nudge her claim over the line from conceivable to plausible. The only alleged acts taken by these Attorney Defendants involve their filings with the Dutchess County clerk and the New York Supreme Court, and their mailing of a copy of those filings to Plaintiff. The FDCPA makes debt collectors liable for contacts that pose a *risk* of harm to a consumer. By communicating information implying Plaintiff's debt with the county clerk, the Defendants exposed Plaintiff to the concrete risk of harm to a privacy interest that Congress has identified.

## ARGUMENT

The FDCPA is a strict liability act. "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person…" 15 U.S.C. § 1692k(a). The Act contains explicit language shifting the burden of pleading and proving affirmative defenses to defendants. See *Evankavitch v. Green Tree Servicing*, 793 F.3d 355 (3rd Cir. 2015):

> See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (citing 15 U.S.C. §§ 1692k(c) and (e) for the proposition that "[t]he Act contains two exceptions to provisions imposing liability on debt collectors"). The first of these is the so-called good faith error defense, which explicitly places the burden on the debt collector to prove that it acted unintentionally and had procedures in place to avoid such an error. 15 U.S.C. § 1692k(c). The second provides a safe harbor for a debt collector that seeks and receives legal opinions from the Consumer Financial Protection Bureau before they proceed. 15 U.S.C. § 1692k(e). Although this second exception lacks the explicit burden-shifting language of the first, both are delineated as affirmative defenses by § 1692k(a)'s general statement that a debt

2

collector shall be held liable "[e]xcept as otherwise provided by this section," with the particular affirmative defenses described in separate subsections. 15 U.S.C. §§ 1692k(a), (c), (e). * * * Such placement of the exception and the general prohibition in different parts of the statute has been recognized by the Supreme Court as indicative of an affirmative defense. See *Meacham*, 554 U.S. at 87, 91. * * * In sum, allocating the burden to the consumer would be inconsistent with the Act's remedial purpose and our duty to construe it broadly, *see Lesher*, 650 F.3d at 997, and we therefore will place the burden where it belongs: on the debt collector.

# I.   ATTORNEY DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILED TO PLAUSIBLY ALLEGE THAT THEY ATTEMPTED TO COLLECT A DEBT WITHOUT A CREDITOR HAS NO MERIT.

Attorney Defendants attempt to argue that Plaintiff's allegations in the AC are purely speculative, but Plaintiff relies on the Assignment of Mortgage, for which they offer no competing explanation. Attorney Defendants argue that Wells Fargo acquired the debt before Plaintiff's default. This is largely addressed in Plaintiff's Bank Defendants Memo, which Plaintiff respectfully incorporates here.

Defendants argue essentially that Plaintiff cannot meet her burden to plausibly allege that they obtained her debt after default. However, Congress was especially solicitous toward consumers bringing an FDCPA action in the way it structured the text of the Act. Because § 1692a(6)(F) is an exception to the generally applicable definition of "debt collector," see *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), aff'd, 137 S. Ct. 1718 (2017), the defendant bears the burden of showing that the exception to the rule applies. See *Evankavitch v. Green Tree Serv., LLC*, 793 F.3d 355, 361-63 (3d Cir. 2015) quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) ("repeating 'the familiar principle that "[w]hen a proviso … carves an exception out of the body of a statute or contract those who set up such exception must prove it"') (quoting *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508, 30 S.Ct. 598, 54 L.Ed. 859 (1910)); *United States v. Taylor*, 686 F.3d 182, 190 & n.5 (3d Cir. 2012) (compiling 'numerous Supreme Court decisions' for the proposition that 'where

the statute contains ... an exception, the defendant bears the burden of proving it'). This 'longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side.' *Meacham*, 554 U.S. at 91–92.")

Consequently, in this case, the burden is on Defendants to show, as an affirmative defense, that Plaintiff's debt was ***not*** in default when *collection and servicing rights* were "obtained" by each of them. See *Darlene Garner v. Select Portfolio Servicing, et al*, No. 17-1303 (6th Cir. 2017) ("The district court therefore erred in dismissing Garner's FDCPA claim against SPS for not pleading that her loan was in default when SPS began servicing it."). See also *Taylor v. Sturgell*, 553 U.S. 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (stating that when a party seeks shelter in an affirmative defense it is "[o]rdinarily . . . incumbent on the defendant to plead and prove such a defense"). For that reason, as a matter of statute, an affirmative defense that Plaintiff's claim "concerns a debt which was not in default at the time it was obtained by such person" is not "clear from the face of the complaint." See *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). ("Any affirmative defense may be raised by a motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") Thus Plaintiff's Complaint is consistent with both the definition of "debt collector" and the exclusion in the definition of "creditor," and not implausible on its face. "A plaintiff 'need not plead facts showing the absence of [an affirmative] defense' in order to state a claim. *Black v. Coughlin*, 16 F.3d 72, 75 (2d Cir. 1996); see, e.g., *Chen v. Major League Baseball Props.*, Inc., 798 F.3d 72, 81 (2d Cir. 2015)" *Jennings v. Continental Service Group, Inc.*, 15-cv-00575 (EAW) (W.D.N.Y. 2017). On their motions, Defendants have not established that they can show Plaintiff's debt was not in default at the time they each obtained the servicing rights, or

4

that they have a defense at this stage. The Court should find that this case cannot be decided at the pleading stage. Bank Defendants must specifically plead an affirmative defense in an answer because it does not appear on the face of the Complaint. Their arguments that the Complaint does not sufficiently plead that Wells Fargo and Chase acquired Plaintiff's debt in default have no merit.

The AC alleges traditional fiduciary relationships. It is the Defendants whose arguments focus on securitization. They either misunderstand or self-servingly overlook how trusts work to say that Plaintiff challenges in this Court which entity has the right to enforce an interest in Plaintiff's loan.

Wells Fargo is alleged to be a debt collector "in the first place," not simply because it is attempting to collect Plaintiff's debt.[1] See AC ¶¶ 29, 31, 34, 35, 54, 55 (Wells Fargo's regular, direct and indirect collection activity); AC footnote 7, ¶¶ 29, 31, 54,  (Wells Fargo's use of instrumentalities in interstate commerce in its "principal purpose" with respect to its "post-default trust" business). Further, in the first adjudication of Plaintiff's claim on the merits, Plaintiff didn't specifically plead the separation of the legal title and third-party equitable title, and was given opportunity to address those deficiencies. See *National Credit Union Administration Board v. U.S. Bank National Association*, 17-756-cv (2d Cir. 2018) (briefly discussing "the longstanding historical distinction between legal title and equitable title, recognizing that a trustee does not act on its own behalf but rather on behalf of trust beneficiaries.") Defendants ignore the central fiduciary relationship in their memorandum.

Plaintiff pled that Wells Fargo is collecting as trustee for one or more third-party

---

[1] "Nationstar contends that Tharpe's allegations that it is a 'debt collector' are vague and conclusory. They are not. Tharpe has alleged that Nationstar's business involves the regular collection of thousands of debts from thousands of consumers. That allegation, if true, would support a finding that Nationstar is a 'debt collector' within the scope of the FDCPA. See 15 U.S.C. § 1692(6)." *Tharpe v. Nationstar Mortgage LLC*, 632 F. App'x 586 (11th Cir. 2016).

beneficial interest holders. See AC ¶ 12, 17, 18, 22, 27, 28, 31, 39, 55. It is undisputed that Wells Fargo is, and refers to itself as, a trustee, and "not in its individual or banking capacity, but solely as Trustee on behalf of the Trust(s)" AC ¶ 28. A fiduciary relationship is traditionally and reasonably inferred. "Assignments for collection," under which the assignee receives legal title to a debt for the purpose of bringing suit or enforcing payment but someone else retains beneficial ownership, were recognized in many states long prior to the 1977 enactment of the FDCPA. *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008) (discussing history and citing cases allowing practice going back to 19th Century). In all states a trust may now be created for any lawful purpose. Bogert, Trusts, 6th Ed., p. 182. Section 1692a(4) provides in part, "The term 'creditor' means any person . . . to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." The fiduciary relationship between the assignee Wells Fargo as trustee and the beneficial interest holder(s)— the trust—is not a "person." So, even if the debt is owed to Wells Fargo under the first part of § 1692a(4), the exclusion in the second part recognizes the person could be an assignee or transferee for collection purposes. See AC ¶ 18; *Loubier Irrevocable Trust et al v. Noella Loubier et al*, No. 15-802 (2d. Cir 2017) ("trusts in this case have no distinct juridical identity allowing them to sue or to be sued in their own names. Rather, each is a traditional trust, establishing a mere fiduciary relationship and, as such, incapable of suing or being sued in its own name.")

The identity of the beneficiary(s) of the fiduciary relationship is a question of fact to be determined from all of the attendant facts and circumstances[2]; the court can't determine in fact at

---

[2] The federal income tax consequences of property ownership generally depend upon beneficial ownership rather than possession of mere legal title. *Speca v. Comm'r*, 630 F.2d 554, 556-57 (7th Cir. 1980), aff'g T.C. Memo. 1979-

the motion to dismiss stage their identity, whether the trustee/Wells Fargo is also a beneficiary among others, whether the trustee/Wells Fargo is collecting solely for its own account or among others, the terms of the trust, whether trustee/Wells Fargo is also a beneficiary collecting for "its own account" among others' accounts, and whether the trust is revocable.[3] These are matters left for the trier of fact after discovery. Cf. *Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996):

> When a trustee is also a beneficiary, she holds the legal title to the entire trust property in trust for all of the beneficiaries (including herself), has a duty to deal with it for the benefit of the beneficiaries, and does not hold legal title to any of the trust property free of trust to use as she pleases. There is no partial merger of the legal and equitable interests. Restatement (Second) of Trusts Section(s) 99 cmt. b; 2 Scott on Trusts Section(s) 99.3. It follows that a creditor generally cannot reach a trustee/beneficiary's interest in a trust, such as these, with a spendthrift provision. Restatement (Second) of Trusts Section(s) 99 cmt. b. * * * Broad powers are typically conferred on a trustee as an effective way to manage trust property. Trustees who are also beneficiaries, "like trustees generally, have the power to do acts that are 'necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.'" Mahoney, 973 F.2d at 971, citing Restatement (Second) of Trusts Section(s) 186. As we have held in the estate tax context, a settlor/trustee's administrative and management powers cannot be equated with ownership. See Old Colony Trust Co. v. United States, 423 F.2d 601, 602-03 (1st Cir. 1970).

Thus, even though Wells Fargo obtained an interest in the mortgage and is the legal owner of the note, it was obtained and held ***subject to the fiduciary duty*** for the one or more third-party beneficial interest holders. These factual issues are not reached or comprehended by *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) ("So a company collecting purchased defaulted debt for its own account—like Santander—would hardly seem to be barred from qualifying as a creditor under the statute's plain terms."). See also *Markham*, above. Section 1692a(6) draws a distinction between debts "owed ***or due***" "*another*" and then includes

---

120; *Beirne v. Comm'r*, 61 T.C. 268, 277 (1973). "[C]ommand over property or enjoyment of its economic benefits, which is the mark of true ownership, is a question of fact to be determined from all of the attendant facts and circumstances." *Monahan v. Comm'r*, 109 T.C. 235, 240 (1997) (internal quotations omitted) (quoting *Hang v. Comm'r*, 95 T.C. 74, 80 (1990)).

[3] A trust is ordinarily indestructible and irrevocable by its settlor, in the absence of a power of revocation expressly reserved. Bogert, Trusts, 6th Ed., p. 36, citing Restatement, Trusts, Second, § 148.

both. Section 1692a(4)'s exclusion is broader still.

See also AC ¶ 18 where Plaintiff alleged that "diversity between trustee and beneficiary was maintained at all times so there was no merger of the two." This is different than liquidators who, like the trustees of a bankruptcy estate, stand in the shoes of the defunct corporation. Compare *Loubier* (supra) with *Wight v. BankAmerica Corp.* 219 F.3d 79, 87 (2d Cir. 2000) ("Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in.") *Loubier* describes the trustee relationship alleged in the AC ("each is a traditional trust, establishing a mere fiduciary relationship").

Plaintiff relies on the recorded Assignment of Mortgage (which Defendants do not discuss) as a telltale sign that the Intermediate Trustee is the most plausible explanation."'[T]he sufficiency of a complaint turns on its 'factual content,'. . . requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing . . . The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682, 683 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). Plaintiff is focused on the default status of the debt when Wells Fargo obtained it *from the same party that assigned the mortgage to it after default*. Plaintiff's claim is only made stronger by their valid AOM executed on February 22, 2010, which is more plausibly explained by the Intermediate Trustee because Fremont's agent or attorney-in-fact, standing alone, would not plausibly survive Fremont's July 25, 2008 closing, see AC ¶ 25. This is in harmony with *Rajamin* which affirms that "[t]he principle that a trustee's unauthorized acts may be ratified by the beneficiaries is

8

harmonious with the overall principle that only trust beneficiaries have standing to claim a

breach of trust."

> *English v. McIntyre*, 29 A.D. 439, 448-49, 51 N.Y.S. 697, 704 (1st Dep't 1898) ("where the trustee has engaged with the trust fund in an unauthorized business . . . the rule is that the *cestui que trust* may ratify the transactions of the trustee and take the profits, if there are profits"). Moreover, "beneficiary consent may be express or implied from the acceptance of the trustee's act or agreement and may be given either after or before the trustee's act . . . ." *Mooney*, 193 A.D.2d at 934, 597 N.Y.S.2d at 776.

*Rajamin.* Attorney Defendants' arguments have no merit; they cannot and do not point to any

paragraph in the AC which claims that the assignment of the mortgage is invalid because it

violated governing documents of the mortgage trust into which it was placed and violated New

York trust law. See ECF No. 83, p. 5.

Central to Plaintiff's claim is that the trustee Wells Fargo did not obtain and hold the debt

free of the trust. Again, Plaintiff is focused on the AOM as to the default status of the debt when

Wells Fargo obtained it *from the same party that assigned the mortgage to it years after Fremont

went out of business*, ratified by Wells Fargo's obtaining and recording it for the investor.

Plaintiff should be entitled to discovery—not to challenge the assignment, but to ascertain the

facts and timing of events to disprove an affirmative defense under § 1692a(6)(F)(iii). It is

axiomatic that not every trust is a pool securitization according to a pooling and servicing

agreement, and Defendants are in control of information necessary to prove or disprove the

defense. That also applies to the 2013 LPOA from, and executed by or on behalf of, Wells Fargo

by which Chase obtained the right to collect from Wells Fargo after default. See AC ¶¶ 11, 29,

30, 32; *Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (explaining that placing the pleading

burden on the defendant is appropriate where a defense hinges on "facts peculiarly within the

knowledge and control of the defendant"). If the Defendants are going to introduce evidence

supported by oath or affirmation, Plaintiff needs time and opportunity to depose or cross-examine every one of those persons, be able to issue subpoena duces tecum, and have their employers make people with best knowledge available for rebuttal testimony. Attorney Defendants intended to file a Rule 56 motion but at the pre-motion hearing the Court deemed it inappropriate without Plaintiff having discovery, so the Court mentioned the option of a Rule 12(c) motion. Then the Attorney Defendants requested a stay of discovery, which the Court granted. Attorney Defendants seem to be arguing matters of law. Therefore the Court should not convert the Rule 12(c) motion to one for summary judgment without providing her an opportunity to take discovery and to submit evidence.

In *Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708 (SDNY 2018), cited by Attorney Defendants at ECF No. 83, p. 5, plaintiff Bigsby brought a non-FDCPA claim based, first, on pooling and servicing agreements and, second, challenged that assignments of interests were "fraudulent" because they didn't meet the terms in those agreements and therefore the foreclosing party lacked standing. Barclays was awarded dismissal in part because Bigsby's allegations—that some entity other than Barclay's clients owned the beneficial ownership rights in their mortgages—were "difficult to view" in the absence of additional allegations that someone else had attempted to foreclose. *Bigsby* is incongruent with this case and inapposite because Plaintiff didn't allege any PSAs, fraud, bad assignments, or that anyone other than Wells Fargo's (or Chase's) one or more investor-beneficiaries owned the beneficial interest in trust. Defendants' resort to case authority without meritorious argument pointing to specifics in the AC. Attorney Defendants' straw argument resorting to *Henson* that "it would seem a debt purchaser . . . like [non-trustee] Santander *may* indeed collect debts for its own account" does not determine the fact intensive matter here, as discussed.

## II. SECTION 1692c(b) REFLECTS CONGRESS' JUDGMENT THAT THE RISKS TO CONSUMERS GENERALLY OUTWEIGH DEBT COLLECTORS' INTERESTS IN COLLECTING DEBT.

At Point II, Attorney Defendants assume there is a creditor in this case and argue the legislative intent behind § 1692c(b) was not to prevent attorneys from submitting necessary and/or required documents to the Court during ongoing litigation, and that it would "bar" attorneys from acting as zealous advocates on behalf of their clients every time a debtor challenged a debt and cause most debt collection lawsuits to come to a halt. At page 7, Attorney Defendants appeal to a Senate Report as a prime example of what is to be considered abusive toward a consumer when a debt collector is attempting to collect a debt—*for a creditor*—in an attempt to impermissibly constrain what is abusive *without a creditor*. However, the text of the whole Act is controlling and the Court should apply it. Section 1692c(b) reflects Congress' judgment that the risks to consumers generally outweigh debt collectors' interests. Although *not* authoritative, one member of Congress summarized that, "[t]he act only regulates the conduct of debt collectors, it does not prevent *creditors*, through their attorneys, from pursuing any legal remedies available to them." 132 Cong. Rec. H10,031 (1986) (emphasis added). But see *Heintz v. Jenkins*, 514 U.S. 291 (1995) ("the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.") This is the crux of this case.

15 U.S.C. § 1692c(b) provides:

> Except as provided in section 804 [1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692i(b) provides[4]:

Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors.

"When construing a statute, we begin with its language and proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning . . . ." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King v. Burwell*, 135 S.Ct. 2480, 2492 (2015) (alteration in original) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

The meaning of 1692c(b) can be inferred from § 1692b. For example, in *Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, 1298 (E.D. Mo. 2008), the court stated "noncompliance with § 1692b is . . . a violation of § 1692c(b), and not an independent violation of the Act." At ¶ 67, According to the CFPB in its Marx Brief, [5] "[t]he Act's structure reveals

---

[4] The text passed by Congress in Public Law 95-109 reads: "Nothing in this *title* shall be construed to authorize the bringing of legal actions by debt collectors." Compare that with *Rice v. Palisades Acquisition XVI, LLC*, No. 07C4759, 2007 WL 4522617, at *3 (N.D. Ill. Dec. 18, 2007) ("Nothing in this *subchapter* shall be construed to authorize the bringing of legal actions by debt collectors. . . . drawing all reasonable inferences in favor of Rice, it may have been improper for Blatt to bring suit against Rice.") Plaintiff can find no amendment to § 1692i(b) to account for this discrepancy. Thus, it would be *incorrect* to conclude, as the *Rice* court did, that "a careful reading of § 1692i makes it clear that § 1692i(b) only acts to limit the venues in which debt collectors can bring lawsuits to those mentioned in § 1692i(a)." The discrepancy in the quote of § 1692i(b) appears as "subchapter" on the ftc.gov, uscode.house.gov, americanbar.org, and law.cornell.edu (Legal Information Institute) websites, but appears as "title" on the CFPB's website. This error begets error and should be addressed and set straight by this Court.

[5] "[T]he Consumer Financial Protection Bureau, [] has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission, which shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA)." *Hernandez*

that, in balancing risks to consumers against debt collectors' interests, Congress chose generally to bar third-party contacts except those necessary to locate debtors . . . [t]he Act does not prohibit only contacts that cause proven harm—else it would not allow statutory damages absent proof of actual injury. See 15 U.S.C. § 1692k(a)(2). Instead, it bars contacts that pose a risk of harm." The FDCPA's definition of "communication" in § 1692a(2) does not necessarily apply to § 1692c(b), which provides that a debt collector "may not communicate, in connection with the collection of a debt, with [third persons]." It is well established that a statute's definition of a noun—here, "communication"—does not necessarily control the meaning of a related verb or adverb. See *FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1182 (2011) (definition of "person" did not limit ordinary meaning of "personal"); *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1275 (D.C. Cir. 1996) (definition of "disposal" did not apply to statute's use of verb "dispose"). Whether it does in a particular case must be determined "in light of the whole statutory scheme." *Indiana Michigan Power*, 88 F.3d at 1275. Specifically, any transmission of information regarding a debt qualifies as a "communication." Most information held by debt collectors constitutes "information regarding a debt"—e.g., the debtor's name, account number, and creditor. The collector would not have the information, or be able to transmit it to anyone, but for the debt. That information remains "information regarding a debt" when the collector transmits it to a third party, regardless of how the recipient interprets it. Here, the statutory structure discussed above shows that the definition of "communication" is not meant to limit the ordinary meaning of "communicate" in §1692c(b). Without that qualification, § 1692c(b) is properly

---

v. Williams, Zinman & Parham, P.C., No. 14-15672 (9th Cir., 2016). "Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its interpretation of the Act is therefore entitled to deference." Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, *Hernandez v. Williams, Zinman & Parham, P.C.*, 9th Cir., No. 14-15672, Dkt. No. 14, Page 28 of 42, filed 08/20/2014.

interpreted as an absolute prohibition on third-party contacts, subject to narrow exceptions.

Section 1692c(b) broadly prohibits a debt collector from communicating, in connection with the collection of any debt, with **any person**, subject to narrow exceptions. Defendants' alleged contacts with the county clerk communicated information about Plaintiff's debt to a third-party not specifically excepted by § 1692c(b). Attorney Defendants argue that Plaintiff's position is not in harmony with what the Supreme Court said and didn't say, when actually the reverse is true.

> We agree with Heintz that it would be odd if the Act empowered a debt-owing **consumer** to stop the "communications" inherent in an ordinary lawsuit and **thereby** cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read Section(s) 1692c(c) in that way—if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). Section(s) 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. **Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies.** We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read Section(s) 1692c(c) as containing some such additional, implicit, exception **than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.**

*Heintz.* (emphasis added). The Supreme Court said it would be "odd" arguably because, clearly, the FDCPA does not empower the consumer to stop anything, and it is perhaps a misperception that the effect of the prohibition in § 1692c(b) is a "bar" when the Act only makes the debt collector liable for damages as a deterrent.[6] The FDCPA does not provide for declaratory or

---

[6] See *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("The FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

14

injunctive relief.[7] Plaintiff would point out that the Supreme Court cautiously and non-authoritatively interpreted § 1692c—subsection (c)—as being consistent with the *apparent objective* of preserving creditors' judicial remedies. Crucially, in this case, there are no "*creditor's* judicial remedies" identified to be preserved.

By citing to *Cohen v. Wolpoff & Abramson, LLP*, 2008 WL 4513569 at *6 (D.N.J. 2008) (reading into § 1692c—subsection (c)—an exception to the restrictions of the FDCPA to allow "the pursuit of the ordinary legal remedies by debt collectors"), Attorney Defendants would have this Court apply it to § 1692c(b) to exclude attorneys "communicating with a forum in pursuit of a legal remedy." That is overly broad an exception for the foregoing reason (it assumes a valid creditor is behind the motion), but also because § 1692c(b) narrowly excepts a communication "as reasonably necessary to effectuate a *postjudgment judicial remedy*." Excluding "communicating with a forum in pursuit of a legal remedy" is in direct conflict with *Heintz v. Jenkins*, 514 U.S. at 296: it creates "a far broader exception, for all litigating attorneys, from the Act itself," and the Supreme Court reinforced that rejection in *Jerman v. Carlisle, McNellie. Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010). Attorney Defendants' interpretation regarding § 1692c(b) assumes that a creditor is behind the Plaintiff's contacts with the county clerk. When a foreclosing plaintiff in a state foreclosure is not a "creditor" because it is excluded by the Act's definition of creditor, the plaintiffs and their attorneys are not automatically immunized under the Act for the abusive use of their imprimatur against a consumer.

In *Green v. Hocking*, 9 F.3d 18 (6th Cir. 1993) (per curiam), the Sixth Circuit candidly pointed out that, if read literally, "15 U.S.C. § 1692c(b) prevents an attorney from communicating with any third party pertaining to the consumer's debt. Under this portion of the

---

[7] Section 1692k of the Act authorizes consumers to enforce liability only by bringing an "action" or "class action" *not* a claim, counterclaim, or cross-claim. Congress authorizes statutory damages in an "action" and provides up to one year from the date on which the violation occurs to bring any action, 1692k(d).

Act, it would be unlawful for an attorney to communicate with the court or the clerk's office by filing suit." First, the panel concluded, at that time, that this was an example of an absurd outcome because "[a]n examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law," and further, "we are unwilling to impose a system of strict liability that conflicts with the current system of judicial regulation. We therefore hold that the actions of an attorney while conducting litigation are not covered by the FDCPA." *Ibid.* But the *Heintz* Court held there is no such conflict, and the Sixth Circuit subsequently acknowledged that its conclusion in *Green* had been abrogated.[8] Importantly, that leaves intact the panel's 1993 observations as to the literal meaning of § 1692c(b), which agrees with the text and structure of the FDCPA itself. Then, in 2012, the CFPB similarly advised that Section 1692c(b) is properly interpreted as an absolute prohibition on third-party contacts, subject to narrow exceptions.

Plaintiff did not allege a summary judgment or a Judgment of Foreclosure and Sale. Black's Law Dictionary, Fifth Edition, defines "Post-act" as "[a]n after-act; an act done afterwards." Defendants will have to plead and prove, among other things, that they were communicating to effectuate a judicial remedy after judgment. They would have to plead and prove that a summary judgment Order is "the final decision of the court resolving the dispute and determining the rights and obligations of the parties" nor is it "[t]he law's last word in a judicial controversy" as "Judgment" is defined, id. The Court can infer that the Defendants were in the process of attempting to get a Judgment of Foreclosure and Sale. The Attorney Defendants' reasoning renders § 1692i(b) and the phrase "reasonably necessary" superfluous, void, or

---

[8] "[T]he Supreme Court's reasoning in Heintz v. Jenkins, 514 U.S. 291 (1995), ... affirmed the Seventh Circuit's conclusion that the FDCPA applies to lawyers acting as debt collectors. We previously decided otherwise, based in part on our view that any other rule 'automatically would make liable any litigating lawyer who brought, and then lost, a claim, against a debtor.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469 (6th Cir. 2008).

insignificant in context with the rest of the Act, and renders the word "postjudgment" superfluous, void, or insignificant whether read in isolation or in context. "The use of the word 'reasonably' indicates that this is an objective standard that the debt collector must meet to avoid liability under the FDCPA." *Worsham v. Accounts Receivable Management, Inc.*, 497 F.App'x 274, 277 (4th Cir. 2012) (per curiam). Defendants have not shown they met that standard on this motion to dismiss. Importantly, the burden is on the debt collector to demonstrate that an exclusion applies under the Act. "[W]hat constitutes a violation is apparent from the plain language of § 1692c(b). Thus, we find no compelling reason to reverse the 'longstanding convention' that a party seeking shelter in an exception—here, the debt collector—has the burden to prove it. Meacham, 554 U.S. at 91." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3rd Cir. 2015).

In *Jerman* the Court rejected arguments that assume the FDCPA compels results that are "absurd" but not shown to be "so absurd as to warrant disregarding the weight of textual authority," and the Court arguably presupposes that, on a case-by-case basis, all clients [debt holders] are not creditors ("Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA.")[9] When a foreclosing plaintiff in a state foreclosure is not a "creditor" because it is excluded by the Act's definition of creditor, the plaintiffs and their attorneys are not automatically immunized under the Act for the abusive use of their imprimatur against a consumer. There is no conflict between Plaintiff's position and the Supreme Court's dicta.

---

[9] In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010), the Supreme Court rejected the argument foreseeing "a flood of lawsuits against creditors' lawyers by plaintiffs (and their attorneys) seeking damages and attorney's fees. The threat of such liability, in the dissent's view, creates an irreconcilable conflict between an attorney's personal financial interest and her ethical obligation of zealous advocacy on behalf of a client: An attorney uncertain about what the FDCPA requires must choose between, on the one hand, exposing herself to liability and, on the other, resolving the legal ambiguity against her client's interest or advising the client to settle—even where there is substantial legal authority for a position favoring the client" because "a lawyer's interest in avoiding FDCPA liability may not always be adverse to her client. Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA."

Bringing an action cannot be construed under § 1692i(b) to be an ordinary remedy that debt collectors pursue. Top of page 9, Defendants quote *Cohen v. Wolpoff & Abramson, LLP,* 2008 WL 4513569 (D.N.J. 2008) to insinuate that Plaintiff's position is forbidding "the pursuit of ordinary legal remedies by debt collectors." Section 1692i(b) provides: "Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors." Although § 1692i(b) does not affirmatively prohibit legal actions by debt collectors (for federalism concerns), it is not surplusage. This Court should decline to render a provision of the FDCPA inoperable. The Court should find § 1692i(b) confirms that, unless the litigation rights of a §§ 1692a(4) and 1692g(a)(2) "creditor" are involved, debt collectors such as Wells Fargo and the Attorney Defendants are specifically not authorized under the Act to bring legal actions such as its foreclosure against Plaintiff; and § 1692c(b), in conjunction with § 1692i(b), establishes that Defendants "communicating" information about Plaintiff's debt with the state court clerk that was or, *as the Assignment manifestly turned out to be*, in connection with foreclosure is a prohibited contact regardless of (i) whether state rules of procedure may generally permit it and (ii) whether such is "debt collection" in itself or a "communication" under § 1692a(2). See ECF No. 1 ¶¶ 80, 70; *Romea v. Heiberger*, 163 F.3d 111, footnotes 10, 11 (2d Cir. 1998) (discussing Maryland *in rem* eviction process) ("If the statutes did conflict, moreover, it would be [state law], and not the FDCPA, that would have to yield … The record contains no indication that New York has made any such claim as to the sufficiency of the [foreclosure] process to achieve the objectives of the FDCPA.")

It might at first seem to be absurd because, how can a debt collector obtain a court judgment without communicating with a court? "In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute." *Dada v. Mukasey*, 554

U. S. 1 (2008) (internal quotation marks omitted). Debt collectors "obtain" information, verification, and debts, §§ 1692e(10), (11), 1692g(a)(4), 1692a(6)(F)(iii), (iv), and "obtain" only *copies* of judgments, § 1692g(a)(4). The word "obtained" is not defined in the FDCPA, but it includes both "the possession of the right and responsibility to collect a debt." See e.g., *Papetti v. Rawlings Fin Svcs LLC* 15-cv-2933 (PAE) (SDNY 2016); *Franceschi v. Mautner-Glick Corp.,* 22 F.Supp.2d 250, 254 (S.D.N.Y. 1998) citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996).[10] The answer given by the whole Act is that the creditor described in § 1692a(4) generally must bring any legal action and the judgment would be in favor of the creditor. See also the language of §§ 1692g(a)(4) and 1692g(b) that "the debt collector obtains any *copy of a judgment*"—not "a judgment"—and a *copy* of such judgment is mailed to the consumer by the debt collector. The phrase "a court of competent jurisdiction" (not "any" court), suggests *the particular court having jurisdiction over the subject matter and over the parties such that res judicata attaches to its judgment under federal law*, consistent with the Act's text and structure.

        Bottom of p. 7, Attorney Defendants make an additional argument that it was not the

---

[10] The AC alleges at ¶¶ 26–27 that Wells Fargo "received" and "acquired" the debt as those terms are defined in the Act, and then, in turn, that "right to collect for Wells Fargo" was transferred to Chase. Plaintiff synonymously used the word "obtained" at ¶ 32. See *Papetti*, above:

A. When Did Rawlings "Obtain" Papetti's Debt?

The word "obtained" is not defined in the FDCPA. One possible interpretation is that it refers to a transfer of ownership or an assignment. Another is that it includes "the possession of the right and responsibility to collect a debt." *Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250, 254 (S.D.N.Y. 1998). Courts in this Circuit have adopted the latter view, starting with Judge Cote's reasoned decision in *Franceschi*. *See Id.* (citing, *e.g., Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996)); *Lautman v. 2800 Coyle St. Owners* Corp., No. 13 Civ. 967 (ARR), 2014 WL 2200909, at *4 (E.D.N.Y. May 23, 2014); *Wood v. Capital One Servs., LLC*, No. 09 Civ. 1445 (NPM), 2012 WL 4364494, at *7 (N.D.N.Y. Sept. 21, 2012); *Kesselman v. The Rawlings Co., LLC*, 668 F.Supp.2d 604, 611 (S.D.N.Y. 2009).[5] The Court does so, as well.

Liberally construed, Plaintiff has alleged that Wells Fargo, and then Chase, "obtained" the debt and took on "the possession of the right and responsibility to collect the debt" after default, in a "post-default collection process that the investor controls." AC ¶ 35.

intent to "bar" attorneys from filing necessary and/or required documents with courts during ongoing litigation where the debtor disputed the underlying debt, and that the debtor is naturally protected and safeguarded when he or she comes within the sphere of the [New York] court's influence. Congress disagrees. 15 U.S.C. § 1692k reflects a congressional judgment that state court vehicles for the vindication of federal rights and interests are inadequate. See also 15 U.S.C. §§ 1692(b) ("Existing laws and procedures for redressing these injuries are inadequate to protect consumers.") and 1692(e) ("It is the purpose of this title to ... promote consistent State action to protect consumers against debt collection abuses.") Consumer is entitled to the full protection of the FDCPA even if she may also be protected by state court procedures. In *Romea*, the Court was presented with a similar suggestion—that the FDCPA should not be applied according to its terms in light of the protections provided by New York's special landlord-tenant procedures. The Court objectively rejected this argument, explaining that "[i]f the [FDCPA] applies to [the defendant's conduct] and [the defendant's conduct] does not comply with the FDCPA's requirements, then by definition it constitutes an improper debt collection activity under federal law." *Romea*, 163 F.3d at 119. The Court further noted that it is "the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." Id. See also 15 U.S.C. §§ 1692(b), 1692n. The record contains no indication that New York has petitioned the CFPB as to the sufficiency of the foreclosure process to achieve the objectives of the FDCPA. See *Romea*, fn. 11; 15 U.S.C. § 1692o. Additionally, *Heintz* would have been decided the other way if Defendants' argument that court procedures provide sufficient protection during the course of litigation was correct. Therefore, this Court should follow Circuit law in Romea and find that consumers are entitled to the protections of the FDCPA for alleged debt collection violations related to judicial foreclosure proceedings even if

New York's foreclosure laws provide adequate protection.

### III. ATTORNEY DEFENDANTS ADMIT THEY COMMUNICATED INFORMATION ABOUT PLAINTIFF'S DEBT WITH A THIRD PARTY NOT PERMITTED BY LAW BUT HAVE NOT PLED AND PROVEN ANY AFFIRMATIVE DEFENSES.

At Point III, pp. 11–12, Defendants argue that "Plaintiff consented to the Attorney Defendants' submissions and/or the Attorney Defendants had the permission of the Court to transmit the Notice of Hearing and the Motion." The argument fails because Defendants seek shelter in an exception to § 1692c(b) which they must plead and prove as an affirmative defense, and they have not explained or shown that prior consent was given "directly" to them. Prior consent may have been given directly to the originator Fremont, but not to Bank Defendants or Attorney Defendants to communicate with the county clerk and transmit information about Plaintiff's debt in order to further the foreclosure action, apply for a notice of hearing, or file a motion, all so that the obligation would then be "reduced to judgment," see § 1692a(5). Defendants seek shelter in affirmative defenses (prior consent, express permission of a court) which Plaintiff respectfully suggests do not appear on the face of the complaint drawing all reasonable inferences from things which the Court should consider under Rule 12 in her favor.

On pages 12–13 (and page 7), Defendants discuss a summary judgment case, *Maynard v. Cannon*, 650 F.Supp.2d 1138 (D.Utah 2008). *Maynard* is inapposite because Cannon was collecting for the ***originator*** Household, and Maynard gave her consent directly to the originator. Household would hardly seem to be disqualified as the creditor under § 1692a(4) in that situation. *Maynard* exhibits the old familiar theme that enforcement of a security interest by non-judicial foreclosure against property is not collection of a debt under the FDCPA. However, the reason for rejecting Maynard's claim was that Cannon was not sufficiently shown to be a debt collector in the first place. After consulting the definition of debt collector, the *Maynard* court

found:

> There is no evidence in this case that Defendant falls within the general provisions of the definition of debt collector. There is no evidence as to the frequency of Defendant's security enforcement or debt collection practices. In this case, Household hired Defendant for the limited purpose of non-judicially foreclosing the Deed of Trust. Household did not sell or assign or even transfer to Defendant the debt evidenced by the Note. Nor did Household authorize Defendant to negotiate Maynard's debt with her. Household and Maynard communicated directly even after Defendant filed the Notice of Default. Defendant only agreed to enforce a security agreement by commencing a nonjudicial foreclosure of the Deed of Trust. Had Maynard not refinanced her loan and paid off the Note, Defendant's involvement would have ended in a Trustee's sale. Although a deficiency action could arise from the sale, it is a separate action. And the facts submitted demonstrate that Household does not use Defendant for deficiency actions. Defendant was not engaged to collect a debt from Maynard, only to initiate a non-judicial foreclosure by enforcing the security interest. Therefore, Defendant's activities fall outside the FDCPA's general provisions.

Therefore, *Maynard* is fundamentally different than this case, and inapposite.

## IV. ATTORNEY DEFENDANTS HAVE NOT PLED AND PROVEN THAT THEY MEET THE OBJECTIVE STANDARD FOR AN EXCEPTION THAT THEIR FILINGS WITH THE COUNTY CLERK WERE "REASONABLY NECESSARY TO EFFECTUATE A POSTJUDGMENT JUDICIAL REMEDY."

The exception for communicating with third parties "reasonably necessary to effectuate a post judgment judicial remedy" is an objective standard that the Attorney Defendants must plead and prove. They didn't meet it. Without a named creditor, concerning a debt which therefore can't be validated, their contacts with the county clerk were not "reasonably necessary" assuming an interlocutory summary judgment order even provides the basis for "postjudgment judicial remedy," which it does not. "If the [FDCPA] applies to [the defendant's conduct] and [the defendant's conduct] does not comply with the FDCPA's requirements, then by definition it constitutes an improper debt collection activity under federal law." *Romea v. Heiberger*, 163 F.3d at 119. Attorney Defendants conveyed "information regarding the debt" regardless of how the recipient county clerk interpreted it. Each filing sent to the Dutchess County Clerk was a

"communication" under § 1692a(2) and, as such, must comply with the FDCPA's requirements. The *Romea* panel further noted that it is "the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." *Id.* See also 15 U.S.C. §§ 1692(b), 1692n. See *Romea*, footnotes 10, 11 (2d Cir. 1998) ("If the statutes did conflict, moreover, it would be [state law], and not the FDCPA, that would have to yield … The record contains no indication that New York has made any such claim as to the sufficiency of the § 711 process to achieve the objectives of the FDCPA.") See also *Heredia, Hortantsa and Schultze v. Green*, 667 F.2d 392 (3rd Cir. 1981):

[44]     The FDCPA provides not only for private enforcement, 15 U.S.C. § 1692k, but also for administrative enforcement by the Federal Trade Commission. 15 U.S.C. § 1692l. Moreover, the Commission is given authority "by regulation to exempt from the requirements of this subchapter any class of debt collection practices within any State if the Commission determines that under the law of that State that class of debt collection practice is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement." 15 U.S.C. § 1692o. Under the statutory scheme any local exemption must first be passed upon by the Federal Trade Commission. The report of the House Committee on Banking, Finance and Urban Affairs on H.R. 5294, in which originated the provisions relating to state exemptions, explains:

[45]     Concern has been voiced by some that the passing of Federal legislation in the debt collection area might infringe on States' rights. The committee has considered this matter and has taken steps to minimize any such infringement. For example, under Section 816, relation to State laws, the laws of any State with respect to debt collection practices will not be preempted except to the extent that those laws are inconsistent with any provision of this bill.

[46]     In addition, section 817 provides for exemption for State regulation. If a State has a debt collection law and would like an exemption, the State need only apply to the Federal Trade Commission and if the Commission determines that under the law of that State any class of debt collection practices is subject to requirements substantially similar to those imposed by this bill, and there is adequate provision for enforcement, an exemption would be granted.

[47]     The committee does not intend to preclude legislative experimentation by the States in the area of debt collection practices. Any State wishing to so experiment in passing strong legislation in this area will have a free

hand to do so and may apply for an exemption under section 817.

[48]      H.R.Rep.No.95-131, 95th Cong., 1st Sess., 7, 8 (1977). Pennsylvania has neither sought nor obtained Federal Trade Commission approval for the collection practices of Landlord and Tenant Officers such as defendant Green. If an application were to be made the Commission would not approve it, because while 15 U.S.C. § 1692n preserves a role for state law not inconsistent with FDCPA, the saving clause is qualified by the provision that "(f)or purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by (FDCPA)" (emphasis supplied). The Pennsylvania statutes and court rules governing Landlord and Tenant Officers fall far short of meeting that standard.

The FDCPA *preempts state law* to the extent state law affords a consumer less protection than the FDCPA does. 15 U.S.C. § 1692n; Const., Art XI, Clause 2; see generally *Torres v. Midland Credit Management, Inc.*, 17-cv-2794 (SJF)(ARL) (E.D.N.Y. 2018) (discussing preemption). As alleged, AC ¶ 61, New York law does not distinguish a creditor from a debt collector pursuing foreclosure against a consumer or non-consumer, and does not require a "creditor" as defined in the Act, and therefore offers less protection than would be consistent with federal law. One of the stated purposes of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). New York consented to this Act of Congress. The record contains no indication that New York has made any claim as to the sufficiency of the foreclosure processes to achieve the objectives of the FDCPA or has not received an exemption under 15 U.S.C. § 1692o, and there is no important, substantial, or vital state interest involved or one that does not yield to the FDCPA. See *Romea*, fn. 11; 15 U.S.C. §§ 1692n, 1692o. The FDCPA does not provide for injunctive or declaratory relief, does not bar, or interfere with state court proceedings; the debt collector only becomes liable to the consumer for damages. Rather than asking this Court to adopt an unnatural reading of the § 1692c(b), Defendants should ask New York to petition the CFPB for an exemption to the statute.

## CLOSING SUMMARY

Although Wells Fargo had the right under state law to sue Plaintiff to collect her consumer debt, there were no rights of a "creditor" involved, as that term is defined in the FDCPA; Defendants erred in their view of the FDCPA concerning the status of their client(s) under the Act. Defendants can't validate the debt or send a § 1692g(a) notice that materially complies with §§ 1692g(a)(2) and 1692e(10). The Attorney Defendants became liable to Plaintiff, a non-consenting consumer, when they failed to cease collection (and perhaps urge Bank Defendants to settle with Plaintiff instead as the Supreme Court suggested in *Jerman*) which was deceptive. By communicating information about Plaintiff's debt with the county clerk, the Defendants (debt collectors without an overarching creditor) exposed Plaintiff to the concrete risk of harm to a privacy interest that Congress has identified (§ 1692c(b) in conjunction with § 1692i(b)). The damages is a measure of the actual risk to the Plaintiff in Defendants communicating information about the Plaintiff's debt to the county clerk and which provided the basis for an amount which a court of equity could award; it is a basis for the amount at which damages becomes a deterrent versus remaining a profitable incentive for Defendants as a mere cost of violative business practices. Bank Defendants are debt collectors vicariously liable for the Attorney Defendants' conduct on their behalf.

## CONCLUSION

The Court should find that the Amended Complaint is sufficient to state a plausible claim under the FDCPA and this Court should give effect to that remedial act of Congress according to its terms and entirely deny the Attorney Defendants' motion to dismiss as to each of them.

Respectfully submitted,

Nicole Johnson-Gellineau

25

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Court on November 30, 2018 and the parties' Counsel will be notified, and may access this filing, through the Court's ECF system.

Nicole Johnson-Gellineau