## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NICOLE JOHNSON-GELLINEAU )
                                 )
         Plaintiff, )
                                   )
         vs. )
                                     )
STIENE & ASSOCIATES, P.C.; )
CHRISTOPHER VIRGA, ESQ.; )
RONNI GINSBERG, ESQ.; )
JPMORGAN CHASE BANK, )
NATIONAL ASSOCIATION; )
WELLS FARGO BANK NATIONAL )
ASSOCIATION, *As Trustee For* )
*Carrington Mortgage Loan Trust,* )
*Series 2007-FRE1, Asset-Backed* )
*Pass-Through Certificates;* )
                                   )
         Defendants, )
                                   )

Civil Action No. 7:16-cv-09945-KMK

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE BANK DEFENDANTS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-29-18

Unrepresented Consumer-Plaintiff, Nicole Johnson-Gellineau, ("Plaintiff"), respectfully submits this her opposition to Doc. No. 77, the motion of the two "Bank Defendants" (JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, and WELLS FARGO BANK NATIONAL ASSOCIATION, *As Trustee For Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates*) pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss claims she brought against them as debt collectors under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's specific grounds are set forth in the following Memorandum.

                         Nicole Johnson-Gellineau
                         149 Wilkes Street
                         Beacon, New York 12508
                         Cell: 646-456-1151
                         nikkigelly@gmail.com



NOV 30 2018
U.S.D.C.
WP

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

    I.    THE FACT THAT WELLS FARGO IS THE ENTITY THAT OWNS THE
        DEBT AND PLAINTIFF OWES HER DEBT TO IT IS NOT DISPOSITIVE OF
        WHETHER WELLS FARGO IS THE "CREDITOR." ..................................................... 3

        Plaintiff relies on the recorded Assignment of Mortgage ................................. 12

        Rooker-Feldman doctrine ............................................................................... 14

        Collateral estoppel. ........................................................................................ 17

        False name exception (the second sentence of § 1692a(6)) ............................. 18

    II.  PLAINTIFF ALLEGED AN FDCPA CLAIM AGAINST CHASE, A DEBT
        COLLECTOR IN THE FIRST PLACE. ....................................................................... 19

CLOSING SUMMARY ..................................................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) ............................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 2

*Carlin v. Davidson Fink LLP*, No. 15-3105-cv (2d Cir. 2017) ............................................. 21, 24

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018) ......................... 18, 22, 23

*Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) .................................................................. 17

*Darlene Garner v. Select Portfolio Servicing, et al*, No. 17-1303 (6th Cir. 2017) ...................... 7

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992) .............................................................................. 7

*Deutsche Bank Nat. Tr. Co. v. Whalen*, 969 N.Y.S.2d 82 (App. Div. 2013) ............................... 18

*Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010) ........................... 2

*Evankavitch v. Green Tree Servicing*, 793 F.3d 355 (3d Cir. 2015) ......................................... 3, 6

*Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250 (S.D.N.Y. 1998) ............................. 12, 20

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ...................................................................... 5

*Gomez v. Toledo*, 446 U.S. 635 (1980) ....................................................................................... 14

*Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015) ................................................ 21

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ..................................................................................... 20

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ............................................ 10

*Hill v. DLJ Mortgage Capital, Inc. et al.*, 15-cv-3083 (SJF)(AYS), (EDNY 2016) ................... 22

*Hill v. DLJ Mortgage Capital, Inc.*, 689 F. App'x 97, 2017 WL 1732114 (2d Cir. 2017) .......... 21

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) ................................... 16

*Hunt v. Arthur Kill Correctional Facility*, 2012 U.S. Dist. LEXIS 186664 (E.D.N.Y. Oct. 9, 2012) ............................................................................................................................................ 6

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ............................................................................................................................................ 5

*Jennings v. Continental Service Group, Inc.*, 15-cv-00575 (EAW) (W.D.N.Y. 2017) ................. 7

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).........................3

*Loubier Irrevocable Trust et al v. Noella Loubier et al*, No. 15-802 (2d. Cir 2017)...............9, 11

*Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996) ........................................................................10

*Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008)........................................................6

*Monahan v. Comm'r*, 109 T.C. 235, 240 (1997) .......................................................................10

*National Credit Union Administration Board v. U.S. Bank National Association*, 17-756-cv (2d Cir. 2018).................................................................................................................................8

*Nicosia v. Amazon.com, Inc.*, 15-423-cv (2d Cir. 2016) .............................................................5

*Papetti v. Rawlings Fin Svcs LLC* 15-cv-2933 (PAE) (SDNY 2016) ....................................4, 12

*Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014).................................6, 13

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 ...............................................23

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774 (2d Cir. 1984) .........................................................................................................................................5

*Speca v. Comm'r*, 630 F.2d 554 (7th Cir. 1980).........................................................................9

*Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008)...................................9

*Taylor v. Sturgell*, 553 U.S. 880 (2008).....................................................................................7

*Tepper v. Amos Financial, LLC*, No. 17-2851 (3d Cir. 2018).......................................................1

*Tharpe v. Nationstar Mortgage LLC*, 632 F. App'x 586 (11th Cir. 2016)....................................8

*Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) ...............................................17

*United States v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975)..................................................5

*Vossbrinck v. Accredited Home Lenders, Inc.*,773 F.3d 423 (2d Cir. 2014) ..............................16

*Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012)................................................................14

*Webster v. Wells Fargo Bank, N.A.*, No. 08-cv-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) ...................................................................................................................................14

*Wight v. BankAmerica Corp.* 219 F.3d 79 (2d Cir. 2000) .........................................................11

# INTRODUCTION

"The landscape of debt collection has changed since the FDCPA's enactment in 1977, and not all those who collect debt look like the classic 'repo man.'" *Tepper v. Amos Financial, LLC*, No. 17-2851 (3d Cir. 2018). "Since this shift, courts have had to find new ways to distinguish 'debt collectors' from 'creditors' to determine whether the FDCPA applies to a particular entity." *Id.*

Alleged trustee Wells Fargo, while the legal owner of Plaintiff's debt and the entity to whom she owed money, was not a "creditor" under the FDCPA because it obtained her debt after she defaulted solely to facilitate collection for a beneficiary-investor and she requests damages for Defendants' failure to inform her of that material fact in their communications with her when attempting to collect her debt. The Court has previously said that if Plaintiff prevails on her claim, it would have to find that Wells Fargo is not a "creditor" under the FDCPA, but that decision would not bar or invalidate a state foreclosure action, or contradict a state court's conclusion that Wells Fargo had standing to bring that action or was owed money by Plaintiff. As to Plaintiff's first complaint, the Court determined: that Plaintiff did not sufficiently allege that the Bank Defendants were debt collectors in the first place; and Wells Fargo is a trustee standing in the shoes of that corporation collecting for itself and qualifies as a creditor because both Wells Fargo and Chase meet the exception in § 1692a(6)(F)(iii) concerning a debt which was not in default at the time it was obtained by such person. The Court directed as follows:

> Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of the claims against the Bank Defendants is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should file one within 30 days, and include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain all of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, affidavits, or memoranda.

Opinion & Order, Doc. 55 at 34. Plaintiff then filed her Amended Complaint ("AC") within the thirty days, alleging, among other things, that the Defendants are debt collectors in the first place and particularly describing the trust relationships, events, and parties involved. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. Therefore, Plaintiff integrated only enough facts and exhibits she "wishes the Court to consider" to nudge her claim over the line from conceivable to plausible. Since then, Plaintiff was surprised to discover that the FDCPA's text and structure shifts the burden onto each Defendant to plead and prove, as an *affirmative defense*, that Plaintiff's debt was ***not*** in default when collection and servicing rights were acquired by them, and Plaintiff cannot find any case in *this* Circuit where this protective feature for litigating consumers has been raised and decided by a court. Defendants want the Court to consider all kinds of extrinsic material to support their narrative of securitization, including court filings *of the Defendants*.[1] Those materials, if they could be considered, cannot support a § 1692a(6)(F) affirmative defense under Rule 12 because *the affirmative defense does not appear on the face of the pleading*. Plaintiff's AC relies on the publicly recorded Assignment of Mortgage as valid and integral to her claim, and qualifiedly to a 2013 Limited Power of Attorney from Wells Fargo granting servicing rights to Chase, both of which Defendants avoid mentioning in their memoranda.

Plaintiff has alleged facts from which, taken as true, it can be reasonably inferred that all Defendants are liable as debt collectors under the Act. Plaintiff alleges the splitting of legal and equitable title in trust relationships, that an Assignment executed on behalf of the originator

---

[1] Defendants' recitation of facts in their Memorandum inconsistent with the AC are inappropriate to be considered on this motion. See *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010). ("Preliminarily, as to C&S's proffered affidavit, the court declines to consider it in the current context. As we are in the preliminary throes of litigation, such that the parties have not yet engaged in any discovery, the court is unwilling to convert C&S's motion to dismiss into one for summary judgment.") (Footnotes omitted.)

years after the originator went out of business evinces an Intermediate Trustee, and that Wells Fargo obtained the debt, from that Intermediate Trustee in default, in trust for a beneficiary-investor. To that extent, the Act excludes Wells Fargo from being defined creditor.

## ARGUMENT

The FDCPA is a strict liability act. "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person…" 15 U.S.C. § 1692k(a). The Act contains explicit language shifting the burden of pleading and proving certain affirmative defenses to defendants. See *Evankavitch v. Green Tree Servicing*, 793 F.3d 355 (3d Cir. 2015):

> *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (citing 15 U.S.C. §§ 1692k(c) and (e) for the proposition that "[t]he Act contains two exceptions to provisions imposing liability on debt collectors"). The first of these is the so-called good faith error defense, which explicitly places the burden on the debt collector to prove that it acted unintentionally and had procedures in place to avoid such an error. 15 U.S.C. § 1692k(c). The second provides a safe harbor for a debt collector that seeks and receives legal opinions from the Consumer Financial Protection Bureau before they proceed. 15 U.S.C. § 1692k(e). Although this second exception lacks the explicit burden-shifting language of the first, both are delineated as affirmative defenses by § 1692k(a)'s general statement that a debt collector shall be held liable "[e]xcept as otherwise provided by this section," with the particular affirmative defenses described in separate subsections. 15 U.S.C. §§ 1692k(a), (c), (e). * * * Such placement of the exception and the general prohibition in different parts of the statute has been recognized by the Supreme Court as indicative of an affirmative defense. See *Meacham*, 554 U.S. at 87, 91. * * * In sum, allocating the burden to the consumer would be inconsistent with the Act's remedial purpose and our duty to construe it broadly, *see Lesher*, 650 F.3d at 997, and we therefore will place the burden where it belongs: on the debt collector.

*Evankavitch.*

## I. THE FACT THAT WELLS FARGO IS THE ENTITY THAT OWNS THE DEBT AND PLAINTIFF OWES HER DEBT TO IT IS NOT DISPOSITIVE OF WHETHER WELLS FARGO IS THE "CREDITOR."

All of the documents the Court may consider on this motion support that Wells Fargo is not a creditor whether or not it is the "entity" or "person" to whom Plaintiff owes her debt. "The

FDCPA regulates the activities of 'debt collectors' with the aim of 'deterring deceptive conduct.' *Jacobson v. Healthcare Fin. Servs. Inc.*, 516 F.3d 85, 91 (2d Cir. 2008). The term 'debt collector' is statutorily defined. See 15 U.S.C. § 1692a(6). Among other things, it does not include 'any person collecting or attempting to collect any debt ... due another to the extent such activity ... concerns a debt which was *not in default at the time it was obtained* by such person.' 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added)." *Papetti v. Rawlings Fin Svcs LLC* 15-cv-2933 (PAE) (SDNY 2016) (ellipses in original). Bank Defendants are seeking shelter in this exception. Defendants hope to establish Wells Fargo as the creditor by disposing of § 1692a(4)'s exclusion and the second sentence of § 1692a(6); they want the Court to consider their exhibit of a purported Modification Agreement (purported "Mod Agreement") for its truth in that the document purportedly shows Wells Fargo acquired Plaintiff's debt prior to default (being akin to "an innocent purchaser"). Plaintiff stands on her AC at this juncture. The Court already set the comprehensive standard under Rule 12 in this case at Opinion & Order, Doc. 55 at 11 (emphasis added), and most particularly the following:

> Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). **However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint,"** *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[] either possessed or knew about **and upon which [he or she] relied in bringing the suit**," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Also, courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such

litigation and related filings. See, e.g., *United States v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (on review of denial of habeas corpus, judicial notice of briefs and petitions filed in state courts to determine whether petitioner had exhausted his state remedies); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998). If a district court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material. See *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).

Middle of page 16, Bank Defendants want a purported Mod Agreement document to be considered in deciding the issue of when Plaintiff's debt was obtained even though the document was not integral to, or even referenced in, the original complaint or the AC. The AC is the operative complaint and the original complaint has no legal effect. The purported Mod Agreement is outside, and inconsistent with, the AC, specifically inconsistent with ¶ 60 ("Plaintiff has made no agreement with Wells Fargo or any person acting on Wells Fargo's behalf."), and should not be considered at this juncture. See *Nicosia v. Amazon.com, Inc.*, 15-423-cv (2d Cir. 2016) ("A 'necessary prerequisite' for taking into account materials extraneous to the complaint 'is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'") Because the purported document is not "relied upon or integral," *Cortec* is inapposite. *Augustus* is likewise inapposite and distinguishable because Ms. Augustus, a pro se civil rights litigant, appeared to believe that the Amended Complaint supplemented, rather than replaced her original complaint, and therefore was given the *benefit* of incorporation. *Hunt* is also a civil rights case in which the pro se

amended complaint relied on two attachments to the original complaint. In the total absence of Plaintiff's reliance on the Defendants' purported document or facts, the *Hunt* court's qualifier works in Plaintiff's favor: "To the extent the amended complaint relies on facts set forth in the two attachments to the original complaint, the Court considers them herein." *Hunt v. Arthur Kill Correctional Facility*, 2012 U.S. Dist. LEXIS 186664, at n.1 (E.D.N.Y. Oct. 9, 2012). In contrast, Plaintiff doesn't allege any deficiencies in any purported Mod Agreements or quote any portion of them or rely on them at all. Plaintiff is not party to them. Besides, **a trustee could bypass Defendants' exhibits and be ratified in the end**. That's what *Rajamin*[2] teaches, and that's the same principal Plaintiff relies on as she pointed out at the pre-motion conference. *Rajamin* works to Plaintiff's benefit, which could be why the Bank Defendants abandoned discussing it.

Defendants argue essentially that Plaintiff cannot meet her burden to plausibly allege that they obtained her debt after default. However, Congress was especially solicitous toward consumers bringing an FDCPA action in the way it structured the text of the Act. Because § 1692a(6)(F) is an exception to the generally applicable definition of "debt collector," see *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), aff'd, 137 S. Ct. 1718 (2017), the defendant bears the burden of showing that the exception to the rule applies. See *Evankavitch v. Green Tree Serv., LLC*, 793 F.3d 355, 361-63 (3d Cir. 2015) quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) ("repeating 'the familiar principle that "[w]hen a proviso … carves an exception out of the body of a statute or contract those who set up such exception must prove it"') (quoting *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508, 30 S.Ct. 598, 54 L.Ed. 859 (1910)); *United States v. Taylor*, 686 F.3d 182, 190 & n.5 (3d Cir. 2012) (compiling 'numerous Supreme Court decisions' for the proposition that 'where the statute contains … an exception, the defendant bears the burden of proving it'). This

---

[2] *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014).

'longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side.' *Meacham*, 554 U.S. at 91–92.")

Consequently, in this case, the burden is on Defendants to show, as an affirmative defense, that Plaintiff's debt was ***not*** in default when *collection and servicing rights* were "obtained" by each of them. See *Darlene Garner v. Select Portfolio Servicing, et al*, No. 17-1303 (6th Cir. 2017) ("The district court therefore erred in dismissing Garner's FDCPA claim against SPS for not pleading that her loan was in default when SPS began servicing it."). See also *Taylor v. Sturgell*, 553 U.S. 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (stating that when a party seeks shelter in an affirmative defense it is "[o]rdinarily . . . incumbent on the defendant to plead and prove such a defense"). Pleading requires an answer. For the foregoing reasons, as a matter of statute, an affirmative defense that Plaintiff's claim "concerns a debt which was not in default at the time it was obtained by such person" is not "clear from the face of the complaint." Cf. *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). ("Any affirmative defense may be raised by a motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") Thus AC's allegations are consistent with both the definition of "debt collector" and the exclusion in the definition of "creditor," and not implausible on its face. "A plaintiff 'need not plead facts showing the absence of [an affirmative] defense' in order to state a claim. *Black v. Coughlin*, 16 F.3d 72, 75 (2d Cir. 1996); see, e.g., *Chen v. Major League Baseball Props.*, Inc., 798 F.3d 72, 81 (2d Cir. 2015)" *Jennings v. Continental Service Group, Inc.*, 15-cv-00575 (EAW) (W.D.N.Y. 2017). Even if the Court could consider another court's mention of a purported Mod Agreement, it still does not appear on the face of the AC as to the truth of those matters to provide an affirmative defense at this stage.

Moreover, none of the exhibits submitted by Defendants, if they could be considered, can substitute competing facts which contradict the alleged June 19, 2013 Limited Power Of Attorney ("LPOA") as to when Chase began *collecting* the debt for Wells Fargo. See AC, ¶¶ 28, 58. On their motion to dismiss, Defendants have not established that they can show Plaintiff's debt was not in default at the time they each obtained the servicing rights, or that they have a defense at this stage. The Court should find that this case cannot be decided on a motion to dismiss. Therefore, for the foregoing reasons, their arguments that the AC does not sufficiently plead that both Wells Fargo and Chase acquired Plaintiff's debt in default have no merit.

Wells Fargo is alleged to be a debt collector "in the first place," not simply because it is attempting to collect Plaintiff's debt.[3] See AC ¶¶ 29, 31, 34, 35, 54, 55 (Wells Fargo's regular, direct and indirect collection activity); AC footnote 7, ¶¶ 29, 31, 54,  (Wells Fargo's use of instrumentalities in interstate commerce in its "principal purpose" with respect to its "post-default trust" business). Further, in the first adjudication of Plaintiff's claim on the merits, Plaintiff didn't specifically plead the separation of the legal title and third-party equitable title, and was given opportunity to address those deficiencies. See *National Credit Union Administration Board v. U.S. Bank National Association*, 17-756-cv (2d Cir. 2018) (briefly discussing "the longstanding historical distinction between legal title and equitable title, recognizing that a trustee does not act on its own behalf but rather on behalf of trust beneficiaries.") Defendants ignore the central fiduciary relationship in their memorandum.

Plaintiff pled that Wells Fargo is collecting as trustee for one or more third-party beneficial interest holders. See AC ¶ 12, 17, 18, 22, 27, 28, 31, 39, 55. It is undisputed that Wells

---

[3] "Nationstar contends that Tharpe's allegations that it is a 'debt collector' are vague and conclusory. They are not. Tharpe has alleged that Nationstar's business involves the regular collection of thousands of debts from thousands of consumers. That allegation, if true, would support a finding that Nationstar is a 'debt collector' within the scope of the FDCPA. See 15 U.S.C. § 1692(6)." *Tharpe v. Nationstar Mortgage LLC*, 632 F. App'x 586 (11th Cir. 2016).

Fargo is, and refers to itself as, a trustee, and "not in its individual or banking capacity, but solely as Trustee on behalf of the Trust(s)" AC ¶ 28. A fiduciary relationship is traditionally and reasonably inferred. "Assignments for collection," under which the assignee receives legal title to a debt for the purpose of bringing suit or enforcing payment but someone else retains beneficial ownership, were recognized in many states long prior to the 1977 enactment of the FDCPA. *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008) (discussing history and citing cases allowing practice going back to 19th Century). In all states a trust may now be created for any lawful purpose. Bogert, Trusts, 6th Ed., p. 182. Section 1692a(4) provides in part, "The term 'creditor' means any person . . . to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." The fiduciary relationship between the assignee Wells Fargo as trustee and the beneficial interest holder(s)— the trust—is not a "person." So, even if the debt is owed to Wells Fargo under the first part of § 1692a(4), the exclusion in the second part recognizes the person could be an assignee or transferee for collection purposes. See AC ¶ 18; *Loubier Irrevocable Trust et al v. Noella Loubier et al*, No. 15-802 (2d. Cir 2017) ("trusts in this case have no distinct juridical identity allowing them to sue or to be sued in their own names. Rather, each is a traditional trust, establishing a mere fiduciary relationship and, as such, incapable of suing or being sued in its own name.")

The identity of the beneficiary(s) of the fiduciary relationship is a question of fact to be determined from all of the attendant facts and circumstances[4]; the court can't determine in fact at

---

[4] The federal income tax consequences of property ownership generally depend upon beneficial ownership rather than possession of mere legal title. *Speca v. Comm'r*, 630 F.2d 554, 556-57 (7th Cir. 1980), aff'g T.C. Memo. 1979-120; *Beirne v. Comm'r*, 61 T.C. 268, 277 (1973). "[C]ommand over property or enjoyment of its economic benefits, which is the mark of true ownership, is a question of fact to be determined from all of the attendant facts and

the motion to dismiss stage their identity, whether the trustee/Wells Fargo is also a beneficiary among others, whether the trustee/Wells Fargo is collecting solely for its own account or among others, the terms of the trust, whether trustee/Wells Fargo is also a beneficiary collecting for "its own account" among others' accounts, and whether the trust is revocable.[5] These are matters left for the trier of fact after discovery. Cf. *Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996):

> When a trustee is also a beneficiary, she holds the legal title to the entire trust property in trust for all of the beneficiaries (including herself), has a duty to deal with it for the benefit of the beneficiaries, and does not hold legal title to any of the trust property free of trust to use as she pleases. There is no partial merger of the legal and equitable interests. Restatement (Second) of Trusts Section(s) 99 cmt. b; 2 Scott on Trusts Section(s) 99.3. It follows that a creditor generally cannot reach a trustee/beneficiary's interest in a trust, such as these, with a spendthrift provision. Restatement (Second) of Trusts Section(s) 99 cmt. b. * * * Broad powers are typically conferred on a trustee as an effective way to manage trust property. Trustees who are also beneficiaries, "like trustees generally, have the power to do acts that are 'necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.'" Mahoney, 973 F.2d at 971, citing Restatement (Second) of Trusts Section(s) 186. As we have held in the estate tax context, a settlor/trustee's administrative and management powers cannot be equated with ownership. See Old Colony Trust Co. v. United States, 423 F.2d 601, 602-03 (1st Cir. 1970).

Thus, even though Wells Fargo obtained an interest in the mortgage and is the legal owner of the note, it was obtained and held ***subject to the fiduciary duty*** for the one or more third-party beneficial interest holders. These factual issues are not reached or comprehended by *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) ("So a company collecting purchased defaulted debt for its own account—like Santander—would hardly seem to be barred from qualifying as a creditor under the statute's plain terms."). See also *Markham*, above. Section 1692a(6) draws a distinction between debts "owed ***or due***" "*another*" and then includes both. Section 1692a(4)'s exclusion is broader still.

---

circumstances." *Monahan v. Comm'r*, 109 T.C. 235, 240 (1997) (internal quotations omitted) (quoting *Hang v. Comm'r*, 95 T.C. 74, 80 (1990)).

[5] A trust is ordinarily indestructible and irrevocable by its settlor, in the absence of a power of revocation expressly reserved. Bogert, Trusts, 6th Ed., p. 36, citing Restatement, Trusts, Second, § 148.

Therefore Bank Defendants' assertion top of p. 3 that "Wells Fargo foreclosed in its own name for 'its own account'" is inconsistent with the fact that Wells Fargo obtained the debt and foreclosed "as trustee," not any other way. Defendants' similar assertion, top of p. 11, that "Wells Fargo only sought collection in its own name for its own account" and therefore the default status of the debt when obtained is immaterial, is clearly inconsistent with the AC and would be a fact-intensive determination. Defendants have not shown anything that can be judicially noticed to answer these issues at this stage, and the Court should not simply rely on a Defendant's say-so. Plaintiff never alleged that any trust is a "sham." See AC, n.8. (Plaintiff stated that if there is no diversity between Wells Fargo and beneficiary, the Pass-Through Trust would be a deceptive or misleading sham.) See also AC ¶ 18 where Plaintiff alleged that "diversity between trustee and beneficiary was maintained at all times so there was no merger of the two." This is different than liquidators who, like the trustees of a bankruptcy estate, stand in the shoes of the defunct corporation. Compare *Loubier* (supra) with *Wight v. BankAmerica Corp.* 219 F.3d 79, 87 (2d Cir. 2000) ("Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in.") *Loubier* describes the trustee relationship alleged in the AC ("each is a traditional trust, establishing a mere fiduciary relationship").

Middle of page 11, Bank Defendants argue that "Plaintiff has not attached any document or communication supporting her 'conjecture' that an unnamed entity has stood behind Wells Fargo pulling the strings." Plaintiff relies on the January 20, 2016 letter from Chase indicating an unnamed investor. See AC ¶ 45. Defendants suggest that the sky will fall (on a case-by-case basis) if the Court follows the rules at the pleading stage, accepts the factual allegations as true,

11

and enforces the FDCPA as written, because they say it would essentially rewrite the "creditor" exemption out of the statute. Enforcing the FDCPA's text on a motion to dismiss where Congress provides for affirmative defenses is hardly "rewriting" the statute.

**Plaintiff relies on the recorded Assignment of Mortgage**

Plaintiff relies on the recorded Assignment of Mortgage (which Defendants do not discuss) as a telltale sign that the Intermediate Trustee is the most plausible explanation."'[T]he sufficiency of a complaint turns on its 'factual content,'. . . requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing . . . The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682, 683 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). As alleged, AC ¶ 32, Defendants and their counsel offer their version of events, but which has nothing to do with ***Plaintiff's*** debt. Assuming, for argument's sake, that the purported Mod Agreement *could* be considered, Plaintiff has provided a factual, ***"competing explanation"*** for Defendants' conduct, not by denying a purported Mod Agreement. Plaintiff, on the other hand, relies on the fact of their recorded Assignment of Mortgage ("AOM") as integral to her Complaint.[6] Plaintiff is focused on the default status of the debt when Wells Fargo obtained it

---

[6] The AC alleges at ¶¶ 26–27 that Wells Fargo "received" and "acquired" the debt as those terms are defined in the Act, and then, in turn, that "right to collect for Wells Fargo" was transferred to Chase. Plaintiff synonymously used the word "obtained" at ¶ 32. See *Papetti*, above:

    A. When Did Rawlings "Obtain" Papetti's Debt?

    The word "obtained" is not defined in the FDCPA. One possible interpretation is that it refers to a transfer of ownership or an assignment. Another is that it includes "the possession of the right and responsibility to collect a debt." *Franceschi v. Mautner-Glick Corp.*, 22 F.Supp.2d 250, 254 (S.D.N.Y. 1998). Courts in this Circuit have adopted the latter view, starting with Judge Cote's reasoned decision in *Franceschi. See Id.* (citing, *e.g., Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996)); *Lautman v. 2800 Coyle St. Owners* Corp., No. 13 Civ. 967

*from the same party that assigned the mortgage to it after default.* Plaintiff's claim is only made stronger by their valid AOM executed on February 22, 2010, which is more plausibly explained by the Intermediate Trustee because Fremont's agent or attorney-in-fact, standing alone, would not plausibly survive Fremont's July 25, 2008 closing, see AC ¶ 25. This is in harmony with *Rajamin* which affirms that "[t]he principle that a trustee's unauthorized acts may be ratified by the beneficiaries is harmonious with the overall principle that only trust beneficiaries have standing to claim a breach of trust."

> *English v. McIntyre*, 29 A.D. 439, 448-49, 51 N.Y.S. 697, 704 (1st Dep't 1898) ("where the trustee has engaged with the trust fund in an unauthorized business . . . the rule is that the *cestui que trust* may ratify the transactions of the trustee and take the profits, if there are profits"). Moreover, "beneficiary consent may be express or implied from the acceptance of the trustee's act or agreement and may be given either after or before the trustee's act . . . ." *Mooney*, 193 A.D.2d at 934, 597 N.Y.S.2d at 776.

*Rajamin.* Thus, even if a particular purported Mod Agreement could be considered *and applied*, a trustee could have avoided it intentionally or transferred the debt to another at any time before or after *any* document was created (as a so-called "unauthorized act") from the beneficiary's perspective but which, in the end, makes no difference if the beneficiary—the undisclosed investor in this case—doesn't object. Without discovery, there is no way to know what happened exactly even if the exhibits are ultimately taken for the truth of those matters because the parties can create documents which the trustee can ignore at will and they can't be challenged except by the beneficiaries. This cannot be addressed on the motion.

Central to Plaintiff's claim is that the trustee Wells Fargo did not obtain and hold the debt

---

(ARR), 2014 WL 2200909, at *4 (E.D.N.Y. May 23, 2014); *Wood v. Capital One Servs., LLC*, No. 09 Civ. 1445 (NPM), 2012 WL 4364494, at *7 (N.D.N.Y. Sept. 21, 2012); *Kesselman v. The Rawlings Co., LLC*, 668 F.Supp.2d 604, 611 (S.D.N.Y. 2009).[5] The Court does so, as well.

Liberally construed, Plaintiff has alleged that Wells Fargo, and then Chase, "obtained" the debt and took on "the possession of the right and responsibility to collect the debt" after default, in a "post-default collection process that the investor controls." AC ¶ 35.

free of the trust. Again, Plaintiff is focused on the AOM as to the default status of the debt when Wells Fargo obtained it *from the same party that assigned the mortgage to it years after Fremont went out of business*, ratified by Wells Fargo's obtaining and recording it for the investor. It is axiomatic that not every trust is a pool securitization according to a pooling and servicing agreement, and Defendants are in control of information necessary to prove or disprove the defense. That also applies to the 2013 LPOA from, and executed by or on behalf of, Wells Fargo by which Chase obtained right to collect from Wells Fargo after default. See AC ¶¶ 11, 29, 30, 32; *Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (explaining that placing the pleading burden on the defendant is appropriate where a defense hinges on "facts peculiarly within the knowledge and control of the defendant"). If the Trustee Defendants are going to introduce evidence supported by oath or affirmation, Plaintiff needs time and opportunity to depose or cross-examine every one of those persons, be able to issue subpoena duces tecum, and have their employers make people with best knowledge available for rebuttal testimony.

### Rooker-Feldman doctrine

"Courts in [the Second] Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-cv-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted), aff'd sub nom. *Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012). On page 12, Defendants say that Plaintiff is seeking to prove that the unnamed party is actually the owner of her loan and impermissibly attacked the state court judgment. Not so. Plaintiff already explained the unnamed party is a beneficiary and the trustee had the legal right to sue. Again, WF wants to self-servingly avoid the central trustee-beneficiary relationship when it's convenient. The AC does not mention, let alone invite review and rejection of any judgment. Plaintiff is not requesting that the Court review the New York Supreme Court's reasoning or

14

void the Judgment of Foreclosure. For the purpose of this federal action, Plaintiff embraces the Judgment of Foreclosure and readily concedes that the state court adjudged: that she was in default, that Wells Fargo as trustee as the holder of the note and mortgage had standing to foreclose, that Plaintiff owed $430,431.62 to Wells Fargo, and that Wells Fargo be permitted to proceed with a foreclosure sale to satisfy the judgment. [7] This independent action does not seek review or a mere revision of errors. It raises new and original claims arising upon new facts. Rather than attacking the judgment, Plaintiff's damages-only claim does not seek anything remotely resembling voiding the foreclosure sale. Plaintiff's claim does not require that the Court review and reject the state foreclosure judgment, nor does the success of Plaintiff's sole Count depend on the Court's conclusion that the state court improperly entered a judgment of foreclosure. Rather, Plaintiff brings claims for damages sustained by Defendants' alleged violations of the FDCPA, not procedural violations of state law. (AC ¶¶ 63–68.) Specifically, the Complaint alleges two ways Defendants violated the FDCPA: (1) by communicating with a third party, the Dutchess County clerk, in connection with the collection of the debt, without permission; and (2) by attempting to collect the debt without identifying Plaintiff's current creditor, which was false, deceptive, or misleading. (AC ¶¶ 63–64.)

The first claim, regardless of its merit, is not barred by Rooker-Feldman. Defendants do not appear to actually argue that this claim is barred by Rooker-Feldman, and instead devote their briefing to whether Plaintiff's claims about Wells Fargo not being the creditor constitute an attack on the state court's determination that Wells Fargo owned the debt and had standing to

---

[7] The judgment, gotten by debt collectors and not a creditor, is not central to Plaintiff's independent claim; it is simply a manifestation of the debt asserted to be owed, "whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5). Although the judgment remains undisturbed to date, Plaintiff's appeal of that judgment is pending. See *Wells Fargo Bank National Association v. Nicole Johnson, et al.*, App. Div., 2d. Dept., No.: 2016-05466. Plaintiff maintains that she is not a "state court loser" because her appeal of the Judgment of Foreclosure is pending, so the state proceedings have not "ended." However, Plaintiff acknowledges that this is open question in the Second Circuit and the Court need not decide it because the substantive requirements are not met.

foreclose. Plaintiff is not complaining of an injury caused by the Judgment of Foreclosure; rather, she is complaining about Defendants revealing personal information about her debt to a third party without permission. (See AC. ¶¶ 63 (citing 15 U.S.C. § 1692c(b)). Indeed, she requests damages for "embarrassment, loss of reputation, anxiety, and loss of sleep worrying about what will happen to her, her marriage, and her personal information" (AC ¶ 65.) Because this claim does not complain of actions produced by the state-court judgment, but rather ones that may be simply ratified, acquiesced in, or left unpunished by it, it does not satisfy the second Rooker-Feldman requirement. Hoblock, 422 F.3d at 88. Plaintiff contends that Wells Fargo is not a "creditor" under the FDCPA, because it obtained the Note and Mortgage after Plaintiff defaulted. (AC ¶¶ 22–23, 26–29, 31). Plaintiff relies on the definition of "creditor" at 15 U.S.C. § 1692a(4). Therefore, Plaintiff claims, Defendants violated § 1692e(10) by sending misleading communications in connection with debt collection that named Wells Fargo instead of her actual "creditor." (See AC ¶¶ 41, 42, 45, 47, 64, 68.) And, therefore, the damages Plaintiff requests stem from the fact that the Defendants did not inform Plaintiff "at the threshold of their collection activity" that there was no "creditor." (AC ¶ 68.) Bank Defendants argue at pp. 12–13 that in requesting the Court to find that Wells Fargo was not the creditor, Plaintiff asks the Court to find that Wells Fargo did not own the Note and Mortgage or that Plaintiff did not owe Wells Fargo—a conclusion contrary to the one the New York Supreme Court reached in order to enter the Judgment of Foreclosure in favor of Wells Fargo. Although the Complaint sometimes uses the phrase "to whom the debt was owed," Plaintiff is not contesting the state court's decision that she owed her debt to Wells Fargo at the time of the foreclosure action. Nor does Plaintiff request relief in the form of voiding or reversing the Judgment of Foreclosure—let alone the Note and Mortgage—or granting her title to the Property. Cf. *Vossbrinck*, 773 F.3d at 427 (finding it

"evident" that the injury the plaintiff complained of was the state foreclosure judgment based on "the relief [he] request[ed]—title to and tender of his property and . . . to have the state judgment declared 'void'"). Because Plaintiff does not seek review and reversal of a state court judgment, nor does she assert an injury from that judgment, *Rooker-Feldman* does not apply. *See Hoblock*, 422 F.3d at 86–87. The Court therefore should deny Defendants' Motion To Dismiss on *Rooker-Feldman* grounds.

**Collateral estoppel.**

Defendants attempt to invoke collateral estoppel and argue that to find that Wells Fargo is a "debt collector" rather than a "creditor," the Court would have to ultimately rule, they say, "that Plaintiff owed her debt to another party, in direct contradiction to the state court's judgment." Defendants' arguments at page 13 overlook or misunderstand how trusts work, discussed above. Wells Fargo is the legal owner and owns the debt in trust. The Act contemplates fiduciary duties in the exclusion in § 1692a(4): See AC ¶ 54 ("Wells Fargo's acceptance of a defaulted *debt—for* the sole purpose of collection for another—is central to its business, not merely incidental to a bona fide fiduciary duty *managing money or property* for another.") Neither Plaintiff nor Defendants raised the issue of whether Wells Fargo was also a beneficiary, nor were those issues decided in state court. "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same). As Plaintiff has alleged, New York law does not require one to be a creditor as defined under the FDCPA—that is, one who acquired the Note and Mortgage *before* default—in order to have

standing to bring a foreclosure action; rather, ownership prior to initiating the foreclosure action is sufficient. (*See* Compl. ¶ 54 (alleging that "Plaintiff's federal claim . . . has never been adjudicated in any court" and that "New York law does not distinguish a creditor from a debt collector pursuing foreclosure against a consumer, and does not require a creditor"). The identity of the creditor or beneficiary is *not* an issue in New York foreclosure proceedings. Defendants failed to show how the FDCPA definition of 'creditor' and that Wells Fargo received transfer of ownership of the debt after default, but prior to initiating foreclosure, is an issue that could have been raised as a defense to defeat standing in the foreclosure action. Determining whether Defendants' misconduct amounted to a lack of standing requires a substantially different analysis than determining whether it violated the FDCPA." Compare *Deutsche Bank Nat. Tr. Co. v. Whalen*, 969 N.Y.S.2d 82, 83–84 (App. Div. 2013) ("In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." (internal quotation marks omitted)) *with* § 1692a(4) (excluding persons who "receive[] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" from the definition of "creditor" under the FDCPA). Therefore, because Bank Defendants have not satisfied their "burden of showing that the identical issue was previously decided" in the foreclosure proceeding, the Court should deny the Motion To Dismiss on collateral estoppel grounds.

### False name exception (the second sentence of § 1692a(6))

Plaintiff alleged that Wells Fargo is a passive trustee and didn't allege that there is a creditor. See AC ¶¶ 34–35, n.8. This is the opposite of *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018) where Mr. Cohen alleged, and identified, his creditor. Defendants have the name of the beneficiary-investor but Plaintiff can attest that she does not know the name

of that third-party because it has not been disclosed to her. Under this section, Plaintiff alleged that "Wells Fargo was merely operating as a conduit for a post-default collection process that the investor controls" and that Chase was "acting as the agent or arm of the investor." That fits under "(3) the investor uses a pseudonym or alias." See ECF 77, top of 14. Plaintiff relies on her exhibited letter from Chase (i) indicating "the investor" and (ii) identifying "the owner" of the debt, see AC ¶ 34. Plaintiff did not allege that Wells Fargo is the creditor that used a false name or that Wells Fargo is the "unnamed investor." However, if Defendants are arguing that Wells Fargo is the sole trustee and sole beneficiary, that is an impermissible merger, and *they* are the parties arguing a sham trust which would be an AC, footnote 8 scenario. Then Wells Fargo would fit under "(2)", pretending to be a trustee. Wells Fargo is still alleged to be a debt collector in the first place.

## II. PLAINTIFF ALLEGED AN FDCPA CLAIM AGAINST CHASE, A DEBT COLLECTOR IN THE FIRST PLACE.

In addition to the foregoing arguments citing *Garner* and *Evankavitch*, Chase is also alleged to be a debt collector "in the first place," not simply because it is attempting to collect Plaintiff's debt. See e.g., AC ¶¶ 23, 43, 46, 48, 49, 51, 58, 59 (Chase's regular, direct and indirect collection activity). On pages 15–16, Bank Defendants' whole argument fails; Plaintiff did allege that Chase obtained the mortgage loan after default, see AC ¶ 28 ("[O]n June 19, 2013 . . . Wells Fargo took the affirmative step of referring, to Chase as its attorney-in-fact for collection, Plaintiffs defaulted debt for the investor."), but § 1692a(6)(F)(iii) places the burden on Defendants and they cannot demonstrate an affirmative defense at this stage.[8] The Scibetta declaration to the contrary is not evidentiary, and affidavits should not be considered without

---

[8] "Wells Fargo *received* and *acquired* the February 22, 2010 assignment and transfer of the defaulted debt together with the Security Instrument (Mortgage), solely to facilitate collection * *by* *the Defendant Wells Fargo as Pass-Through Trustee, for the investor" AC ¶ 27, "and the right to collect for Wells Fargo was transferred to Chase, and Chase began collecting the debt for Wells Fargo." AC ¶ 26.

discovery. See *Slamowitz*, footnote supra.

On p. 17, Bank Defendants rely on legislative history cited by another district court in *Pascal* to suggest that Chase, in its role as mortgage servicer is not the type of entity intended to be covered by the FDCPA. As this Court said, "the FDCPA only covers servicers who obtain a mortgage that is already in default." ECF No. 55 at 32. The terms "servicer" and "obtain" raise two issues. First, as discussed above, "obtain" has been defined "the possession of the right and responsibility to **collect** a debt," which Chase did not obtain *from Wells Fargo* until specific assignment. See AC ¶¶ 26–28. Wells Fargo transferred that **collection** right to Chase. Plaintiff alleged Chase's role as a "non-bank servicer" for trustee Wells Fargo's "post-default trust business." See AC, ¶¶ 29, 35, 51, 55, 58, 59. Second, at ECF No. 55 at 25, this Court has already pointed out the logic of "loan servicers acting as 'agents of the creditor.'" *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998). That is exactly the point.[9] There being no creditor in this case, Chase is not a loan servicer under that prevailing logic, and the Court should not carve out an exception in the Act for a group of debt collectors because of what they call themselves based on their erroneous view of law as to the status of Wells Fargo. For all the foregoing reasons, whether the April 1, 2011 "EMC Servicing Rights Transfer" (see ECF No. 77 at n.2) concerns Plaintiff's debt, especially in light of the 2013 LPOA from Wells Fargo to Chase and the definition of "obtain" discussed, is relevant only as an affirmative defense under § 1692a(6)(F)(iii), not under Rule 12.

Chase is a debt collector in the first place and sent Plaintiff monthly statements with the

---

[9] The same has generally been said for "attorneys of the creditor." Although not authoritative, one member of Congress summarized that, "[t]he act only regulates the conduct of debt collectors, it does not prevent creditors, through their attorneys, from pursuing any legal remedies available to them." 132 Cong. Rec. H10,031 (1986) (emphasis added). But see *Heintz v. Jenkins*, 514 U.S. 291 (1995) ("the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.")

degree of regularity described in § 1692a(6). As Chase is not afforded the § 1692a(6)(F)(iii) [10] affirmative defense on its motion to dismiss, Plaintiff cites to *Carlin v. Davidson Fink LLP*, No. 15-3105-cv (2d Cir. 2017) which relies on *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015). See ECF No. 55 at n.26. In *Hart*, the Second Circuit construed the term "communication in connection with the collection of any debt" quite broadly, as including an attempt to collect a debt if, from an objective perspective, a consumer would consider the communication as an effort to collect a debt. The *Hart* panel decided, "We here conclude that whether a communication is 'in connection with the collection of [a] debt' is a question of fact to be determined by reference to an objective standard. … Indeed, we see few types of communications as more obviously 'in connection with the collection' of debts than attempts to collect debts." *Ibid*. Plaintiff duly alleged Chase's monthly statements to her in 2016 indicating that: Plaintiffs loan was in default as of 9/1/2009, that "[t]his communication is an attempt to collect a debt and any information obtained will be used for that purpose," the Amount Due, that "payment must be received by certified funds," and that she was "at risk of foreclosure." See AC ¶¶ 43, 51, 55, Exhibit B. That "risk" without a creditor in this case is a concrete injury within the one-year statute of limitation that Congress has identified for which Plaintiff seeks damages. "These factors, dispositive in *Hart*, are similarly instructive here and demonstrate that Carlin has adequately pleaded that the August Letter was sent in connection with the collection of a debt." *Carlin*. Any subjective rationale should be rejected. In 2016, Chase was threatening foreclosure but was not a "mortgage servicer" as discussed above.

Bank Defendants cite to *Hill v. DLJ Mortgage Capital, Inc.*, 689 F. App'x 97, 2017 WL 1732114 (2d Cir. 2017), which they fail to point out is a Summary Order (Rulings by Summary Order do not have precedential effect.) *Hill* requires close scrutiny. Grounds for that decision are

---

[10] This subsection was previously cited by the Court at ECF 55, pp. 25, 27, 29, 30, 33 as a basis of dismissal.

from a foregone era in this Circuit prior to *Cohen v. Rosicki* (2018) when activity connected with mortgage foreclosure was most often deemed not in connection with collection of debt.

In the district court, the "threshold issue" based on "the majority of courts in this Circuit" was that "the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." Once the district court found that "defendants' communications to [Hill] necessarily were sent in connection with their continued attempts to enforce that security interest pending the foreclosure sale of the Property" and "could not have been taken in connection with the collection of the debt evidenced by the Note until after the foreclosure sale of the Property," it then found that the statements were also required under TILA.

> "[D]efendants' communications to plaintiff necessarily were sent in connection with their continued attempts to enforce that security interest pending the foreclosure sale of the Property." Selene sent these statements in compliance with the Truth in Lending Act, 15 U.S.C. § 1638(f), as implemented by 12 C.F.R. § 1026.41 which requires mortgage loan servicers to transmit monthly statements to consumers. With this in mind, the monthly statements here do not reflect attempts to collect on the debt evidenced by the Note. Hill thus fails to state a plausible claim for relief under the FDCPA."

*Hill v. DLJ Mortgage Capital, Inc. et al.*, 15-cv-3083 (SJF)(AYS), (EDNY 2016). The TILA requirements were referenced partially in Footnotes 13 and 14 by the district court. The district court discussed that the CFPB concluded in part that the FDCPA "cease communication" option exercised by a consumer in § 1692c(c) does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions of Regulation Z including 12 C.F.R. § 1026.41 (periodic statement) and that a servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to 12 C.F.R. § 1026.41 notwithstanding a "cease communication" instruction sent by the borrower, is not liable under the FDCPA. See Implementation Guidance

for Certain Mortgage Servicing Rules. 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013). The district court then expanded its application beyond "when consumers have instructed the servicer to cease communicating with them," reasoning that "there is no basis for imposing FDCPA liability upon it for complying with Regulation Z *absent* a 'cease communication' notice by the consumer." First, not all servicers are debt collectors, not all debt holders are creditors, and the regulation does not require the debt collector to violate the FDCPA. Second, the protection the FDCPA affords debt collectors in those circumstances is the affirmative defense stated in § 1692k(c), not an immunity from suit. Third, Chase's monthly statements are still "communications" in connection with collection of Plaintiff's debt *whether liability attaches or not*; Chase's statements contained information pertaining to debt collection that is not required, e.g., information on how and where to make payments. See Exhibit B.

In *Hill,* the Second Circuit noted an ***absence*** of any debt collection language in statements to the consumer, the opposite here. See *Hill* at *2 comparing with *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 noting that "[t]he statements sent by the defendant law firm in *Reese* stated that "collection is sought," that the firm was a "debt collector attempting to collect on a debt," and demanded "full and immediate payment of all amounts due." *Id.* at 1217 (internal quotation marks omitted). None of the statements at issue in this case contain any similar debt-demand language." *Hill*. At footnote 2, the panel declined to reach the issue settled in *Cohen* (2018) that mortgage foreclosure is an attempt to collect a debt. Here, within the four corners of the AC, at the time of the violations Chase is a debt collector—not a mortgage servicer for a creditor.

Regarding page 18 at "B," Plaintiff alleged that Chase engaged in debt collection activity. See AC ¶ 35. "Acting as an agent or arm of the investor, Chase mailed Plaintiff monthly

statements and orchestrated the Attorney Defendants." Thus, regarding communications *with the consumer*, this Court should follow Circuit law in *Carlin* by rejecting Bank Defendants' rationale that Chase's monthly statements were "merely following the mandate" of TILA. Those TILA provisions excuse liability in the case of a cease communications under § 1692c(c), outside of this case. The least sophisticated consumer considering them together with the other communications in connection with foreclosure were debt collection activity. Importantly, the statements are still debt collection activity even if Defendants are not liable. But that should not be the end of this Court's inquiry. Chase could have had ancillary motives for sending those specific statements at those specific times. If the statements were intended to induce Plaintiff to pay, and Wells Fargo receive some financial benefit as a result of that outcome, then the statements would be sent in connection with Chase's effort to collect the debt owed to Wells Fargo. If the Court applies the Oct. 15, 2013 CFPB Guidance to determine that loan servicers are not liable to the extent the monthly statements are federally required, the Court could find that the monthly statements are still in connection with the collection of debt and, further, Defendants are plausibly liable to the extent that the communication is not required by TILA.

### CLOSING SUMMARY

Although Wells Fargo had the right under state law to sue Plaintiff to collect her consumer debt, there were no rights of a "creditor" involved, as that term is defined in the FDCPA; Defendants materially erred in their view of the FDCPA concerning their status under the Act in their communications which could lead the least-sophisticated consumer to waive or otherwise not properly vindicate her rights under the FDCPA. By communicating information about Plaintiff's debt, as a non-consenting consumer, with the county clerk, the Defendants (debt collectors without a creditor) exposed Plaintiff to the concrete risk of harm to a privacy interest that Congress has identified (§ 1692c(b) in conjunction with § 1692i(b)). The damages is a

measure of the actual risk to the Plaintiff in Defendants communicating information about the Plaintiff's debt to the county clerk and which provided the basis for an amount which a court of equity could award; it is a basis for the amount at which damages becomes a deterrent versus remaining a profitable incentive for Defendants as a mere cost of violative business practices. Bank Defendants are debt collectors vicariously liable for the Attorney Defendants' conduct on their behalf.

## CONCLUSION

The Court should find the Amended Complaint is sufficient to state a plausible claim for relief under the FDCPA and this Court should give effect to that remedial act of Congress broadly according to its terms and entirely deny the Bank Defendants' motion to dismiss Plaintiff's Complaint as to each of them.

Respectfully submitted,

Nicole Johnson-Gellineau

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Court on November 30, 2018, and the parties' Counsel will be notified, and may access this filing, through the Court's ECF system.

Nicole Johnson-Gellineau