UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE JOHNSON-GELLINEAU,

                        Plaintiff,

        v.

STEINE & ASSOCIATES, P.C.;
CHRISTOPHER VIRGA, ESQ.; RONNI
GINSBERG, ESQ.; JPMORGAN CHASE
BANK NATIONAL ASSOCIATION; and
WELLS FARGO BANK NATIONAL
ASSOCIATION, *as Trustee for Carrington
Mortgage Loan Trust, Series 2007-FRE1,
Asset-Backed Pass-Through Certificates*,

                        Defendants.

No. 16-CV-9945 (KMK)

OPINION & ORDER

---

Appearances:

Nicole Johnson-Gellineau
Beacon, NY
*Pro Se Plaintiff*

Matthew J. Bizzaro, Esq.
L'Abbate, Balkan, Colavita & Contini, LLP
Garden City, NY
*Counsel for Defendants Steine & Associates, P.C., Christopher Virga, Esq., and Ronni Ginsberg, Esq.*

Brian P. Scibetta, Esq.
Buckley Madole, P.C.
Iselin, NJ
*Counsel for Defendants JPMorgan Chase Bank National Association and Wells Fargo Bank National Association*

KENNETH M. KARAS, District Judge:

        Nicole Johnson-Gellineau ("Plaintiff") brings this Action against the law firm Steine &

Associates, P.C. ("Steine"), attorneys Christopher Virga, Esq. ("Virga") and Ronni Ginsberg,

Esq. ("Ginsberg") (together, "Attorney Defendants"), JPMorgan Chase Bank National Association ("Chase"), and Wells Fargo Bank National Association, as Trustee for Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates ("Wells Fargo") (together, "Bank Defendants") (collectively, "Defendants"), seeking damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (*See* Am. Compl. (Dkt. No. 58).)  Before the Court are the Attorney Defendants' and the Bank Defendants' Motions To Dismiss.  (*See* Dkt. Nos. 80, 75.)  For the following reasons, the Motions are granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and documents attached to it, and are taken as true for the purpose of resolving the instant Motion.

On December 18, 2006, Plaintiff took out a $262,880.00 loan.  (Am. Compl. ¶ 14.)  She executed a note payable to Fremont Investment & Loan ("Fremont") or any transferees, denominated "the Lender," and the loan was secured by a mortgage on her home, located at 149 Wilkes St., Beacon, NY 12508 (the "Property"), in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont and Fremont's successors in interest (the "Mortgage").  (*Id.* ¶¶ 15–16.)  The Mortgage noted that:

> The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times.  [Plaintiff] might not receive any prior notice of these sales. The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer."  There may be a change of the Loan Servicer as a result of the sale of the Note.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  Applicable Law requires that [Plaintiff] be given written notice of any change of the Loan Servicer.

(*Id.* ¶ 16.)  The Mortgage was recorded on March 3, 2008 in the Dutchess County Clerk's Office. (*Id.*)

"Contemporaneously with or subsequent to" Plaintiff's mortgage, but prior to Plaintiff defaulting on that mortgage, an investor "who wished to remain nameless invested in Plaintiff's Note, became creditor, and appointed . . . EMC as his servicer/custodian." (*Id.* ¶ 21.)  Fremont "lodged Plaintiff's Note in an irrevocable trust" (the "Intermediate Trust") and "completed transfer to Wells Fargo." (*Id.* ¶ 22.)  The Intermediate Trust "provided for transferring Plaintiff's Note" to a trust entitled the Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates (the "Pass-Through Trust") in the event of Plaintiff's default on her Note, with Wells Fargo as Trustee.  (*Id.*)

Plaintiff failed to make payment on her mortgage due on September 1, 2009, and "failed to make subsequent payments to bring the loan current." (*Id.* ¶ 23.)  On February 22, 2010, an Assignment of Mortgage from Fremont to Wells Fargo was signed, and the assignment was recorded on March 5, 2010 in Dutchess County.  (*Id.* ¶ 24.)  Upon transfer of the Note to Wells Fargo, "the right to collect for Wells Fargo was transferred to Chase, and Chase began collecting the debt for Wells Fargo." (*Id.* ¶ 26.)

On December 24, 2015, Defendant Virga contacted the Dutchess County clerk on behalf of Wells Fargo, transmitted Plaintiff's name, address, and "information regarding the . . . debt," and stated that Wells Fargo sought to recover money owing on Plaintiff's mortgage.  (*Id.* ¶ 48.)  On March 17, 2016, Defendant Ginsberg also contacted the Dutchess County clerk "on behalf of Chase and transmitted Plaintiff's name, address, and information regarding Plaintiff's debt." (*Id.* ¶ 49.)

Plaintiff alleges that "Chase, in its capacity as servicer for Wells Fargo, regularly mailed Plaintiff monthly statements," and attaches the statements as an exhibit to the Amended Complaint.  (*Id.* ¶ 35; Am. Compl. Ex. B ("Chase Statements").)  The statements generally indicate that Plaintiff's Mortgage is "in default," and that the "foreclosure process has started." (*See, e.g.*, Chase Statements 4, 10, 14.)[1]  On January 12, 2016, Plaintiff mailed Chase a Consumer Notice of Dispute disputing the entire debt, "requiring Chase to cease and desist from collection efforts," and requesting "the name of the creditor to whom the debt is owed."  (Am. Compl. ¶ 44.)  On January 20, 2016, Chase sent Plaintiff a letter in response indicating that the owner of Plaintiff's mortgage is "Wells Fargo Bank NA as Trustee for CMLT 2007-FREI."  (*See* Am. Compl. ¶ 45; Am. Compl. Ex. A ("Chase Letter").)

B.  Procedural Background

Plaintiff filed the Complaint on December 23, 2016, alleging that Defendants violated the FDCPA, 15 U.S.C. §§ 1692c(b) and 1692e.  (Compl. (Dkt. No. 2).)  Plaintiff was granted in forma pauperis status, (Dkt. No. 4), and the Court issued an Order of Service on March 30, 2017 to allow Plaintiff to effect service on Defendants, (Order of Service (Dkt. No. 6)).  All Defendants were served.  (*See* Dkt. Nos. 13, 22, 23, 26, 28.)  On May 9, 2017, the Attorney Defendants filed a pre-motion letter indicating the grounds upon which they would move to dismiss.  (Dkt. No. 20.)  The Bank Defendants also filed a pre-motion letter the next day.  (Dkt. No. 21.)  Plaintiff filed letters opposing both pre-motion letters.  (*See* Dkt. Nos. 24, 25.)  On August 11, 2017, the Bank Defendants filed their Motion To Dismiss and accompanying papers. (Dkt. Nos. 34–36.)  The same day, after fixing docketing errors, (*see* Dkt. Nos. 30–33), the

---

[1] Because the Chase Statements are not consecutively paginated, the Court cites to the ECF-generated page number at the upper right corner of each page.

Attorney Defendants filed their Motion To Dismiss and accompanying papers, (Dkt. Nos. 39, 40, 42). Plaintiff filed oppositions to both Motions on October 12, 2017. (Dkt. Nos. 45, 46.) The Attorney Defendants filed a reply memorandum on November 3, 2017, (Dkt. No. 51), and the Bank Defendants filed a reply memorandum on November 9, 2017, (Dkt. No. 53).

On March 29, 2018, the Court issued an Opinion and Order on the Motions To Dismiss. (*See* Op. & Order on Defs.' Mot. ("Opinion") (Dkt. No. 55).) The Court rejected Defendants' arguments that the *Rooker-Feldman* Doctrine and collateral estoppel barred Plaintiff's claims. (*See id.* at 12–23.) The Court then granted the Bank Defendants' Motion on the basis that Plaintiff failed to sufficiently plead that Chase and Wells Fargo were debt collectors under the FDCPA. (*See id.* at 23–33.) The Court denied the Attorney Defendants' Motion without prejudice; the Court noted that "on October 2, 2017, the Second Circuit heard oral argument in a case that presents" the same arguments at issue in this case—i.e. that documents sent in connection with a foreclosure action do not constitute debt collection under the FDCPA—and gave the Attorney Defendants leave to renew the Motion "once the Second Circuit issues its opinion." (*Id.* at 34.)

On April 30, 2018, Plaintiff filed the operative Amended Complaint. (*See* Am. Compl.) On September 28, 2018, with leave of the Court, (Dkt. No. 74), the Bank Defendants filed a Motion To Dismiss, (Bank Defs.' Not. of Mot. (Dkt. No. 75); Bank Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Bank Defs.' Mem.") (Dkt. No. 77); Bank Defs.' Decl. in Supp. of Mot. To Dismiss ("Bank Defs.' Decl.") (Dkt. No. 76)), and the Attorney Defendants filed a Motion for Judgment on the Pleadings, (Attorney Defs.' Not. of Mot. (Dkt. No. 80); Attorney Defs.' Mem. of Law in Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Mem.") (Dkt. No. 83); Attorney Defs.' Decl. in Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Decl.")

(Dkt. No. 81)).  Plaintiff filed oppositions to the Motions on November 30, 2018.  (Pl.'s Mem. in Opp'n to Bank Defs.' Mot. ("Pl.'s Bank Mem.") (Dkt. No 87); Pl.'s Mem. in Opp'n to Attorney Defs.' Mot. ("Pl.'s Att'y Mem.") (Dkt. No. 86).)  Defendants filed their respective replies on January 4, 2019.  (Bank Defs.' Reply in Further Supp. of Mot. To Dismiss ("Bank Defs.' Reply") (Dkt. No. 91); Attorney Defs.' Reply in Further Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Reply") (Dkt. No. 93).)  On March 29, 2019, Defendants filed a joint letter bringing to the Court's attention a Supreme Court opinion issued on March 20, 2019, *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), and asking the Court to consider it in deciding their Motions.  (Joint Letter from Defs.' To Court (Mar. 29, 2019) ("Defs.' Joint Letter") (Dkt. No. 98).)  Plaintiff filed a response to the letter on April 5, 2019.  (Letter from Plaintiff to Court (Apr. 5, 2019) ("Pl.'s Letter") (Dkt. No. 99).)

## II.  Discussion

### A.  Standard of Review

The Bank Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); the Attorney Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  The standards of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(c) for judgment on the pleadings are the same.  *See Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[]

[her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to [her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[] either possessed or knew about and upon which [she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Here, Plaintiff chose to omit several of the documents she attached to her original Complaint from her Amended Complaint. Defendants urge the Court to consider several of these documents in deciding their Motions. (*See* Bank Defs.' Mem. 10–11; Att'y Defs.' Mem. 10–11 n.1.) However, Plaintiff argues that the Court can only consider the Amended Complaint and the documents she attached or relied on therein, asserting that "Plaintiff integrated only enough facts and exhibits she 'wishes the Court to consider' to nudge her claim over the line

from conceivable to plausible." (Pl.'s Bank Mem. 2.) Plaintiff states that the Amended

Complaint relies only on "the publicly recorded Assignment of Mortgage . . . , and . . . a 2013

Limited Power of Attorney from Wells Fargo granting servicing rights to Chase." (*Id.* at 2; *see*

*also id.* at 4–6 (arguing that the Court cannot consider the modification agreement attached to the

original Complaint but omitted from the Amended Complaint, because "[t]he [Amended

Complaint] is the operative complaint and the original complaint has no legal effect," and

because the document is "inconsistent with" the Amended Complaint).)

      Although courts in pro se cases are authorized to consider materials outside the complaint

under some circumstances, *see Alsaifullah*, 2013 WL 2972514, at *4 n.3 (noting that "although

courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to

dismiss, the mandate to read the papers of pro se litigants generously makes it appropriate to

consider [a] plaintiff's additional materials" (citation and quotation marks omitted)), here,

Plaintiff expressly argues that the Court may *not* consider her prior Complaint and documents

that she intentionally omitted from her Amended Complaint. Accordingly, the Court will

consider only the documents attached to or relied on in the Amended Complaint, and documents

of which the Court may take judicial notice, including "documents filed in other courts," which

Plaintiff concedes the Court may properly consider "not for the truth of the matters asserted in

the other litigation, but rather to establish the fact of such litigation and related filings." (Pl.'s

Bank Mem. 4–5.) *See Newby v. GVC II, Inc.*, No. 17-CV-9742, 2018 WL 1989588, at *2

(S.D.N.Y. Apr. 25, 2018) ("A court may rely on matters of public record in deciding a motion to

dismiss under Rule 12(b)(6)." (citation and quotation marks omitted)); *Houck v. US Bank NA*,

No. 15-CV-10042, 2016 WL 5720783, at *4 (S.D.N.Y. Sept. 30, 2016) ("Courts are permitted to

take judicial notice of state court documents, even on a motion to dismiss."), *aff'd*, 689 F. App'x

662, 664–65 (2d Cir. 2017).  Therefore, in deciding Defendants' Motions, the Court will rely

solely on the documents attached to the Amended Complaint, and on publicly filed documents

submitted by Defendants, including the Consent Order, pursuant to which Chase became the

successor servicer to loans formerly serviced by EMC as of April 1, 2011, (Bank Defs.' Decl.

Ex. 8 (Consent Order, *In re JPMorgan Chase & Co. and EMC Mortg. Corp.*, Dkt. No. 11-023

(U.S. Board of Governors of the Fed. Reserve Sys.) ("Consent Order"); *see also* Opinion 7 n.6

(taking judicial notice of the Consent Order)), and the documents filed in Plaintiff's state court

foreclosure action (the "Foreclosure Action"), (Bank Defs.' Decl. Ex. 2 ("Foreclosure Compl.");

Bank Defs.' Decl. Ex. 3 ("Foreclosure Answer"); Bank Defs.' Decl. Ex. 4 ("Foreclosure Mot. for

Summ. J."); Bank Defs.' Decl. Ex. 5 ("Foreclosure Order"); Bank Defs.' Decl. Ex. 6 ("Judgment

of Foreclosure"); Bank Defs.' Decl. Ex. 7 ("Foreclosure Action Docket")).

> B.  Analysis

Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. § 1692c(b), by sending

or causing to be sent communications in connection with the collection of Plaintiff's debt to the

Dutchess County clerk, and 15 U.S.C. §§ 1692e and 1692g, for failing to identify Plaintiff's

current creditor in its attempts to collect the debt.  (Am. Compl. ¶¶ 63–64.)  Defendants seek

dismissal on the grounds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and

collateral estoppel, and, in the alternative, that the Complaint fails to state a claim under the

FDCPA.  (*See generally* Bank Defs.' Mem.; Att'y Defs.' Mem.)

### 1. *Rooker-Feldman* and Collateral Estoppel[2]

In connection with their Motions To Dismiss the original Complaint, Defendants argued that Plaintiff's FDCPA claims were barred by the *Rooker-Feldman* Doctrine and by collateral estoppel, because Plaintiff effectively seeks to challenge the outcome of the Foreclosure Action. (*See* Opinion 14, 20.)  The Court rejected these arguments.  Specifically, the Court held that Plaintiff's claims are not barred by *Rooker-Feldman* because she "is not complaining of an injury caused by the Judgment of Foreclosure," and because deciding Plaintiff's claims in her favor "would not invalidate the Judgment of Foreclosure or contradict the New York Supreme Court's conclusion."  (*See id.* at 14–20.)  With respect to collateral estoppel, the Court held that Plaintiff is not collaterally estopped from bringing her FDCPA claims because the question of whether Wells Fargo was Plaintiff's creditor under the FDCPA was not raised or decided in the Foreclosure Action.  (*See id.* at 20–23.)

The Bank Defendants seek to renew these arguments based on "the additional attention devoted to these allegations in the [Amended Complaint]."  (Bank Defs.' Mem. 12.)  In doing so, the Bank Defendants rely on the exact arguments the Court previously rejected—that in order to find for Plaintiff, the Court would necessarily have to rule "in direct contradiction to the state court's judgment."  (*Id.* at 13.)  The Amended Complaint, although it alleges slightly different facts and omits others, brings the same two FDCPA claims based on the same legal theories as

---

[2] The Court notes that this argument relating to the Court's jurisdiction should have been brought pursuant to Rule 12(b)(1), rather than Rule 12(b)(6).  However, this posture does not affect the Court's analysis, because "[t]he only substantive difference" between a motion to dismiss under Rule 12(b)(6) and Rule 12(b)(1) is that, under the latter motion, Plaintiff bears "the burden of proof" of establishing jurisdiction.  *Fagan v. U.S. Dist. Court for S. Dist. of New York*, 644 F. Supp. 2d 441, 447 n.7 (S.D.N.Y. 2009) (citation and quotation marks omitted).

the original Complaint.  The Court therefore declines to alter its prior determination that neither

the *Rooker-Feldman* Doctrine nor collateral estoppel bars Plaintiff's claims.

### 2.  FDCPA

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.'"  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.

2002) (quoting 15 U.S.C. § 1692e).  "The FDCPA establishes certain rights for consumers whose

debts are placed in the hands of professional debt collectors for collection, and requires that such

debt collectors advise the consumers whose debts they seek to collect of specified rights."  *Id.*

(citation and quotation marks omitted).  "Debt collectors that violate the FDCPA are strictly

liable, meaning that a consumer need not show intentional conduct by the debt collector to be

entitled to damages."  *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (citation and

quotation marks omitted).  Moreover, "a single violation of the FDCPA is sufficient to impose

liability" on a debt collector under the statute.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d

130, 133 (2d Cir. 2010).

"To state a claim under the FDCPA, a plaintiff must show (1) [s]he has been the object of

collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by

the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."

*Nath v. Select Portfolio Servicing, Inc.*, No. 15-CV-8183, 2017 WL 782914, at *11 (S.D.N.Y.

Feb. 28, 2017) (citation and quotation marks omitted); *see also Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (same).[3]

Construed liberally, the Complaint alleges that (1) the Attorney Defendants violated 15 U.S.C. § 1692c(b) by sending communications in connection with the collection of the debt to the Dutchess County clerk in furtherance of the Foreclosure Action, and (2) all Defendants violated §§ 1692e and 1692g(a)(2) by failing to identify the creditor in their communications with Plaintiff.  (*See generally* Am. Compl.)  The Bank Defendants argue that Plaintiff fails to plead that Wells Fargo and Chase are "debt collectors" as defined by the FDCPA, and also fails to plead that Chase engaged in "debt collection" activity as defined in the FDCPA.  (*See* Bank Defs.' Mem. 8–19.)  The Attorney Defendants argue that Plaintiff fails to plead that the Attorney Defendants attempted to collect a debt without a creditor, and that any documents submitted in connection with Plaintiff's foreclosure action do not violate the FDCPA.  (Att'y Defs.' Mem. 3–15.)

### a.  Bank Defendants

As a threshold matter, "[t]he relevant provisions of the FDCPA apply only to the activities of a 'debt collector,'" *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (citation omitted), and generally, "creditors are not subject to the FDCPA," *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).  Under the FDCPA,

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

---

[3] No Party disputes that Plaintiff is a consumer owing a debt, which satisfies the first element.

13

15 U.S.C. § 1692a(6); *see also Goldstein v. Hutton*, 374 F.3d 56, 61 (2d Cir. 2004) ("The FDCPA establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." (citation omitted)).  However, the term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F).  By contrast,

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

*Id.* § 1692a(4).  Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it.  This "distinction between creditors and external debt collectors reflects Congress's judgment that debt collectors were more likely than creditors to engage in abusive practices:  Whereas creditors seeking to recover their own debts are apt to be restrained by their desire to maintain a good relationship with the consumer, a third-party debt collector does not have the same inhibition."  *Muniz v. Bank of Am., N.A.*, No. 11-CV-8296, 2012 WL 2878120, at *3 (S.D.N.Y. July 13, 2012).  The same logic applies to loan servicers acting as "agents of the creditor."  *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998).

The Bank Defendants argue that they are not "debt collectors," and thus not subject to the FDCPA.  (Bank Defs.' Mem. 8–19.)  The Court will address this argument with respect to Wells Fargo and Chase separately.

i.  Wells Fargo

Plaintiff alleges that Wells Fargo is a debt collector within the meaning of the FDCPA because it uses "post-default trusts" to "acquire legal title to defaulted Notes solely for the purpose of facilitating collection of debt due, or asserted to be *due*, the investor, for the investor." (Am. Compl. ¶ 31.)  The Bank Defendants argue that Wells Fargo is a "creditor," rather than a debt collector, because it is "attempting to collect its own debt."  (Bank Defs.' Mem. 10.)

Plaintiff argues that Wells Fargo "is collecting as trustee for one or more third-party beneficial interest holders," and that "[a] fiduciary relationship is traditionally and reasonably inferred."  (Pl.'s Bank Mem. 8–9.)  Plaintiff insists that because Wells Fargo "obtained the debt and foreclosed 'as trustee,'" it did not foreclose "for 'its own account.'"  (*Id.* at 11.)  However, as the Court explained in its prior Opinion, (Opinion 26), when Wells Fargo acts as trustee for the mortgage loan trust, it acts on behalf of, or as, the trust itself, and therefore collects the debt on its own behalf, *see Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) ("[A] trustee stands in the shoes of the corporation.").  That Wells Fargo is a "trustee" does not mean, as Plaintiff contends, that it is collecting debt owed to another.  (*Contra* Pl.'s Bank Mem. 8–9.) Indeed, courts frequently find entities acting in the trustee capacity that Wells Fargo does here to be creditors under the FDCPA.  *See, e.g.*, *Munroe v. Specialized Loan Serv. LLC*, No. 14-CV-1883, 2016 WL 1248818, at *1, *5 (E.D.N.Y. Mar. 28, 2016) (finding that the Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage  Pass-Through Trust 2004-04 Mortgage Pass-Through Certificates Sires 2005-4, "is a 'creditor' not a 'debt collector' under the FDCPA," because it was collecting on behalf of itself (citation omitted)); *Houck*, 2016 WL 5720783, at *9 (holding that US Bank as Trustee for Citigroup Mortgage Loan Trust 207-AR5 is not a debt collector under the FDCPA), *aff'd*, 689 F. App'x 662, 664–65 (2d

Cir. 2017) ("Because the [d]efendants are 'creditors' seeking to collect debts owed to them, the district court appropriately concluded that . . . U.S. Bank [is] not [a] 'debt collector[]' within the meaning of the statute."). Plaintiff's assertion that Wells Fargo is not collecting on Plaintiff's debt for its own account because it is acting as trustee is thus contradicted by the caselaw.

Plaintiff also argues that Wells Fargo acquired the debt after Plaintiff defaulted solely for purposes of collection, and therefore cannot be a creditor under the FDCPA. (Am. Compl. ¶ 31; Pl.'s Bank Mem. 4, 7–8.) The Court previously held that the Modification Agreement submitted with Plaintiff's original Complaint demonstrated that Wells Fargo acquired the Note and Mortgage on August 26, 2008, before Plaintiff defaulted. (*See* Opinion 27.) Plaintiff notably did not attach the Modification Agreement to her Amended Complaint, and insists that the Court cannot consider it because the Amended Complaint does not expressly rely on it. (Pl.'s Bank Mem. 4–6.) However, even in cases involving pro se plaintiffs, "where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading." *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014) (citation omitted); *see also Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (noting that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)

(dismissing pro se amended complaint based on "facts set forth in his original complaint" where the plaintiff "blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss").  This is particularly relevant where, as here, "Plaintiff relied on the facts demonstrated by exhibits attached to [her] . . . Complaint, rather than merely allegations in the Complaint, and the Court found that the facts reflected in those exhibits" defeated Plaintiff's claims.  *James v. Gage*, No. 15-CV-106, 2019 WL 1429520, at \*7 (S.D.N.Y. Mar. 29, 2019) (finding that the plaintiff's omission of exhibits included in prior versions of his complaint in order to evade dismissal of his claims presented "the kind of rare occasion in which it is appropriate to depart from the usual rule that an amended complaint supersedes all prior complaints" (citation, alteration, and quotation marks omitted)); *see also Torres v. Howell*, No. 03-CV-2227, 2006 WL 1525942, at \*2 (D. Conn. May 30, 2006) (considering on a motion to dismiss "the . . . facts from [the plaintiff's] amended complaint and the exhibits attached to both his original and amended complaints" (citing *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001))).

Nevertheless, even without considering the Modification Agreement, Wells Fargo is not a debt collector under the FDCPA merely because it allegedly acquired the debt after default. "[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or seek to collect on its own behalf rather than 'for another.'" *Munroe*, 2016 WL 1248818, at \*5 (collecting cases); s*ee also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) ("[The] language [of § 1692a(6) does not] appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase.  All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for

'another.'"); *George v. Nationstar Mortg., LLC*, No. 16-CV-261, 2017 WL 3316065, at *9 (E.D.N.Y. Aug. 2, 2017) (holding the defendant who allegedly "received the debt by assignment . . . three months after [the] [p]laintiff defaulted on the [m]ortgage" is "not a 'debt collector' under the FDCPA" because "it is . . . clear from the . . . underlying foreclosure proceeding that [the defendant] sought to collect its own debt under the Mortgage, and not the debt of another"); *Estate of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084, 2017 WL 1194464, at *13 (E.D.N.Y. Mar. 30, 2017) (explaining that "the caselaw makes clear that . . . a loan servicing company who is assigned a defaulted mortgage but does not seek to collect the debt for an entity other than itself . . . is [not] a debt collector subject to the FDCPA's provisions"); *Daniels v. US Bank Nat'l Ass'n*, No. 15-CV-5163, 2016 WL 5678563, at *4 (E.D.N.Y. Sept. 28, 2016) ("Even where an entity acquired a defaulted debt, it is not a debt collector pursuant to the FDCPA where it does not engage in collection activities 'for another.'"); *Izmirligil v. Bank of New York Mellon*, No. 11-CV-4491, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) (explaining that because "plaintiff alleges that BNYM is a debt collector simply because BNYM took an assignment of the alleged debt while the debt was allegedly in default," but "does not sufficiently allege that BNYM is a debt collector in the first place," the exception to the definition of "debt collector" under § 1692a(6)(F)(iii) for debts not in default "is irrelevant").  Although Plaintiff correctly notes that the exception to the definition of "creditor" under § 1692a(4) includes a person who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt," it also expressly states that the person must be collecting such debt "for another."  15 U.S.C. § 1692a(4).  Section 1692a(6) similarly limits the term "debt collector" to only those who collect "debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  To hold that anyone who attempts to collect on a debt acquired after default violates

18

the FDCPA, even if collecting the debt for his or her own account, would render the words "for another" meaningless, a practice the Court is to avoid.  *See Beck v. Prupis*, 529 U.S. 494, 506 (2000) (describing "the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous").  Thus, because Wells Fargo is a "person . . . to whom a debt is owed," and did not acquire the debt in default "solely for the purpose of facilitating collection of such debt *for another*," Wells Fargo was Plaintiff's creditor under the FDCPA.  15 U.S.C. § 1692a(4) (emphasis added).

The Amended Complaint also alleges that Wells Fargo regularly collects debt; specifically, Plaintiff alleges that Wells Fargo "receives and acquires tens of thousands of consumer mortgage debts in default each calendar year since 2008," and that it operates a "post-default-trust business model" pursuant to which it creates "pass-through trusts" that acquire defaulted loans and, "as trustee of these post-default pass-through trusts," is involved in collecting on the defaulted debt.  (Am. Compl. ¶ 29.)  Even if true, these allegations indicate that Wells Fargo regularly seeks to collect debt on its own behalf, rather than debt owed to another, and therefore do not make Wells Fargo a debt collector under the FDCPA.  *See Henson*, 137 S. Ct. at 1724 ("[W]hile the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default.  After all and again, under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector."); *Bank of New York Mellon Tr. Co. N.A. v. Henderson*, 862 F.3d 29, 34 (D.C. Cir. 2017) (holding a bank was not a debt collector because "the Bank is [not] seeking to collect [a debt] 'due another,'" but is rather "the current holder of the Note and Deed

of Trust," and noting the fact "[t]hat the debt was already in default when the Bank purchased it did not make the Bank a debt collector"); *George*, 2017 WL 3316065, at *8 ("[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or where it seeks to collect on its own behalf rather than 'for another.'").[4]

The Court therefore grants Wells Fargo's Motion To Dismiss Plaintiff's FDCPA claims against it because it is not a debt collector.[5]

### ii.  Chase

Chase argues that it is not a debt collector, because it began servicing Plaintiff's loan before default.  (Bank Defs.' Mem. 15–16.)  The Bank Defendants rely in part on the Modification Agreement, (*id.* at 15), and, as already discussed, Plaintiff strenuously objects to consideration of this document, (Pl.'s Bank Mem. 4–6).  However, Plaintiff's own Amended Complaint alleges that EMC was appointed as servicer of the loan "prior to Plaintiff's default,"

---

[4] Plaintiff also invokes the "false name exception," which provides that the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  Plaintiff clarifies in her memorandum that she "did not allege that Wells Fargo is the creditor that used a false name," but rather that any argument that Wells Fargo is both the trustee and beneficiary of the trust suggests "an impermissible merger," and that Wells Fargo is therefore "pretending to be a trustee."  (Pl.'s Bank Mem. 19.)  However, no Party has argued that the trust has no beneficiaries, so this argument is inapplicable.  If indeed Plaintiff "did not allege that Wells Fargo is the creditor that used a false name," (*id.*), then she has not alleged that Wells Fargo fits within the false name exception, *see Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (explaining that the false name exception applies where "(1) the creditor uses a name that falsely implies that a third party is involved in collecting its debts; (2) the creditor pretends to be someone else; or (3) the creditor uses a pseudonym or alias." (citation omitted)).

[5] To the extent that the Complaint alleges that Wells Fargo should be held vicariously liable for Chase's and the Attorney Defendants' purported FDCPA violations, (Am. Compl. ¶ 58), this legal conclusion is inconsistent with governing caselaw, *see, e.g.*, *Munroe*, 2016 WL 1248818, at *5 ("[A] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." (quotation marks omitted)).

(Am. Compl. ¶ 21), and the Consent Order, of which the Court has already taken judicial notice, (*see* Opinion 31), indicates that as of April 1, 2011, Chase became the successor servicer for loans formerly serviced by EMC, acquiring all of EMC's mortgage loan servicing rights, (*see* Consent Order 2).  In other words, Chase obtained Plaintiff's loan as part of an acquisition of *all* of EMC's mortgage servicing rights and obligations, rather than through a specific assignment or transfer of Plaintiff's mortgage for the purposes of debt collection after default.  As a result, Chase "stand[s] in the place of [EMC] as Plaintiffs' loan servicer," and obtained Plaintiff's loan, based on Plaintiff's own allegations and judicially-noticeable documents, before she defaulted on it, and therefore is not a debt collector under the FDCPA.  *Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-CV-10082, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) (citation and quotation marks omitted).  Courts have found transfers similar to the one between EMC and Chase here constitute "obtain[ing]" the loan for FDCPA purposes.  *See, e.g.*, *Nichols v. BAC Home Loans Servicing LP*, No. 13-CV-224, 2013 WL 5723072, at *2, *6 (N.D.N.Y. Oct. 18, 2013) (finding, in case where one entity "transferred the loan and servicing responsibilities" to the defendant, that the defendant stood in the shoes of the original loan servicing company); *Pascal*, 2013 WL 878588, at *4 (finding that JPMorgan stood in the place of WaMu, the original loan servicer, and acquired the loan before default where the documents established that "JPMorgan acquired the right to service Plaintiffs' loan upon its acquisition of WaMu's assets," JPMorgan "assum[ed] all mortgage servicing rights and obligations of WaMu," and "JPMorgan would continue to operate WaMu as the servicer of [the] [p]laintiffs' mortgage" (citations and quotation marks omitted)).

Because Chase obtained Plaintiff's loan before she defaulted, Chase meets the exception in § 1692a(6)(F)(iii), and Plaintiff has not plausibly pled that it is a debt collector under the

FDCPA.  *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (affirming dismissal of FDCPA claim against mortgage servicer because the complaint did not establish that the servicer "acquired [the plantiff's] debt after it was in default and so fails to plausibly allege that [the mortgage servicer] qualifies as a debt collector under FDCPA" (citing 15 U.S.C. § 1692a(6)(F)(iii))); *see also Franceschi*, 22 F. Supp. 2d at 253–54 (holding the § 1692a(6)(F)(iii) exception covers entities who serviced the loan prior to default).  The Court therefore grants Chase's Motion To Dismiss the FDCPA claims against it.  *See Hoo-Chong v. Citimortgage, Inc.*, No. 15-CV-4051, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016) ("[M]ortgage servicers are not 'debt collectors' as defined by the FDCPA if they obtained the particular mortgage at issue before the mortgagor defaulted."); *Pascal*, 2013 WL 878588, at *4 ("Mortgage servicers are therefore not covered by the FDCPA if the debt at issue was acquired before a customer default.  That is, the FDCPA only covers servicers who obtain a mortgage that is already in default." (italics omitted)); *Gabrielle v. Law Office of Martha Croog*, No. 10-CV-1798, 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012) (dismissing FDCPA claims against a loan servicing and debt collection corporation because "the complaint [wa]s silent as to whether the debt was in default when [the loan servicer] acquired it"), *aff'd*, 503 F. App'x 89 (2d Cir. 2012).

### b.  Attorney Defendants

The Amended Complaint alleges that the Attorney Defendants violated 15 U.S.C. §§ 1692c(b), 1692e, and 1692g(a)(2).  (Am. Compl. ¶¶ 63–64.)  However, there are only two factual allegations with respect to Plaintiff's debt included in the Amended Complaint against the Attorney Defendants.  Plaintiff alleges that "[o]n December 24, 2015, Virga . . . contacted the Dutchess County clerk by mail on behalf of Chase and transmitted Plaintiff's name, address, and information regarding the same debt Chase [was] attempting to collect, stating that Wells Fargo

22

seeks to recover sums of money that are allegedly due and owing, and stating that the Plaintiff owes Wells Fargo $430,431.62." (Am. Compl. ¶ 48.) Similarly, Plaintiff alleges that "[o]n March 17, 2016, Ginsberg also contacted the Dutchess County clerk by mail on behalf of Chase and transmitted Plaintiff's name, address, and information regarding Plaintiff's debt, the same debt Chase is attempting to collect, that there is due and owing to Wells Fargo the sum of $430,431.62." (*Id.* ¶ 49.) Notably, Plaintiff has removed all reference to the Foreclosure Action relating to her debt from the Amended Complaint, and includes no detail about what form these "transmissions" took or in connection with what proceeding. However, Plaintiff makes clear in her Memorandum that she is referring to the Attorney Defendants' communications with the county clerk "to further the foreclosure action," (Pl.'s Att'y Mem. 21), and the Court may take judicial notice of the documents filed in the Foreclosure Action, not for the truth of the matters asserted but for the existence of the Foreclosure Action and the fact that those filings were made. Further, Plaintiff concedes that "[t]he Court can infer that the Defendants were in the process of attempting to get a Judgment of Foreclosure and Sale." (Pl.'s Att'y Mem. 16.)[6]

Previously, the Court denied the Attorney Defendants' Motion To Dismiss without prejudice to renew after the Second Circuit decided *Cohen v. Rosicki, Rosicki & Associates, P.C.* (Opinion 33–34.) On July 23, 2018, the Second Circuit issued its opinion holding that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018) (citations omitted). Therefore, it is now settled in this Circuit that judicial foreclosure proceedings are within the purview of the FDCPA. However, this does not end the Court's inquiry. Although *Cohen* held that conduct by attorneys

---

[6] Indeed, this inference is necessary to establish that the Attorney Defendants communicated with the Dutchess County clerk "in connection with the collection of [a] debt," as required to state a claim for violation of § 1692c(b).

23

representing creditors in foreclosure actions *can* violate the FDCPA, it did not hold that the mere filing of documents in connection with a foreclosure action violates the FDCPA.

In *Cohen*, the Second Circuit analyzed claims under § 1692e, which bars debt collectors from engaging in "false, deceptive, or misleading" practices, and § 1692g, which requires a debt collector to provide a consumer with "a detailed validation notice" identifying the creditor to whom the debt is owed, so that he or she may confirm the debt is in fact owed before paying it. *See Cohen*, 897 F.3d at 81. As noted, the Second Circuit held that filings in a foreclosure action can constitute an attempt to collect a debt under the FDCPA. Nevertheless, it went on to affirm dismissal of the plaintiff's § 1692e claim because the alleged misidentification of the proper creditor in the filing at issue was "not material," and therefore not actionable under § 1692e. *Id.* at 84–85.[7] It also affirmed dismissal of the plaintiff's § 1692g claim on the basis that the documents filed in connection with the foreclosure action against the plaintiff are not "initial communications," and therefore do not implicate § 1692g(d). *Id.* at 87–88.

Here, the question is not simply whether conduct in connection with a foreclosure action can violate the FDCPA, but specifically whether the disclosure of the mere existence of Plaintiff's debt in court filings in foreclosure proceedings violates § 1692c(b), and whether the failure to disclose the beneficiaries of the trust that owned Plaintiff's mortgage constitutes a material misstatement or omission under § 1692e or an omission of required information from an initial communication under § 1692g(a)(2).

---

[7] The Second Circuit also noted, without deciding, that the defendants arguably made no misstatement at all, in light of the differing definitions of the term "creditor" under New York law and the FDCPA. *Cohen*, 897 F.3d at 85 ("[T]o determine whether the defendants' identification of Green Tree as the creditor was false or misleading, we would need to resolve th[e] tension between the different definitions of 'creditor' under the FDCPA and New York law. We do not resolve this issue here because even if the defendants' creditor statement was inaccurate, it would not be material and [the plaintiff's] § 1692e claim therefore fails.").

<u>i.  15 U.S.C. § 1692c(b)</u>

Section 1692c(b) provides:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that the FDCPA can apply to lawyers who regularly collect consumer debts through litigation, but noted that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt."  *Id.* at 296.  The Supreme Court went on to explain that "it is not necessary to read § 1692c(c) in that way," and that courts can plausibly read the exception under § 1692c(c)(2), which allows a debt collector or creditor to "notify the consumer" that it "may invoke specified remedies which are ordinarily invoked," 15 U.S.C. § 16c(c)(2), "to imply that they authorize the actual invocation of the remedy that the collector 'intends to invoke.'"  *Id.* "The language permits such a reading, for an ordinary court-related document does, in fact, 'notify' its recipient that the creditor may 'invoke' a judicial remedy.  Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies."  *Id.*

Courts in this and other circuits, relying on *Heintz*, have similarly found that communications made in the context of foreclosure proceedings that would otherwise violate § 1692c if made to a third party do not run afoul of the FDCPA.  *See, e.g.*, *Marino v. Nadel*, No. 17-CV-2116, 2018 WL 4634150, at *3 (D. Md. Sept. 27, 2018) ("The filing of an action to foreclose is a necessary precedent to reaching a postjudgment judicial remedy, so

communications with a court that are necessary to maintain that foreclosure action do not violate § 1692c(b)."), *aff'd*, No. 18-2283, 2019 WL 1473931 (4th Cir. Apr. 3, 2019); *Owoh v. Sena*, No. 16-CV-4581, 2018 WL 1221164, at *5 (D.N.J. Mar. 8, 2018) (dismissing § 1692c(b) claim where "the basis of [the] [p]laintiff's claim is [the] [d]efendants' filing of the lien with a county clerk" because it was "necessary in order for [the] [d]efendants to perfect their lien"); *Cohen v. Wolpoff & Abramson, LLP*, No. 08-CV-1084, 2008 WL 4513569, at *6 (D.N.J. Oct. 2, 2008) ("There is no cause of action under [§ 1692c(b)] for an attorney's communication with a forum in pursuit of a legal remedy."); *Buffington v. Schuman & Schuman, P.C.*, No. 00-CV-1620, 2001 WL 34082273, at *3 (N.D.N.Y. Feb. 21, 2001) (holding communications with debtor did not violate § 1692c because "the allegedly offending conduct . . . was sent to institute foreclosure proceedings that were approved by the Bankruptcy Court," and "there is no indication from the record that defendants' actions involved the type of abusive conduct that the FDCPA was intended to prevent"); *cf. Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868, 2014 WL 4843947, at *9–10 (E.D.N.Y. Sept. 26, 2014) (dismissing § 1692c(b) claims against attorneys who represented creditor in state court proceeding because "[t]he complaint does not adduce any facts whatsoever to connect these claims to the [attorney defendants]," but separately assessing whether attorneys' filings in state court violated § 1692e's prohibition on misleading statements); *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11-CV-2767, 2012 WL 3322637, at *6 (S.D.N.Y. Aug. 13, 2012) ("[W]here a Defendant is attempting to comply with state law requirements in enforcing a specific remedy, a majority of courts have found that the FDCPA does not stand in the way."), *rev'd on other grounds*, 717 F.3d 282 (2d Cir. 2013).

Plaintiff effectively asks the Court to hold that creditors may not pursue judicial foreclosure through their attorneys without violating the FDCPA.  But "Plaintiff has cited no

authority—nor is this Court aware of any—for the proposition that the sole act of filing a lawsuit," or documents necessary to prosecuting that lawsuit which necessarily identify the nature of the underlying debt, "against a debtor is a third-party communication prohibited by the statute," absent some allegation of misrepresentation or other improper communication. *Heagerty v. Lueder, Larkin, & Hunter, LLC*, No. 16-CV-99, 2016 WL 11580705, at *8 (N.D. Ga. Oct. 21, 2016), *adopted by* 2016 WL 11580702 (N.D. Ga. Nov. 15, 2016).  On the contrary, the Second Circuit in *Cohen* clearly contemplated the continuing validity of creditors pursuing foreclosure proceedings in holding that conduct in the context of those proceedings must comply with the FDCPA:

> Indeed, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the house at auction, and applying the proceedings from the sale to pay down the outstanding debt).  Moreover, mortgage foreclosure is contemplated in another portion of the statute.  *See* 15 U.S.C. § 1692i(a)(1).

*Cohen*, 897 F.3d at 83 (citation, italics, and quotation marks omitted).  Therefore, the Court dismisses Plaintiff's claims against the Attorney Defendants under § 1692c(b), based on their disclosure of Plaintiff's debt to the state court in the context of pursuing foreclosure, for failure to state a claim.

### ii.  15 U.S.C. § 1692e

Plaintiff also alleges that the Attorney Defendants violated § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Plaintiff alleges that her § 1692e claims constitute the "overarching violation" in this case, and that all Defendants violated § 1692e by failing to "identify Plaintiff's current creditor."  (Am. Compl. ¶ 64.)  Plaintiff's § 1692e claim against the Attorney Defendants fails.

First, Plaintiff's only factual allegations against the Attorney Defendants are that they filed documents in connection with her foreclosure proceeding that disclosed her debt and stated the debt was owed to Wells Fargo.  (*Id.* ¶¶ 48–49.)  Plaintiff's insistence that "[t]here is no creditor of Plaintiff to whom the debt is owed," (*id.* ¶ 68), and that the identification of Wells Fargo as the entity to whom the debt was owed was therefore misleading, was rejected by the state court in the Foreclosure Action, and is thus barred by issue preclusion.  (*See* Opinion 26 n.17; Judgment of Foreclosure.)  The Attorney Defendants therefore made no misrepresentation by indicating to the Dutchess County clerk that Plaintiff's debt was owed to Wells Fargo, as Plaintiff alleges.  Additionally, as already discussed, Plaintiff's allegation that the investors in the Pass-Through Trust are her true creditors, (*id.* ¶ 64), is contradicted by caselaw holding that a trustee can be a creditor within the meaning of the FCDPA.  *See, e.g.*, *Munroe*, 2016 WL 1248818, at *5 (holding Bank of New York "as Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage Pass-Through Trust 2005-04, Mortgage Pass-Through Certificates Series 2005-04" was a creditor where the plaintiff's mortgage was "assigned . . . 'in default'" to the Bank as trustee).  The plain language of § 1692a(6) defines "creditor" as, inter alia, any person "to whom a debt is owed," as long as they are not collecting on the debt on behalf of another; because Plaintiff's debt was indeed "owed" to Wells Fargo as the trustee, there was no misrepresentation made by any Party who suggested as much.

Second, even if the investors in the Pass-Through Trust were Plaintiff's true creditors under the FDCPA, the characterization of Wells Fargo, rather than the beneficiaries of the Trust, as the entity to whom Plaintiff's debt was owed is not a *material* misrepresentation.  "[N]ot every technically false representation by a debt collector amounts to a violation of the FDCPA, and FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a

collection notice." *Cohen*, 897 F.3d at 85 (citations and quotation marks omitted). In *Cohen*, the Second Circuit held that § 1692e "incorporates a materiality requirement," which requires that "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated consumer." *Id.* (citation, alteration, and quotation marks omitted). There, the Court concluded that even if incorrect, the identification of the mortgage servicer as the "creditor" was an immaterial misrepresentation "and therefore not actionable under § 1692e," because it would not "frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 86 (citation and quotation marks omitted).

As in *Cohen*, any alleged omission here did not "misrepresent[] the nature or legal status of [Plaintiff's] debt" in any manner that "undermined [her] ability to respond to the debt collection." *Id.* Although Plaintiff alleges that Chase's purported concealment of the investor's identity "affect[ed] Plaintiff's decision making process," and that she "could have disputed entirely differently and much sooner," (Am. Compl. ¶¶ 34, 68), she does not explain how, *see Martinez v. I.C. Sys.*, No. 17-CV-5693, 2019 WL 1508988, at *3 (E.D.N.Y. Mar. 31, 2019) (dismissing claim under § 1692e where the plaintiff "fail[ed] to allege adequately how the purported [false] statements impaired [the] [p]laintiff from paying the debt or challenging the debt"); *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223, 233 (W.D.N.Y. 2019) (dismissing § 1692e claim because, even assuming the defendants made false statements in connection with an underlying state court proceeding, the plaintiff "failed to allege or otherwise contend that any such falsity could mislead the least sophisticated consumer as to the nature and legal status of the underlying debt or could impede the consumer's ability to respond to or dispute collection" (citation, alteration, and quotation marks omitted)); *see also Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) ("Although statements made

29

and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA, the false statements of which [the plaintiff] complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim." (citation omitted)).[8]

Therefore, because Plaintiff has included no allegations that could implicate the Attorney Defendants in a violation of § 1692e, this claim is dismissed.

### iii. 15 U.S.C. §1692g(a)(2)

Plaintiff also alleges that the Attorney Defendants' failure to disclose Plaintiff's creditor within five days of its initial communications with Plaintiff violates § 1692g(a)(2).  (*See* Am. Compl. ¶¶ 13, 41.)

Section 1692g(a)(2) states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing . . . the name of the creditor to whom the debt is owed."  15

---

[8] Further supporting this conclusion, the Second Circuit has held that plaintiffs lack standing to challenge assignments of mortgages to trusts like the one at issue here because, inter alia, they suffer no injury from not knowing the identities of the trust beneficiaries.  *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 83 (2d Cir. 2014) ("While alleging that [the] defendants received and collected money from [the] plaintiffs that [the] defendants 'were not entitled to receive and collect' and seeking as restitution and as damages 'all payments on the mortgage loans in issue money [sic] collected and received by Deutsche Bank and [the] [d]efendant [t]rusts and their servicers, agents, employees and representatives,' the [c]omplaint did not allege or imply that any plaintiff . . . made loan payments in excess of amounts due, made loan payments to any entity other than defendants, or was subjected to duplicate billing or duplicate foreclosure actions." (citations and alterations omitted)); *see also Beckford v. Bayview Loan Servicing, LLC*, No. 14-CV-249, 2017 WL 2588084, at *6 (D. Conn. June 14, 2017) ("Like the plaintiffs in *Rajamin* and the cases following it, [the plaintiff's] [a]mended [c]omplaint alleges 'highly implausible' and 'entirely hypothetical' injuries, for instance that the 'improper transfer of his debt prevented him from exploring options with the true debt owner,' which are too speculative 'to serve as a basis for Article III standing.'" (alterations omitted) (quoting *McCarty v. The Bank of N.Y. Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016))), *aff'd*, 729 F. App'x 127 (2d Cir. 2018).

U.S.C. § 1692g(a)(2); *see also Cohen*, 897 F.3d at 80 (noting that § 1692g(a) "requires debt collectors to provide debtors with the name of the 'creditor to whom the debt is owed' within five days of an 'initial communication with a consumer in connection with the collection of any debt'").

Plaintiff does not indicate what she considers the "initial communication" the Attorney Defendants sent her.  In fact, Plaintiff alleges no specific communications between herself and the Attorney Defendants at all.  At most, the Court can infer that the filing of the Foreclosure Action was the first "communication" between the Attorney Defendants and Plaintiff.  However, the statute expressly states that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g(a)]."  15 U.S.C. § 1692g(d); *see also Cohen*, 897 F.3d at 87–88 & n.9 (holding that documents the attorney defendants "were legally obligated to file . . . with the foreclosure complaint" were "covered by § 1962g(d)'s pleading exclusion," and noting that "[a] foreclosure complaint falls squarely within § 1692g(d)'s exclusion for 'formal pleadings'" (citation omitted)); *Izmirligil*, 2013 WL 1345370, at *4 ("[N]either [a] foreclosure summons nor foreclosure complaint is an 'initial communication' under the FDCPA, so as to trigger a debt collector's obligations under 15 U.S.C. § 1692g." (citation omitted)).  Because Plaintiff fails to plead any communication between herself and the Attorney Defendants other than the documents filed in connection with the Foreclosure Action, this claim is dismissed.

### III.  Conclusion

In light of the foregoing analysis, the Court grants both the Bank Defendants' Motion To Dismiss and the Attorney Defendants' Motion to Dismiss.  Because this is the second adjudication of Plaintiff's claims on the merits, the dismissals are with prejudice.  *See Lastra v.*

*Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at \*9 (S.D.N.Y. Jan. 3, 2012)

(stating that even pro se plaintiffs are not entitled to file an amended complaint if the complaint

"contains substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F.

App'x 32 (2d Cir. 2013).

The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. Nos.

75, 80), to mail a copy of this Opinion to Plaintiff, and to close this case.

SO ORDERED.

DATED:     June 27, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE